# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, et al., <br><br><br> *Plaintiffs*, <br><br> *v.* <br><br> WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, INC., a Texas corporation, et al., <br><br><br> *Defendants*. | Case No. 4:26-cv-00748-O <br><br> **DEFENDANT WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 3

    I.     WPATH Engages in First Amendment-Protected Activities on Matters of Public Concern ................................................................................................ 3

    II.    The Federal Government Targets WPATH Because of Its Protected Speech ..................................................................................................... 4

    III.   The FTC Targets WPATH with a Broad Civil Investigative Demand .................. 6

    IV.   WPATH Files Suit in D.C. and Obtains a Preliminary Injunction ........................ 8

    V.    The FTC Files Suit in the Northern District of Texas ......................................... 11

    VI.   Both Parties Seek Antisuit Relief ........................................................................ 13

ARGUMENT ............................................................................................................. 14

    I.     The FTC Is Unlikely to Succeed on the Merits of Its Request for Antisuit Relief ................................................................................................... 15

        A.    The First-to-File Rule Favors Allowing the D.C. District Court to Decide ................................................................................................. 15

        B.    The Anti-Suit Injunction Motion is Proper ...................................... 20

        C.    Rule 13(a) Applies to the FTC .......................................................... 21

        D.    The States Are Not Impacted by WPATH's Motion Unless In "Active Concert" with the FTC ........................................................ 22

    II.    The FTC Will Not Suffer Irreparable Harm By Litigating in DC ........................ 23

    III.   The Balance of the Equities Favors WPATH ...................................................... 24

    IV.   The Public Interest Favors WPATH ................................................................... 25

CONCLUSION ........................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*A.O. Smith v. FTC*,
  417 F. Supp. 1068 (D. Del. 1976) ........................................................................................ 22

*American Academy of Pediatrics v. FTC*,
  No. 1:26-cv-00508-CRC (D.D.C.) ....................................................................................... 12

*Am. Horse Prot. Ass'n v. Lyng*,
  690 F. Supp. 40 (D.D.C. 1988) ................................................................................. 23, 24, 25

*Book People, Inc. v. Wong*,
  91 F.4th 318 (5th Cir. 2024)................................................................................................... 14

*Cal. Dental Ass'n v. FTC*,
  526 U.S. 756 (1999) ............................................................................................................... 16

*Coastal Corp. v. Texas E. Corp.*,
  703 F. Supp. 36 (S.D. Tex. 1989) .......................................................................................... 23

*Coe v. Blanche*,
  No. 26-cv-4641 (KPF) (S.D.N.Y.) ......................................................................................... 13

*Columbia Plaza Corp. v. Sec. Nat'l Bank*,
  525 F.2d 620 (D.C. Cir. 1975) ......................................................................................... 16, 21

*Commercializadora Portimex, S.A. de CV v. Zen-Noh Grain Corp.*,
  373 F. Supp. 2d 645 (E.D. La. 2005) ..................................................................................... 24

*Endocrine Soc'y v. FTC*,
  26-cv-512 (JEB), 2026 WL 1257289, at *15 (D.D.C. May 7, 2026)................................*passim*

*F.D.I.C. v. Maxxam, Inc.*,
  523 F.3d 566 (5th Cir. 2008).................................................................................................. 21

*First Choice Women's Resource Centers, Inc. v. Davenport*,
  146 S. Ct. 1114 (2026) ............................................................................................................. 1

*FTC v. Carter*,
  464 F. Supp. 633 (D.D.C. 1979) ............................................................................................ 22

*In re 2025 UPMC Subpoena*,
  No. 25-mc-01069, 2025 WL 3724705 (W.D. Pa. Dec. 24, 2025) ............................................ 5

*In re Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*,
  No. 1:26-mc-0007, 2026 WL 1392565 (D.R.I. May 14, 2026) ................................................ 5

*In re Admin. Subpoena, No. 25-1431-019,*
  800 F. Supp. 3d 229 (D. Mass. 2025) .................................................................................. 5

*In re Dep't of Just. Admin. Subpoena No. 25-1431-030,*
  No. 25-mc-00063, 2026 WL 33398, at *1 (D. Colo. Jan. 5, 2026) ..................................... 5

*In re FTC Corp. Patterns Rep. Litig.,*
  432 F. Supp. 274 (D.D.C. 1977) .................................................................................. 21, 22

*In re Subpoena Duces Tecum, No. 25-1431-016,*
  No. 2:25-mc-00041, 2025 WL 3562151 (W.D. Wash. Sept. 3, 2025) ................................. 5

*In re Subpoena, No. 25-1431-014,*
  810 F. Supp. 3d 555 (E.D. Pa. 2025) ................................................................................ 5

*In re 2025 Subpoena to Child. Nat'l Hosp.,*
  No. 25-cv-03780, 2026 WL 160792, at *9 (D. Md. Jan. 21, 2026) .................................... 5

*Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.,*
  665 F.3d 671 (5th Cir. 2011) ................................................................................ 15, 16, 17

*Lindland v. U.S. Wrestling Ass'n, Inc.,*
  227 F.3d 1000 (7th Cir. 2000) ......................................................................................... 23

*Mann Mfg., Inc. v. Hortex, Inc.,*
  439 F.2d 403 (5th Cir.1971) ....................................................................................... 15, 17

*Mattingly v. United States,*
  939 F.2d 816 (9th Cir. 1991) ......................................................................................... 21

*N.Y. Life Ins. Co. v. Deshotel,*
  946 F. Supp. 454 (E.D. La. 1996) .................................................................................. 24

*Nat'l Rifle Ass'n v. Vullo,*
  602 U.S. 175 (2024) ....................................................................................................... 17

*Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.,*
  25 F.4th 998 (Fed. Cir. 2022) .................................................................................... 23, 24

*Nw. Airlines, Inc. v. Am. Airlines, Inc.,*
  989 F.2d 1002 (8th Cir. 1993) .................................................................................... 20, 21

*POM Wonderful, LLC v. FTC,*
  777 F.3d 478 (D.C. Cir. 2015) ...................................................................................... 18

*Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.,*
  48 F.4th 603 (5th Cir. 2022) ....................................................................................... 15, 19

iii

*QueerDoc, PLLC v. U.S. Dep't of Just.*,
   2025 WL 3013568 (W.D. Wash. Oct. 27, 2025) .......................................................... 5

*Rich v. Butowsky*,
   No. 18-cv-681 (RJL), 2020 WL 7016436, at \*1 (D.D.C. Mar. 31, 2020) ......................... 21, 23

*Save Power Ltd. v. Syntek Fin. Corp.*,
   121 F.3d 947 (5th Cir. 1997) ................................................................................ *passim*

*Speed Prod. Co. v. Tinnerman*,
   171 F.2d 727 (D.C. Cir. 1948) ............................................................................... 16

*TPM Holdings, Inc. v. Intra–Gold Indus., Inc.*,
   91 F.3d 1 (1st Cir.1996) ....................................................................................... 16

*United Broad. Co. v. Armes*,
   506 F.2d 766 (5th Cir. 1975) ................................................................................ 20

*United States v. Eastport S. S. Corp.*,
   255 F.2d 795 (2d Cir. 1958) ................................................................................. 21

