# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

FEDERAL TRADE COMMISSION, *et al.*,

        *Plaintiffs*,

    v.

WORLD PROFESSIONAL ASSOCIATION
FOR TRANSGENDER HEALTH, INC., a
Texas corporation, *et al.*,

        *Defendants*.

Case No. 4:26-cv-00748-O

**[PROPOSED] BRIEF OF THE COMMONWEALTH OF MASSACHUSETTS AND THE STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, ILLINOIS, MAINE, MARYLAND, MICHIGAN, MINNESOTA, NEVADA, NEW YORK, OREGON, RHODE ISLAND, VIRGINIA, VERMONT, AND WASHINGTON, AND THE DISTRICT OF COLUMBIA AS AMICI CURIAE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

ANDREA JOY CAMPBELL
Attorney General
Commonwealth of Massachusetts

ALLYSON SLATER
 *Director, Reproductive Justice Unit*
ADAM M. CAMBIER
MORGAN CARMEN
 *Assistant Attorneys General*
1 Ashburton Place
Boston, MA 02108
(617) 963-2904
allyson.slater@mass.gov
adam.cambier@mass.gov
morgan.carmen@mass.gov

*Additional counsel listed on signature page*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION AND STATEMENT OF INTERESTS ........................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.   The FTC Seeks to Interfere with Amici States' Authority to Regulate the Practice
       of Medicine ........................................................................................................................ 2

        A.  As regulators of the practice of medicine, Amici States set standards of
            professional conduct and protections for patients ........................................................ 2

        B.  The FTC wrongly characterizes the recommendations of professional medical
            organizations as consumer fraud to usurp Amici States' role as regulators of
            medicine ....................................................................................................................... 7

    II.  The FTC's Sweeping Theory of Liability for WPATH Affects All Corners of
       Medicine. ........................................................................................................................... 9

CONCLUSION ............................................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*Am. Acad. of Pediatrics v. Kennedy*,
    No. 1:25-cv-11916-BEM (D. Mass. Jan. 19, 2026) .................................................................. 10

*Barsky v. Board of Regents of Univ. of N.Y.*,
    347 U.S. 442 (1954) ................................................................................................................ 3

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001) ................................................................................................................ 3

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*,
    520 U.S. 806 (1997) ................................................................................................................ 3

*Gonzales v. Carhart*,
    550 U.S. 124 (2007) ................................................................................................................ 3

*Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*,
    471 U.S. 707 (1985) ................................................................................................................ 2

*Linder v. United States*,
    268 U.S. 5 (1925) .................................................................................................................... 3

*Massachusetts v. Trump*,
    No. 1:25-cv-12162 (D. Mass. Aug. 1, 2025) ............................................................................ 2

*Medina v. Planned Parenthood S. Atl.*,
    606 U.S. 357 (2025) ................................................................................................................ 3

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ................................................................................................................ 2

*Metro. Life Ins. Co. v. Massachusetts*,
    471 U.S. 724 (1985) ................................................................................................................ 2

*Oregon v. Kennedy*,
    No. 6:25-cv-02409 (D. OR. Dec. 23, 2025) ............................................................................ 2

*United States v. Skrmetti*,
    605 U.S. 495 (2025) ............................................................................................................. 3, 8

*Watson v. Maryland*,
    218 U.S. 173 (1910) ................................................................................................................ 3

*Whalen v. Roe*,
  429 U.S. 589 (1977) ............................................................................................... 3


### Constitutional Provisions

U.S. Const. amend. X ................................................................................................. 2


### State Statutes

California
Cal. Bus. & Prof. Code § 2253 ................................................................................... 6
Cal. Bus. & Prof. Code § 2761.1 ................................................................................ 6
Cal. Bus. & Prof. Code § 850.1 .................................................................................. 6
Cal. Bus. & Prof. Code § 852 ..................................................................................... 6
Cal. Civ. Code § 51(b) ................................................................................................ 4
Cal. Civ. Code § 51(e)(5) ............................................................................................ 4
Cal. Civ. Code § 56.109 .............................................................................................. 5
Cal. Fam. Code § 6910 ............................................................................................... 6
Cal. Gov't Code § 12940(a) ........................................................................................ 4
Cal. Gov't Code § 12955(a) ........................................................................................ 4
Cal. Ins. Code § 10133.13 .......................................................................................... 6

Colorado
Colo. Rev. Stat. § 10-16-121(1)(f) .............................................................................. 5
Colo. Rev. Stat. § 10-4-109.6(1) ................................................................................. 6
Colo. Rev. Stat. § 13-21-133 ...................................................................................... 5
Colo. Rev. Stat. § 13-22-101 ...................................................................................... 6
Colo. Rev. Stat. § 16-3-102 ........................................................................................ 5
Colo. Rev. Stat. § 16-3-301 ........................................................................................ 5

Connecticut
Conn. Gen. Stat. § 10-15c ........................................................................................... 5
Conn. Gen. Stat. § 19a-17e ..................................................................................... 5, 6
Conn. Gen. Stat. § 20-579a ........................................................................................ 6
Conn. Gen. Stat. § 46a-58 *et seq.* ............................................................................. 5
Conn. Gen. Stat. § 52-146w ....................................................................................... 5
Conn. Gen. Stat. § 52-146x ........................................................................................ 5
Conn. Gen. Stat. § 52-571m ....................................................................................... 5
Conn. Gen. Stat. § 52-571n ........................................................................................ 5
Conn. Gen. Stat. § 54-155b ........................................................................................ 5

District of Columbia
D.C. Code § 2-1401.01 *et seq.* .................................................................................. 5
D.C. Mun. Regs. tit. 22-B, § 600 ............................................................................... 6

