# EXHIBIT 3

**DECLARATION OF VANESSA SIVADGE**
**Pursuant to 28 U.S.C. § 1746**

I have personal knowledge of the facts set forth below and am competent to testify about them. If called as a witness, I could and would testify as follows:

1. I am over 18 years old and reside in Houston, Texas.
2. I am a registered nurse. From June of 2021 until August of 2024, I worked for Texas Children's Hospital (TCH) in a multispecialty clinic.
3. For one day a week I worked with Dr. Richard Ogden Roberts, who is a pediatric endocrinologist. Many of his patients were minors seeing him for a type of treatment that TCH called "gender-affirming care." Dr. Roberts would prescribe them drugs affecting their sex trait development like puberty blockers and cross-sex hormones.
4. In total, I worked with about 20 to 30 transition patients and their families. Almost all were girls. Many of the charts showed that the patients had mental health diagnoses, for example, depression, anxiety, and a history of self-harm. Often Dr. Roberts prescribed a patient testosterone and puberty blockers in conjunction.
5. I was one of the nurses responsible for triaging Dr. Roberts' patients after they visited the clinic. That means that as part of my job responsibilities I responded to parents' messages, facilitated prescriptions, and dealt with insurance companies. I also reviewed his patients' charts and correspondence between him and the patients.
6. It was Dr. Roberts' regular practice to record notes in patients' charts when he saw patients. In my experience it was Dr. Roberts's consistent practice to write in a transition patient's chart that he told parents he was following WPATH's Standards of Care.
7. Once, Dr. Roberts noted that a patient's parents disagreed. One parent did not support medically transitioning the child. He wrote that he explained WPATH's Standards of Care

to the parent. Eventually he prescribed that patient cross-sex hormones.

8. In messages to parents, Dr. Roberts also frequently referenced WPATH.
9. I also observed some of Dr. Roberts' interactions with transition patients and their families in the course of my work.
10. I observed Dr. Roberts tell parents in person that there is a higher risk of a child harming herself if she is not "affirmed." By "affirmed," I understood Dr. Roberts to mean letting them use transition drugs and possibly undergo transition surgeries, like mastectomy.
11. I do not know of any case where Dr. Roberts declined to prescribe a transition patient the drugs or surgeries he or she asked for. I only know of one patient who did not proceed with medical transition after meeting him.
12. Many of the patient notes I reviewed in the course of my job responsibilities stated that Dr. Roberts had advised parents that puberty blockers are fully reversible.
13. I also reviewed parents' correspondence with Dr. Roberts in the course of my work at the clinic. The parents of transition patients often asked him about side effects their children experienced, most commonly pelvic pain, sweating, hot flashes, temperature irregularity, and acne.
14. Sometimes Dr. Roberts wrote referral letters for his underage transition patients to receive surgeries, like mastectomy. He used a template.
15. Most of Dr. Roberts' transition patients were referred to him by pediatricians.
16. Sometimes insurance companies would decline to cover transition drugs. I was expected to challenge the denials as part of my job. Sometimes I would succeed by submitting a letter signed by Dr. Roberts which claimed the treatment was "medically necessary."
17. TCH routinely recorded transition patients' sex incorrectly. Sometimes the state Medicaid

program would cover these patients' transition treatments even though state law banned such coverage. I reported this practice to state and federal law enforcement officials in May of 2024. I went public with these concerns in June of 2024.

18. TCH fired me in August of 2024. TCH told me verbally that I was fired at least in part because of my whistleblowing, in other words, my public statements about its billing practices.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on Jun 1, 2026.

vanessa sivadge
vanessa sivadge (Jun 1, 2026 14:09:01 CDT)

Vanessa Sivadge