**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, INC., a Texas corporation, *et al.*,<br><br>Defendants | Case No. 4:26-cv-00748-O<br><br>**JOINT REPORT REGARDING CONTENTS OF SCHEDULING ORDER** |

On August 26, 2026, a scheduling conference occurred, as required by the Federal Rules of Civil Procedure and this Court's prior Orders (ECF Nos. 62, 76). Counsel for the FTC and WPATH conferred in person, and counsel for other parties attended via videoconference.[1] The parties now respectfully submit this Joint Report as follows:

**1. A brief statement of the claims and defenses**

Plaintiffs' statement:

In Counts I through III of the First Amended Complaint, the FTC alleges violations of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 41–58. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or

[1] Counsel for Alaska could not attend, and Iowa's counsel could only attend part of the conference. Consistent with the Plaintiffs' unified approach on most issues, Alaska and Iowa (which have reviewed this submission) deferred to the FTC on the issues herein.

affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of drugs, devices, services, or cosmetics.

Counts I.A. and I.B. assign liability to WPATH's claims that pediatric medical transition is necessary and effective at preventing suicide in children. Count I.C. assigns liability to WPATH's deceptive claim that puberty blockers are "fully reversible." Count I.D. assigns liability to WPATH's deceptive claim that cross-sex hormones improve mental health. Count I.E. assigns liability to WPATH's deceptive claim that performing breast amputations on children is safe, effective, and consistently results in better health and quality of life.

Count II.A. assigns liability to WPATH's deceptive claims that "SOC-8 represents, unbiased, evidence-based expert consensus." Count II.B. assigns liability to WPATH's representation that pediatric medical transition is the "standard of care" for children who express dissatisfaction with or distress about their sex trails.

Count III assigns liability to WPATH's failure to disclose the existence or extent of specific detrimental effects of pediatric medical transition treatments.

Counts IV through VIII allege that the conduct underlying WPATH's alleged violations of the FTC Act likewise violates the consumer protection laws of Alaska, Iowa, Nebraska, and Texas.

Plaintiffs seek permanent injunctive relief and any additional relief the Court determines to be just and proper. WPATH's statements continue to mislead children and parents. Additionally, State Plaintiffs seek civil penalties, forfeiture, restitution, attorneys' fees, costs, and other appropriate relief authorized by State law.

<u>WPATH's statement</u>:

WPATH is a non-profit organization dedicated to promoting science-based medical care, research, and public policy in transgender healthcare. It is not a corporation that falls within the FTC's regulatory jurisdiction under 15 U.S.C. § 44. WPATH publishes and updates Standards of Care that articulate a professional consensus about the psychiatric, psychological, medical, and surgical management of transgender people. It does not communicate with consumers regarding commercial transactions and thus does make statements in or affecting commerce that the FTC has jurisdiction to regulate under Section 5, *id.* § 45, or advertisements that the FTC has jurisdiction to regulate under Section 12, *id.* § 52.

The FTC lacks authority to regulate clinical guidelines published by a medical association. Under the United States' federal system of government, state governments have the authority to regulate the practice of medicine. Even if the FTC Act could be interpreted to cover a medical association's clinical guidelines, that novel theory raises a "major question" that requires clear authorization from Congress. No such authorization exists.

None of WPATH's statements are deceptive. The Fifth Circuit has held that medical guidelines like those WPATH publishes "cannot give rise to a misrepresentation claim." *Torrey v. Infectious Diseases Soc'y of Am.*, 86 F.4th 701, 704 (5th Cir. 2023). WPATH does not instruct doctors about how to treat any individual patient. Its Standards of Care reject a one-size-fits-all approach and are intended to be flexible. WPATH's Standards of Care also cite specific scientific evidence in support of its claims, which doctors can evaluate for themselves. That Plaintiffs disagree with WPATH does not render WPATH's Standards of Care deceptive, because doctors can review the evidence on which Plaintiffs rely and decide for themselves what is appropriate for any particular patient.

Plaintiffs brought this case to retaliate against WPATH for expressing opinions about transgender healthcare with which Plaintiffs disagree. The U.S. District Court for the District of Columbia found that the FTC was likely retaliating against WPATH in violation of its First Amendment rights. *WPATH v. FTC*, No. 26-cv-532 (JEB), 2026 WL 1257321, at *4 (D.D.C. May 7, 2026). Rather than appeal that decision, Plaintiffs filed this action. They did so to avoid the jurisdiction of a district court that had already found the FTC was likely violating WPATH's constitutional rights.

Texas, Iowa, and Nebraska lack standing to seek injunctive relief because they have outlawed transgender healthcare for minors and thus have no ongoing conduct to enjoin within their respective jurisdictions.