*United States, ex rel. Polansky v. Exec. Health Res., Inc.*,
   599 U.S. 419 (2023) ............................................................................................ 21

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
   751 F.2d 721 (5th Cir. 1985) ........................................................................ 15, 18, 25

*Washington Metro. Area Transit Auth. v. Ragonese*,
   617 F.2d 828 (D.C. Cir. 1980) .............................................................................. 16

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................................... 14

*WPATH v. FTC*,
   No. 26-cv-532 (JEB), 2026 WL 1257321, at \*4 (D.D.C. May 7, 2026) ...................... *passim*

*Z.A. v. Blanche*,
   No. 5:26-cv-4998-PCP (N.D. Cal.) ......................................................................... 13

**Statutes**

15 U.S.C. § 44 ..................................................................................................... 1

15 U.S.C. § 45 ..................................................................................................... 1

**Rules**

Fed. R. Civ. P. 65 ................................................................................................................. 22

Fed. R. Civ. P. 13 ........................................................................................................... 21, 22

**INTRODUCTION**

The dispute between the Federal Trade Commission ("FTC") and the World Professional Association for Transgender Health ("WPATH") did not start when the agency filed its action in this Court on June 17, 2026. On May 7, 2026, the United States District Court for the District of Columbia, after full briefing and oral argument, found that the FTC had offered "wafer-thin justifications lacking evidentiary support" to even *investigate* WPATH. *WPATH v. FTC*, No. 26-cv-532 (JEB), 2026 WL 1257321, at *4 (D.D.C. May 7, 2026). The reasons are myriad. First, WPATH is a true nonprofit. The FTC has jurisdiction over only "corporation[s]" operating "for [their] own profit or that of [their] members." 15 U.S.C. § 44; *see also id.* § 45(a)(1). Second, WPATH does not make statements to patients; it publishes a review of scientific studies and recommendations for *doctors* to read and consider. The FTC's authority extends only to "injury to consumers," 15 U.S.C. § 45(n), which doctors are duty-bound to prevent for their patients. Finally, the "extensive evidence of [the FTC's] animus" towards WPATH, combined with its unexplained requests for a "vast swath of academic research discussion in which WPATH engages," demonstrated that the FTC sought to chill WPATH's First Amendment rights, inflicting a clear injury the Supreme Court recently recognized in *First Choice Women's Resource Centers, Inc. v. Davenport*, 146 S. Ct. 1114 (2026). *WPATH*, 2026 WL 1257321, at *3-4.

After indicating that it might appeal the D.C. district court's preliminary injunction to the United States Court of Appeals for the D.C. Circuit and file a motion to dismiss, the FTC instead filed an action against WPATH in this Court for violating the FTC Act on June 17, 2026, one month after the D.C. district court issued its opinion. ECF 1. The FTC's complaint challenges as "deceptive" the *exact same* "Covered Statements" listed in the civil investigative demand ("CID") that the D.C. district court enjoined it from enforcing or implementing. Either the FTC conducted the fastest investigation in government history (without the documents it said it needed to do so),

1

or its suit is a blatant attempt to avoid the jurisdiction of a district court that has already rejected its central theory. There can be no question that the FTC would seek in this case the very type of documents and information it sought and was denied in the D.C. proceeding.

In response to the FTC's attempted end-run around the D.C. district court's decision and jurisdiction, WPATH moved to enjoin the FTC from prosecuting a duplicative lawsuit, which challenged the same allegedly deceptive statements WPATH made to doctors, raised the same jurisdictional issues, and required consideration of the same First Amendment defenses. While the FTC characterizes WPATH's motion as "lawless," "far-fetched," and "oft-rejected," ECF 34 ("Mot.") at 3-4, it is not content to make that case before the D.C. district court. Instead, it asks this Court to enjoin WPATH from even pursuing its motion.[1] The Court should deny that request.

The FTC's brief to this Court is filled with dozens of misstatements. For fairly obvious reasons, the FTC refers to the entity that sought relief in D.C. as "WPATH-TX" *eighty-three times*. But the WPATH entity in the D.C. proceeding is an *Illinois* corporation. *See* Declaration of Abbe David Lowell dated July 6, 2026 ("Lowell Decl."), Ex. 1 ¶ 10; ECF 1 ("FTC Compl.") ¶ 35.[2] The FTC refers to the D.C. suit as the "CID Action" *twenty-eight times*. But WPATH's suit in D.C. was more than that and broadly alleges that the "FTC's investigation into WPATH," not just the CID, is "unconstitutional retaliation against WPATH for exercise of its First Amendment rights to speak, associate, and petition." Ex. 1 ¶ 132; *see id.* ¶¶ 139 ("investigation" is unconstitutional "viewpoint discrimination"), 146 ("unlawful investigation" violates "First Amendment rights to

---

[1] On July 3, 2026, the Court deferred ruling on the FTC's motion for a temporary restraining order and directed the parties to file a status report after the D.C. district court rules on WPATH's motion. ECF 37. That ruling effectively denied the FTC's motion to the extent it sought to bar WPATH from litigating the motion (*e.g.*, filing the reply brief and attending a court hearing) it had already filed in D.C. and which the D.C. district court had ordered it to brief and argue.

[2] Unless otherwise specified, numbered exhibits are attached to the Lowell Declaration.

speak and associate"). The FTC asserts that WPATH's complaint "does not address the FTC Act." Mot. 12. Wrong again. WPATH's complaint explicitly seeks a declaration that "WPATH is not a 'corporation' as defined by . . . 15 U.S.C. § 44." Ex. 1 Prayer for Relief ¶ e; *see also id.* ¶ 136. Such a declaration would be a complete defense to the FTC's claims here.

The FTC misstates the facts because the law is clear. "The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). That is precisely what WPATH requested of the D.C. district court, which has considered the parties' dispute for months and issued a preliminary injunction that found a likelihood that WPATH would succeed on the merits of its claims under the First Amendment. The D.C. district court can consider the similarities and differences between the D.C. case and this one and decide whether they should proceed independently or be consolidated, precisely as Fifth Circuit law envisions. The FTC now asks this Court to ignore the first-filed rule and prohibit WPATH from arguing the merits of that question. It does so while admitting that such a request "represents an interference with the jurisdiction" of the D.C. district court, Mot. 7, on an issue that, under Fifth Circuit law, properly belongs in D.C.

## BACKGROUND

### I.     WPATH Engages in First Amendment-Protected Activities on Matters of Public Concern

"WPATH is a nonprofit organization 'dedicated to promoting science-based medical care, education, research, and public policy in transgender health.'" *WPATH*, 2026 WL 1257321, at *1. "As part of its educational and academic activities, it publishes and updates the Standards of Care, which 'articulate a professional consensus about the psychiatric, psychological, medical, and surgical management of transgender people.'" *Id.* "Those Standards, including the most recent

version, rest on the premise that there exist 'people with gender identities or expressions that differ from the gender socially attributed to the sex assigned to them at birth.'" *Id.*; *see also* E. Coleman et al., *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8*, 23 International Journal of Transgender Health 51 (Sept. 15, 2022) ("SOC8"). "The Trump Administration, and the heads of certain agencies within the Executive Branch, take the contrary view and disclaim the existence of gender identities that diverge from a person's sex assigned at birth and the suitability of treatment of such divergence." *WPATH*, 2026 WL 1257321, at *1.