Delaware

Del. Code Ann. tit. 13, § 707 ........................................................................................... 6

Del. Code Ann. tit. 19, § 710, *et seq.*............................................................................... 5

Del. Code tit. 18, § 2304 ................................................................................................... 6

Del. Code tit. 6, ch. 45 & 46 ............................................................................................. 5


Hawai'i

Haw. Rev. Stat. § 368-1 ..................................................................................................... 5

Haw. Rev. Stat. § 378-2 ..................................................................................................... 5


Illinois

215 Ill. Comp. Stat. 5/356z.60(b) ...................................................................................... 6

225 Ill. Comp. Stat. 60/22(C) ............................................................................................ 6

410 Ill. Comp. Stat. 210/2 ................................................................................................. 6

735 Ill. Comp. Stat. 40/28-5, *et seq.* ................................................................................ 5

775 Ill. Comp. Stat. 5/1-102(A) ......................................................................................... 5

775 Ill. Comp. Stat. 5/1-103(O-1)...................................................................................... 5

775 Ill. Comp. Stat. 5/1-103(Q) ......................................................................................... 5


Iowa

Iowa Code Ann. § 147.164 ................................................................................................ 7


Massachusetts

Mass. Gen. Laws ch. 112, § 128 ........................................................................................ 6

Mass. Gen. Laws ch. 112, § 12F........................................................................................ 6

Mass. Gen. Laws ch. 112, § 5F½....................................................................................... 6

Mass. Gen. Laws ch. 112, § 77 .......................................................................................... 6

Mass. Gen. Laws ch. 12, § 11I½(b)-(d) ............................................................................ 5

Mass. Gen. Laws ch. 147, § 63 .......................................................................................... 5

Mass. Gen. Laws ch. 151B, § 4 ......................................................................................... 4

Mass. Gen. Laws ch. 272, § 92A ....................................................................................... 4, 6

Mass. Gen. Laws ch. 272, § 98 .......................................................................................... 4, 6

Mass. Gen. Laws ch. 276, § 13 .......................................................................................... 5


Maryland

Md. Code Ann., Educ. § 26-704 ........................................................................................ 5

Md. Code Ann., Health Occ. § 1-227 ................................................................................ 6

Md. Code Ann., Health-Gen. § 15-151.............................................................................. 5

Md. Code Ann., Ins. § 15-1A-22 ....................................................................................... 6

Md. Code Ann., State Gov't § 20-606 ............................................................................... 5

Md. Code Ann., State Gov't § 20-705 ............................................................................... 5

Md. Code Ann., State Pers. & Pens. § 2-312..................................................................... 5


Maine

Me. Rev. Stat. Ann. tit. 14, § 9001, *et seq.* ..................................................................... 5

Me. Rev. Stat. Ann. tit. 22, § 1508 .................................................................................... 5

Me. Rev. Stat. Ann. tit. 22, § 3174-MMM ........................................................................... 6
Me. Rev. Stat. Ann. tit. 5, § 4551 *et seq.* ......................................................................... 5

Michigan
Mich. Comp. Laws § 37.2202(1)(a) ..................................................................................... 5

Minnesota
Minn. Stat. § 144.346 .......................................................................................................... 7
Minn. Stat. § 253B.03 ......................................................................................................... 6
Minn. Stat. § 256B.0625, subd. 3a ..................................................................................... 5
Minn. Stat. § 260.925 .......................................................................................................... 5
Minn. Stat. § 363A.01 *et seq.* ............................................................................................ 5
Minn. Stat. § 363A.03 .......................................................................................................... 5
Minn. Stat. § 62Q.585 .......................................................................................................... 6

New Jersey
N.J. Stat. Ann. § 10:5-1 *et seq.* ........................................................................................ 5
N.J. Stat. Ann. § 17:48-6oo .................................................................................................. 6
N.J. Stat. Ann. §17:48-6oo ................................................................................................... 5
N.J. Stat. Ann. §18A:36-41 .................................................................................................. 5

New York
N.Y. Civil Rights Law § 40-c .............................................................................................. 5
N.Y. Comp. Codes R. & Regs. tit. 10, § 405.7(c)(2) .......................................................... 5
N.Y. Comp. Codes R. & Regs. tit. 11, § 52.75 ................................................................... 6
N.Y. Comp. Codes R. & Regs. tit. 9, § 466.13 ................................................................... 5
N.Y. Educ. Law § 6531-b .................................................................................................... 6
N.Y. Exec. Law § 296 .......................................................................................................... 5
N.Y. Exec. Law § 296-a ....................................................................................................... 5
N.Y. Exec. Law § 296-b ....................................................................................................... 5
N.Y. Exec. Law § 837-x ....................................................................................................... 5
N.Y. Pub. Health Law § 2504 .............................................................................................. 7

Nebraska
Neb. Rev. Stat. § 71-7304 .................................................................................................... 7
Neb. Rev. Stat. § 71-7305 .................................................................................................... 7
Nev. Rev. Stat. § 118.100 .................................................................................................... 5
Nev. Rev. Stat. § 284.150(3) ............................................................................................... 5
Nev. Rev. Stat. § 439.994 .................................................................................................... 5
Nev. Rev. Stat. § 449.101(1) ............................................................................................... 5
Nev. Rev. Stat. § 613.330 .................................................................................................... 5