WPATH respectfully provides an observation regarding the structure of the joint report. On September 4, counsel for the FTC sent counsel for WPATH its initial statements for the Joint Report. WPATH responded with its statements on September 10. Counsel for the FTC then sent five pages of additional argument on September 13 at 10:00pm. To avoid unnecessarily complicating the Joint Report on discovery, WPATH has decided, with one limited exception, not to respond to the FTC's additional arguments.

<u>Plaintiffs' responsive statement</u>:

Plaintiffs allege that WPATH is a corporation that operates for the profit of its members, and has repeatedly made false and misleading statements and omissions for the express purpose of profiting its members. This includes manipulating its own expert consensus process to manufacture a recommendation that that medical transition procedures be performed on children despite the absence of consensus. WPATH also directs SOC-8's misstatements expressly to "individuals" and "their families" to persuade them to purchase the medical transition services

that their members sell. Additionally, WPATH works to ensure that insurance companies reimburse transition services—which benefits its members financially. Because WPATH works to ensure its members' profit, it is within the FTC's enforcement jurisdiction. *See California Dental Ass'n v. FTC*, 526 U.S. 756 (1999).

The First Amendment provides no cover for Defendants' deceptive commercial speech. "For commercial speech to come within [the First Amendment's protections], it at least must concern lawful activity and not be misleading." *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 499 (D.C. Cir. 2015) (quotation omitted). Misleading commercial statements, even those that purport to weigh in on "a medical controversy," *FTC v. Nat'l Com'n on Egg Nutrition*, 517 F.2d 485, 487 (7th Cir. 1975), or on matters where "[s]cientists disagree," *ECM Biofilms, Inc. v. FTC*, 851 F.3d 599, 606 (6th Cir. 2017), are tainted by deception such that they are "unprotected by the First Amendment," *POM Wonderful*, 777 F.3d at 500.

*Torrey v. Infectious Diseases Soc'y of Am.*, 86 F.4th 701, 704 (5th Cir. 2023) does not control here. That case involved fraud-based tort and RICO claims, rather than violations of the FTC Act and State consumer-protection laws that require no proof of scienter, reliance, or injury. The four features that place WPATH's statements outside any protection for scientific debate were likewise absent in *Torrey*: (1) WPATH is a commercial enterprise organized for its members' profit; (2) WPATH's statements are directed at consumers, not the scientific community; (3) WPATH knows or should know its statements are false; and (4) WPATH deceived its audience about its conflicts and methodology.

**2. A proposed time limit to file motions for leave to join other parties**

The parties jointly propose that any motions for leave to join other parties be submitted on or before January 4, 2027, unless good cause exists to submit such a motion later. This will

allow the parties to conduct limited discovery before deciding whether adding parties is appropriate, while still allowing any new additional parties to conduct discovery before the proposed close of discovery on July 16, 2027.

**3. A proposed time limit to amend the pleadings**

The parties jointly propose that motions to amend pleadings be submitted on or before January 4, 2027, unless good cause exists to submit such a motion later.

**4. Proposed time limits to file various types of motions, including dispositive motions**

The parties propose that dispositive motions be submitted on or before December 2, 2027, and *motions in limine* filed by January 14, 2028.

**5. A proposed time limit for initial designation of experts**

Plaintiffs' position:

Plaintiffs propose a deadline for the initial designation and reports of expert witnesses of August 2, 2027.

Notably, the parties disagreed regarding whether to sequence expert disclosures consistent with Plaintiffs' ultimate burden of proof at trial (initial reports, followed by responses, and then rebuttal, if any), or, as WPATH apparently prefers, simultaneous disclosures, which eliminates Plaintiffs' ability to submit rebuttal material—although, obviously, WPATH does not propose altering Plaintiffs' ultimate burden of proof at trial.

Importantly, Plaintiffs' proposed approach aligns with the Court's instructions and applicable law. Specifically, the Court directed the parties to provide dates for "initial designation" and "responsive designation" of experts. ECF No. 62 at 2. Elsewhere, this Court has used the term "initial designation of experts" to direct that "the party *with* the burden of proof on the issue subject to the expert designation shall file" the disclosures related to that

expert. *Vernon Feeders, LLC v. Cabaniss Dairy, LLC*, 2013 U.S. Dist. LEXIS 196338, at *3 (N.D. Tex. July 9, 2013) (O'Connor, J.) (emphasis added) (entering scheduling order allowing for initial, responsive, and rebuttal reports). This Court has used the term "responsive designation of experts" to direct "[e]ach party *without* the burden of proof on the issue subject to expert designation" to file disclosures. *Id.* (emphasis added). Indeed, the Court commonly sequences expert disclosures this way. *See Cmty. Loan Servicing v. Moreno,* 2021 U.S. Dist. LEXIS 160863, at *3–4 (N.D. Tex. Jan. 27, 2021) (O'Connor, J.); *Templo Paz de Dios v. Gen. Star Indem. Co.,* 2021 U.S. Dist. LEXIS 221117, at *1–4 (N.D. Tex. Feb. 8, 2021) (O'Connor, J.); *Viveros v. FlexXray LLC,* 2015 U.S. Dist. LEXIS 184603, at *2–4 (N.D. Tex. May 8, 2015) (O'Connor, J.); *Al-Saraji v. City of Dall.,* 2011 U.S. Dist. LEXIS 163040, at *4–5 (N.D. Tex. Mar. 29, 2011) (O'Connor, J.). Each of these orders additionally provided a deadline for designation of rebuttal experts. *See id.*