WPATH is a non-profit, volunteer-run, charitable organization that uses its revenue (generated through membership dues, donations, and grants, not commercial transactions) to promote evidence-based healthcare for transgender patients. *See* Ex. 2 ¶ 15. None of its activities are undertaken for the profit of its governing body or members. *See id.* ¶ 16. And WPATH does *not* provide any medical or other care directly to patients. *Id.* ¶ 17.

## II.    The Federal Government Targets WPATH Because of Its Protected Speech

The Trump Administration disagrees with the guidance provided in SOC8 and with WPATH's view that individuals can have gender identities that differ from the sex assigned to them at birth. On January 20, 2025, President Trump's first day in office, he issued Executive Order No. 14168, titled "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government." Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025). Eight days later, the President issued another Executive Order, titled "Protecting Children from Chemical and Surgical Mutilation." Exec. Order No. 14,187, 90 Fed. Reg. 8771 (Jan. 28, 2025). That Order specifically targeted WPATH, calling SOC8 "junk science" that "lacks scientific integrity," and directing executive agencies to rescind and amend all policies that rely on WPATH's guidance. *Id.*

4

Following President Trump's Executive Orders, the federal government has launched a sustained assault on proponents of transgender healthcare. Ex. 1 ¶¶ 82-87. In April 2025, DOJ issued a memorandum directing prosecutors to "investigate and hold accountable medical providers" who offer transgender healthcare to minors. Office of the Attorney General, "Preventing the Mutilation of American Children" at 4 (Apr. 22, 2025), available at https://www.justice.gov/ag/media/1402396/dl. That memorandum attacked WPATH and directed DOJ personnel to "identify and purge all Department policies, memoranda, publications, and court filings based on WPATH's guidelines." *Id.* at 5.

In July 2025, DOJ issued more than 20 administrative subpoenas to organizations, doctors, and healthcare facilities promoting and/or providing healthcare for transgender minor patients. *See* Office of the Attorney General, "Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children" (July 9, 2025), https://www.justice.gov/opa/pr/department-justice-subpoenas-doctors-and-clinics-involved-performing-transgender-medical. Eight courts have since quashed or modified those subpoenas, finding they were issued for the "improper purpose" of seeking "to end the very practice [DOJ] claims to be merely investigating." *QueerDoc, PLLC v. U.S. Dep't of Just.*, 2025 WL 3013568, at *5 (W.D. Wash. Oct. 27, 2025); *see also In re Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*, No. 1:26-mc-0007, 2026 WL 1392565, at *8–10 (D.R.I. May 14, 2026); *In re 2025 UPMC Subpoena*, No. 25-mc-01069, 2025 WL 3724705, at *3 (W.D. Pa. Dec. 24, 2025); *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, No. 25-mc-00063, 2026 WL 33398, at *1 (D. Colo. Jan. 5, 2026); *In re 2025 Subpoena to Child. Nat'l Hosp.*, No. 25-cv-03780, 2026 WL 160792, at *9 (D. Md. Jan. 21, 2026); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 236-39 (D. Mass. 2025); *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555 (E.D. Pa. 2025); *In re*

*Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-mc-00041, 2025 WL 3562151, at \*13 (W.D. Wash. Sept. 3, 2025).

### III.   The FTC Targets WPATH with a Broad Civil Investigative Demand

The FTC has also targeted WPATH for investigation because of its statements and views on transgender healthcare.  Even before his appointment as the FTC's Chairman, Andrew Ferguson expressed his commitment to "[f]ight back against the trans agenda" and "[i]nvestigate" organizations and individuals who "pushed gender confusion."  Ex. 3.  In May 2025, the FTC proposed a workshop entitled "The Big Lie: The Dangers of Gender-Affirming Care for Minors" to further build on President Trump's executive orders.  Ex. 4 (ECF 3-21).  Over 140 FTC employees sent an anonymous Statement of Concern to Congress questioning whether the FTC had jurisdiction over these issues and asserting that FTC officials' "use of charged language suggest the Commission has *already taken a position* opposing gender-affirming care for minors." Ex. 5 (emphasis added).  It noted that the "FTC has not historically intervened in the confidential, individualized advice given across a series of professional, consent-based appointments protected by the doctor-patient relationship."  *Id.*  FTC Director of Public Affairs and Senior Policy Advisor Joe Simonson responded that no "sane person" could endorse transgender healthcare for children and that "staff who oppose" the workshop are "free to resign."  *Id.*

On July 9, 2025, the FTC held the invitation-only workshop, which it retitled, "The Dangers of 'Gender-Affirming Care' for Minors."  Ex. 6.  That workshop occurred in Washington, D.C.  *See* FTC Events, "The Dangers of 'Gender-Affirming Care' for Minors," https://www.ftc.gov/news-events/events/2025/07/dangers-gender-affirming-care-minors.  During the workshop, then-New York State Assistant Attorney General Glenna Goldis recommended using FTC investigations as a mechanism to pressure medical associations, stating that:

> Just the act of conducting thorough investigations in the course of pursuing a prosecution and making that public will be really helpful in exposing the medical associations to the public and to themselves so that they see the road back because they're at the point where they're going to start losing members. Pediatricians are going to think, "You know what? This is not representing me well, this group. They're actually making me look bad. I don't like what they're doing. I'm not going to pay dues anymore." They could lose other revenue streams as well.

Ex. 7 at 81.  Just months after she made this statement, the FTC hired Ms. Goldis as a senior litigator to lead FTC investigations related to pediatric transgender healthcare.  *See* Ex. 8.  She is counsel for the FTC in this lawsuit.  ECF 1.

On January 16, 2026, the FTC served a CID on WPATH.  The CID contained fifteen interrogatories and thirteen document requests, broadly calling for WPATH to produce records relating to all aspects of its work and operations.  *See* Ex. 9 (ECF 3-8).  It described the subject of the investigation as:

> Whether the Organization or any other Person . . . have made, or assisted others in making, false or unsubstantiated representations or engaged in unfair practices in connection with the marketing and advertising of Pediatric Gender Dysphoria Treatment . . . which, according to the Organization, purports to treat gender dysphoric or gender diverse minors, to consumers in violation of Sections 5 and 12 of the FTC Act . . . and whether FTC action to obtain monetary relief would be in the public interest.

*See id.* at 4.

The CID sought production of every single "Covered Statement" that WPATH has made about "Pediatric Gender Dysphoria Treatment" ("PGDT").  *See, e.g.*, Ex. 9 at 5.  Its definition of "Covered Statement" included "any representation, whether express or implied," that: (1) "PGDTs are safe, including without limitation the representation that a treatment is safe for muscle, bone, or brain development"; (2) "PGDTs are proven effective, including without limitation the representation that PGDTs are supported by *evidence-based science*;" (3) "PGDTs improve mental health;" (4) "PGDTs reduce the incidence of suicide, including without limitation the representation that PGDTs are life-saving;" (5) "PGDTs are fully or partly reversible, including

7

without limitation the representation that a treatment is only a pause or otherwise do not cause permanent physical changes;" and (6) "PGDTs have few side effects." *Id.* at 7 (emphasis added). The CID also sought the names, statements, and descriptions of WPATH's associates. *See, e.g.,* *id.* at 5. It envisioned production of not only information from the past, but also documents generated "until the date of full and complete compliance with this CID." *Id.* at 4.