Oregon
Or. Rev. Stat. § 109.640 ...................................................................................................... 7
Or. Rev. Stat. § 15.430 ........................................................................................................ 5
Or. Rev. Stat. § 24.500 ........................................................................................................ 5

v

Or. Rev. Stat. § 414.769............................................................................................ 5
Or. Rev. Stat. § 435.210............................................................................................ 5
Or. Rev. Stat. § 435.240............................................................................................ 5
Or. Rev. Stat. § 659A.006.......................................................................................... 5
Or. Rev. Stat. § 659A.030.......................................................................................... 5
Or. Rev. Stat. § 659A.403.......................................................................................... 5
Or. Rev. Stat. § 659A.421.......................................................................................... 5
Or. Rev. Stat. § 675.070............................................................................................ 6
Or. Rev. Stat. § 675.540............................................................................................ 6
Or. Rev. Stat. § 675.745............................................................................................ 6
Or. Rev. Stat. § 676.313............................................................................................ 6
Or. Rev. Stat. § 677.190............................................................................................ 6
Or. Rev. Stat. § 678.138............................................................................................ 6
Or. Rev. Stat. § 685.110............................................................................................ 6
Or. Rev. Stat. § 689.405............................................................................................ 6

Pennsylvania
11 Pa. Stat. Ann. § 2513 ........................................................................................... 7

Rhode Island
R.I. Gen. Laws § 11-24-2........................................................................................... 4
R.I. Gen. Laws § 23-101-1 *et seq.* .......................................................................... 5
R.I. Gen. Laws § 23-4.6-1.......................................................................................... 7
R.I. Gen. Laws § 28-5.1-12........................................................................................ 4
R.I. Gen. Laws § 28-5-5............................................................................................. 4
R.I. Gen. Laws § 28-6-18........................................................................................... 4
R.I. Gen. Laws § 34-37-2........................................................................................... 4
R.I. Gen. Laws § 34-37-4........................................................................................... 4
R.I. Gen. Laws § 34-37-4.3........................................................................................ 4
R.I. Gen. Laws § 34-37-5.2........................................................................................ 4
R.I. Gen. Laws § 34-37-5.3........................................................................................ 4
R.I. Gen. Laws § 34-37-5.4........................................................................................ 4
R.I. Gen. Laws § 5-37.8-1.......................................................................................... 6

Texas
Tex. Health & Safety Code Ann. § 161.702 ............................................................. 7

Vermont
Vt. Stat. Ann. tit. 12, § 7301 *et seq.*....................................................................... 5
Vt. Stat. Ann. tit. 18, § 4226 ..................................................................................... 7
Vt. Stat. Ann. tit. 21, § 495 ....................................................................................... 5
Vt. Stat. Ann. tit. 8, § 4088m.................................................................................... 6
Vt. Stat. Ann. tit. 8, § 4724 ....................................................................................... 6
Vt. Stat. Ann. tit. 9, § 4502 ....................................................................................... 5
Vt. Stat. Ann. tit. 9, § 4503 ....................................................................................... 5

Washington
Wash. Rev. Code § 49.60.030(1) ............................................................... 5
Wash. Rev. Code § 49.60.040(2) ............................................................... 5
Wash. Rev. Code § 49.60.040(29) ............................................................. 5
Wash. Rev. Code § 49.60.215 .................................................................... 5
Wash. Rev. Code § 7.115.010 *et seq.* ........................................................ 5

### State Executive Orders

N.J. Admin. Code § Ex. Ord. No. 326 (2023) ............................................. 5


### State Regulations & Guidance

3 Code Colo. Reg. 4-2-42, §5(A)(1)(o) ...................................................... 6

3 Code Colo. Regs. § 702-4 ....................................................................... 6

Cal. Code Regs. tit. 10 § 2561.2, subd. (a) (2012)...................................... 6

Gender-Affirming Care Covered by MassHealth,
   https://www.mass.gov/info-details/gender-affirming-care-covered-by-masshealth .................. 5

Ill. Admin. Code tit. 50, § 2603.35 ............................................................ 6

Ill. Admin. Code tit. 89, § 140.413(a)(16) ................................................. 5

Ill. Admin. Code tit. 89, § 140.440(h) ....................................................... 5

Mass. Div. of Ins. Bulls. 2014-03,
   *available at* https://www.mass.gov/lists/doi-bulletins ............................................ 6

Mass. Div. of Ins. Bulls. 2021-11,
   *available at* https://www.mass.gov/lists/doi-bulletins ............................................ 6

Medicaid State Plan, § 3.1, Supp. to Attachment 3.1-A, pp. 15-15a.1,
   *available at* https://www.mdch.state.mi.us/dch-
   medicaid/manuals/MichiganStatePlan/MichiganStatePlan.pdf ................................. 5

Mich. Admin. Code R 338.11613 ............................................................... 6

Nev. Medicaid Servs. Manual § 608,
   *available at* https://bit.ly/NVMedicaid ...................................................... 5

Or. Admin. R. 836-053-0441...................................................................... 6

R.I. Gender Dysphoria/Gender Nonconformity Coverage Guidelines (Oct. 28, 2015)
   *available at* https://bit.ly/RI-Guidelines...................................................... 5

vii

R.I. Health Ins. Bull. 2015-03,
  *available at* https://bit.ly/RI-2015-03.......................................................................................... 6


### Other Authorities


149 Anonymous FTC Employees, *Statement of Concern Dated July 2, 2025 from FTC
  Employees on the FTC's July 9 Workshop on Gender-Affirming Care* (July 2, 2025),
  https://perma.cc/P7XJ-WDFW ...................................................................................... 9

*About The ACC*, Am Coll. of Cardiology,
https://www.acc.org/about-acc .......................................................................................... 9

*About the American Academy of Neurology*, Am. Acad. of Neurology,
  https://www.aan.com/about-the-aan.................................................................................. 9

*As Chair, FTC Commissioner Touts He'd Pull Back on AI and Fight Trans Care*, Punchbowl
  News (Dec. 6, 2024), https://perma.cc/R2XQ-GXBD............................................................. 8