Not coincidentally, the Court's preferred sequencing—which Plaintiffs propose—is the default under the Federal Rules. *See* Fed. R. Civ. P. 26(a)(2) advisory committee's notes to 1993 amendment ("[I]n most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue.").

<u>WPATH's position:</u>

The Court directed the parties to propose a "time limit for initial designation of experts" and a "time limit for responsive designation of experts." ECF 62 at 2. It did not request a third deadline for "rebuttal experts." WPATH anticipates that, if its motion to dismiss is denied, it will pursue counterclaims and submit expert reports on issues where it may bear the burden of proof.

WPATH proposes that the deadline for initial designation of experts by the party bearing the burden of proof be August 27, 2026, six weeks after the close of fact discovery.

Plaintiffs' responsive statement:

Defendants' proposed deadlines for expert disclosures—which are later in time and spaced farther apart than Plaintiffs' request—are likely to result in unnecessary and inappropriate delay. Irreparable physical harm to consumers, including children, is ongoing as a result of WPATH's continued misleading, deceptive, and unsubstantiated statements. Because time is of the essence, the Court should adopt Plaintiffs' proposed timeline for expert disclosures.

**6. A proposed time limit for responsive designation of experts**

Plaintiffs' position:

Plaintiffs propose a deadline for the designation and reports of responsive expert witnesses of September 1, 2027, and a deadline for designation and reports of rebuttal experts of October 1, 2027. As explained above, the standard sequencing, which aligns with the Federal Rules and this Court's practice, is appropriate here.

WPATH's position:

WPATH proposes that the deadline for responsive designation of experts by the party that does not bear the burden of proof be October 8, 2026, six weeks after its proposed deadline for the initial designation of experts. Because the Court did not request a deadline for a third round of expert disclosures, and because WPATH does not regard one as necessary, WPATH does not propose such a deadline. Should the Court set a deadline for a third round of expert reports, WPATH requests four weeks to complete such reports, additional time before the close of expert discovery to complete depositions of all expert witnesses, and corresponding extensions of all other deadlines in the case management plan.

Plaintiffs' responsive statement:

Plaintiffs' proposed earlier deadlines will help expeditiously resolve this matter—which involves ongoing physical harm to consumers. Notwithstanding WPATH's view, Rule 26(a)(2)(D)(ii) entitles Plaintiffs to offer rebuttal expert testimony, which means the parties will need a deadline by which such testimony must be disclosed. Accordingly, it makes no sense to accept WPATH's invitation to ignore Rule 26(a)(2)(D)(ii) or simply "kick the can down the road"—instead, the Court should set a complete schedule now

**7. A proposed time limit for objections to experts (*i.e.*, *Daubert* and similar motions)**

The parties propose that the objections to experts be submitted on or before December 2, 2027.

**8. A proposed plan and schedule for discovery, a statement of the subjects on which discovery may be needed, a time limit to complete factual discovery and expert discovery, and a statement of whether discovery should be conducted in phases or limited to or focused upon particular issues**

The parties jointly propose that factual discovery be completed on or before July 16, 2027, and expert discovery be completed on or before November 8, 2027. However, the parties disagree regarding discovery timing and scope.

**Plaintiffs' position regarding discovery timing:** As this Court has explained, "[a] stay of discovery is an 'extraordinary step.'" *X Corp. v. Media Matters for Am.*, No. 4:23-CV-01175-O, 2024 WL 1895255, at *1 (N.D. Tex. Apr. 26, 2024) (O'Connor, J.) (quoting *Valenzuela v. Crest-Mex Corp.*, No. 16-1129, 2017 WL 2778104, at *5 (N.D. Tex. June 26, 2017)). Stays are "not automatically granted whenever a motion to dismiss is pending." *Valenzuela*, 2017 WL 2778104, at *5. Indeed, as this Court observed: "If the Federal Rules of Civil Procedure

contemplated that pending motions to dismiss would stay discovery, they would contain a provision to that effect." *X-Corp.*, 2024 WL 1895255 at *1. To the extent WPATH believes good cause exists to delay or defer some specific discovery request, WPATH can seek that relief. But the Court should not deviate from its longstanding practice—one consistent with the law—and halt discovery simply because WPATH (like many defendants) moved to dismiss.