## IV. WPATH Files Suit in D.C. and Obtains a Preliminary Injunction

On February 18, 2026, WPATH sued the FTC, Chairman Ferguson in his official capacity, and Commissioner Mark Meador in his official capacity, alleging that the investigation they had initiated (1) retaliated against WPATH for exercising its First Amendment rights; (2) discriminated against WPATH based on its viewpoint on transgender healthcare; (3) violated WPATH's First Amendment right to associate with its members; and (4) exceeded the FTC's investigatory power in violation of the Fourth Amendment. Ex. 1 ¶¶ 131-53. WPATH's claims arose from its protected speech on transgender healthcare, including the publication of SOC8, *id.* ¶¶ 30-57, the Trump Administration's whole-of-government effort to deny the existence of transgender individuals and target WPATH for criticism, *id.* ¶¶ 70-87, the FTC's workshop on gender-affirming care and its proposal to investigate WPATH to deprive it of members, *id.* ¶¶ 88-112, and the FTC's exceptionally broad investigation of WPATH seeking its every communication on pediatric transgender healthcare, *id.* ¶¶ 113-130. WPATH also alleged that the FTC "lacks jurisdiction to investigate or bring a Section 5 action against WPATH, as WPATH is not a 'corporation,' nor does it engage in commercial speech." *Id.* ¶ 136. WPATH sought a declaration that "Defendants' investigation of WPATH is retaliation in violation of the First Amendment," that "Defendants' investigation is viewpoint discrimination in violation of the First Amendment," and that WPATH is "not a 'corporation' as defined by . . . 15 U.S.C. § 44." *Id.* Prayer for Relief ¶¶ a, b, e. It

requested an injunction against any "action to hinder, interfere with, or restrain WPATH's exercise of its constitutional right." *Id.* Prayer for Relief ¶ f.

On February 25, 2026, WPATH moved for a preliminary injunction barring the FTC from implementing or enforcing the CID it had issued and from taking any further actions to interfere with or retaliate against WPATH's exercise of First Amendment rights. *WPATH*, 2026 WL 1257321, at *2. The FTC challenged the court's authority to hear pre-enforcement challenges to its CIDs, urged that WPATH had no cause of action, and contended that its investigation had no more effect on WPATH's First Amendment rights than any other investigation of potentially misleading statements. *Id.* at *2-4.

On May 7, 2026, the D.C. district court granted WPATH's motion "in large part and preliminarily enjoin[ed] the FTC from implementing or enforcing its issued CID." *WPATH*, 2026 WL 1257321, at *5. It found that the FTC did not contest that WPATH had engaged in protected speech, that the CID had a "chilling effect" on that protected speech, and that the FTC's "articulated hostility towards proponents of gender-affirming care" established a causal link between WPATH's protected speech and the CID. *Id.* at *3-4.

The D.C. district court went on to explain that the FTC's "attempted demonstration of a legitimate purpose" for the CID fell "flat." *WPATH*, 2026 WL 1257321, at *4. At that time, the FTC did not argue that WPATH was itself a wrongdoer, but instead that it was "not limited to 'requesting information from potential wrongdoers only.'" *Id.* (emphasis added). But the D.C. district court found that the FTC "failed to offer a logical justification connecting WPATH to *commercial* representations," *i.e.*, statements made directly to consumers, or connecting it to "supposed violators" of laws the FTC has authority to enforce. *Id.* The Court then concluded that the "extensive evidence of animus" outweighed the FTC's "wafer-thin justifications lacking

9

evidentiary support" and established WPATH's entitlement to a preliminary injunction.  *Id.*

The same day the D.C. district court granted WPATH's motion for a preliminary injunction, it also granted an injunction to another nonprofit medical organization, the Endocrine Society.  *See Endocrine Soc'y v. FTC*, 26-cv-512 (JEB), 2026 WL 1257289, at *15 (D.D.C. May 7, 2026).  The D.C. district court elaborated on its reasoning in the Endocrine Society's case and incorporated that reasoning by reference into its opinion regarding WPATH.  *See WPATH*, 2026 WL 1257321, at *1.  In *Endocrine Society*, the D.C. district court faulted the FTC for providing "no answers" to the question of why "the Society and other nonprofit organizations that sell no products and engage in no advertising [are] the current investigative targets."  2026 WL 1257289, at *12-13.  While the FTC offered an "unsupported assertion" that some members of the nonprofit organizations "'may have a financial interest' in pediatric-gender-dysphoria treatment," the D.C. district court explained that only when "nonprofit entities exhibit signs of capture by a particular industry or are rife with conflicts of interest that steer them from a noncommercial posture" can the FTC "exercise authority over them."  *Id.* at *13.  The FTC identified "no evidence, however, that any such conflict is at play here and has declined to give . . . any theory upon which it expects to uncover concrete evidence of a third-party violator."  *Id.*  While the D.C. district court made these statements when considering the CIDs issued to WPATH and Endocrine Society, the doubt it expressed applies to the FTC's authority to investigate those nonprofits at all, much less bring enforcement actions against such entities.  *See* 15 U.S.C. § 45(a)(2) (empowering FTC to regulate "corporations").

After the D.C. district court entered the preliminary injunction, the FTC's responsive pleadings (which could include counterclaims asserting its claims) were due on June 8, 2026.  *See WPATH*, 2026 WL 1257321 at ECF 42.  The FTC twice requested, and WPATH twice did not

oppose, extensions of time to respond to WPATH's Complaint.  *See id.* ECF 42 & 44.  At no time during these exchanges on scheduling did the FTC mention that, while it was asking for delays in D.C., it was busy working on a new suit altogether in the Northern District of Texas.  The D.C. district court granted the FTC's requests, and the due date for the FTC's responsive pleading is now July 22, 2026.

V.    **The FTC Files Suit in the Northern District of Texas**

The FTC used the extra time it received from the D.C. district court to sue WPATH in this Court.  *See* ECF 1.  The FTC alleges that WPATH's statements in SOC8 have "deceived many consumers into believing that its treatment guidelines are based on strong evidence derived from scientific methods." *Id.* ¶¶ 8-10.  According to the FTC, "[m]edical professionals have also been duped." *Id.* ¶ 11.  The FTC attaches to its complaint declarations from five of the speakers at its 2025 workshop, namely, Soren Aldaco, Claire Abernathy, Vanessa Sivadge, Beth Bourne, and Gwen Turecki, *Compare* Ex. 7 at 8, 51, 57, 61, 63, *with* ECF 1-1, 1-2, 1-3, 1-5, 1-11.