*ASCO Overview*, Am. Soc. of Clin. Oncology,
https://www.asco.org/about-asco/asco-overview ............................................................ 9

Evi Arthur, *AAP has been leading voice on childhood vaccine recommendations since 1930s*,
  Am. Acad. of Pediatrics (July 30, 2025), https://publications.aap.org/aapnews/news/32762/ 10

Federation of State Medical Boards, *Contact a State Medical Board (n.d.)*,
  https://www.fsmb.org/contact-a-state-medical-board............................................................. 4

*FTC Announces Workshop on Exploring Unfair or Deceptive Trade Practices in "Gender-
  Affirming Care" for Minors,* Fed. Trade Comm'n (June 9, 2025),
  https://www.ftc.gov/news-events/news/press-releases/2025/06/ftc-announces-workshop-
  exploring-unfair-or-deceptive-trade-practices-gender-affirming-care-minors ........................ 8

Jon Cohen, *The Trump administration says some approved childhood vaccines need better
  studies. Scientists disagree*, Science (Jan. 8, 2026),
  https://www.science.org/content/article/trump-administration-says-some-approved-childhood-
  vaccines-need-better-studies ............................................................................................... 10

Megan Messerly, *Trump shares video highlighting discredited theory linking vaccines to autism*,
  Politico (Sept. 8, 2025), https://www.politico.com/news/2025/09/08/trump-shares-video-
  highlighting-discredited-theory-linking-vaccines-to-autism-00551311 ................................... 10

Patricia J. Zettler, *Toward Coherent Federal Oversight of Medicine*,
52 San Diego L. Rev. 427 (2015) ...................................................................................... 4

Robert C. Derbyshire, Medical Licensing and Discipline in the United States (1969)................. 4

UCLA Sch. of Law Williams Inst.,
*Shield Laws for Reproductive and Gender-Affirming Health Care: A State Law Guide*,
https://williamsinstitute.law.ucla.edu/publications/shield-laws-fact-sheets .................................... 5

**<u>INTRODUCTION AND STATEMENT OF INTERESTS</u>**

Massachusetts and the States of California, Colorado, Connecticut, Delaware, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New York, Oregon, Rhode Island, Virginia, Vermont, and Washington, and the District of Columbia (Amici or Amici States) respectfully submit this brief in support of Defendant World Professional Association for Transgender Health's motion to dismiss. Amici regulate the practice of medicine within their borders, working to ensure that safe and effective medical care is available to their residents and that practitioners are held to the high standards necessary to provide such care. Pursuant to those well-established police powers, each of the Amici States has chosen to permit transgender healthcare for adolescents. Indeed, in many Amici States, transgender healthcare is explicitly protected by statute and regulation.

This lawsuit threatens to undermine the states' role as the primary regulators of medicine. Because the current Administration's policy preferences run counter to the scientific consensus, the Federal Trade Commission is trying to brand a major medical organization's statements about the appropriateness of a treatment as "deceptive." In doing so, the FTC is improperly inserting itself into an area traditionally reserved to the states. Indeed, as WPATH notes in the briefing in support of its motion to dismiss, the FTC aims to enjoin activity that *only* takes place in states like Amici States; other states, like Texas, have banned the provision of transgender healthcare to minors. That federal intrusion—part of a broader federal attack on state-regulated transgender healthcare—undermines the Amici States' independent authority to protect the health and safety of their residents, replacing considered policy judgments with the preferences of federal bureaucrats.

1

While this particular case is about the provision of healthcare to transgender youth, it will have ramifications far beyond that context. At bottom, a federal agency is trying to pressure a major medical organization to change its clinical recommendations because the Administration of the day disfavors them. If that effort succeeds, it will have significant downstream effects on patient health and forward-looking research in other medical fields for years to come.

### ARGUMENT

**I.     The FTC Seeks to Interfere with the Amici States' Authority to Regulate the Practice of Medicine**

The current Administration is engaged in an ongoing campaign to curtail transgender youth healthcare—including by usurping states' traditional and longstanding authority to oversee the regulation of the practice of medicine. *See Oregon v. Kennedy*, No. 6:25-cv-02409 (D. Or. Dec. 23, 2025); *Massachusetts v. Trump*, No. 1:25-cv-12162 (D. Mass. Aug. 1, 2025). As part of that effort, the FTC is now targeting WPATH, a leading professional organization in the field of transgender healthcare, along with other organizations that have released clinical guidelines for the care of transgender youth. The FTC does so with a novel theory of its own authority that upsets principles of federalism.

**A.     As regulators of the practice of medicine, Amici set standards of professional conduct and protections for patients**

It is well settled that states have the general authority to enact laws and policies aimed at protecting the health and welfare of their residents. *See Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 719 (1985) ("[T]he regulation of health and safety matters is primarily, and historically, a matter of local concern."). The Tenth Amendment reserves for states all rights and powers "not delegated to the United States" federal government. U.S. Const. amend. X. These traditional state police powers include a state's "power to protect the health and safety of [its]

citizens." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996); *see also Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985) ("The States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." (internal quotation marks omitted)).