**WPATH's position regarding discovery timing:** WPATH has filed a motion to dismiss for failure to state a claim and a motion to dismiss for improper venue. As of the filing of this report, Plaintiffs have not served any discovery requests. WPATH reserves the right to move to stay discovery pending resolution of its motions to dismiss in the event that Plaintiffs seek burdensome discovery that a favorable ruling on the motions to dismiss would render unnecessary.

**Plaintiffs' position regarding discovery scope:** The Federal Rules, as applied by the Court, should determine discovery's scope. WPATH's position is that, because the FTC completed a pre-suit investigation to determine whether the agency had a basis to initiate an enforcement action, discovery should be limited here. Notably, that investigation sought only to determine whether the Commission had "reason to believe" WPATH violated the law, 15 U.S.C. § 45(b), which is not the standard the Court will apply at trial. And WPATH refused to provide any evidence to the FTC: WPATH produced no documents, and the FTC deposed no witnesses.

In any event, as the Supreme Court has made clear, the "purpose" of agency investigations is "to discover and procure evidence, *not to prove a pending charge or complaint*, but upon which to make one if, in the [agency's] judgment, the facts thus discovered justify doing so." *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 201 (1946) (emphasis added). Consistent with this authority, and further consistent with our representations to Defendants during the scheduling conference, federal courts at all levels have held—repeatedly and uniformly—that because an

investigation's purpose is different than the purpose of litigation discovery, agency investigations do not limit subsequent litigation discovery.[2] Indeed, we are unaware of any court holding otherwise. The Federal Rules entitle the FTC to full discovery, as in any other case.

**WPATH's position regarding discovery scope:** Plaintiffs mischaracterize WPATH's position. The U.S. District Court for the District of Columbia found that broad discovery requests by the FTC to WPATH violate WPATH's First Amendment rights. *WPATH*, 2026 WL 1257321, at *4; *see also First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S.Ct. 1114, 1125 (2026) (finding subpoena to nonprofit imposed First Amendment injury for standing purposes). The First Amendment restrains discovery requests no less than subpoenas. *See X Corp. v. Media Matters for Am.*, No. 4:23-CV-01175-O, 2024 WL 4416887, at *3 (N.D. Tex. Sept. 27, 2024) ("The First

[2] *See, e.g.*, *SEC v. Jasper*, 678 F.3d 1116, 1128-29 (9th Cir. 2012) (pre-complaint interview of defendant was not a substitute for deposition because of "the difference in nature of the SEC's motivation during an early investigation, at which open-ended questions are typically asked without expectation the witness will be needed at trial, and its motivation at an adverse witness deposition, when battle lines have already been drawn"); *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("[E]ven though the Commission had already conducted a pre-filing investigation . . . , 'there is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case.'") (quoting *SEC v. Saul*, 113 F.R.D. 115, 118 (N.D. Ill. 1990)); *FTC v. Texaco, Inc.*, 555 F.2d 862, 874 (D.C. Cir. 1977) ("In the pre-complaint stage, an investigating agency is under no obligation to propound a narrowly focused theory of a possible future case."); *SEC v. Rayat*, No. 21-cv-4777, 2022 WL 1423300, at *3 (S.D.N.Y. May 5, 2022) ("More importantly, no rule of law requires the SEC to request in the investigative stage every document that might turn out to be relevant in the litigation phase on pain that, if it does not seek the document during the investigation, it will not be able to seek it after it has filed a complaint and defendant has answered."); *SEC v. Wu*, No. 11-cv-4988, 2016 WL 4943000, at *3 (N.D. Cal. Sept. 16, 2016) (rejecting argument that "no prejudice" resulted from a nonappearance at a litigation deposition because the SEC had interviewed the witness during its investigation; the SEC's "motivation" during an investigation is different than during litigation); *SEC v. Zachariah*, No. 08-cv-60698, 2009 WL 10669546, at *4 (S.D.N.Y. May 21, 2009) (rejecting argument that excess depositions were unwarranted because of pre-complaint investigation: "the contexts of administrative investigations and judicial proceedings are sufficiently different to merit further discovery once the charges have been made and the parties are at issue" (quotation omitted)); *SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 857 (S.D.N.Y. 1997) (rejecting argument that government was not harmed by Fifth Amendment assertion at deposition because it had already obtained pre-complaint testimony: "That argument is unsupported by fact or law. Courts have avoided giving administrative inquiries preclusive effect because that would transform those inquiries into discovery or trials.") (Sotomayor, J.).