Ultimately, the FTC's suit challenges ten alleged "core deceptive statements" under 15 U.S.C. § 45(a).  ECF 1 ¶¶ 378, 409-420.  If WPATH obtains a declaratory judgment that it does not qualify as a corporation under 15 U.S.C. § 44, as its complaint requests, Ex. 1 Prayer for Relief ¶ e, that judgment would provide a complete defense to the FTC's claims.  As shown in the table below, the FTC's "core deceptive statements" are the same "Covered Statements" about which its CID sought information:

11

| "Core Deceptive Statement," ECF 1 ¶ 378 | "Covered Statement," Ex. 9 at 7 |
| --- | --- |
| "transition is medically necessary to prevent suicide" (¶ 378(1)) | "PGDTs reduce incidence of suicide," and "are life-saving" D-3(d) |
| "transition is effective at preventing suicide" (¶ 378(2)) | "PGDTs reduce incidence of suicide," and "are life-saving" D-3(d) |
| "puberty blockers are fully reversible" (¶ 378(3)) | "PGDTs are fully or partly reversible" D-3(e) |
| "cross-sex hormones improve mental health" (¶ 378(4)) | "PGDTs improve mental health" D-3(c) |
| Mastectomy is "safe, effective" (¶ 378(5)) | "PGDTs are safe," "proven effective" D-3(a)-(b) |
| SOC8 is the "result of unbiased, evidence-based expert conclusions" (¶ 378(6)) | "PGDTs are supported by evidence-based science" D-3(b) |
| Transition is "standard of care" (¶ 378(7)) | "PGDTs are supported by evidence-based science" D-3(b) |
| SOC8 does not disclose "side effects of puberty blockers" (¶ 378(8)) | "PGDTs have few side effects" D-3(f) |
| SOC8 does not disclose "side effects of cross-sex hormones" (¶ 378(9)) | "PGDTs have few side effects" D-3(f) |
| SOC8 does not disclose "side effects" of mastectomy (¶ 378(10)) | "PGDTs have few side effects" D-3(f) |

Revealing the motive behind the CID and the real purpose behind the Texas lawsuit, the same day the FTC filed suit in this Court, it notified WPATH of its intention to withdraw the CID. Ex. 10. The FTC stated that, "[d]ue to the filing of [its] complaint [in the Northern District of Texas], the Commission no longer views compliance with the CID as necessary to its investigation." *Id.* The FTC simultaneously withdrew similar CIDs it had served on the Endocrine Society and the American Academy of Pediatrics ("AAP"). *See Endocrine Soc'y*, 2026 WL 1257289, ECF 40; *American Academy of Pediatrics v. FTC*, No. 1:26-cv-00508-CRC, ECF 40 (D.D.C. June 22, 2026). On June 30, 2026, counsel for WPATH met and conferred with the FTC

regarding the withdrawal of the CID.  Lowell Decl. ¶ 14.  Counsel for WPATH asked the FTC whether it intended to seek the same information requested by the CID through discovery in this Court.  *Id.*  The FTC declined to offer any assurances that it would not do so.  *Id.*

The FTC is not the only federal agency to proceed in this Court after suffering setbacks before other district courts.  After other courts declined to enforce DOJ's administrative subpoenas, *see* pp. 5-6, DOJ issued substantially similar grand jury subpoenas from this District to NYU Langone Hospital and Lucile Salter Packard Children's Hospital at Stanford.  *See Z.A. v. Blanche*, No. 5:26-cv-4998-PCP, ECF 31-2 (N.D. Cal. June 3, 2026); *Coe v. Blanche*, No. 26-cv-4641 (KPF), ECF 1 (S.D.N.Y. June 2, 2026); Ex. 11.  The United States District Courts for the Southern District of New York and for the Northern District of California have now entered orders designed to protect the constitutional rights of minor patients in those Districts from such improper tactics by DOJ and enjoined DOJ from obtaining the records sought in those grand jury subpoenas.  *See Z.A.*, 5:26-cv-4998-PCP, ECF 93; *Coe v. Blanche*, No. 26-cv-4641 (KPF), ECF 65.

## VI.    Both Parties Seek Antisuit Relief

To bar the FTC from pursuing a duplicative lawsuit that threatened to evade the D.C. district court's preliminary injunction, WPATH moved in D.C. for an antisuit injunction.  ECF 34-1 at 13.  The D.C. district court asked WPATH and the FTC to agree on a schedule for briefing and hearing WPATH's motion.  WPATH's attorneys and FTC counsel met and conferred on a schedule.  On July 1, 2026, the parties agreed that the FTC would file an opposition brief on July 6, WPATH would file a reply on July 8, and the D.C. district court would hear argument on July 9, a schedule the D.C. district court ultimately adopted.  *WPATH*, 2026 WL 1257321, ECF 48.  At no time during the parties' meet-and-confer nor when it submitted the agreed briefing schedule to the D.C. district court did the FTC state that it would seek antisuit relief barring WPATH from pursuing the very motion on which it had just agreed to a briefing schedule or preventing WPATH

13

from following the order the FTC had agreed to in D.C.  Lowell Decl. ¶ 16.

On July 2, 2026, after the D.C. district court entered the parties' agreed-upon schedule, the FTC filed a motion asking this Court to enjoin WPATH "from seeking relief regarding this proceeding in any court other than this Court, the Fifth Circuit, or the Supreme Court."  ECF 34 at 24.[3]  It requested a schedule that would result in argument on July 7, one day before WPATH is scheduled to file its reply brief in the D.C. proceeding.  *Id.* at 23-24.  The FTC thus apparently seeks to preempt the very schedule to which it agreed before the D.C. district court.

## ARGUMENT

This Court should deny Plaintiffs' request for a temporary restraining order ("TRO").  A plaintiff seeking such relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Book People, Inc. v. Wong*, 91 F.4th 318, 336 (5th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  The FTC cannot make *any* of those showings.  It is not likely to succeed on the merits of its request for antisuit relief because Fifth Circuit precedent recognizes that the court with the "first filed" suit should decide which suit proceeds.  *Save Power*, 121 F.3d at 950.  Here, that is indisputably the D.C. district court.  Nor can the FTC demonstrate it will suffer irreparable harm from litigating in the District of Columbia, its home court, where four of its five attorneys in this suit have their offices.  Finally, neither the equities nor the public interest favor prohibiting WPATH, a small nonprofit, from even arguing that it should not be subjected to duplicative litigation in two separate courts.

---

[3] The FTC does not seek to enjoin WPATH from litigating in the D.C. district court its motion for discovery concerning whether the FTC has violated the D.C. district court's preliminary injunction. Mot. 18.

### I.    The FTC Is Unlikely to Succeed on the Merits of Its Request for Antisuit Relief

### A.  The First-to-File Rule Favors Allowing the D.C. District Court to Decide

The FTC's request for antisuit relief is directly contrary to the Fifth Circuit's first-filed rule.  "The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed."  *Save Power*, 121 F.3d at 950.  This rule "is grounded in principles of comity and sound judicial administration."  *Id.*  "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."  *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985).  Thus, "in the absence of 'compelling circumstances,' the district court who gets the suit first should be the one to decide the case."  *Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603, 606 (5th Cir. 2022) (cleaned up).