Consistent with these police powers, states have "primary responsibility over matters of health and safety, including the regulation of the practice of medicine." *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 364 (2025) (internal quotation marks omitted); *see also De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997) ("[W]e begin by noting that the historic police powers of the State include the regulation of matters of health and safety."); *Whalen v. Roe*, 429 U.S. 589, 603 n.30 (1977); *Linder v. United States*, 268 U.S. 5, 18 (1925). As the Supreme Court has explained, states have a "legitimate concern for maintaining high standards of professional conduct" in the practice of medicine within their borders. *Barsky v. Board of Regents of Univ. of N.Y.*, 347 U.S. 442, 451 (1954). Indeed, "[t]here can be no doubt the government has an interest in protecting the integrity and ethics of the medical profession." *Gonzales v. Carhart*, 550 U.S. 124, 157 (2007) (internal quotation marks omitted); *Watson v. Maryland*, 218 U.S. 173, 176 (1910) ("[T]he police power of the States extends to the regulation of certain trades and callings, particularly those which closely concern the public health."); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001) (identifying "historic primacy of state regulation of matters of health and safety"). States' role and power to regulate medicine within their borders necessarily extends to the states' ability to make policy judgments about the health and well-being of their residents, a principle the Supreme Court recently reaffirmed in *United States v. Skrmetti*, 605 U.S. 495, 524 (2025) (citing *Gonzales*, 550 U.S. at 163).

States have exercised their power to regulate medicine in various ways. Perhaps most significantly, states regulate the practice of medicine by defining the scope and contours of medical practice.[1] Since 1895, all states have had boards that oversee the licensing of medical professionals.[2] Fundamental and consistent requirements for obtaining a medical license across states "include graduating from an accredited medical school, completing at least one year of a residency or fellowship, and passing a licensing examination."[3] Additional requirements may include "interviews, a documented lack of criminal history, and proof of medical malpractice insurance coverage."[4] States, through their legislatures and regulatory boards, also regulate medical practice by disciplining licensees who act illegally or unethically and by "enact[ing] laws and regulations that directly circumscribe how licensed practitioners conduct medical practice," such as reporting, disclosure, and timeframe rules.[5]

Additionally, states have exercised their police powers to protect vulnerable groups against discrimination and ensure equal access to critical healthcare. Consistent with state policy judgments about protecting minority populations and prohibiting discrimination, many Amici have enacted civil rights protections for transgender people in education, employment, healthcare,

---

[1] Patricia J. Zettler, *Toward Coherent Federal Oversight of Medicine*, 52 San Diego L. Rev. 427, 449-50 (2015) (citing Robert I. Field, Health Care Regulation in America: Complexity, Confrontation, and Compromise 19 (2007) (identifying the "cornerstone" of medical practice regulation as states' licensing schemes)).

[2] Robert C. Derbyshire, Medical Licensing and Discipline in the United States 8 (1969); Zettler, *supra* note 1, at 450; *see also* Federation of State Medical Boards, *Contact a State Medical Board (n.d.)*, https://www.fsmb.org/contact-a-state-medical-board.

[3] Zettler, *supra* note 1, at 450 (citing Nadia N. Sawicki, *Character, Competence and the Principles of Medical Discipline*, 13 Health Care L. & Pol'y 285, 290 (2010)).

[4] *Id*.

[5] *Id.* at 450-52.

4

housing, public accommodations, and other parts of public life.[6] They have also taken steps to safeguard access to transgender healthcare, exercising their sovereign judgment that such safeguards promote public health and wellbeing. For instance, many Amici States expressly recognize a legal right to transgender healthcare and have enacted laws intended to protect people in their states who access, provide, or assist with the provision of that care.[7] Many Amici also cover transgender healthcare through their State Medicaid programs,[8] and they prohibit state-

---

[6] *See, e.g.*, R.I. Gen. Laws §§ 11-24-2, 28-5-5, 28-5.1-12, 28-6-18, 34-37-2, 34-37-4, 34-37-4.3, 34-37-5.2, 34-37-5.3, 34-37-5.4; Mass. Gen. Laws ch. 151B, § 4; Mass. Gen. Laws ch. 272, §§ 92A, 98; Cal. Civ. Code §§ 51(b), 51(e)(5); Cal. Gov't Code §§ 12940(a), 12955; Conn. Gen. Stat. §§ 10-15c, 46a-58 *et seq.*; Del. Code Ann. tit. 6, ch. 45 & 46; Del. Code Ann. tit. 19, § 710, *et seq.*; D.C. Code § 2-1401.01 *et seq.*; Haw. Rev. Stat. §§ 368-1, 378-2; 775 Ill. Comp. Stat. 5/1-102(A), 5/1-103(O-1), 5/1-103(Q); Me. Rev. Stat. Ann. tit. 5, § 4551 *et seq.*; Md. Code Ann., Educ. § 26-704; Md. Code Ann., State Gov't §§ 20-606, 20-705; Mich. Comp. Laws § 37.2202(1)(a); Minn. Stat. §§ 363A.03, 363A.01 *et seq.*; Nev. Rev. Stat. §§ 118.100, 284.150(3), 439.994, 449.101(1), 613.330; N.J. Stat. Ann. §§ 10:5-1 *et seq.*, 17:48-6oo, 18A:36-41; N.Y. Exec. Law §§ 296, 296-a, 296-b; N.Y. Civil Rights Law § 40-c; N.Y. Comp. Codes R. & Regs. tit. 9, § 466.13; Or. Rev. Stat. §§ 659A.006, 659A.030, 659A.403, 659A.421; Vt. Stat. Ann. tit. 9, §§ 4502, 4503; Vt. Stat. Ann. tit. 21, § 495; Wash. Rev. Code §§ 49.60.030(1), 49.60.040(2), 49.60.040(29), 49.60.215.