Amendment provides a qualified privilege from the disclosure of information concerning certain activities protected by the First Amendment's freedom of speech and association."); *see also Whole Woman's Health v. Smith*, 896 F.3d 362, 374 (5th Cir. 2018); *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 479 (10th Cir. 2011); *Perry v. Schwarzenegger*, 591 F.3d 1126, 1143 (9th Cir. 2009). Courts considering discovery requests that implicate First Amendment rights apply a two-step test. *X Corp.*, 2024 WL 4416887, at *3. First, they ask whether the objecting party has "made a *prima facie* showing of arguable First Amendment infringement." *Id.* "This is a light burden," *id.*, and the D.C. District Court's finding of a likely First Amendment violation shows the burden is met here, *WPATH*, 2026 WL 1257321, at *4.

After the objecting party makes a *prima facie* showing, the burden shifts to the requesting party to show that any request is "carefully tailored to avoid unnecessary interference with protected activities" and that the requested information is "otherwise unavailable." *Perry*, 591 F.3d at 1142. The FTC has informed the D.C. District Court that it has "used its 'other investigative tools' to investigate WPATH," "revealed substantial evidence," "identifie[d] conduct that violates the FTC Act," and ultimately "completed the investigation into WPATH." *WPATH*, No. 26-cv-532, ECF 61-1 at 1, 7-9. According to the FTC, its other investigative tools "independently revealed an extensive set of violations of the FTC Act," without the need for any document discovery from WPATH. *WPATH*, No. 26-cv-532, ECF 53 at 27-28; *see also id.* ECF 43 at 1. WPATH has twice asked the FTC to explain how it will "carefully tailor[]" any discovery requests to avoid "unnecessary interference" with WPATH's First Amendment rights like that already found by the D.C. District Court. The FTC has responded only by citing the authorities in footnote 2 above, which do not address the First Amendment privilege at all, much less where a district court has already found a likely violation of the First Amendment.

**<u>Plaintiffs' responsive statement</u>**: This Court cannot determine whether or how the First Amendment applies to discovery requests that Plaintiffs have not yet served on WPATH. The degree and scope of protection is too vague and cursory to be addressed in the abstract. In fact, even the cases WPATH cites recognize "the importance of context in any resolution of these issues." *Whole Women's Health v. Smith*, 896 F.3d 362, 370 (5th Cir. 2018). And despite announcing that courts in the Fifth Circuit have followed the two-step test, WPATH both gives short shrift to that which it must demonstrate to make a "*prima facie* showing of arguable First Amendment infringement," and conveniently omits that "[u]ltimately, *the Court* must balance the potential chilling effect on [First Amendment] rights against the significance of the interest in disclosure to determine whether that interest outweighs the harm." *X Corp. v. Media Matters for Am*., 2024 WL 4416887, at *3 (N.D. Tex. 2024) (O'Connor, J.) (emphasis added) (explaining that while "the Fifth Circuit has not adopted this specific balancing test employed in other circuits [for these purposes], it has suggested that a balancing test is appropriate to analyze the qualified privilege").

WPATH cites a preliminary order in *WPATH v. FTC*, No. 26-cv-532 (JEB), 2026 WL 1257321, at *4 (D.D.C. May 7, 2026) to seemingly assert that it has met its *prima facie* showing, although the Ninth Circuit subsequently rejected the reasoning upon which the District of Columbia court relied. *See QueerDoc, PLLC v. U.S. Dep't of Just.*, 2026 WL 2359440 (9th Cir. Aug. 14, 2026). In any event, WPATH's allegations in another forum concerning a since-withdrawn, pre-litigation civil investigative demand do not entitle WPATH to any limit on discovery here.

Finally, WPATH's assertion that the FTC has refused to explain how discovery requests will be tailored to avoid First Amendment violations is disingenuous. WPATH apparently takes the

view that *any* discovery is inappropriate and that the entirety of this case is a violation of its First Amendment rights. There is plainly no assurance the FTC could give regarding the scope of discovery requests that would satisfy WPATH. As in any case, the parties will confer regarding disputes as to particular discovery requests, and submit those disputes to the Court when necessary.

**Plaintiffs' expected subjects of discovery:**

Plaintiffs expect that discovery is necessary regarding all of Plaintiffs' claims. This includes discovery related to the creation, publication, and substantiation of Defendants' statements regarding medical transition procedures, as well as how those statements are considered, employed, and communicated to clinicians as well as by clinicians, WPATH, or others to parents and patients. This additionally is likely to include discovery regarding Defendants' corporate forms, participants in Defendants' alleged deception, facts affecting this Court's personal jurisdiction over Defendants, and Defendants' actions that tend to suggest that they are operating for the profit of their members. Plaintiffs reserve their right to pursue additional discovery in response to new information it learns throughout the course of proceedings.