"The crucial inquiry is one of 'substantial overlap.'"  *Save Power*, 121 F.3d at 950 (quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir.1971)).  "Substantial overlap" does not require that the suits "are identical," but instead only that they "overlap on the substantive issues."  *Id.* (quoting *Mann Mfg.*, 439 F.2d at 408).  The Fifth Circuit considers "whether 'the core issue . . . was the same' or if 'much of the proof adduced . . . would likely be identical.'"  *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011) (footnotes omitted).  "Once the likelihood of substantial overlap between the two suits ha[s] been demonstrated," the court with "prior jurisdiction over the common subject matter" must make the "ultimate determination of whether there actually [i]s substantial overlap requiring consolidation of the two suits."  *Save Power*, 121 F.3d at 950 (quoting *Mann Mfg.*, 439 F.2d at 408).  Even where the "overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each

15

forum in resolving the dispute." *Id.* at 950-51 (quoting *TPM Holdings, Inc. v. Intra–Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir.1996)).[4]

The FTC's suit against WPATH "substantially overlaps" with WPATH's suit against the FTC. Both have the same "core issue[s]." *Int'l Fid. Ins. Co.*, 665 F.3d at 678. First, both suits ask the threshold question of whether WPATH, as a nonprofit, falls within the scope of the FTC's enforcement authority at all. WPATH seeks a declaratory judgment that it does not. Ex. 1 ¶¶ 29, 136 & Prayer for Relief ¶ e. The FTC's complaint alleges that it has authority over WPATH because it "acts for the profit of its members." ECF 1 ¶ 252 (citing *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 767-68 (1999)). The D.C. district court has already considered and rejected this argument. *See Endocrine Soc'y*, 2026 WL 1257289, at *13 (finding FTC offered "no evidence" that would satisfy *Cal. Dental Ass'n*); *WPATH*, 2026 WL 1257321, at *1 (incorporating *Endocrine Soc'y* by reference). Second, both suits concern the statements from SOC8. *See* p. 12, *supra*. WPATH's complaint asserts that those statements are protected speech and that the FTC's investigation of them discriminates based on viewpoint. Ex. 1 ¶¶ 121-122, 133. The FTC argues that WPATH's statements in SOC8 deceive consumers. ECF 1 ¶ 378. Again, the D.C. district court has already considered this issue and concluded that the FTC's "concerns about verifying WPATH's public statements can be addressed by consulting the lengthy bibliography accompanying its Standards of Care." *WPATH*, 2026 WL 1257321, at *4.

The FTC's case substantially overlaps with WPATH's for the additional reason that

---

[4] The D.C. Circuit applies the first-filed rule only where cases are "between the same parties on the same cause of action." *Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) (quoting *Speed Prod. Co. v. Tinnerman*, 171 F.2d 727, 729 (D.C. Cir. 1948)). Where two cases substantially overlap, the D.C. Circuit evaluates "equitable considerations genuinely relevant to the ends of justice" to determine which of the two should proceed. *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 627-28 (D.C. Cir. 1975).

"'much of the proof adduced . . . would likely be identical.'" *Int'l Fid. Ins. Co.*, 665 F.3d at 678 (quoting *Mann Mfg.*, 439 F.2d at 407).  SOC8 will be central proof in both cases, because *all* of the alleged "core deceptive statements" come from SOC8.  *Compare* ECF 1 ¶ 378; *id.* ¶¶ 68-144, *with* Ex. 1 ¶¶ 46-63.  Five of the declarations the FTC submitted with its complaint come from witnesses who testified at a workshop that occurred in D.C., which is extensively discussed in WPATH's complaint.  *Compare* Ex. 1 ¶¶ 93-111; Ex. 7 at 8, 51, 57, 61, 63, *with* ECF 1-1, 1-2, 1-3, 1-5, 1-11.  The same evidence the FTC would use in an attempt to show it has "reason to believe" WPATH violated 15 U.S.C. § 45, would also be relevant to WPATH's First Amendment retaliation claim insofar as it purported to show a non-retaliatory basis for the FTC's actions, *Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175, 197 (2024).  Finally, any documents the FTC sought from WPATH in discovery would fall within the scope of the FTC's (now enjoined) CID discussed in WPATH's complaint, which sought "'all Documents reflecting or constituting Communications with other organizations, institutions, or individuals regarding the development and publication of SOC 8,' and all documents 'including tests, reports, studies, scientific literature, and written opinions' that WPATH relied upon to assert that pediatric-gender-dysphoria treatment is safe and effective." *WPATH*, 2026 WL 1257321, at *3.

The FTC addresses the first-filed rule only by mischaracterizing WPATH's suit.  It labels WPATH's suit the "CID Action" and asserts that it "concerned a single CID issued by the FTC that the Commission has since withdrawn." Mot. 10.  That is demonstrably false.  WPATH's suit requests a declaratory judgment that WPATH, as a nonprofit, falls outside the FTC's investigative and enforcement jurisdiction.  Ex. 1 ¶¶ 29, 136 & Prayer for Relief ¶ e.  Such a declaratory judgment would be a complete defense to all the FTC's claims in this Court, which is why the FTC alleges that WPATH actually "acts for the profit of its members."  ECF 1 ¶ 252.  Moreover,

17

WPATH's suit asserts broad claims that the FTC has retaliated and discriminated against WPATH in violation of its First Amendment rights. Ex. 1 ¶¶ 131-149. Even assuming *arguendo* that WPATH's speech qualified as commercial, the FTC could not challenge WPATH's statements as "unsubstantiated," ECF 1 ¶¶ 412-413, without first demonstrating that its "government interest" in further substantiation satisfies First Amendment scrutiny, *see POM Wonderful, LLC v. FTC*, 777 F.3d 478, 502 (D.C. Cir. 2015) (applying First Amendment protections for commercial speech to FTC substantiation requirements). In other words, WPATH's claims again provide a defense to the exact causes of action the FTC advances here.

Once the breadth of WPATH's suit is recognized, the FTC's arguments fall apart. The FTC's "action in this Court" is not the "first-filed suit." Mot. 16. WPATH's suit was filed four months earlier. It has already resulted in a preliminary adjudication that the FTC has offered "no evidence" that WPATH falls within the FTC's enforcement authority. *Endocrine Soc'y*, 2026 WL 1257289, at *13; *WPATH*, 2026 WL 1257321, at *1 (incorporating *Endocrine Soc'y* by reference). The FTC seeks to limit that determination by asserting that it related to "questions about the Commission's exercise of its *investigative* authority." Mot. 16-17. But the FTC's investigative authority is *broader* than its enforcement authority. *Endocrine Soc'y*, 2026 WL 1257289, at *12. A finding that the FTC lacked authority to even investigate applies to its enforcement authority *a fortiori*. If the D.C. district court's preliminary finding becomes the final declaratory judgment WPATH requested, it would provide a complete defense to the FTC's claims in this case.

Nor would enjoining WPATH from litigating its motion "serve the purposes of the first-filed rule." Mot. 17. The risk of "duplication" and "rulings which may trench upon the authority of sister courts" is acutely presented here. *W. Gulf Mar. Ass'n*, 751 F.2d at 728. The D.C. district court has already issued preliminary rulings that the FTC has exceeded its statutory authority,

18

*Endocrine Soc'y*, 2026 WL 1257289, at \*13, and that its "concerns about verifying WPATH's public statements can be addressed by consulting the lengthy bibliography accompanying its Standards of Care," *WPATH*, 2026 WL 1257321, at \*4.  The FTC will no doubt seek contrary rulings from this Court.  Moreover, any discovery the FTC seeks from WPATH will necessarily fall within the scope of the "vast" CID that the D.C. district court enjoined the FTC from "implementing." *Id.* at \*3–4.[5]  Finally, the FTC repeatedly refers to WPATH's lawsuit as "moot." *See* Mot. 9 n.5, 12, 18, 19.  But that is an issue that the "FTC intends to argue in a motion to dismiss." *Id.* at 12.  By presenting that issue here as a *fait accompli*, the FTC invites this Court to prejudge a motion it has not yet filed in the D.C. proceeding.