[7] *See, e.g.*, R.I. Gen. Laws § 23-101-1 *et seq.*; Mass. Gen. Laws ch. 12, § 11I½(b)-(d); Mass. Gen. Laws ch. 147, § 63; Mass. Gen. Laws ch. 276, § 13; Cal. Civ. Code § 56.109; Colo. Rev. Stat. §§ 10-16-121(1)(f), 12-30-121, 13-21-133, 16-3-102, 16-3-301; Conn. Gen. Stat. §§ 19a-17e, 52-146w, 52-146x, 52-571m, 52-571n, 54-155b; 735 Ill. Comp. Stat. 40/28-5, *et seq.*; Me. Rev. Stat. Ann. tit. 14, § 9001, *et seq.*; Me. Rev. Stat. Ann. tit. 22, § 1508; Md. Code Ann., State Pers. & Pens. § 2-312; Minn. Stat. § 260.925; N.Y. Exec. Law § 837-x; N.Y. Comp. Codes R. & Regs. tit. 10, § 405.7(c)(2); Or. Rev. Stat. §§ 15.430, 24.500, 414.769, 435.210, 435.240; Vt. Stat. Ann. tit. 12, § 7301 *et seq.*; Wash. Rev. Code § 7.115.010 *et seq.*; N.J. Admin. Code § Ex. Ord. No. 326 (2023); *see also* UCLA Sch. of Law Williams Inst., *Shield Laws for Reproductive and Gender-Affirming Health Care: A State Law Guide*, https://williamsinstitute.law.ucla.edu/publications/shield-laws-fact-sheets.

[8] *See, e.g.,* R.I. Gender Dysphoria/Gender Nonconformity Coverage Guidelines (Oct. 28, 2015) *available at* https://bit.ly/RI-Guidelines, Gender-Affirming Care Covered by MassHealth, https://www.mass.gov/info-details/gender-affirming-care-covered-by-masshealth; Md. Code Ann., Health-Gen. § 15-151; Ill. Admin. Code tit. 89, §§ 140.413(a)(16), 140.440(h); Medicaid State Plan, § 3.1, Supp. to Attachment 3.1-A, pp. 15-15a.1, *available at* https://www.mdch.state.mi.us/dch-medicaid/manuals/MichiganStatePlan/MichiganStatePlan.pdf; Minn. Stat. § 256B.0625, subd. 3a; Nev. Medicaid Servs. Manual § 608, *available at* https://bit.ly/NVMedicaid.

5

regulated health insurance plans from withholding coverage from individuals based on their gender identity or gender dysphoria, thereby ensuring that transgender residents enjoy the same coverage for medically necessary treatment as other residents.[9] Similarly, many Amici have enacted laws that exclude the provision of transgender healthcare from the definition of "professional misconduct" and that shield medical providers from facing professional discipline based solely on the provision of transgender healthcare.[10] Other Amici mandate training for healthcare professionals to ensure that patients who identify as transgender, gender diverse, or intersex receive trans-inclusive care.[11]

The Amici States have also passed laws and enacted regulations that ensure patients are appropriately informed of risks and require their voluntary informed consent for all medical care. This is especially true for youth, whose parents or legal guardians retain the authority to provide informed consent with limited exceptions.[12]

---

[9] *See, e.g.*, R.I. Health Ins. Bull. 2015-03, *available at* https://bit.ly/RI-2015-03; Mass. Gen. Laws ch. 272, §§ 92A, 98; Cal. Code Regs. tit. 10 § 2561.2, subd. (a) (2012); 3 Code Colo. Regs. § 702-4, Reg. 4-2-42, §5(A)(1)(o); Del. Code Ann. tit. 18, § 2304; 215 Ill. Comp. Stat. 5/356z.60(b); Ill. Admin. Code tit. 50, § 2603.35; Me. Rev. Stat. Ann. tit. 22, § 3174-MMM; Md. Code Ann., Ins. §15-1A-22; Minn. Stat. § 62Q.585; N.J. Stat. Ann. §17:48-6oo; N.Y. Comp. Codes R. & Regs. tit. 11, § 52.75; Or. Admin. R. 836-053-0441; Vt. Stat. Ann. tit. 8, §§ 4724, 4088m; Mass. Div. of Ins. Bulls. 2021-11, 2014-03, *available at* https://www.mass.gov/lists/doi-bulletins.

[10] *See, e.g.,* R.I. Gen. Laws § 5-37.8-1; Mass. Gen. Laws ch. 112, §§ 5F½, 77, 128; Cal. Bus. & Prof. Code §§ 850.1, 852, 2253, 2761.1; Colo. Rev. Stat. § 12-30-121; Conn. Gen. Stat. §§ 19a-17e, 20-579a, 52-571m; 225 Ill. Comp. Stat. 60/22(C); Md. Code Ann., Health Occ. § 1-227; N.Y. Educ. Law § 6531-b; Or. Rev. Stat. §§ 675.070, 675.540, 675.745, 677.190, 678.138, 685.110, 689.405. Some Amici States bar medical malpractice insurers from discriminating against providers solely because they provide transgender healthcare. *See, e.g.*, Colo. Rev. Stat. § 10-4-109.6(1); Or. Rev. Stat. § 676.313.

[11] *See, e.g.*, Cal. Ins. Code § 10133.13.

[12] *See, e.g.,* 410 Ill. Comp. Stat. 210/2 ("Any parent . . . may consent to the performance upon his or her child of a health care service by a physician licensed to practice medicine in all its branches, a chiropractic physician, a licensed optometrist, a licensed advanced practice registered nurse, or

(*continued on the next page*)

Taken together, the above laws and policies reflect the Amici States' commitment to preserving the integrity of the medical profession, protecting the equality of all people, and ensuring that people with gender dysphoria are not denied medically necessary healthcare. In the experience of many Amici States, this commitment, and these laws and policies that effectuate it, are essential to protect the health and safety of their residents, a determination the states are constitutionally permitted to make—without federal interference.