**WPATH's expected subjects of discovery:**

If its motions to dismiss are denied, WPATH intends to seek discovery regarding Plaintiffs' investigation of WPATH, the comments it received from doctors and the public, and their communications about WPATH with other government agencies and third parties such as the declarants on whom the First Amended Complaint relies. WPATH also intends to seek third-party discovery from the Department of Health and Human Services regarding the "Review of Evidence and Best Practices" that it published regarding transgender healthcare in November 2025. WPATH will further seek third-party discovery from any witnesses Plaintiffs do not employ, others who are

likely to have information that bears on witnesses' conflicts of interest and credibility, and others who have knowledge and discoverable information about generally accepted practices in the field of transgender healthcare. WPATH reserves its right to pursue additional discovery in response to new information it learns throughout the course of proceedings.

**9. What changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed**

Absent a Court order providing otherwise, the parties agree that each side should have up to 30 depositions (thus, 30 total for Plaintiffs, and 30 total for Defendants), and Plaintiffs and Defendants should each have up to a total of 30 interrogatories. The parties also agree that, pursuant to Rule 5(b)(2)(E), the service of papers other than pleadings filed and served via ECF, may be made by electronic mail and that such service shall be deemed complete upon transmission to all counsel of record, provided that the sender does not receive any indication that such electronic transmission was unsuccessful.

**10. Proposed means for disclosure or discovery of electronically stored information ("ESI") and a statement of any disputes regarding the disclosure or discovery of ESI**

The parties will provide each other with specifications for ESI intake. The parties agree to negotiate over search terms and custodians for ESI production, along with the use of any form of technology-assisted review ("TAR") or artificial intelligence ("AI"). If either party proposes to use any form of TAR or AI to search for and produce documents or ESI in discovery, each agrees to notify the other party during the negotiation for the applicable request so that the parties can further negotiate concerning its use.

**11. Any proposals regarding the handling and protection of privileged or trial-preparation material that should be reflected in a Court Order**

The Parties agree that the rules and procedures set forth in Fed. R. Civ. P. 26(b)(5) and Fed. R. Evid. 502 will govern. Notwithstanding the forgoing, the parties agree Defendants do not need to log communications exchanged solely among defense counsel, Defendants, and defense counsel's staff, and that Plaintiffs do not need to log communications exchanged solely among their lawyers, Plaintiffs, or their staffs.

**12. A proposed trial date, estimated number of days required for trial and whether a jury has been demanded**

The parties propose that trial commence on March 15, 2028, or as soon thereafter as is convenient for the Court, with 15 trial days apportioned to each side.

At this time, Plaintiffs have not made a jury demand. Plaintiffs may make a jury demand after considering any counterclaims asserted by Defendants.

If WPATH's motion to dismiss is denied, WPATH demands a jury trial on all claims so triable, including any counterclaim WPATH files.

**13. A proposed date for further settlement negotiations**

The parties propose to confer about settlement again shortly before dispositive motions are due on December 2, 2027, and possibly earlier if the parties believe such negotiations will be productive in reaching a mutually agreed upon resolution in this matter.

<u>WPATH's position</u>:

To facilitate potential settlement negotiations, WPATH requested that the FTC provide a draft order specifying the relief that it seeks in this case. WPATH made that request on August 26 during the parties' meeting and again by letter on August 31. The FTC has not responded to

WPATH's request. The relief the FTC seeks is not self-evident, because WPATH last published Standards of Care in 2022, four years ago. The FTC has authority to "prevent" future "deceptive acts," 15 U.S.C. § 45(a)(2), not to require withdrawal of statements issued years ago.

Plaintiffs' response:

At the parties' meeting, the FTC did verbally outline, in broad terms, the characteristics of a settlement agreement that Plaintiffs might accept. However, Plaintiffs are not obligated to expend resources to draft a proposed order resolving this matter simply because WPATH asserts that it wants to settle. Importantly, nothing prevents WPATH from submitting a settlement proposal to Plaintiffs; defendants do this all the time. The fact that WPATH is spending time and energy making a "record" of requesting a settlement proposal without submitting one itself underscores the insincere nature of WPATH's requests. Finally, WPATH has not ceased making the statements at issue. To confirm this, the Court need only check WPATH's website:

https://wpath.org/publications/soc8/

WPATH's further response:

SOC-8 is publicly available from multiple sources, including the National Library of Medicine's website (https://pmc.ncbi.nlm.nih.gov/articles/PMC9553112/) and the website operated by *Taylor & Francis*, the open-access publisher that published SOC-8 (https://www.tandfonline.com/doi/full/10.1080/26895269.2022.2100644). The FTC has devoted resources to adding pages of argument to a Joint Report on discovery, but not to preparing a draft order that WPATH has twice requested. If the relief the FTC seeks is for WPATH to remove SOC-8 from WPATH's website, that would be useful information that could inform settlement negotiations in advance of the date proposed above. If the FTC is seeking additional relief, it

should specify what that relief is in writing so that counsel for WPATH can discuss the proposal with their client.