Finally, no compelling circumstances favor an exception to the first-filed rule.  The Fifth Circuit has found compelling circumstances only where there are "indications that forum-shopping was an element in th[e] case" or a party sought to "preempt the proper plaintiff's forum choice." *Pontchartrain*, 48 F.4th at 606. The FTC cannot seriously contend that WPATH engaged in forum shopping or sought to preempt its forum choice.  WPATH sued the FTC in the District of Columbia, where it is headquartered.  The FTC is a repeat plaintiff in the District of Columbia. Ex. 12.  Four of the FTC's five attorneys in this case have offices in the District of Columbia.  If anything, questions of forum shopping point in the opposite direction.  Only after the D.C. district court issued unfavorable preliminary rulings did the FTC decide to file suit in another district.  But that decision constitutes precisely the type of duplicative litigation that the first-filed rule seeks to

---

[5] Indeed, the FTC's withdrawal of the CID when it filed this suit underscores the overlap between the two.  Upon filing this suit, the FTC for the first time asserted that, "[d]ue to the filing of [its] complaint," it "no longer views compliance with the CID as necessary to its investigation."  Ex. 10.  But that could only be true if the FTC believed that it would obtain the same information in discovery in this lawsuit.

prohibit.[6]

### B.  WPATH's Anti-Suit Injunction Motion is Proper

The FTC's other arguments fare no better.  The FTC urges that "[o]ne federal district court lacks the power to superintend the proceedings of another federal district court."  Mot. 8.  But WPATH's motion sought no such thing.  It asked the D.C. district court to enjoin *the FTC* from prosecuting a duplicative lawsuit.  That is precisely what the first-filed rule envisions.  "The discretionary power of the federal court in which the first-filed action is pending to enjoin the *parties* from proceeding with a later-filed action in another federal court is firmly established."  *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1004 (8th Cir. 1993) (emphasis added); *see* 6 Wright & Miller Fed. Prac. & Proc. Civ. § 1418 (3d ed.) ("[I]t is within the judicial discretion of the federal court in which the first action is pending to enjoin the *parties* from proceeding with the second suit." (citing *United Broad. Co. v. Armes*, 506 F.2d 766, 771 (5th Cir. 1975) (emphasis added)).  The FTC can hardly fault WPATH for asking the D.C. district court, as the court with the first-filed suit, to play the role envisioned by Fifth Circuit precedent and "determine whether subsequently filed cases involving substantially similar issues should proceed."  *Save Power*, 121 F.3d at 950.

Ironically, it is the FTC that asks this Court to "superintend the proceedings of another federal district court."  Mot. 8.  Unhappy with the D.C. district court's determinations regarding the scope of its authority, it seeks a second bite at the apple in this Court.  *See* pp. 16-19, *supra*.  And rather than appeal a preliminary injunction that bars it from implementing broad CID requests

---

[6] The FTC asserts that this Court has a "significant interest" in this case because WPATH "has been incorporated in Texas for nearly five decades."  Mot. 17.  That is sleight of hand.  The FTC's complaint acknowledges that WPATH reincorporated in Illinois in 2017, almost a decade ago.  ECF 1 ¶ 34.  That Illinois entity is the plaintiff in the D.C. suit.  Ex. 1 ¶ 10.  Regardless, the FTC purported to serve the Texas entity in Austin, in the Western District of Texas.  ECF 25.

for documents from WPATH, the FTC now contends that it can simply proceed with discovery in this case, inviting WPATH to raise any "issue with any discovery requested in this case" through a "motion with this Court." Mot. 14. This Court should not countenance such a transparent effort to circumvent the D.C. district court's existing orders.

### C.  Rule 13(a) Applies to the FTC

The FTC next contends that it need not file its enforcement actions as compulsory counterclaims under Federal Rule of Civil Procedure 13(a). But whether a second-filed suit asserts mandatory counterclaims under Rule 13(a) is simply one factor that courts in the D.C. Circuit consider when determining whether to issue an antisuit injunction, and this is not alone dispositive. *Columbia Plaza*, 525 F.2d at 624-27; *Rich v. Butowsky*, No. 18-cv-681 (RJL), 2020 WL 7016436, at \*1 (D.D.C. Mar. 31, 2020); *see also Nw. Airlines*, 989 F.2d at 1004 (antisuit injunctions advance "general federal policy against multiplicity of litigation embodied" in Rule 13(a)).

Regardless, the FTC has no exemption from Rule 13(a). "The Federal Rules are the default rules in civil litigation," and courts do not "lightly infer" that Congress has created any exceptions. *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 436 (2023). Thus, a "federal agency plays by the same rules as private litigants." *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 581 (5th Cir. 2008); *see also Mattingly v. United States*, 939 F.2d 816, 818 (9th Cir. 1991) ("[W]hen the United States comes into court as a party in a civil suit, it is subject to the Federal Rules of Civil Procedure as any other litigant."). Courts have thus not hesitated to dismiss claims that the United States government fails to plead as required under Rule 13(a). *United States v. Eastport S. S. Corp.*, 255 F.2d 795, 804 (2d Cir. 1958).

The FTC's citations are not to the contrary. Those cases recognized that "Rule 13(a) applies generally to the United States and its agencies." *In re FTC Corp. Patterns Rep. Litig.*, 432 F. Supp. 274, 283 n.15 (D.D.C. 1977). But each involved only a "summary procedure" through

which the FTC could seek "summary enforcement of its subpoena orders," which the court explicitly distinguished from a "civil suit." *Id.* at 280-81. Requiring that "summary procedure" to be implemented through a mandatory counterclaim would, in those scenarios, delay the FTC from obtaining records and interfere with its "assertion of rights under a Congressionally mandated enforcement scheme[.]" *Id.* at 284; *see also FTC v. Carter*, 464 F. Supp. 633, 639 (D.D.C. 1979) (noting "limited" role of court in "proceeding to enforce an administrative subpoena"); *A.O. Smith v. FTC*, 417 F. Supp. 1068, 1088 (D. Del. 1976) (application of Rule 13(a) would "eviscerate" § 49). That rationale has no application here, where the FTC has indisputably commenced a "civil suit." The FTC is again engaged in sleight of hand, attempting to turn a narrow exception for summary proceedings enforcing *subpoenas* into a broad exemption from Rule 13(a) for *any lawsuit* it may file. This case would be a particularly bad vehicle for recognizing such an exemption, because the FTC has been *enjoined* from filing a summary enforcement proceeding for its CID. *WPATH*, 2026 WL 1257321, at *5. This Court should not infer a broad ability for the FTC to sue wherever it pleases when the D.C. district court has found that even a narrower exercise of the FTC's statutory authority would violate WPATH's First Amendment rights.