**B.      The FTC wrongly characterizes the recommendations of professional medical organizations as consumer fraud to usurp Amici States' role as regulators of medicine**

This lawsuit, in which the FTC aims to use specious theories of consumer fraud to substitute its own judgment to displace Amici as regulators of medicine, is based on the FTC's politically motivated disapproval of WPATH's guidance and WPATH's view that one's gender identity and one's sex assigned at birth may differ. For instance, the FTC alleges that WPATH's statements that "medical transition" can be "medically necessary...for transgender and gender diverse people" is a "core deceptive statemen[t]." Compl. ¶¶ 378–87. Many legislatures in Amici States have affirmed that transgender healthcare can be medically necessary, and several have gone so far as to declare such healthcare a fundamental right (Section I.A). Whether this care is permissible, and whether it can be medically necessary, is a determination for states to make. Indeed, three of the Plaintiffs in this case—Iowa, Nebraska, and Texas—have made the choice to *ban* transgender healthcare for minors. Iowa Code Ann. § 147.164; Tex. Health & Safety Code

---

a licensed physician assistant or a dental procedure by a licensed dentist."); Cal. Fam. Code § 6910; Colo. Rev. Stat. § 13-22-101; Del. Code Ann. tit. 13, § 707; D.C. Mun. Regs. tit. 22-B, § 600; Mass. Gen. Laws ch. 112, § 12F; Mich. Admin. Code R 338.11613; Minn. Stat. §§ 253B.03, 144.346; N.Y. Pub. Health Law § 2504; Or. Rev. Stat. § 109.640; 11 Pa. Stat. Ann. § 2513; R.I. Gen. Laws § 23-4.6-1; Vt. Stat. Ann. tit. 18, § 4226.

Ann. § 161.702; Neb. Rev. Stat. §§ 71-7304, 71-7305. As WPATH notes in its motion to dismiss briefing, the FTC is targeting care that principally is provided in the Amici States, by residents of those states, and, in some cases, in hospitals run by Amici; further, the FTC targets care that is covered by many Amici Medicaid plans as a medically necessary service. ECF No. 53, 26-30. The FTC may not second-guess these policy judgements obliquely by pursuing enforcement against a private third party, WPATH, for making medical recommendations that accord with them. After all, these policy judgments are made pursuant to state police powers—powers the FTC does not have. *Cf. Skrmetti*, 605 U.S. at 524 ("[T]he fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." (quoting *Railroad Retirement Bd.* v. *Fritz*, 449 U.S. 166, 179 (1980))).

This lawsuit is merely part of a larger campaign, by actors including the current FTC, to undermine the policy determinations of the Amici States. In advance of Andrew Ferguson's confirmation as FTC Chairman, memoranda circulated in support of his confirmation publicly announced his disagreement with the so-called "trans agenda" and his intention to use the FTC to "[i]nvestigate the doctors, therapists, hospitals, and others" who "push[] gender confusion." *See As Chair, FTC Commissioner Touts He'd Pull Back on AI and Fight Trans Care*, Punchbowl News (Dec. 6, 2024), https://perma.cc/R2XQ-GXBD. Additionally, on July 9, 2025, the FTC convened the workshop titled "The Dangers of 'Gender-Affirming Care' for Minors." In announcing the workshop, the FTC confirmed that its purpose was to "follow[] President Trump's executive order ending the federal government's previous support for gender-affirming care." *FTC Announces Workshop on Exploring Unfair or Deceptive Trade Practices in "Gender-Affirming Care" for Minors,* Fed. Trade Comm'n (June 9, 2025),

https://www.ftc.gov/news-events/news/press-releases/2025/06/ftc-announces-workshop-exploring-unfair-or-deceptive-trade-practices-gender-affirming-care-minors.

**II.    The FTC's Sweeping Theory of Liability for WPATH Affects All Corners of Medicine.**

While the FTC's inappropriate efforts to impose liability on WPATH arise from its particular disapproval of transgender youth healthcare, the reasoning it invokes in this case is not so cabined and—if sanctioned by this Court—could lead to a misuse of authority and threaten the development of healthcare guidelines and policies and state primacy in regulation of medicine in a broad array of fields. *See* 149 Anonymous FTC Employees, *Statement of Concern Dated July 2, 2025 from FTC Employees on the FTC's July 9 Workshop on Gender-Affirming Care* (July 2, 2025), https://perma.cc/P7XJ-WDFW ("FTC has not historically intervened in the confidential, individualized advice given across a series of professional, consent-based appointments protected by the doctor-patient relationship.")

Taking a central part of the FTC's argument, the agency finds issue with WPATH's members purportedly profiting from its recommendations, as they are practitioners of the transgender medicine that is recommended by the guidelines and standards the FTC challenges. But major medical organizations are necessarily composed of those who practice a given organization's field of medicine. *See, e.g.*, *About The ACC*, Am Coll. of Cardiology, https://www.acc.org/about-acc ("[M]ore than 60,000 members worldwide spanning the entire cardiovascular team"); *ASCO Overview*, Am. Soc. of Clin. Oncology, https://www.asco.org/about-asco/asco-overview ("[D]iverse network of more than 50,000 oncology professionals"); *About the American Academy of Neurology*, Am. Acad. of Neurology, https://www.aan.com/about-the-aan ("[W]orld's largest association of neurologists and neuroscience professionals with 44,000+ members"). If issuing guidance on the procedures an association's members will perform amounts

9

to "induc[ing] the purchase of…services" in violation of federal consumer protection law, every medical association—from WPATH to the American College of Cardiology—risks liability for fraud simply by promulgating the kind of clinical guidelines medical associations have always created.