Additionally, the FTC's Bureau of Consumer Protection has a model order with which it requires all drafts to comply. WPATH has no visibility into the latest version of the model order, which contains detailed compliance provisions that the FTC frequently updates. Because the FTC tightly controls the model order, its standard practice has been to draft and send proposed orders to facilitate settlement discussions upon request. WPATH continues to request such a draft order.

**14. Objections to Fed. R. Civ. P. 26(a)(1) asserted at the Scheduling Conference, and other proposed modifications to the timing, form or requirement for disclosures under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made**

As the Court ordered, the parties exchanged initial disclosures on September 9, 2026.

**15. Whether the parties will consent to trial (jury or non-jury) before a U.S. Magistrate Judge.**

Plaintiffs do not consent to trial before a U.S. Magistrate Judge. WPATH would consent to proceed before a U.S. Magistrate Judge.

**16. Whether the parties are considering mediation or arbitration to resolve this litigation and a statement of when it would be most effective (e.g., before discovery, after limited discovery, after motions are filed, etc.), and, if mediation is proposed, the name of any mediator the parties jointly recommend to mediate the case**

The parties are not currently considering mediation or arbitration.

**17. Any other proposals regarding scheduling and discovery that the parties believe will facilitate expeditious and orderly preparation for trial**

The parties have no such proposals at this time, and reserve their rights to offer proposals and file related motions for any appropriate modifications of the Scheduling Order.

**18. Whether a conference with the Court is desired**

Plaintiffs request a conference with the Court to address the disputed issues herein. Plaintiffs also request argument concerning the pending Motions To Dismiss, if such argument would be helpful to the Court.

WPATH respectfully requests oral argument on its motions to dismiss. Given that counsel for multiple parties will have to travel for any in-person hearing, WPATH further requests that the Court consolidate any conference on discovery issues, if necessary, with oral argument on the motions to dismiss.

The FTC opposes consolidation of a conference on the disputed discovery issues with oral arguments on the motions to dismiss *unless* such conference were to occur in either September or October 2026, as discovery will be underway and the disputed discovery issues require early resolution.

**19. Any other matters relevant to the status and disposition of this case, including any other Orders that should be entered by the Court under R. 16(b) and (c) and 26(c)**

Plaintiffs' statement:

As the Court is aware, to enjoin an FTC Civil Investigative Demand ("CID"), Defendants initiated a still-pending action in February 2026 against the FTC and its Commissioners in the U.S. District Court for the District of Columbia. Subsequently in that CID litigation, Defendants sought an anti-suit injunction to prevent the FTC from prosecuting this enforcement action against Defendants in this forum. The U.S. District Court for the District of Columbia denied Defendants' request; however, Defendants continue to prosecute that action.

Indeed, in response to the FTC's motion to dismiss, Defendants made clear that they intend to litigate their defenses to this action in the District of Columbia. As Defendants explain, they will ask the U.S. District Court for the District of Columbia for "a declaratory judgment" that "WPATH falls outside of the FTC's regulatory jurisdiction," that its speech is "protected by the First Amendment," and that the FTC's enforcement action is "unconstitutional." *See WPATH v. FTC*, No. 26-cv-532 (D.D.C. Aug. 18, 2026) (ECF64) at 12, 18. Although the FTC anticipates that the U.S. District Court for the District of Columbia will dismiss Defendants action, to the extent that the declaratory judgment action proceeds, Plaintiffs may seek further relief from this Court to ensure that the parties litigate whatever defenses Defendants assert to this action before this Court, rather than in another forum.

<u>WPATH's statement</u>:

In February 2026, four months before Plaintiffs filed this suit, WPATH sued the FTC in the District of Columbia and sought, among other relief, a declaratory judgment that the FTC's "investigation of WPATH violates WPATH's First Amendment rights," that WPATH's statements "do not constitute activities in or affecting commerce," and that WPATH is "not a 'corporation' as defined by . . . 15 U.S.C. § 44." *WPATH*, No. 26-cv-532, ECF 1 at 44. WPATH prevailed on its motion for a preliminary injunction, *WPATH*, 2026 WL 1257321, at *4, and intends to continue pursuing its claims. Under Fifth Circuit precedent, the FTC's later decision to sue WPATH does not bar WPATH from continuing to pursue its claims in D.D.C. To the contrary, "in the absence of 'compelling circumstances,' the district court who gets the suit first should be the one to decide the case." *Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603, 606 (5th Cir. 2022) (cleaned up).

If the Court denies WPATH's motions to dismiss, WPATH respectfully requests that the Court enter a protective order in this matter substantially similar to the model protective order available on the Court's website at https://www.txnd.uscourts.gov/documents/protective-order-word. Among other concerns, WPATH anticipates requesting third-party discovery from medical institutions whose confidentiality obligations would prevent them from producing information without a guarantee of judicial protection against unauthorized disclosure.