### D. The States Are Not Impacted by WPATH's Motion Unless In "Active Concert" with the FTC

Finally, the FTC cannot avoid limitations on its ability to initiate duplicative litigation by invoking the interests of the four State Plaintiffs in this suit. Mot. 11-13. Lack of "[c]omplete identity of parties" does not preempt application of the first-filed rule. *Save Power*, 121 F.3d at 950. Regardless, WPATH has not sought antisuit relief against the State Plaintiffs. The FTC asserts that WPATH seeks injunctive relief against "the FTC and anyone in active concert with it." Mot. 21. But that is a standard feature of Federal Rule of Procedure 65, which provides that an injunction binds anyone in "active concert" with the party enjoined. Fed. R. Civ. P. 65(d)(2)(C).

22

"The 'active concert or participation' clause is designed to prevent . . . the addressee of an injunction, eager to avoid its obligations, [from] persuad[ing] a friendly third party to take steps that frustrate the injunction's effectiveness."  *Lindland v. U.S. Wrestling Ass'n, Inc.*, 227 F.3d 1000, 1006 (7th Cir. 2000).  But it does not limit what the States Plaintiffs can do *independently* of the FTC.[7]

## II.    The FTC Will Not Suffer Irreparable Harm By Litigating in DC

The FTC cannot show that it faces any threat of irreparable harm absent injunctive relief. Even if the D.C. district court grants an antisuit injunction, the FTC will not suffer any harm, because it "will remain free to litigate" its claims before the D.C. district court.  *Butowsky*, 2020 WL 7016436, at *2; *Coastal Corp. v. Texas E. Corp.*, 703 F. Supp. 36, 38 (S.D. Tex. 1989) ("The delay the injunction requires in the initiation of a second suit arising from this transaction cannot be imagined to be irreparable; a forum exists in its principal home jurisdiction where a case pends, which is an adequate vehicle for its claims."); *Am. Horse Prot. Ass'n v. Lyng*, 690 F. Supp. 40, 44 (D.D.C. 1988) (no "irreparable harm" where party's claim "can appropriately be heard by this Court").  The FTC argues that "[f]ederal fora exist on equal footing; each district judge is equally capable of resolving the case before him."  Mot. 23. That argument is fatal to any assertion that the FTC faces irreparable harm from having to press its claims against WPATH in the District of Columbia.

The harms the FTC purports to identify make no sense.  The FTC asserts that it will be "deprived of its *bargained-for* choice of forum."  Mot. 21 (quoting *Nippon Shinyaku Co. v. Sarepta*

---

[7] WPATH, of course, disputes that any suit the State Plaintiffs might independently file would have merit, and it expressly reserves all defenses it might have against such a suit.  It simply acknowledges that an independent lawsuit by the State Plaintiffs would not violate an antisuit injunction entered against the FTC.

*Therapeutics, Inc.*, 25 F.4th 998, 1008 (Fed. Cir. 2022) (emphasis added)).  But *Nippon* involved a contractual forum selection clause.  25 F.4th at 1002.  It should go without saying that WPATH and the FTC have no such contract.  Nor would the FTC be "impaired in enforcing its own law." Mot. 21-22.  The suggestion that the FTC cannot enforce its own law by filing suit in the District of Columbia, where the FTC and federal government are headquartered, blinks reality.  The FTC has brought lawsuits in the D.C. district court more than 100 times.  Ex. 12.  It offers no reason to believe it would be harmed from doing so again, much less irreparably harmed.

### III.    The Balance of the Equities Favors WPATH

WPATH, in contrast, faces a threat of irreparable harm from the FTC's motion.  "Courts have repeatedly found that immediate and irreparable injury results from having to defend claims that should be barred."  *N.Y. Life Ins. Co. v. Deshotel*, 946 F. Supp. 454, 465-66 (E.D. La. 1996), *aff'd*, 142 F.3d 873 (5th Cir. 1998); *see also Commercializadora Portimex, S.A. de CV v. Zen-Noh Grain Corp.*, 373 F. Supp. 2d 645, 653 (E.D. La. 2005); *Am. Horse*, 690 F. Supp. at 44 (irreparable harm resulted from "vexatious attempt to relitigate issues already decided").  WPATH obtained a preliminary injunction barring the FTC from "implementing" a CID that sought a "vast swath" of documents, because such action threatened to violate WPATH's First Amendment rights. *WPATH*, 2026 WL 1257321, at *3-5.  The FTC now contends it can seek many if not all of those same documents through discovery in this case.  Mot. 14.  WPATH obtained a favorable preliminary ruling on the FTC's authority to regulate "organizations that sell no products and engage in no advertising."  *Endocrine Society*, 2026 WL 1257289, at *12-13; *WPATH*, 2026 WL 1257321, at *1 (incorporating *Endocrine Soc'y* by reference).  The FTC seeks to relitigate that question as well.  The injury WPATH suffers from such relitigation easily outweighs any harm the FTC will suffer from having to prosecute its claims in its home court in the District of Columbia. WPATH has obtained a preliminary determination that the FTC is violating WPATH's

constitutional rights.  If the FTC can simply file an enforcement action in another district court, that preliminary determination quickly becomes meaningless.  At the very least, this Court should not bar WPATH from even making its case to the D.C. district court that made the preliminary determination.

## IV.    The Public Interest Favors WPATH

Finally, the public interest overwhelmingly cuts against the relief the FTC seeks.  The public interest counsels courts to "avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."  *Save Power*, 121 F.3d at 950 (quoting *West Gulf Mar. Ass'n*, 751 F.2d at 729); *see Am. Horse*, 690 F. Supp. at 45 (recognizing "public interest in the conservation of judicial resources and comprehensive disposition of litigation," as well as the "interests of avoiding inconsistent results and conflicting decisions").  The FTC's request threatens all three.  It seeks to bar WPATH from even asking the D.C. district court, as the court with the first-filed suit, to "determine whether subsequently filed cases involving substantially similar issues should proceed."  *Save Power*, 121 F.3d at 950.  The public interest provides no support for such a request.

## CONCLUSION

For the foregoing reasons, WPATH respectfully requests that this Court deny Plaintiffs' request for antisuit relief.

Dated: July 6, 2026

Respectfully Submitted,

*/s/ Abbe David Lowell*
Abbe David Lowell (admitted to N.D. Tex.)
Caleb Hayes-Deats [DC Bar No. 1643213]*
Schuyler J. Standley [DC Bar. No. 90013858]*
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
SStandley@lowellandassociates.com

R. Jeffrey Layne
State Bar No. 00791083
REED SMITH LLP
401 Congress Avenue, Suite 1800
Austin, Texas 78701
Telephone: (512) 623-1801
Facsimile: (512) 623-1802
jlayne@reedsmith.com

Sarah Cummings Stewart
State Bar No. 24094609
REED SMITH LLP
2850 N. Harwood St., Suite 1500
Dallas, Texas 75201
Telephone: (469) 680-4200
Fax: (469) 680-4299
sarah.stewart@reedsmith.com

*Attorneys for WPATH*

**Pro hac vice* motion forthcoming

26