The threat to other major medical organizations is materializing already. The American Academy of Pediatrics ("AAP")—an organization that, like WPATH, has been targeted by the FTC with a CID concerning its statements on transgender youth healthcare—has promulgated evidence-based guidance and recommendations for childhood vaccines for nearly a century, Evi Arthur, *AAP has been leading voice on childhood vaccine recommendations since 1930s*, Am. Acad. of Pediatrics (July 30, 2025), https://publications.aap.org/aapnews/news/32762/. The Trump Administration has repeatedly made statements boosting the discredited theory linking vaccines and autism, *see, e.g.*, Megan Messerly, *Trump shares video highlighting discredited theory linking vaccines to autism*, Politico (Sept. 8, 2025), https://www.politico.com/news/2025/09/08/trump-shares-video-highlighting-discredited-theory-linking-vaccines-to-autism-00551311, and earlier this year the United States Department of Health and Human Services (HHS) reduced the recommended schedule of childhood vaccines from 17 to 11 vaccinations despite widespread scientific consensus that the vaccines in question were effective and had been held to rigorous standards, *see, e.g.*, Jon Cohen, *The Trump administration says some approved childhood vaccines need better studies. Scientists disagree*, Science (Jan. 8, 2026), https://www.science.org/content/article/trump-administration-says-some-approved-childhood-vaccines-need-better-studies. Now, the AAP is in active litigation against HHS challenging the changes to the vaccine schedule and related agency actions as baseless, *see Am. Acad. of Pediatrics v. Kennedy*, No. 1:25-cv-11916-BEM, Dkt. 180-1 (D. Mass. Jan. 19, 2026) (proposed fourth

amended complaint). If the Court were to approve the FTC's far-reaching theory of this case—by which the FTC hopes to shape WPATH's decision making on transgender healthcare—there would be little to stop the FTC from misusing its authority to impose liability on medical and scientific organizations like AAP for their guidance and recommendations regarding childhood vaccines, or any other medical guidelines that fall out of favor with the administration of today.

If the FTC is allowed to use the threat of enforcement action as a cudgel against reputable medical and scientific organizations when it disagrees with an organization's recommendations, there would be significant negative impacts on public health: The organizations would find themselves forced to consider the political ramifications of their guidance, impeding their ability to make recommendations based on the expertise of their members and understanding of the evidence. States that set medical standards would find their power to regulate medicine in the best interests of their residents interfered with by federal priorities. And individuals who seek out medically appropriate, critical care may find themselves unable to access it solely because the federal government disfavors it. What's more, these possible consequences could snowball over time; federal efforts to influence or control the guidelines developed by professional organizations today threaten to restrict the research and scientific developments those organizations shepherd, in turn hampering the Amici States' ability to deliver life-saving treatments to their populations tomorrow.

## <u>CONCLUSION</u>

Defendant's motion to dismiss should be granted.

Dated: August 5, 2026                                Respectfully submitted,

**ANDREA JOY CAMPBELL**
 Attorney General
 Commonwealth of Massachusetts
*/s/ Morgan Carmen*\*
MORGAN CARMEN
 *Assistant Attorney General*
ALLYSON SLATER
 *Director, Reproductive Justice Unit*
ADAM M. CAMBIER
 *Assistant Attorney General*
1 Ashburton Place
Boston, MA 02108
(617) 963-2904
allyson.slater@mass.gov
adam.cambier@mass.gov
morgan.carmen@mass.gov

*\*Pro hac vice application filed concurrently and is pending*

*(List of counsel continued on next page)*

12

ROB BONTA
*Attorney General of California*
1300 I St.
Sacramento, CA 95814


PHILIP J. WEISER
*Attorney General of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203


WILLIAM TONG
*Attorney General of Connecticut*
165 Capitol Ave.
Hartford, CT 06106


KATHLEEN JENNINGS
*Attorney General of Delaware*
820 N. French St.
Wilmington, DE 19801


BRIAN L. SCHWALB
*Attorney General of the
District of Columbia*
400 6th St. NW
Washington, DC 20001


KWAME RAOUL
*Attorney General of Illinois*
115 South LaSalle St.
Chicago, IL 60603


AARON M. FREY
*Attorney General of Maine*
6 State House Station
Augusta, ME 04333


ANTHONY G. BROWN
*Attorney General of Maryland*
200 St. Paul Place, 20th Floor
Baltimore, MD 21202


DANA NESSEL
*Attorney General of Michigan*
P.O. Box 30212
Lansing, Michigan 48909

KEITH ELLISON
*Attorney General of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155


AARON D. FORD
*Attorney General of Nevada*
100 North Carson Street
Carson City, NV 89701


LETITIA JAMES
*Attorney General of New York*
28 Liberty St.
New York, NY 10005


DAN RAYFIELD
*Attorney General of Oregon*
1162 Court St. NE
Salem, OR 97301


PETER F. NERONHA
*Attorney General of Rhode Island*
150 South Main Street
Providence, RI 02903


CHARITY R. CLARK
*Attorney General of Vermont*
109 State St.
Montpelier, VT 05609


JAY JONES
*Attorney General of Virginia*
202 North Ninth Street
Richmond, Virginia 23219


NICHOLAS W. BROWN
*Attorney General of Washington*
P.O. Box 40100
Olympia, WA 98504

**CERTIFICATE OF SERVICE**

I, Morgan Blair Carmen, hereby certify that on August 5, 2026, I electronically filed this motion with the Court using the CM/ECF system, which will automatically send copies to any attorney of record in the case.

Dated: August 5, 2026                    */s/ Morgan Blair Carmen*
                                          MORGAN BLAIR CARMEN

**CERTIFICATE OF COMPLIANCE**

I, Morgan Blair Carmen, hereby certify that this brief complies with the form and length requirements of Local Rule 7.2 as it uses 12-point, double-spaced, Times New Roman font and does not exceed 25 pages in length.

Dated: August 5, 2026                    */s/ Morgan Blair Carmen*
                                          MORGAN BLAIR CARMEN