Plaintiffs' responsive statement:

In any context, with respect to a protective order, parties do not have *carte blanche* to designate material as confidential simply for convenience. Rather, "[t]*he Court* has broad discretion in determining whether to grant a motion for a protective order." *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 434 (N.D. Tex. 2016) (emphasis added)). And especially here, the Court should not extend any protective order beyond the minimum the law requires here. *Jud. Watch, Inc. v. U.S. Dep't of State*, 2019 WL 11890739, at *1 (D.D.C. Apr. 25, 2019) ("any protection must be balanced against the public's strong and legitimate interest in transparency"); *Doe v. Fedex Ground Package Sys., Inc.,* 2021 WL 5041286, at *4 (M.D. Tenn. Oct. 29, 2021) ("there is a compelling public interest in open and transparent litigation"). This case involves a matter of tremendous public importance, where WPATH is alleged to have misled and concealed information from the public, and has repeatedly made incorrect statements impugning Plaintiffs' motives and conduct. Transparency is critical to all parties, and the public has a strong interest in these proceedings.

Consistent with the law, if WPATH wants to conceal material from the public, the Court should require that it establish with "a particular and specific demonstration of facts," not "stereotyped and conclusory statements," that "good cause and a specific need for protection,"

such as that a "trade secret" or some other protection applies, rather than requiring Plaintiffs to prove the opposite. *Areizaga*, 314 F.R.D. at 434 (quoting *In re Terra Int'l*, 134 F.3d 302, 3026 (5th Cir. 1998)) ("The burden is upon the party seeking the protective order to show the necessity of its issuance, which contemplates a particular and specific demonstration of facts distinguished from stereotyped and conclusory statements." (cleaned up)); *In re Terra Int'l*, 134 F.3d at 306 (granting a petition for writ of mandamus as to a magistrate judge's protective order and remanding with instructions to vacate that order where the movant "did not support its motion for protective order with any affidavits or other evidence that might provide support"); *see also, e.g.*, Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an [protective] order ... requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.").

Notably, discovery in this action is not likely to involve significant confidential information. The Health Insurance Portability and Accountability Act ("HIPPA"), 45 CFR Parts 160, 162 & 164, expressly permits institutions to produce medical records stripped of the patient's identifying information. 45 CFR §§ 164.502(d)(2), 164.514(a) and (b). Only a narrow protective order is needed to maintain the confidentiality of this information. *See* _*Alanis Logistics, Inc. v. JPMorgan Chase Bank, N.A.*_, 2022 WL 59252, at *1 (S.D. Tex. Jan. 6, 2022) ("a protective order absent a particularized demonstration of good cause may constitute an abuse of discretion."). Accordingly, the Court should not enter a broad model protective order (which Defendants request above) to address their narrow concerns about medical privacy.

Dated: September 15, 2026 Respectfully submitted,

Of Counsel

Jonathan Cohen
*Chief Litigation Counsel*
District of Columbia Bar No. 483454*

/s/ Hans Clausen
R. Cooper Vaughan
*Senior Counsel to the Director*
Virginia State Bar No. 92580
Glenna Goldis
*Assistant Director for Special Projects*
New York Reg. No. 4868600*
Michael Dingman
*Senior Counsel to the Director*
District of Columbia Bar No. 90001474*
Hans Clausen
*Attorney*
Georgia Bar No. 153250*
Lauren Trujillo
*Attorney*
Colorado Bar No. 56846*

Federal Trade Commission
Bureau of Consumer Protection
600 Pennsylvania Avenue, NW
Washington, DC 20580
Fax: (214) 953-3079
E-mail: RVaughan@FTC.gov
*Admitted *pro hac vice*

/s/ Sarah Cummings Stewart

Sarah Cummings Stewart
**REED SMITH LLP**
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Tel: (469) 680-4200
Fax: (469) 680-4299
sarah.stewart@reedsmith.com

R. Jeffrey Layne
**REED SMITH LLP**
401 Congress Avenue, Suite 1800
Austin, TX 78701
Tel: (512) 623-1801
Fax: (512) 623-1802
jlayne@reedsmith.com

/s/ Caleb Hayes-Deats

Caleb Hayes-Deats*
Abbe David Lowell [DC Bar No. 358651]
Schuyler J. Standley*
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
SStandley@lowellandassociates.com

*Admitted *pro hac vice*

*Attorneys for Defendant WPATH*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 15, 2026, the foregoing **JOINT REPORT REGARDING CONTENTS OF SCHEDULING ORDER** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notifications of such filing to all attorneys of record.

Dated: September 15, 2026

Respectfully submitted,

*/s/ Hans Clausen*
Hans Clausen