# Appendix

# TABLE OF CONTENTS

**Opinions**

*FTC v. Bay Area Bus. Council, Inc.*, 2003 WL 21003711 (N.D. Ill. May 1, 2003)……………….1

*FTC v. Big Dog Solutions LLC*, 2016 WL 5391391 (N.D. Ill. Sept. 27, 2016)…………………...5

*FTC v. Cleverlink Trading Ltd.*, 2006 WL 1735276 (N.D. Ill. June 19, 2006)……………………9

*FTC v. Navestad*, 2010 WL 743899 (W.D.N.Y. Feb. 25, 2010)…………………………….…14

*Hathcock v. BNSF Ry. Co.*, 2014 WL 1660633 (E.D. Ark. Apr. 24, 2014)………………………17

*Rumble, Inc. v. World Fed'n of Advertisers*, 2025 WL 2345076 (N.D. Tex. Aug. 13, 2025)……19

*WPATH v. FTC*, 2026 WL 1999008 (D.D.C. July 10, 2026) ........................................................ 33

2003 WL 21003711
United States District Court,
N.D. Illinois, Eastern Division.

FEDERAL TRADE COMMISSION, Plaintiff,
v.
BAY AREA BUSINESS COUNCIL, INC., a Florida corporation; Bay Area Business Council Customer Service Corp., a Florida corporation; American Leisure Card Corp., a Florida corporation; Peter J. Porcelli, II, individually and as an officer or director of the corporate defendants; Christopher Tomasulo, individually and as an officer or director of the corporate defendants; Bonnie Harris, individually and as an officer or director of the corporate defendants; Bay Memberships, Inc., a Florida corporation; Bay Vacations, Inc., a Florida corporation; Sr. Marketing Consultants, Inc., a Florida corporation; Special Technologies, Inc., a Florida corporation, Defendants.
BAY AREA BUSINESS COUNCIL, INC., a Florida corporation; Bay Area Business Council Customer Service Corp., a Florida corporation; American Leisure Card Corp., a Florida corporation; Peter J. Porcelli, II, individually and as an officer or director of the corporate defendants; Bonnie Harris, individually and as an officer or director of the corporate defendants, Counter–Plaintiffs,
v.
FEDERAL TRADE COMMISSION,
Counter–Defendant.

No. 02 C 5762.
|
May 1, 2003.

*MEMORANDUM OPINION AND ORDER*

DARRAH, J.

***1** The Federal Trade Commission ("FTC") filed a three-count complaint for injunctive and equitable relief against Defendants, Bay Area Business Council, Inc.; Bay Area Business Council Customer Service Corp.; American Leisure Card Corp.; Peter Porcelli, II; Christopher Tomasulo; and Bonnie Harris (collectively "the Initial Defendants"), alleging violations of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), and the FTC's Trade Regulation Rule entitled, "The Telemarketing Sales Rule," 16 C.F.R. Pt. 310. Subsequently, the FTC filed an amended complaint for injunctive and equitable relief, adding the following Defendants, Bay Memberships, Inc.; Bay Vacations, Inc.; Sr. Marketing Consultants, Inc.; and Special Technologies, Inc. (collectively "the Added Defendants").

The Initial and Added Defendants filed answers, pleading several affirmative defenses. The Initial Defendants also pled a counterclaim against the FTC, seeking a declaratory judgment. The FTC moves to strike the Initial Defendants' and Added Defendants' affirmative defenses and to dismiss the Initial Defendants' counterclaim. For the reasons that follow, the FTC's Motion to Dismiss Counterclaim and to Strike Affirmative Defenses is granted.

A party must set forth affirmative defenses in a responsive pleading. Fed.R.Civ.P. 8(c). "[T]he court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Motions to strike affirmative defenses are generally disfavored because they potentially serve only to cause delay. *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir.1989). However, an affirmative defense should be stricken when it is clearly mistitled or redundant. *Renalds v. S.R.G. Rest. Group,* 119 F.Supp.2d 800, 802 (N.D.Ill.2000).

Affirmative defenses must comply with the pleading requirements of Rule 8. *Heller Fin., Inc.,* 883 F.2d at 1294. Thus, affirmative defenses must set forth "a short plain statement". Fed .R.Civ.P. 8(a). "[A]n allegation must include either direct or inferential allegations respecting all material elements of the claim asserted.... Bare legal conclusions attached to narrated facts will not suffice." *Renalds,* 119 F.Supp.2d at 802 (internal citations omitted).

Affirmative defenses must also comply with the requirements of Rule 12(b)(6). *See Renalds,* 119 F.Supp.2d at 802. The court will accept all factual allegations as true and draw all reasonable inferences in favor of the pleader. *Renalds,* 119 F.Supp.2d at 802. However, an affirmative defense must be dismissed if it appears beyond a doubt that the pleader can prove no set of facts in support of its claim that would entitle it to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

APP 1

The FTC moves to strike the Initial Defendants' and Added Defendants' first affirmative defenses, which state that "Plaintiff fails to state a claim upon which relief can be granted." This defense merely recites that standard for dismissal under Rule 12(b)(6) and fails to indicate how that standard is connected to the present case. Such bare conclusory allegations are insufficient to establish that the Initial and Added Defendants are entitled to relief. *Murphy v. White Hen Pantry Co.,* 691 F.2d 350, 353 (7th Cir.1982). Therefore, the Initial Defendants' and Added Defendants first affirmative defenses are stricken.

***2** The FTC moves to strike the Initial Defendants' second affirmative defense of improper venue and their third affirmative defense of lack of personal jurisdiction. On October 2, 2002, the Initial Defendants stipulated that this Court had jurisdiction over the parties and that venue was proper in the Northern District of Illinois. (*See* Stipulated Order for Prelim. Inj. Asset Freeze & Other Relief as to Defs. Bay Area Bus. Council, Inc.; Bay Area Bus. Council Customer Serv. Corp.; Am. Leisure Card Corp.; Peter J. Porcelli, II; and Bonnie Harris, Findings 1, 2.) Therefore, the Initial Defendants' second and third affirmative defenses are stricken.

The FTC also moves to strike the Added Defendants' second affirmative defense of improper venue and their third affirmative defense of lack of personal jurisdiction. The Added Defendants can prove no set of facts that would entitle them to relief on these grounds. The FTC Act provides, in pertinent part, that:

> Any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28. In addition, the court may, if the court determines that the interests of justice require that any other person, partnership, or corporation should be a party in such suit, cause such other person, partnership, or corporation to be added as a party without regard to whether venue is otherwise proper in the district in which the suit is brought. In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found.

15 U.S.C. § 53(b). Section 53(b) provides for nationwide service of process, which means that this Court will have personal jurisdiction over the Added Defendants if there is a nexus between them and the United States. *See Fitzsimmons v. Barton,* 589 F.2d 330, 332 (7th Cir.1979). In their Answer, the Added Defendants admit that they are corporations located in Florida. Thus, there is a nexus between the Added Defendants and the United States, and this Court has personal jurisdiction over them. Under § 1391(c), corporate defendants are deemed to reside wherever they are subject to personal jurisdiction. Section 1391(b) provides that venue is proper where any defendant resides if all defendants reside in the same state. Here, since the Added Defendants are subject to personal jurisdiction in the Northern District of Illinois, they are deemed to reside in the Northern District of Illinois; and venue is proper in this district. Therefore, the Added Defendants' second and third affirmative defenses are stricken.

The Initial Defendants' fourth affirmative defense is that the FTC's claim for permanent injunctive relief is barred because Bay Area Business Council is no longer engaged in sales of stored value MasterCards. The Initial Defendants' fifth affirmative defense is that the relief requested by the FTC is overly broad and unauthorized by the FTC Act and the Telemarketing Sales Rule. These defenses contain impermissible conclusory statements. "Moreover, [the Initial Defendants] ha[ve] already put these matters in issue by denying certain allegations in [their] answer, and [they] not only need not but cannot raise these matters again via an affirmative defense." *Renalds,* 119 F.Supp.2d at 804. Therefore, the Initial Defendants' fourth and fifth affirmative defenses are stricken.

***3** Similarly, the Added Defendants' fifth, sixth and seventh affirmative defenses are stricken because they are pled elsewhere in their Answer. Their fifth affirmative defense states that the Court lacks jurisdiction over Bay Memberships because it was not incorporated until July 2002 and, therefore, could not have performed the acts which are alleged to have brought it within the Court's jurisdiction. Their sixth affirmative defense states that the FTC's claim for permanent injunctive relief against Bay Memberships is barred because Bay Memberships was incorporated in July 2002 and, therefore, could not have performed the acts alleged in the

APP 2

amended complaint. Their seventh affirmative defense states that the relief requested by the FTC is overly broad and unauthorized by the FTC Act and the Telemarketing Sales Rule. The Added Defendants have already put these matters in issue by denying certain allegations of the complaint; and, thus, these matters cannot be pled as affirmative defenses. *Renalds,* 119 F.Supp.2d at 804. Therefore, the Added Defendants' fifth, sixth, and seventh affirmative defenses are stricken.

The Added Defendants' fourth affirmative defense states, "This Court lacks jurisdiction over ... Defendants to the extent that the FTC's claims for relief are barred by the automatic stay of the U.S. Bankruptcy Code." In addition to enumerating possible affirmative defenses, Rule 8(c) also provides that an affirmative defense is "any other matter constituting an avoidance...." If true, the Added Defendants' fourth affirmative defense states "matter constituting an avoidance" of the action and, therefore, would state a proper affirmative defense under Rule 8(c). However, the filing of a bankruptcy petition does not stay "an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police or regulatory power," 11 U.S.C. § 362(b)(4); and the Added Defendant' fourth affirmative defense is stricken on that basis.

As an unnumbered affirmative defense, the Initial Defendants' and Added Defendants' Answers state, "Defendants reserve the right to add other affirmative defenses as this matter continues." This is an improper affirmative defense. It is not listed in Rule 8(c) as an affirmative defense; and, pursuant to Rule 15(a), only the Court may grant leave to amend pleadings. Therefore, this affirmative defense is also stricken.

Similarly, the Added Defendants' "preliminary statement" that the FTC's action is barred by the automatic stay provisions of the Bankruptcy Code is stricken as an incorrect statement of the law. *Renalds,* 119 F.Supp.2d at 806. As was noted above, filing a bankruptcy petition does not stay actions or proceedings by governmental units to enforce their police or regulatory power. § 362(b)(4). The Added Defendants assert in their response that, while the Bankruptcy Code may not stay the FTC's action, the Bankruptcy Code does limit the type of relief that may be sought. However, that is not what is pled in the "preliminary statement". Therefore, the "preliminary statement" is stricken.

***4** The FTC also moves to dismiss the Initial Defendants' Counterclaim ("the Counterclaim") because it merely restates issues already before the Court. The Counterclaim seeks a declaration that (1) Bay Area Business Council and Bay Area Business Council Customer Service did not engage in deceptive acts or practices in violation of the FTC Act or the Telemarketing Sales Rule and that injunctive relief is inappropriate because Bay Area Business Council is no longer engaging in the marketing of stored value MasterCards (Count I); (2) American Leisure Card did not engage in deceptive acts or practices in violation of the FTC Act or the Telemarketing Sales Rule (Count II); and (3) Porcelli and Harris cannot be found individually liable for violating the FTC Act or the Telemarketing Sales Rule because Bay Area Business Council, Bay Area Business Council Customer Service, and American Leisure Card cannot be found liable for violating the FTC Act or the Telemarketing Sales Rule (Count III).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (2001). A declaratory judgment is appropriate when it "will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues". *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 578 (7th Cir.1994) (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 749 (7th Cir1987)). A court should address the following five considerations:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata";*

(4) whether the use of a declaratory judgment action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*Nucor Corp.,* 28 F.3d at 579 (citing *Nationwide Mut. Fire Ins. Co. v. Willenbrink,* 924 F.2d 104, 105 (6th Cir.1991) (citations omitted)). However, "federal courts have discretion to decline to hear a declaratory judgment action, even though it is within

APP 3

their jurisdiction." *Tempco Elec. Heater Corp.,* 819 F.2d at 747.

> "The purposes of declaratory judgments are to 'clarify[ ] and settl[e] the legal relations at issue' and to 'terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." ' ... Where the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action "serve[s] no useful purpose" because the controversy has "ripened" and the uncertainty and anticipation of litigation are alleviated.

***5** *Amari v. Radio Spirits, Inc.,* 219 F.Supp.2d 942, 944 (N.D.Ill.2002) (quoting *Tempco Elec. Heater Corp.,* 819 F.2d at 749).

Here, the substantive suit would resolve the issues raised by the Initial Defendants' Counterclaim. Whether Bay Area Business Council, Bay Area Business Council Customer Service, or American Leisure Card engaged in deceptive acts or practices which violated the FTC Act or the Telemarketing Sales Rule will be resolved in the litigation of the FTC's complaint. Whether injunctive relief is appropriate will be resolved in the substantive litigation. Finally, whether Porcelli and Harris are individually liable will also be resolved in the substantive litigation. The controversy has "ripened", and there is no uncertainty. Furthermore, the substantive litigation clarifies and settles the legal relations among the parties. Thus, the declaratory judgment action serves no useful purpose. *Amari,* 219 F.Supp.2d at 944. The Initial Defendants will not be inconvenienced by the dismissal of their Counterclaim because they will be defending, rather than prosecuting, the claims. Therefore, the Counterclaim is dismissed.

*CONCLUSION*

For the reasons stated above, the FTC's Motion to Dismiss Counterclaim and to Strike Affirmative Defenses is granted.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 21003711, 2003-1 Trade Cases P 74,020

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 5391391
United States District Court, N.D. Illinois, Eastern Division.

FEDERAL TRADE COMMISSION, and
Office of the Attorney General, State of
Florida, Department of Legal Affairs, Plaintiffs,
v.
BIG DOG SOLUTIONS LLC, also d/b/a Help
Desk National and Help Desk Global, a Florida
limited liability company, et al., Defendants.

Case No. 16-cv-6607
|
Signed 09/27/2016

**Attorneys and Law Firms**

James Davis, Matthew H. Wernz, Federal Trade Commission, Chicago, IL, Michelle Pardoll, Office of the Florida Attorney General, Fort Lauderdale, FL, for Plaintiffs.

Joe M. Grant, Ruben E. Socarras, Marshall Socarras Grant, P.L., Boca Raton, FL, Patricia E. Rademacher, Coston & Rademacher, Chicago, IL, Robert Buschel, Buschel Gibbons, P.A., Ft. Lauderdale, FL, for Defendants.

**MEMORANDUM OPINION AND ORDER**

John Robert Blakey, United States District Judge

***1** Defendants Big Dog Solutions LLC, Inbound Call Specialists LLC, PC Help Desk US LLC, Christopher Costanza and Suzanne Harris (collectively, the "Florida Defendants") have moved to transfer this case to the United States District Court for the Southern District of Florida. [55] at 1-5. Defendants BlackOptek CE Inc., 9138242 Canada Corporation, Digital Growth Properties, LLC, Muzzafar Abbas, Gary Olberman, Donald Dolphin and Justin Powers (collectively, the "Agreed Defendants") have moved to join the Florida Defendants' motion to transfer. [58] at 1. The Federal Trade Commission ("FTC") and the Office of the Attorney General, State of Florida ("Florida Attorney General") (collectively, "Plaintiffs") oppose the Florida Defendants' motion to transfer [66], but Receiver Jeffrey Schneider does not. [65] at 1. As explained below, the Florida Defendants' motion to transfer is denied, and the Agreed Defendants' motion to join is denied as moot.

**I. Background**

Plaintiffs allege that Defendants, doing business as Help Desk National, misled customers throughout the United States into paying hundreds of dollars for worthless computer "repairs" and software. [17] at 1-5. Plaintiffs claim that this scheme precipitated violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a) ("FTC Act"), the Telemarking Sales Rule, 16 C.F.R. § 310.3(a)(4) ("TSR"), and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 ("FDUTPA"). *Id.* at 15-20.

The Florida Defendants are individual defendants from Florida and corporate entities in Florida they either owned or operated. *Id.* at 1-15. The call center used during Defendants' scheme is also located in Florida. *Id.* The Agreed Defendants are individual defendants from Iowa, Toronto, and Montreal, along with the businesses they owned or operated in Iowa, Montreal, and Nevada. *Id.*

The FTC investigated this case out of its office in this district and it has secured the cooperation of numerous witnesses to appear before this Court. [66] at 3. Plaintiffs have also adduced evidence suggesting that over 1,000 customers in this district were harmed by Defendants' scheme. [27] at 11.

**II. Analysis**

The Florida Defendants' motion is brought pursuant to 28 U.S.C. § 1404(a), which provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision to transfer venue under Section 1404(a) requires a weighing of multiple factors. This weighing "necessarily involves a large degree of subtlety and latitude," and, therefore, is committed to the sound discretion of the Court. *Nagle v. The Hartford Life & Accident Ins. Co.*, No. 15-cv-6072, 2015 WL 9268420, at *2 (N.D. Ill. Dec. 21, 2014) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)). As the moving party, the Florida Defendants bear the burden of demonstrating that the Southern District of Florida is "clearly more convenient." *Id.* (internal citation omitted).

***2** Several factors must be met for an action to be transferred to another venue: (1) venue must be proper in this district; (2) venue and jurisdiction must be proper in the transferee district; (3) the transferee district must be more convenient for both the parties and witnesses; and (4) transfer must serve the interest of justice. *See Delta Air Lines, Inc. v. Perfekt Mktg.,*

APP 5

*Inc.*, 861 F. Supp. 2d 919, 920 (N.D. Ill. 2012). The parties concede that the first and second factors are met, so this Court considers only the convenience of the parties and witnesses and the interest of justice.

**A. Convenience of the Parties and Witnesses**

To evaluate the relative convenience of the venues, this Court must consider four factors: (1) Plaintiffs' choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience of the parties and witnesses. *See Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000).

**1. Plaintiffs' Choice of Forum**

Plaintiffs' choice of forum is "entitled to substantial weight" when considering a motion to transfer. *Id.* The Seventh Circuit has repeatedly explained that unless "the balance is strongly in favor the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus.*, 347 F.3d 662, 664 (7th Cir. 2003). This principle is particularly forceful where, as here, the Plaintiffs' chosen forum was selected pursuant to a special venue statute which "represents an affirmative congressional policy choice to allow...the widest possible choice of forums in which to sue." *SEC v. Electronics Warehouse, Inc.*, 689 F. Supp. 53, 75 (D. Conn. 1988).

Defendants argue that this factor should not be given much weight, as "most of the improper business activity...allegedly occurred in South Florida." [55] at 6. Defendants' argument is misplaced. The putative scheme at issue was executed all across the United States and parts of Canada. [17] at 1-5. The record also reflects that over 1,000 customers in this district were specifically targeted by Defendants' scheme. [27] at 11.

Given the broad nature of the alleged scheme and the fact that this district was selected pursuant to a special venue statute, the Court finds that Plaintiffs' choice of forum should be afforded its usual "substantial" weight in the Section 1404(a) calculus.

**2. Situs of the Material Events**

In order to identify the "situs" of material events, this Court must first resolve the parties' dispute regarding which events qualify as "material." Plaintiffs would have us determine that "the situs of material events is wherever consumer injury occurred." [66] at 8 (citing *FTC v. Phoenix Avatar, LLC*, No. 04-cv-2897, 2004 WL 1746698, at *1 (N.D. Ill. July 30, 2004) (transfer motion denied because defendants "transacted business here" by sending emails to consumers in this district)). Defendants conversely suggest that "the situs of material events should be were [sic] the defendant's conduct occurred." [55] at 7 (citing *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1060 (N.D. Ill. 2015) (finding that the situs of material events was located where the "relevant decisions likely were made by Defendant's employees")).

***3** The Court declines the parties' unnecessary invitation to announce any bright-line rule. The "situs of material events" inquiry is, like all facets of the transfer analysis, fact-intensive and contextual. Depending upon the facts of the particular case, "the situs of material events" can be the place where the Defendants hatched their scheme, the place where Defendants executed their scheme, the place where the injured parties reside, all of the above, or none of the above.

In this case, Defendants' putative scheme was perpetuated by individuals and corporations across the country. *See supra* at 2. These diverse Defendants, in turn, targeted consumers all across the country. *Id.* Given the broad scope of the alleged scheme and the geographic disparity among the coordinating Defendants, the Court finds that this factor weighs in favor of transfer (even though it carries less weight here than it traditionally receives).

**3. Access to Sources of Proof**

The location of records has no impact on the transfer analysis unless the records are extraordinarily voluminous or otherwise difficult to ship. *Rosen*, 152 F. Supp. 3d at 1060. That is not the case here. Accordingly, the Court finds that this factor is essentially neutral.

**4. Convenience of the Parties and Witnesses**

The Florida Defendants make multiple broad assertions concerning the putative inconvenience of litigating in this forum, but as explained below, they have failed to support their arguments with the requisite degree of particularity.

APP 6

**a) The Parties**

The Court is persuaded that the convenience of the parties is essentially a neutral factor. Only two of the six individual defendants reside in Florida. The remaining four individual defendants live hundreds of miles away; in fact, these other defendants live closer to this district. And while the Florida Defendants have claimed that they would be inconvenienced by having to litigate in this forum, their arguments on this point largely focus upon the fact that their counsel is located in Florida. Convenience to counsel, however, is not relevant to the balancing test implicated by a motion to transfer.

From Plaintiffs' perspective, the Florida Attorney General would obviously not be inconvenienced by the prospect of litigating in the Southern District of Florida. The FTC, however, has reasonably set forth the heavy financial and logistical burdens transfer would impose upon it, given that its investigation was conducted in this district. *See supra* at 2.

**b) The Witnesses**

Given the record as whole, the Court is similarly unpersuaded that transfer would serve the convenience of potential witnesses. In lieu of naming their specific prospective witnesses and the subject matter of their testimony, the Florida Defendants initially identified a full roster of their former employees and reminded the Court of its limited subpoena power. [55] at 8-9. This generalized invocation remains insufficient to carry movants' burden at this stage, as "the party seeking transfer bears the burden of specifying the key witnesses to be called and summarizing their expected testimony." *Nat'l Tech., Inc. v. Repcentric Sols.*, No. 13-cv-1819, 2013 WL 3755052, at *7 (N.D. Ill. July 16, 2013).

On reply, the Florida Defendants attempted to rectify their previous failing by identifying twelve potential witnesses located in Florida. [69-1] at 4. Each of these witnesses is a former employee of the Florida Defendants, and they would each apparently be testifying regarding the same general topics: "the overall operation of the call center, training procedures and practices, sales techniques and sales script, customer service procedures, interactions with customers and the validity of the tech support services at issue." *Id.*

***4** Nevertheless, this Court's analysis is not substantially altered by the belated identification of these specific witnesses. As the FTC explained at oral argument, the proposed testimony of these witnesses would be cumulative of both one another and the other evidence in this case. The information reflected in this proposed testimony is also available to the parties via other means, including but not limited to the testimony of the Florida Defendants themselves or potential expert testimony. Finally, these proposed low-level employee witnesses are a far cry from the "key" individuals who are typically the focus of this inquiry.

The FTC, on the other hand, has identified numerous third party witnesses who have already contributed to their investigation and are located in, or willing to come to, this district. [66] at 12-14. Given the foregoing, the Court finds that this factor is essentially neutral.

**B. Interest of Justice**

In considering the interest of justice, courts analyze such factors as: (1) ensuring the efficient administration of justice; (2) having the trial before a judge who is familiar with the applicable law; and (3) the relative desire of communities to adjudicate matters that affect them directly. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986).

**1. Efficient Administration of Justice**

Defendants suggest that the efficient administration of justice counsels in favor of transfer, given the discrepancy between the "time-to-trial" statistics available for this district and the Southern District of Florida. [55] at 12. The Court is unpersuaded by this argument. As a preliminary matter, such statistics are inherently imprecise. *See Lang v. NeoGenomics Labs., Inc.*, No. 11-cv-7158, 2012 WL 588963, at *2 (N.D. Ill. Feb. 22, 2012) ("General statistics of this sort are, in this Court's view, relatively meaningless in the section 1404(a) analysis. They consist of averages for cases of all types and tell the reader nothing about cases of the particular type at issue."). More importantly, this Court is happy to set an early and firm trial date for the parties, and to do so well-within any average "time-to-trial" in the Southern District of Florida. *See Rosman Adjustment Corp. v. Bernay*, No. 12-cv-8239, 2013 WL 453197, at *4 (N.D. Ill. Feb. 6, 2013) ("time-to-trial statistics are not a significant factor" because court was "ready and willing to set a trial date" in line with the average of the proposed transfee venue). If anything, the efficient administration of justice counsels against transfer, given this Court's familiarity with the record.

APP 7

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

#### 2. Familiarity With Applicable Law

As mentioned previously, Plaintiffs' claims are brought pursuant to the FTC Act, the TSR and the FDUTPA. Federal courts are presumed to be similarly familiar with federal law, and the only state law at issue here specifically notes that courts interpreting it should give "due consideration and great weight...to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Federal Trade Commission Act." Fla. Stat. § 501.204(2). Accordingly, the Court finds that this factor is neutral.

#### 3. Relation of the Community to the Occurrence

The Court finds that this factor is also neutral. While Florida residents certainly have an interest in the pending litigation, the Defendants ostensibly targeted over 1,000 residents in this district as well. *See supra* at 2.

### III. Conclusion

Because transfer would serve neither the convenience of the parties nor the interest of justice, the Court declines to disturb Plaintiffs' choice of forum. The Florida Defendants' motion to transfer [55] is denied, and the Agreed Defendants' motion to join [58] is denied as moot.

Dated: September 27, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 5391391, 2016-2 Trade Cases P 79,768

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 1735276
United States District Court,
N.D. Illinois,
Eastern Division.

FEDERAL TRADE COMMISSION, Plaintiff,
v.
CLEVERLINK TRADING LIMITED, et al., Defendants,
v.
Oceanic Telecommunications Services,
LLC, and Colin Sholes, Relief Defendants.

No. 05 C 2889.
|
June 19, 2006.

**Attorneys and Law Firms**

Steven M. Wernikoff, Jason K. Bowler, Federal Trade Commission, Assistant Regional Directors, Chicago, IL, for Plaintiff.

Theodore F. Kommers, Shannon Leiola Clark, Gould & Ratner, Chicago, IL, Joel R. Dichter, Sean A. Moynihan, Klein, Zelman, Rothermel & Dichter LLP, New York, NY, for Defendants.

Lori E. Iwan, Ronald Lee Wisniewski, Iwan Cray Huber Horstman & Vanausdal LLC, Chicago, IL, for Relief Defendants.

*MEMORANDUM OPINION AND ORDER*

VIRGINIA M. KENDALL, District Judge.

***1** The Federal Trade Commission ("FTC") brought an action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and under Section 7(a) of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), 15 U.S.C. § 7706, to obtain injunctive and other equitable relief for Defendants' violations of CAN-SPAM, 15 U.S.C. § 7701, *et seq.,* and the FTC's Adult Labeling Rule, 16 C.F.R. Part 316.4. On June 29, 2005, this Court entered a Stipulated Preliminary Injunction. One provision of the injunction applied to a then third party, Oceanic Telecommunications Services, LLC ("Oceanic"). The provision directed that upon being served with the order, Oceanic "shall hold and retain ... any account or asset of, or held on behalf of, any Defendant, including Cleverlink Trading Limited." The FTC asserts that Oceanic and its primary officer, Colin Sholes, violated this provision, and urges that they be required to show cause why they should not be held in contempt of court. In defense, Oceanic and Colin Sholes argue that (I) they cannot be held in contempt of court because they never violated the provision in question; (ii) this Court lacks jurisdiction over the subject matter in controversy-the funds allegedly held on behalf of Cleverlink; and (iii) they are not subject to personal jurisdiction in the State of Illinois.

This Court has jurisdiction over the persons of Oceanic and Colin Sholes and the subject matter in controversy. Because the nationwide service provision in § 13(b) of the FTC Act creates personal jurisdiction over any person, corporation or partnership, this Court had personal jurisdiction over both Oceanic and Colin Sholes at that time the preliminary injunction was entered. As to the subject matter-the funds in Oceanic's bank account that allegedly were held on Cleverlink's behalf-this Court has jurisdiction to determine the legitimacy of claims to any such asset alleged to be proceeds from a violation of federal law. Finding that jurisdiction exists, the Court reserves its decision on whether Oceanic or Colin Sholes violated the injunction until after further discovery can be completed, including the deposition of Colin Sholes.

## Background

The original Defendants in this action sent commercial email messages promoting sexually-oriented internet websites and collected payment for access to the material on these sites. One of the Defendants is Cleverlink Trading Limited ("Cleverlink"). On March 14, 2005, Cleverlink signed a Merchant Payment Processing Services Agreement with Oceanic. (Relief Defendants' Response to FTC's Supplemental Submission Regarding the Court's Jurisdiction Over Oceanic and Sholes, Ex. B.) The terms of the agreement called for Oceanic to provide "online payment processing" and "processing services" to Cleverlink. (*Id.* at 2.)

According to the Declaration of Colin Sholes, Oceanic's primary officer, "Oceanic does not process credit card transactions."[1] (Declaration of Colin Sholes Regarding Jurisdiction Proffer and Evidentiary Submission on Rule to Show Cause Pursuant to 28 U.S.C. § 1746 ("Sholes Decl.")

APP 9

¶ 37.) Instead, he explains that Oceanic acts only as a sub-account holder in the payment process between customer and merchant. (*Id.* ¶ 5.) As a sub-account holder, Oceanic develops contractual relationships with merchants that want to accept credit card payments from customers. (*Id.* ¶ 8.) Oceanic then serves as an intermediary, a transmittal agent, from the master merchant account holder to the merchant. (*Id.* ¶ 37.)

***2** As described by Colin Sholes, the payment process begins when a customer fills out an order and credit card information on a merchant's website. (*Id.*) That information gets forwarded to a gateway processor, who writes software that collects and processes credit card information. (*Id.*) From there, the information is passed on to a merchant bank, who provides initial approval of the transaction, and credits the merchant account. (*Id.*) A master account holder manages the merchant account where the merchant bank deposits the funds. (*Id.* ¶ 6.) A master account holder may issue sub-accounts from which the funds pass to the merchant. (*Id* . at ¶¶ 7-8.) Oceanic held one of these sub-accounts. (*Id.*) In summary, the credit card funds flow downstream from the merchant bank to the master merchant account holder to the sub-account holder (Oceanic) to the merchant (Cleverlink). (*Id.* ¶ 9.) When a charge or fee is assessed on the account it flows in the same manner with each party/agent in the chain being responsible to reimburse the party above it. (*Id.* ¶¶ 11-12.) Oceanic's recourse being against Cleverlink for any fees or charges imposed on Oceanic by the master account holder for Cleverlink's account. (*Id.*)

In three separate disbursements, a total of $517,168.80 were deposited in Oceanic's account as the sub-account holder for Cleverlink. (Oceanic's Opposition to the FTC's Motion to Show Cause, Ex. 3.) Of those total receipts, Oceanic transmitted only $136,539.54 to Cleverlink pursuant to the Merchant Payment Processing Services Agreement. (*Id.*) Oceanic alleges that during April, May and June of 2005, Cleverlink incurred a number of fees and charges against its funds held by Oceanic-fees and fines totaling $364,022.28. (*Id.*)

The FTC served Oceanic with the Stipulated Preliminary Injunction on June 30, 2005. (FTC's Motion To Preserve Assets and For Rule To Show Cause As To Why Third Party Oceanic Should Not Be Held In Contempt Of Court, Att. B.) The preliminary injunction directed that upon being served with the order, Oceanic "shall hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, conversion, sale, or other disposal of any account or asset of, or held on behalf of, any Defendant, including Cleverlink Trading Limited, unless authorized in writing by the Court or counsel for the FTC." (*Id.*) The stipulated injunction replaced an earlier *ex parte* TRO that was served on Oceanic on June 28. (*Id.,* Att. A.) The TRO did not reference Oceanic specifically, but it did order the retention of funds owned, controlled or held by or for the benefit of Cleverlink. (*Id.*) When served with the preliminary injunction, Oceanic's bank account contained more than $300,000. (FTC's Reply Memo in Support of its Motion To Preserve Assets and For Rule To Show Cause As To Why Third Party Oceanic Should Not Be Held In Contempt Of Court, Att. D, Bresnahan Declaration ("Bresnahan Decl.") ¶ 5©, Ex. 1 at WCB0054). Cleverlink was Oceanic's first client. (Sholes Decl. ¶ 20.) Oceanic alleges that it "had one other customer located in St. Petersburg, Florida," but presents no other evidence regarding this client and admits that it currently has no business. (*Id.*) From July 22, 2005 through September 30, 2005, $245,000 was withdrawn or transferred from the account containing Cleverlink's funds. (Bresnahan Decl. ¶ 5(c), Ex .1 at WCB0057-58.) Colin Sholes personally withdrew $85,000 in cash increments of $9,000 or $9,500. (*Id.* at WCB0060-68.) No evidence has been presented as to where these monies were disbursed after being withdrawn or transferred from Oceanic's account.

## DISCUSSION

***3** Section 13(b) of the FTC Act permits the FTC to seek an injunction whenever it believes a corporation is violating or about to violate the Act. 15 U.S.C. § 53(b).[2] Rule 65 empowers this Court to enter a binding injunction "upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."[3] Fed.R.Civ.P. 65(d). Oceanic and Colin Sholes challenge this Court's jurisdiction, both personal and subject matter, to have entered a preliminary injunction prohibiting them from withdrawing or transferring the funds in Oceanic's account that allegedly were held on behalf of Cleverlink.

### I. Personal Jurisdiction

While the FTC Act and Rule 65 prescribe certain remedial or equitable measures, a court still must have jurisdiction

APP 10

over any person against which that power is exercised. *See Insur. Corp. of Ireland, Ltd. v. Compagnie des Bauxities de Guinee,* 456 U.S. 694, 711 n. 1 (1982) ("A district court must have personal jurisdiction over a party before it can enjoin its actions"); *U.S. v. Kirschenbaum,* 156 F.3d 784, 795 (7th Cir.1998) ("The district court's attempt to enjoin Mrs. Kirschenbaum and other third-parties over whom the court had no personal jurisdiction is void and so binding on no one"). This limit on a court's equitable reach applies even to assets that are alleged to be proceeds of unlawful acts. *See Kirschenbaum,* 156 F.3d at 795 ("However convenient it might be for the government to violate the due process rights of some citizens in an effort to seize property that it contends is forfeitable, we see no way that it could do so [absent personal jurisdiction]").

The FTC bears the burden of establishing that personal jurisdiction is proper; satisfying that burden, however, requires only a prima facie showing. *See RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997). In determining whether the FTC has met this burden, this Court accepts as true all uncontroverted allegations made by both the FTC and Oceanic but resolves all factual disputes in the FTC's favor. *See Hyatt v. Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir.2002); *Saylor v.. Dyniewski,* 836 F.2d 341, 342 (7th Cir.1988). The FTC offers two alternative bases for the Court's personal jurisdiction over Oceanic and Colin Sholes. One, the nationwide service of process clause in § 13(b) of the FTC Act and, two, Oceanic's contacts with the state of Illinois stemming from both its role as an intermediary for the transmission of consumer credit card charges that originated with Illinois customers and from Oceanic's operation of a website accessible by Illinois residents. *See Swaim v. Moltan Co.,* 73 F .3d 711, 719-20 (7th Cir.1996) ( "[A] federal court normally looks either to a federal statute or to the long-arm statute of the State in which it sits to determine whether a defendant is amendable to service").

***4** The FTC brought this action against Cleverlink and other Defendants under § 13(b) for alleged violations of the FTC Act. In cases involving a federal question, the scope of a district court's personal jurisdiction extends as far as the jurisdiction of the courts of general jurisdiction of the State in which it sits or as far as its power to enforce process. *See Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1201-02 (7th Cir.1997); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104 (1987) (stating that for personal jurisdiction to be exercised over a party "there must be authorization for service"); Fed.R.Civ.P. 4(k)(1)(D) ("[S]ervice is effective to establish jurisdiction over the person of a defendant when authorized by a statute of the United States"). [4]

Section 13(b) provides that "[i]n any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found." 15 U.S.C. § 53(b). This language, and similar language from other federal statutes, has been interpreted to permit nationwide service of process. [5] *See F.T.C. v. Bay Area Business Council, Inc.,* 2003 WL 21003711, *2 (N.D.Ill.2003); *see also Fitzsimmons v. Barton,* 589 F.2d 330, 332 (holding that Securities Exchange Act provides for nationwide service of process). Because a statute "creates personal jurisdiction by authorizing service," the nationwide service provision in § 13(b) effectively "creates personal jurisdiction over anyone within the United States ." *Lisak v. Mercantile Bancorp., Inc.,* 834 F.2d 668, 671-72 (7th Cir.1987); *see Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444-45 (1946) ("[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served"). Absent such as a nationwide service of process provision, due process requires that a person or corporation have minimum contacts with the forum state before a court may exercise personal jurisdiction. *See Waeltz v. Delta Pilots Retirement Plan,* 301 F.3d 804, 808 n. 3 ("Ordinarily, such service establishes a district court's personal jurisdiction only if a court of the state in which the district court sits would have personal jurisdiction"). But where nationwide service is authorized by federal law the relevant question becomes whether the person or corporation has minimum contacts with the United States. *See Fitzsimmons,* 589 F.2d at 332; *Zurich Capital Markets v. Conlianese,* 388 F.Supp.2d 847, 857 (N.D.Ill.2004).

Oceanic and Colin Sholes do not challenge the fact that they have minimum contacts with the United States. Rather, they argue that the nationwide service provision only authorizes service on violators or potential violators of the Act. While true that the FTC has never contended that either Oceanic nor Colin Sholes was violating or was about to violate the FTC Act, § 13(b) authorizes service of process on "any person, partnership, or corporation." Thus, by its plain language, nationwide service of process is not restricted to alleged violators or parties to the suit. *See Bob Jones University v. Simon,* 416 U.S. 725, 732 n. 6 (1974) (interpreting language "any person" to include third parties who were not themselves subject to tax liability); *Mullane v. Chambers,* 333 F.3d 322, 331 (1st Cir.2003) (holding that in using the term "any person" in recording statute Congress intended the broadest

APP 11

possible inclusion); *U.S. v. Shear,* 962 F.2d 488, 495 (5th Cir.1992) (stating that "any person" under OSHA included independent third parties). Section 13(b)'s inclusive language contrasts with other nationwide service provisions that state that "process in such cases may be served in any other district of which the *defendant* is an inhabitant or wherever the *defendant* may be found." 7 U.S.C. § 13a-1(e) (emphasis added); 15 U.S.C. § 77v(a); 15 U.S.C. § 78aa. Reading the plain language of the statute, Congress granted district courts the power to enforce process against any person, partnership, or corporation in suits brought pursuant to § 13(b) of the FTC Act. Oceanic and Colin Sholes being amenable to service of process in this suit, the Court had personal jurisdiction to enjoin their actions and may punish them with contempt for any violations of that injunction. *See Omni Capital,* 484 U.S. at 104 (stating that for personal jurisdiction to be exercised "there must be a basis for the defendant's amenability to service").

***5** Given the finding of personal jurisdiction over Oceanic and Colin Sholes under § 13(b), the Court will not address the FTC's alternative argument that minimum contacts exist based on Oceanic's role in processing Cleverlink's credit card transactions and operating a website accessible to Illinois residents.

**II. Subject Matter Jurisdiction**

"Courts have jurisdiction to decide the legitimacy of ownership claims made by non-parties to assets alleged to be proceeds of securities laws violations." *S.E.C. v. Cherif,* 933 F.2d 403, 414 n. 11 (7th Cir.1991). The funds held in Oceanic's account are alleged to be proceeds of FTC Act violations. As such, this Court has subject matter jurisdiction to decide the legitimacy of Oceanic's claim to those assets. *Id.; see also F.T.C. v. Productive Marketing, Inc.,* 136 F.Supp.2d 1096, 1103 n. 7 (C.D.Cal.2001) ("Even if the court did not have *in personam* jurisdiction over [third party corporation], it could nonetheless exercise *in rem* jurisdiction over the receivership assets in [third party corporation]'s possession").

**Conclusion and Order**

Having found jurisdiction over the persons of Oceanic and Colin Sholes and the subject matter funds, the matter is hereby referred to the magistrate judge for further discovery and any hearing regarding whether Oceanic or Colin Sholes should be held in contempt of court for violating the preliminary injunction.

So ordered.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 1735276, 2006-2 Trade Cases P 75,356

## Footnotes

1 Given the Court's interpretation of the nationwide service provision, the admissibility or weight of each party's allegations and evidence need not be resolved for purposes of determining jurisdiction.

2 Temporary restraining orders; preliminary injunctions

Whenever the Commission has reason to believe-

(1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and

(2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public-



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: *Provided, however,* That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: *Provided further,* That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction. Any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28. In addition, the court may, if the court determines that the interests of justice require that any other person, partnership, or corporation should be a party in such suit, cause such other person, partnership, or corporation to be added as a party without regard to whether venue is otherwise proper in the district in which the suit is brought. In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found.

15 U.S.C. § 53(b)

3 In its role as a sub-account holder, Oceanic acted as an agent for Cleverlink. (Sholes Decl. ¶¶ 8-13.); *see Reliable Personnel Inc v. Custom Cartage, Inc.,* 1994 WL 406405, *3 (N.D.Ill.1994) ("Under Rule 65(d) an agent is bound by an order granting an injunction against its principal regardless of whether the agent is joined as a party"), citing *Pasco Int'l (London) Ltd. v. Stenograph Corp.,* 637 F.2d 496, 503 (7th Cir.1980).

4 Although often cited as such, Rule 4(k)(1)(D) is not a necessary compliment to a nationwide service of process provision in creating personal jurisdiction, but instead "merely calls attention to federal legislation that may provide for nationwide or even world-wide service of process in cases arising under particular federal laws." Advisory Committee Notes, 1993.

5 Although not relevant here, the language "wherever it may be found" also can be read to authorize worldwide service of process. *See Central States, Southeast and Southwest Areas Pension Fund v. Reimer,* 230 F.3d 934, 941 (7th Cir.2000).

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 743899
United States District Court,
W.D. New York.

FEDERAL TRADE COMMISSION, Plaintiff,
v.
Paul NAVESTAD aka Paul Richard individually and doing business as the Cash Grant Institute, Global AD Agency, Global Advertising Agency, Domain Leasing Company and/or Cash Grant Search, and Chintana Maspakorn aka Christina Maspakorn individually and doing business as the Cash Grant Institute, Global AD Agency, Global Advertising Agency, Domain Leasing Company and/or Cash Grant Search, Defendants.

No. 09–CV–6329T.
|
Feb. 25, 2010.

**Attorneys and Law Firms**

Janis C. Kestenbaum, Russell Scott Deitch, Federal Trade Commission, Washington, DC, for Plaintiff.

Philip B. Abramowitz, Williamsville, NY, for Defendants.

**ORDER**

MICHAEL A. TELESCA, District Judge.

***INTRODUCTION***

***1** Plaintiff Federal Trade Commission ("FTC") brings this action pursuant to the Federal Trade Commission Act ("FTC Act" or "the Act") claiming that the defendants have violated that Act by engaging in unlawful telemarketing and internet-marketing schemes. Specifically, plaintiff claims that the defendants have engaged in unfair and deceptive practices by advertising the availability of private and/or governmental cash grants to individuals for almost any purpose, and then charging fees for information related to the alleged grants. According to the plaintiff, the cash grants are deceptively advertised as being widely available and instantly or quickly available to individuals, when in fact, such grants are not widely available, often require extensive application processes, and take months to receive.

Defendant Chintana Maspakorn ("Maspakorn") now moves to dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure on grounds that this court lacks personal jurisdiction over her and that service of the Complaint upon her was insufficient. Defendant moves in the alternative for an order transferring this action to the Central District of California on grounds that venue in the Western District of New York is inconvenient. For the reasons set forth below, I deny defendant's motions.

***DISCUSSION***

Defendant claims that this court lacks personal jurisdiction over her because she is not subject to jurisdiction under New York State's long arm jurisdictional statutes. Specifically, she claims that she has no contacts with the state of New York, has not transacted business in New York, and has not in any manner availed herself to jurisdiction by a court in New York State.

Regardless of whether or not Maspakorn is subject to jurisdiction under New York's long arm statutes, the defendant is subject to the personal jurisdiction of this court pursuant to the Federal Trade Commission Act. Section 13(b) of the Federal Trade Commission Act authorizes the FTC to file suit in any federal district court when the agency has reason to believe that a person, partnership, or corporation has violated or will violate any provision of law enforced by the FTC. 15 U.S.C. § 53(b) That section also provides that process may be served on any person, partnership, or corporation wherever it may be found. *Id.* Because the Federal Trade Commission Act authorizes service of process to be effectuated on any defendant wherever that defendant may be found, this court may exercise personal jurisdiction over such a defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure, which provides in relevant part that this court has personal jurisdiction over parties which may be lawfully served pursuant to federal law.

Accordingly, because federal law authorizes service of process on Maspakorn, the court need only determine whether or not exercise of jurisdiction over the defendant comports with the requirements of Due Process. I find that jurisdiction over the defendant satisfies the requirements of Due Process. Because the instant case is brought pursuant to federal-question jurisdiction, and nationwide service of process is authorized by statute, the Due Process Clause of the Fifth Amendment to the United States Constitution governs

APP 14

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

this court's analysis of whether or not personal jurisdiction over the defendant is constitutional. To pass constitutional muster, the defendant over which the court purports to have jurisdiction must have "minimum contacts" with the United States as a whole, and assertion of jurisdiction over the defendant must be reasonable and comport with traditional notions of fair play and justice. *See Reese Bros., Inc. v. U.S. Postal Service,* 477 F.Supp.2d 31, (D.D.C., 2007) (where action is brought pursuant to federal law and nationwide service of process is established by statute, court must determine whether or not the defendant has minimum contacts with the United States and that jurisdiction is consistent with traditional notions of fair play and justice.)

***2** The allegations set forth in the Complaint establish that Maspakorn has sufficient contacts with the United States. For example, the Complaint alleges that the target of the alleged telemarketing scams were United States citizens residing in the various States of the United States. The evidence contained in the record submitted with plaintiff's request for injunctive relief suggests that Maspakorn is the Director of the defendant Global Ad Agency, a company registered in the State of Wyoming. These allegations, and several others, establish that Maspakorn has sufficient contacts with the United States for jurisdictional purposes. Although the defendant denies that her activities violate the FTC Act, and alleges that the plaintiff's claims are wholly without merit, such allegations fail to establish that she lacks minimum contacts with the United States.

Nor does jurisdiction in this court violate any traditional notions of fair play or justice. This court has a strong interest in adjudicating this case, and there has been no showing that venue in this district would be so odious to the defendant that it would result in any disadvantage to her. I therefore find that this court has personal jurisdiction over defendant Maspakorn.

Defendant further alleges that the plaintiff improperly served the Complaint in this matter, and therefore the Complaint should be dismissed. Specifically, defendant alleges that the plaintiff failed to comply with California's substitute service provisions, and therefore service by hand delivery and certified mail to an address in West Hollywood, (which she claims is not hers) was ineffective. I deny defendant's motion. This court has previously found that because the plaintiff was unable, after diligent effort, to effectuate personal service on the defendant, substitute service was appropriate. Despite defendant's claim that the West Hollywood address was not valid, it was the address defendant used when she applied for a private mailbox, and is also the mailing address for several of her credit cards. It is the mailing address for her company Global Ad Agency, for which the defendant is a director. I therefore find that the address used by the plaintiff for service was valid for purposes of California's substitute service provisions, and that the service of process was valid.

Finally, defendant moves to transfer this action to the Central District of California on grounds that venue in that District would be more convenient. The moving party in a motion to transfer venue generally bears the burden of showing that the forum should be changed. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2nd Cir.1978) *cert. denied* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). In fact, the moving party must "make a clear-cut showing that [transfer] is warranted." *Lencco Racing Co., Inc. v. Artco, Inc.,* 953 F.Supp. 69, 71 (W.D.N.Y.1997) (Larimer, Chief Judge).

A motion to transfer venue is within the sound discretion of the court. *Nieves v. American Airlines,* 700 F.Supp. 769, 772 (S.D.N.Y.1992). Courts generally consider several factors to determine whether transfer is appropriate, including

> ***3** the plaintiff's initial choice of forum; the relative convenience to parties and witnesses; the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; location of relevant documents and other tangible evidence ... and 'all other practical problems that make trial of a case easy, expeditious and inexpensive'.

*Bonerb v. Richard J. Caron Foundation,* 1995 WL 818657 *1 (W.D.N.Y.1995) (citations omitted).

Applying these factors to this case, I find that defendant has failed to make a "clear cut showing" that transfer of this case to the Central District of California is appropriate.

A. *Plaintiff's Choice of Forum*

The plaintiff's initial choice of forum must be given substantial weight and should not be changed lightly. *Air–Flo M.G. Co. v. Louis Berkman Co.,* 933 F.Supp. 229 (W.D.N.Y.1996). In the instant case, plaintiff has chosen to litigate this case in this district, where harm from the defendants' conduct is alleged to have occurred. Moreover, one of the defendants, Paul Navestad, is the subject of a consent order issued by this court restricting him from

APP 15

engaging in fraudulent conduct. Accordingly, plaintiff's choice of forum is entitled to substantial deference.

B. *Convenience of the Parties and Witnesses*

The defendant claims that California is a more convenient venue for her. She has failed, however, to establish that this district is so inconvenient to her that proceedings here would prejudice her. In light of the deference given to plaintiff's choice of forum, defendant's claim of inconvenience does not persuade this court that transfer to the Central District of California is appropriate.

C. *Non-party witnesses*

Ordinarily availability of process to compel the attendance of unwilling non-party witnesses and the cost of attaining the attendance of willing non-party witnesses is a consideration in determining a motion to transfer. However, neither factor is relevant because neither party has specifically identified any nonparty witness.

D. *Ease of access to sources of proof; Location of documents and evidence.*

I find that the ease of access to the sources of proof and the location of relevant documents militates neither for or against transfer to the Central District of California.

E. *Interests of Justice*

There is no dispute that the substantive law to be applied is federal law. Thus, either forum is equally capable of applying the substantive law involved. Additionally, there are no state-law claims asserted, so there are no issues regarding familiarity with state law. As stated above, this district has a strong interest in presiding over this matter, particularly in light of the fact that defendant Paul Navestad is subject to a previous order of this court enjoining him from violating the FTC Act.

Because the factors set forth above do not establish that transfer of this case to the Central District of California is warranted, I deny defendant's motion to transfer.

## ***CONCLUSION***

***4** For the reasons set forth above, I deny defendant Chintana Maspakorn's motion to dismiss.

ALL OF THE ABOVE IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 743899, 2010-1 Trade Cases P 76,920

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1660633
Only the Westlaw citation is currently available.
United States District Court,
E.D. Arkansas,
Jonesboro Division.

Jason HATHCOCK, Plaintiff
v.
BNSF RAILWAY COMPANY, Defendant.

No. 3:13–cv–00230 KGB.
|
Signed April 24, 2014.

**Attorneys and Law Firms**

Chester H. Lauck, III, Lauck Law Firm, P.A., Little Rock, AR, for Plaintiff.

Barry Deacon, Jason Mark Milne, Deacon Law Firm, Jonesboro, AR, Brooks E. Kostakis, Stephanie Camille Reifers, Boyle Brasher LLC, Memphis, TN, for Defendant.

***AMENDED ORDER***

KRISTINE G. BAKER, District Judge.

***1** The Court amends its earlier Order of April 24, 2014, denying BNSF's motion to transfer, by directing the Clerk of Court to transfer this case immediately to the Western District of Missouri, Southern Division.

Before the Court is defendant BNSF Railway's ("BNSF's") motion to transfer venue (Dkt. No. 9) to which plaintiff Jason Hathcock responded in opposition (Dkt. No. 11). This case is currently set for trial in the Jonesboro Division of the Eastern District of Arkansas, and defendant moves to transfer the trial to the Southern Division of the Western District of Missouri. Under 28 U.S.C. § 1404(a), this Court may, "[f]or the convenience of the parties and witnesses, in the interest of justice ... transfer any civil action to any other district or division where it might have been brought...."

"Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). The purpose of transfer under § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Id.* (quotations omitted). "Section 1404(a) provides for transfer to a more convenient forum, not a forum likely to prove equally convenient or inconvenient." *Id.* at 645–46. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988).

In determining whether venue is proper, the Court does not ask "which district among two or more potential forums is the best venue," but rather the Court asks "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Pecoraro v. Sky Ranch for Boys, Inc.,* 340 F.3d 558, 563 (8th Cir.2003) (quotations omitted). Stated differently, the Court focuses on the events or omissions in *this* district, not on the events or omissions in some other district.

"In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Id.* at 695. However, a plaintiff's choice of forum is due less deference when the plaintiff does not reside there or when the transaction or underlying facts did not occur there. *See, e.g., Nelson v. Soo Line R. Co.,* 58 F.Supp.2d 1023, 1026 (D.Minn.1999); *Abbott v. Schneider Nat'l Carriers, Inc.,* 2008 WL 4279590 at *3 (E.D.Mo. Sept. 12, 2008).

Concerning the convenience of the parties, it is not clear to the Court why Mr. Hathcock chose to file this case in the Eastern District of Arkansas, except that he has hired counsel in this state licensed to practice here. Mr. Hathcock does not live in Arkansas, and none of the alleged events occurred in Arkansas. Mr. Hathcock's attorneys may petition courts outside of Arkansas for admission *pro hac vice* to practice in those courts. BNSF argues that the Western District of Missouri is a more convenient forum because it expects many of its witnesses will be employees and its employee contracts require it to reimburse its employees for lost wages, transportation expenses, and food and lodging for the purpose of attending and testifying at trial. BNSF argues that because it has a passenger service line that runs to Springfield, Missouri, and no passenger rail service to transport these potential fact witnesses to Jonesboro, Arkansas, the Southern Division for the Western District of Missouri is more



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

convenient for BNSF. To evaluate convenience, the Court considers the location of each courthouse and the travel expenses that would be incurred for party "airfare, meals and lodging, and losses in productivity from time spent away from work." *Oien v. Thompson,* 824 F.Supp.2d 898, 903 (D.Minn.2010). The Court finds that the convenience of the parties favors BNSF and its transfer request.

***2** Concerning the convenience of the witnesses, BNSF has made the point that only two of its ten potential fact witnesses are located closer to Springfield, Missouri, than to Jonesboro, Arkansas. Mr. Hathcock responds that BNSF's assertions of the relevance of the witnesses are conclusory, vague, and do not state the importance of any of the witnesses or whether they are necessary. "The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be, the application for transfer will be denied." *Peacock v. Pace Int'l Union Pension Fund Plan,* 2007 WL 4403689, *10 (M.D.Tenn. Aug. 23, 2007) (quoting *Bacik v. Peek,* 888 F.Supp. 1405, 1415 (N.D.Ohio 1993)). The Court finds that BNSF has met this burden and that the convenience of the witnesses favors BNSF and its transfer request.

Turning to the interests of justice, "the administration of justice is served more efficiently when the action is litigated in the forum that more clearly encompasses the locus of operative facts ." *Thornton Drilling Co. v. Stephens Production Co.,* 2006 WL 2583659, *4 (E.D.Ark. Sept. 6, 2006) (quoting 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure,* § 3854, p. 289 (Supp.2006)). As in *Thornton Drilling Co.,* in the present action "[t]here are no allegations or contentions that any matters relevant to the resolution of the present dispute occurred in the Eastern District of Arkansas. Rather, it appears that the Eastern District of Arkansas' only connection to the underlying dispute is that [plaintiff] has elected to bring suit here." *Thornton Drilling Co.,* 2006 WL 2583659 at *4. BNSF notes that, with the exception of the allegation about BNSF doing business in Arkansas, the complaint makes no mention of any connection between this action and this venue. Conversely, the operative facts underlying Mr. Hathcock's claims occurred in or near West Plains, Missouri, in the Southern Division of the Western District of Missouri. This Court agrees with BNSF and finds that the interests of justice factor weighs in favor of BNSF and its transfer request.

Considered together, the Court finds BNSF has met its burden of proving the convenience of the parties, the convenience of the witnesses, and the interests of justice support having this case heard in the Western District of Missouri, Southern Division over the Eastern District of Arkansas, Jonesboro Division. Accordingly, BNSF's motion to transfer venue is granted (Dkt. No. 9). The Clerk of Court is ordered to transfer this case immediately to the Western District of Missouri, Southern Division.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1660633

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

APP 18

2025 WL 2345076
Only the Westlaw citation is currently available.
United States District Court, N.D.
Texas, Wichita Falls Division.

RUMBLE, INC.; Rumble USA, Inc.;
and Rumble Canada, Inc., Plaintiffs,
v.
WORLD FEDERATION OF
ADVERTISERS; Diageo PLC; WPP PLC;
and GroupM Worldwide Inc., Defendants.

CIVIL ACTION NO. 7:24-CV-0115-B
|
Signed August 13, 2025

**Attorneys and Law Firms**

John Clay Sullivan, Jace Randall Yarbrough, S|L Law PLLC, Cedar Hill, TX, Brandon Kressin, Pro Hac Vice, Christian Lorenz, Pro Hac Vice, Mark R. Meador, Pro Hac Vice, Patrick Greco, Pro Hac Vice, Kressin Meador Powers LLC, Washington, DC, for Plaintiffs.

David C. Miller, Samuel T. Acker, William S. Snyder, Bradley Arant Boult Cummings LLP, Dallas, TX, Charles E. Elder, Pro Hac Vice, Bradley Arant Boult Cummings LLP, Nashville, TN, for Defendant World Federation of Advertisers.

Todd Lawrence Disher, Terrill & Waldrop, Austin, TX, Andrew B. Davis, Pro Hac Vice, Lehotsky Keller Cohn LLP, Austin, TX, Andrew Baxter Ryan, Ryan Law Partners LLP, Dallas, TX, Drew Waldbeser, Pro Hac Vice, Lehotsky Keller Cohn LLP, Atlanta, GA, Steven Paul Lehotsky, Pro Hac Vice, Lehotsky Keller Cohn LLP, Washington, DC, for Defendants WPP PLC, GroupM Worldwide Inc.

Amber Michelle Rogers, Theanna Bezney, Hunton Andrews Kurth LLP, Dallas, TX, Catherine Guerrier, Pro Hac Vice, Cleary Gottlieb Steen & Hamilton LLP, New York, NY, D. Bruce Hoffman, Pro Hac Vice, Jacob Coate, Pro Hac Vice, Ryan A. Shores, Cleary Gottlieb Steen & Hamilton LLP, Washington, DC, for Defendant Diageo PLC.

**MEMORANDUM OPINION AND ORDER**

JANE J. BOYLE, UNITED STATES DISTRICT JUDGE

***1** Before the Court are Defendants World Federation of Advertisers ("WFA"), Diageo PLC ("Diageo"), WPP PLC ("WPP"), and GroupM Worldwide, Inc. ("GroupM") (collectively, "Defendants")'s Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim (Doc. 55) and GroupM's Motion to Transfer (Doc. 64). For the following reasons, the Court **GRANTS** the Motion to Dismiss and **DISMISSES** this case **WITHOUT PREJUDICE** for lack of personal jurisdiction and improper venue. The Court also **DENIES AS MOOT** GroupM's Motion to Transfer (Doc. 64). The Court does not address the merits of Plaintiffs Rumble, Inc., Rumble USA, Inc., Rumble Canada, Inc. (collectively, "Rumble")'s claims. A final judgment will follow.

## I.

## BACKGROUND

This is an antitrust case about advertising. Rumble "operate[s] an online video platform." Doc. 13, Am. Compl., ¶ 26. Content creators upload their videos "to the Rumble platform ... for users to view and interact with." *Id.* Rumble also contracts with companies that want to advertise on Rumble's platform. *See id.* Rumble then places "digital advertisements alongside, before, during, and after the videos" uploaded to Rumble's platform. *Id.*

Defendant WFA is a "global organisation representing the common interest of marketers." *Id.* ¶¶ 16–17. In 2019, WFA started an initiative called the Global Alliance for Responsible Media ("GARM"). *Id.* ¶ 1. "GARM's members include advertisers, advertising agencies, and user-generated platforms." *Id.* ¶ 37. GARM was managed by a Steer Team that included advertisers, advertising agencies, and advertising agencies' trade associations. *Id.* ¶ 39. Defendants Diageo and GroupM were on GARM's Steer Team. *Id.* GARM was "controlled by advertisers and their agencies." *Id.* ¶ 41.

GARM developed "brand-safety standards" to ensure that advertisements would not appear next to sensitive content. *Id.* ¶ 46 (quotation marks omitted). For example, GARM members did not want advertisements to "appear alongside content that contains excessive use of profane language or gestures." *Id.* ¶ 47 (quotation marks omitted). GARM members also did not want their advertisements to appear next to the "[i]llegal sale, distribution, and consumption of child

APP 19

pornography." Doc. 57, App'x, 2.[1] And GARM members did not want their advertisements to appear next to content supporting the "[p]romotion and advocacy of graphic terrorist activity." *Id.*

Rumble prides itself on being "a platform that promotes freedom of expression." *Id.* ¶ 28. Because of this "philosophical choice," Rumble did not "implement policies based on GARM's preferred brand safety standards." *Id.* ¶¶ 27, 29. Rumble alleges that GARM's members boycotted platforms that did not comply with GARM's brand-safety standards. *Id.* ¶ 7. For example, when Rumble tried "to form a commercial relationship with Defendant GroupM ... GroupM refused to engage with Rumble's outreach." *Id.* ¶ 50. And when Rumble tried "to convince Diageo to advertise on Rumble's platform," Diageo refused to do so because "Diageo had adopted strict brand safety standards." *Id.* ¶ 51.

***2** There are four defendants in this lawsuit. WFA is a non-profit association "organized under the laws of the Kingdom of Belgium and headquartered in Brussels, Belgium." *Id.* ¶ 16. Diageo and WPP are both companies based in England. *Id.* ¶ 18. GroupM is a subsidiary of WPP, and GroupM is headquartered in New York. *Id.* ¶ 20. Rumble alleges that "Defendants and numerous non-defendant co-conspirators collectively agreed to restrict the output of digital advertising on user-generated platforms." *Id.* ¶ 1. Rumble asserts three Sherman Act claims against all four Defendants. *Id.* ¶¶ 88–102.

X Corporation ("X") has filed a similar lawsuit asserting Sherman Act claims against numerous defendants. Compl., *X Corp. v. World Federation of Advertisers et al.*, No. 7:24-cv-00114-B, (N.D. Tex. May 14, 2025), ECF No. 1. Rumble argues that personal jurisdiction and venue are proper in this case because of the X case. Doc. 60, Resp., 8–10, 17–18. The X case is also before this Court and several defendants in the X case have filed motions to dismiss the claims asserted against them for lack of personal jurisdiction and improper venue. WFA is the only Defendant in the Rumble case that is also a defendant in the X case. *See* Second Am. Compl., *X Corp. v. World Federation of Advertisers et al.*, No. 7:24-cv-00114-B, (N.D. Tex. May 14, 2025), ECF No. 77.

Defendants move to dismiss this case for lack of personal jurisdiction, improper venue, and failure to state a claim. *See generally* Doc. 55, Mot. Dismiss. Defendants argue that "[t]his case has nothing to do with Texas, much less the Northern District of Texas." Doc. 56, Br. Mot. Dismiss, 1. GroupM has also filed a Motion to Transfer this case to the Southern District of New York. Doc. 64, Mot. Transfer, 1. The Court considers the Motions below.

## II.

## LEGAL STANDARDS

*A. Personal Jurisdiction*

Under Rule 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. It is the plaintiff's burden to establish that personal jurisdiction is proper. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). "To satisfy that burden, the party seeking to invoke the court's jurisdiction must 'present sufficient facts as to make out only a *prima facie* case supporting jurisdiction,' if a court rules on a motion without an evidentiary hearing." *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 394 (E.D. Tex. 2022) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)). The Court considers "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery" and resolves any factual conflict contained in the parties' submissions in the plaintiff's favor. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985); *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

A district court's exercise of personal jurisdiction is only proper if "(1) the forum state's long-arm statute confers personal jurisdiction over [the] defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 296 (5th Cir. 2020) (citations omitted); *see Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 488 (5th Cir. 2018). Here, Texas's long-arm statute authorizes the exercise of personal jurisdiction to the full extent permitted by the Due Process Clause. *Trois*, 882 F.3d at 488. As such, "the two-step inquiry collapses into one federal due process analysis." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

***3** The federal Due Process analysis is twofold. First, the nonresident defendant must have purposefully availed itself of the benefits and protections of the forum state through "minimum contacts" such that it should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985). Second, the exercise of jurisdiction over the defendant must "not offend

APP 20

traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

*B. Venue*

A defendant may move to dismiss or transfer a case for improper venue. FED. R. CIV. P. 12(b)(3); 28 U.S.C. § 1406(a). If the Court finds that venue is improper, § 1406(a) requires the Court to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1391(b) sets out three categories of proper venue:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

## III.

## ANALYSIS

The Court grants Defendants' Motion to Dismiss because it lacks personal jurisdiction over Defendants, and the Northern District of Texas is an improper venue.[2] Accordingly, the Court dismisses this case without prejudice to its filing in a proper forum.

*A. The Court Does Not Have Personal Jurisdiction Over Defendants.*

The Court grants Defendants' Motion to Dismiss as to their personal jurisdiction challenge. First, the Court will not defer ruling on whether it possesses personal jurisdiction over Defendants. Second, the Court concludes that it lacks specific personal jurisdiction over Defendants because Rumble's alleged injuries did not arise out of any of the Defendant's contacts with the state of Texas. Third, the Court concludes that Section 12 of the Sherman Act also does not provide the Court with personal jurisdiction over any Defendant. Fourth, Federal Rule of Civil Procedure 4(k)(2) does not provide the Court with personal jurisdiction over any Defendant. Fifth, the Court denies Rumble's request for jurisdictional discovery.

1. The Court Will Not Defer Ruling on Whether it Has Personal Jurisdiction Over Defendants.

Rumble has asked the Court to "at least decline to rule on Jurisdictional and Venue issues until they can also be addressed in the related case, *X Corp. v. WFA, et al.*, 7:24-cv-00114-B (N.D. Tex. filed Aug. 6, 2024)." Doc. 60, Resp., 5. According to Rumble, this Court cannot adequately address the jurisdictional and venue challenge in this case without also considering the allegations in the X case. *See id.* Rumble cites no authority to support this request, and there is no reason for the Court to defer ruling on this Motion. The X case has almost entirely different jurisdictional issues because it involves different parties. WFA is the only party in this case that is also a party in the X case. *See generally* Second Am. Compl., *X Corp. v. World Federation of Advertisers et al.*, No. 7:24-cv-00114-B, (N.D. Tex. May 14, 2025), ECF No. 77. Therefore, the Court denies Rumble's request.

2. The Court Does Not Possess General or Specific Jurisdiction Over Defendants.

***4** There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017). General jurisdiction allows a court in the forum state to hear any claims asserted against a defendant. *Id.* Specific jurisdiction, on the other hand, only permits adjudication of those claims arising out of or relating to the defendant's contacts in the forum state. *Id.*

Rumble concedes that none of the Defendants are subject to general jurisdiction in the state of Texas. Doc. 60, Resp., 7. Thus, the Court must determine whether any of the Defendants are subject to specific jurisdiction. The Fifth Circuit employs a three-step analysis to determine whether a district court may properly exercise specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities

APP 21

> there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*E. Concrete Materials, Inc.*, 948 F.3d at 296 (quoting *Monkton Ins. Servs*, 768 F.3d at 433). If the plaintiff establishes the first two steps, "the burden shifts to the defendant to show that the exercise of personal jurisdiction would be unfair or unreasonable." *Id.*

*i. Defendants do not have minimum contacts with Texas.*

Rumble has failed to demonstrate that Defendants have minimum contacts with Texas. The Amended Complaint includes one paragraph on personal jurisdiction. Doc. 13, Am. Compl., ¶ 23. It alleges that "WFA, Diageo, and GroupM each transact a substantial volume of business in this District." *Id.* This is a conclusory allegation that the Court will not accept as true. *See Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

"When a nonresident defendant commits ... an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts ... to constitutionally permit courts within that state ... to exercise personal adjudicative jurisdiction over the tortfeasor ...." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999). Rumble argues that Defendants have minimum contacts with Texas because "[Defendants] intended to have an effect on digital advertising on user-generated platforms, with the expectation that their conduct would impact the business operations of Texas-based user-generated platforms, advertisers, and users." Doc. 60, Resp., 9. The Court rejects this argument because Rumble's allegations fail to distinguish between the four Defendants. *See id.*

"Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). Rumble "may not aggregate defendants' forum contacts and may not establish personal jurisdiction without specifying who did what." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 442 (5th Cir. 2025) (citation omitted). Thus, Rumble cannot establish that each Defendant has minimum contacts with Texas without saying what actions each Defendant specifically took and how each Defendant intended to affect business operations in Texas. *See id.* Rumble has not alleged any facts demonstrating that any Defendant specifically intended to have an effect on Texas residents. Therefore, Rumble has failed to meet its burden of establishing that each Defendant has minimum contacts with Texas.

*ii. Rumble's causes of action do not arise out of Defendants' forum-related contacts.*

***5** Even if Rumble had alleged sufficient minimum contacts, its causes of action do not arise out of Defendants' contacts with Texas. To satisfy the second prong of specific jurisdiction, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (alteration in original) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 264. Stated differently, "[f]or specific jurisdiction [courts] look only to the contact out of which the cause of action arises." *Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002).

None of the allegations that gave rise to this lawsuit occurred in Texas. Rumble asserts various antitrust claims against Defendants arising out of the alleged GARM conspiracy to not advertise on Rumble. Doc. 13, Am. Compl., ¶¶ 88–102. But WFA did not establish GARM in Texas. *See* Doc. 13, Am. Compl., ¶ 37. GARM was also not created for the express purpose of targeting Texas companies or residents. Defendants did not join this purported conspiracy in Texas because none of them are based in Texas. *See generally id.* Nor does Rumble allege that Defendants ever met in Texas for the purpose of furthering their conspiracy. Thus, the conduct that gave rise to this lawsuit all occurred outside of Texas.

And while a plaintiff being injured in a state is not sufficient to establish personal jurisdiction there, Rumble did not even experience its injuries in Texas because the three Rumble plaintiffs are not Texas citizens. *See Revell*, 317 F.3d at 473 (noting that a plaintiff suffering an injury in a forum "will not alone support [personal] jurisdiction"); Doc. 13, Am. Compl.,



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

¶¶ 13–15. Therefore, Rumble has failed to allege that its injuries arose out of any of Defendants' contacts with Texas.

Rumble advances little argument that its injuries arose out of any of the Defendants' purported contacts with Texas. Instead, Rumble confusingly spends most of its Response arguing that the Court possesses specific jurisdiction over Rumble's claims because it and X were allegedly injured by the same conspiracy. Doc. 60, Resp., 8–10. But plaintiffs cannot use the injuries suffered by other parties to establish specific personal jurisdiction. *Bristol-Myers Squibb Co.*, 582 U.S. at 265. Thus, Rumble cannot establish that the Court has specific jurisdiction over its claims by arguing that it suffered the same injuries that X, an alleged resident of Texas, suffered. *See id.*

Accordingly, the Court lacks specific jurisdiction over Rumble's claims because Rumble has failed to identify any "connection between the forum and the specific claims" asserted by Rumble in this lawsuit. *See id.* at 256.

3. Section 12 of the Clayton Act Does Not Provide the Court with Personal Jurisdiction Over Defendants.

Section 12 of the Clayton Act has two clauses. It provides that:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22.

The first clause is a "special" venue provision, which provides additional methods for a plaintiff to demonstrate that venue is proper in antitrust cases. *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 724 (7th Cir. 2013). The second clause is a personal jurisdiction provision authorizing "worldwide service of process." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 422 (2d Cir. 2005). It gives a court personal jurisdiction over the defendant if the defendant "ha[s] sufficient minimum contacts with the United States [as a whole]," rather than with a specific state. *Fontenot v. Mullins Mfg. Co.*, 85 F.3d 625 (5th Cir. 1996).

***6** The parties dispute whether the special venue and personal jurisdiction provisions are independent from one another or whether they are integrated. If the provisions are integrated, a plaintiff can only use the nationwide personal jurisdiction provision if the special venue provision is satisfied. Rumble contends that the provisions are independent, which would mean that the Clayton Act allows for nationwide personal jurisdiction regardless of whether the special venue provision is satisfied. Doc. 60, Resp., 11–12. Defendants argue that the two provisions are integrated, which means the Clayton Act only authorizes nationwide personal jurisdiction in cases where the special venue provision is satisfied. Doc. 56, Br. Mot. Dismiss, 9–10. Under the integrated approach, the Clayton Act would only authorize nationwide personal jurisdiction if venue were proper in the Northern District of Texas.

There is a circuit split on whether the Clayton Act's special venue and personal jurisdiction provisions are independent or integrated. The Second Circuit, Seventh Circuit, and District of Columbia Circuit Courts of Appeals have held that the two provisions are integrated. *Daniel*, 428 F.3d at 422; *KM Enters., Inc.*, 725 F.3d at 730; *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000). But the Ninth and Third Circuits have held that the two provisions are independent. *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1412 (9th Cir. 1989); *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 296–97 (3d Cir. 2004).

District courts within the Fifth Circuit are also split on whether the Clayton Act's special venue provision must be satisfied for the statute to authorize nationwide personal jurisdiction. *See Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520, 530 (N.D. Tex. 2001) (Lynn, J.) (holding that the two provisions are integrated and the Clayton Act only authorizes nationwide personal jurisdiction if venue is proper in the district); *see Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 2:23-CV-0155-Z, 2024 WL 1218573, at *2 (N.D. Tex. Mar. 21, 2024) (Kacsmaryk, J.) (same); *but see Crompton Corp. v. Clariant Corp.*, 221 F. Supp. 2d 683, 688 (M.D. La. 2002) (holding that the two provisions are independent and the Clayton Act authorizes nationwide personal jurisdiction regardless of whether the special venue provision is satisfied).

APP 23

To make matters even more confusing, district courts within the Fifth Circuit also disagree on whether the Fifth Circuit has taken a side in the circuit split. *See* *Corr Wireless Commc'ns, L.L.C. v. AT & T, Inc.*, 907 F. Supp. 2d 793, 799 (N.D. Miss. 2012) (noting that "the Fifth Circuit has no binding precedent to dictate the outcome" of whether the Clayton Act only authorizes nationwide personal jurisdiction if the special venue provision is satisfied); *see* *Ramzan v. GDS Holdings Ltd.*, No. 4:18-CV-539-ALM-KPJ, 2019 WL 4748001, at *4 (E.D. Tex. Sept. 30, 2019) (same); *but see* *Ferko v. Nat'l Ass'n of Stock Car Racing*, No. 4:02-CV-50, 2002 WL 34477591, at *7 (E.D. Tex. Oct. 4, 2002) (concluding that the Fifth Circuit joined the Ninth Circuit by holding that the special venue and nationwide personal jurisdiction provisions operate independently of one another).

The Court first concludes that the Fifth Circuit has not ruled on whether the Clayton Act's special venue and personal jurisdiction provisions are independent or integrated. The Court next holds that the two provisions are integrated, meaning that a plaintiff can only use the nationwide personal jurisdiction provision if venue is proper under the Clayton Act. Because Rumble has not demonstrated that its venue provision is satisfied, the Clayton Act does not provide personal jurisdiction over Defendants.

*i. The Fifth Circuit has not taken a side in the circuit split.*

The Court agrees with the majority of district courts that the Fifth Circuit has not taken a side in this Circuit split. Rumble argues that the Fifth Circuit adopted the Ninth Circuit's position. Doc. 60, Resp., 12. In *Access Telecom, Inc. v. MCI Telecommunications Corp.*, the Fifth Circuit explained that "[w]hen jurisdiction is invoked under the Clayton Act, the court examines the defendant's contacts with the United States as a whole to determine whether the requirements of due process have been met." 197 F.3d 694, 718 (5th Cir. 1999). But the Fifth Circuit said nothing about whether Section 12 of the Clayton Act allows for nationwide personal jurisdiction in all antitrust cases or only in antitrust cases where the special venue provision is satisfied. *See id.* The Fifth Circuit only discussed what was required to satisfy due process, but deciding whether the special venue provision and personal jurisdiction provision operate independently is not a due process inquiry. Instead, the answer to this question is a matter of statutory interpretation. Further, the Fifth Circuit did not even discuss the fact that Section 12 of the Clayton Act has both a personal jurisdiction and a special venue provision. Thus, the Court is not persuaded that the Fifth Circuit has taken a side in this Circuit split. Accordingly, the Court must independently decide whether the two provisions operate independently.

*ii. The Clayton Act only authorizes nationwide personal jurisdiction if its special venue provision is satisfied.*

***7** The Court holds that the Clayton Act's special venue and personal jurisdiction provisions are integrated. Therefore, Section 12 of the Clayton Act only provides nationwide personal jurisdiction if the special venue provision is satisfied. This interpretation is supported by the text and structure of the statute, and it avoids rendering the special venue provision superfluous.

As always, the Court begins with the text. Section 12 of the Clayton Act has two clauses. These two clauses are in the same sentence and separated by a semicolon. The first clause is a venue provision that provides methods for an antitrust plaintiff to establish that venue is proper. And the second clause is a personal jurisdiction provision that says, "[A]ll process *in such cases* may be served in the district of which [the corporation] is an inhabitant, or wherever it may be found." 15 U.S.C. § 22 (emphasis added).

The structure and text of the statute establish that the Clayton Act only allows nationwide personal jurisdiction if the venue provision is satisfied. First, the personal jurisdiction provision begins with language that links it to the special venue provision. Specifically, it says that "all process *in such cases* may be served." 15 U.S.C. § 22 (emphasis added). "Such" means "of the character, quality, or extent previously indicated or implied." *Such*, MERRIAM-WEBSTER'S DICTIONARY (online ed.), https://www.merriam-webster.com/dictionary/such. Thus, "in such cases" refers to cases with the qualities previously described in the special venue provision. Here, "such cases" are antitrust cases brought against a corporation in any district where a corporation is an inhabitant, where it can be found, or where it transacts business. *See* 15 U.S.C. § 22. The District of Columbia Circuit Court of Appeals adopted this exact rationale:

> The language of the statute is plain, and its meaning seems clear: The clause before the semi-colon relates

APP 24

> to a supplemental basis for venue in actions under the Clayton Act; the clause after the semi-colon relates to nationwide service of process in antitrust cases; and invocation of the nationwide service clause rests on satisfying the venue provision.

*GTE New Media Servs. Inc.*, 199 F.3d at 1350. The Court finds this reasoning persuasive.

Second, the structure of Section 12 demonstrates that nationwide personal jurisdiction is only proper if the special venue provision is satisfied. The venue and personal jurisdiction provisions are part of the same sentence and are only separated by a semicolon, which suggests that Congress intended for them to operate together. *See KM Enters., Inc.*, 725 F.3d at 729 (explaining that the venue and personal jurisdiction provisions needed to be read together in part because "Congress intentionally joined the two provisions with a semicolon").

Third, the special venue provision would be superfluous if the two provisions operated independently. "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quotation omitted). Crucially, the Clayton Act's two special venue provisions [3] are not the exclusive avenues for an antitrust plaintiff to demonstrate that venue is proper. Instead, these two venue provisions "are supplemented by the general venue provisions of 28 U.S.C.A. § 1391(b)." 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3818 (3d ed.). Thus, Rumble could establish that the Northern District of Texas is a proper venue by using the Clayton Act or by showing that venue is proper under the general venue statute, 28 U.S.C. § 1391(b). Under the general venue statute, venue is proper in any "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." *Id.* § 1391(b)(1). And for venue purposes, a corporation resides "in any judicial district in which [the corporation] is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2).

***8** If the Clayton Act's special venue and personal jurisdiction provisions operated independently, the special venue provision would be rendered superfluous. An antitrust plaintiff could first use the nationwide personal jurisdiction provision to establish that any court in the United States has personal jurisdiction over a corporate defendant. And then venue would always be proper under the general venue statute because corporations reside in any district in which they are subject to the court's personal jurisdiction. Thus, if the Court adopted Rumble's interpretation, no antitrust plaintiff would ever need to use the Clayton Act's special venue provision. This result would improperly render the Clayton Act's special venue provision superfluous because the general venue statute would *always* authorize venue over antitrust cases brought against a corporation. *KM Enters., Inc.*, 725 F.3d at 729; *see also Go-Video, Inc.*, 885 F.2d at 1413 (recognizing that its holding may render Section 12's venue provision "wholly redundant"). Therefore, the Clayton Act only authorizes nationwide personal jurisdiction if the special venue provision is satisfied. This reading gives meaning to every term in the statute and is also consistent with the text and structure of Section 12 of the Clayton Act.

Rumble argues that the Court should follow the Ninth and Third Circuit cases. The Ninth and Third Circuits relied on the purpose of the Clayton Act, and the Third Circuit additionally reasoned that Section 12 of the Clayton Act should be given a different meaning when applied to foreign corporations. The Court disagrees with their holdings for several reasons.

First, the approach taken by the Ninth and Third Circuits did not rely on the text of the Clayton Act. Instead, their holdings were attempts to effectuate the overall purpose of the statute. *See Go-Video, Inc.*, 885 F.2d at 1412 (explaining that it needed to "interpret [the] passage in which antecedents and consequents are unclear by reference to the context and *purpose* of the statute as a whole" (emphasis added)); *see In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d at 295 (similar). The *Go-Video* court said that the purpose of Section 12 of the Clayton Act was to provide an "expansion of the bounds of venue" in antitrust cases and "make it easier for plaintiffs to sue for antitrust violations." 885 F.2d at 1410, 1413. But because the Court does not find the text of Section 12 to be ambiguous, "the text of a law controls over purported legislative intentions unmoored from any statutory text." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). Therefore, the Court rejects the approach taken by the Ninth and Third Circuits of attempting to effectuate their perceived purpose of the Clayton Act instead of relying on the statute's text and structure.

APP 25

But even if the Court were to consider the "purpose of the statute as a whole," that would still not justify the *Go-Video* decision. While the text of the special venue provision makes it clear that Congress intended to expand venue in antitrust cases, that does not mean that "Congress wanted *nationwide* venue" in antitrust cases. *KM Enters., Inc.*, 725 F.3d at 730 (emphasis in original); *see also Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532 (noting that the Ninth Circuit's approach would "completely eviscerate[ ] any semblance of a venue inquiry in antitrust cases involving corporate defendants" which is a result that "Congress could not have intended"). The Ninth Circuit did not explain why expanding venue in antitrust cases means that Congress intended to eliminate a defendant's ability to challenge venue. Therefore, the Court rejects the approach taken by the *Go-Video* court.

Second, the Court disagrees with the Third Circuit distinguishing between foreign and domestic corporations when it interpreted Section 12 of the Clayton Act. *See In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d at 296 n.10. There, the court discussed the "tradition" that "suits against aliens were left unrestricted, and could be tried in any district, subject only to the requirements of service of process." *Id.* at 296 (quoting *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 708 (1972). Thus, according to the Third Circuit, the Clayton Act's "service of process provision on foreign corporations is independent of, and does not require satisfaction of, the specific venue provision under Section 12 of the Clayton Act." *Id.* at 297.

***9** The statutory text does not support the Third Circuit's approach. Nothing in Section 12 of the Clayton Act or any other provision of the statutory scheme supports giving Section 12 a different meaning in cases where the defendant is a foreign corporation. And when discussing how federal courts have historically treated foreign defendants differently for venue purposes, the Third Circuit cited a Supreme Court case discussing the Alien Venue Statute. *Id.* at 296 (citing *Brunette Mach. Works, Ltd.*, 406 U.S. at 708). The Alien Venue Statute establishes different venue rules for foreign defendants than domestic defendants. 28 U.S.C. § 1391(d). But the Clayton Act does not mention the Alien Venue Statute. Nor does the Clayton Act expressly incorporate the "tradition" that suits against foreign defendants can "be tried in any district, subject only to the requirement of service of process." *Compare In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d at 296, *with* 15 U.S.C. § 22. Thus, the *Brunette Machine Works* case does not support distinguishing between foreign and domestic defendants in Clayton Act cases.

Fundamentally, the Clayton Act's special venue and personal jurisdiction provisions must always either be integrated or independent because this is a question of statutory construction. The Supreme Court has explained that courts cannot "give the same statutory text different meanings in different cases." *Clark v. Martinez*, 543 U.S. 371, 386 (2005); *see also Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 730 (6th Cir. 2013) (Sutton, J., concurring) ("[A] statute is not a chameleon. Its meaning does not change from case to case. A single law should have one meaning, and the lowest common denominator, as it were, must govern all of its applications." (citation omitted)). Thus, Section 12 of the Clayton Act "cannot mean one thing" in a case with a domestic corporate defendant "and another when there" is a foreign corporate defendant. *See City & Cnty. of San Francisco v. Env't Prot. Agency*, 145 S. Ct. 704, 718 (2025) (rejecting a proposed interpretation of a statute that would give a statute different meanings in cases with different facts). Therefore, the Court rejects the approach taken by the Third Circuit.

Accordingly, the Court holds that Section 12 of the Clayton Act only authorizes nationwide personal jurisdiction if the statute's special venue provision is satisfied. And because the Court concludes below that venue is not proper under the Clayton Act, Rumble cannot use the Clayton Act's personal jurisdiction provision to establish that the Court has personal jurisdiction over Defendants.

4. Rule 4(k)(2) Does Not Provide the Court with Personal Jurisdiction Over Defendants.

Federal Rule of Civil Procedure Rule 4(k)(2) also does not provide personal jurisdiction over Defendants. "Rule 4(k)(2) provides for ... personal jurisdiction in any district court for cases arising under federal law where [1] the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and [2] the defendant is not subject to jurisdiction in any particular state." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir. 2004); *see also* FED. R. CIV. P. 4(k)(2). With respect to the second requirement, "so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction." *Adams*, 364 F.3d at 651. These two requirements are not satisfied for any Defendant.

APP 26

*i. Rule 4(k)(2) does not provide personal jurisdiction over GroupM, Diageo, and WPP because they have conceded to jurisdiction in New York.*

Rule 4(k)(2) does not provide the Court with personal jurisdiction over GroupM because GroupM has conceded to jurisdiction in the Southern District of New York. *See Adams*, 364 F.3d at 651; Doc. 56, Br. Mot., 12.

Rule 4(k)(2)'s two requirements are also not satisfied for Diageo and WPP. While these two Defendants argue that they do not have sufficient contacts with the United States to satisfy due process concerns, Doc. 56, Br. Mot., 11–12, they have conceded that they would be subject to jurisdiction in the Southern District of New York if the Court finds that they have "sufficient minimum contacts with the United States to satisfy due process." *Id.* at 12–13. Thus, Rule 4(k)(2) cannot possibly give the Court personal jurisdiction over Diageo or WPP. Diageo and WPP either lack sufficient contacts with the United States to satisfy the due process clause. Or they concede that they can be sued in the Southern District of New York, which would also mean that Rule 4(k)(2) does not apply. Either way, one of Rule 4(k)(2)'s requirements is not satisfied with respect to WPP and Diageo. Therefore, Rule 4(k)(2) does not apply to GroupM, Diageo, and WPP, and the Court need not decide whether Diageo and WPP have sufficient minimum contacts with the United States as a whole.

***10** Rumble argues that the Court would only lack jurisdiction under Rule 4(k)(2) if Defendants "prove" that Rule 4(k)(2) does not apply. Doc. 60, Resp., 14. Rumble is incorrect. "The plaintiff bears the burden of establishing personal jurisdiction." *Bailey v. Zehr*, 263 F.3d 163, *2 (5th Cir. 2001). Thus, Defendants do not need to prove that Rule 4(k)(2) does not apply—Rumble needs to establish that 4(k)(2) does apply. *See Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018).

In support of its argument, Rumble takes a Fifth Circuit quote out of context. Doc. 60, Resp., 14 (quoting *Nagravision*, 882 F.3d at 499). In *Nagravision*, the Fifth Circuit held that the defendants had the burden "to affirmatively establish that the court lacked personal jurisdiction under 4(k)(2)" only because the defendants moved to set aside a default judgment on the grounds that the court lacked personal jurisdiction over them. 882 F.3d at 499. Here, Defendants are not attempting to set aside a default judgment, so they do not have the burden to prove anything. Accordingly, the Court rejects Rumble's argument.

*ii. Rule 4(k)(2) does not provide personal jurisdiction over WFA because Rumble has not established that WFA has sufficient contacts with the United States as a whole to satisfy due process.*

WFA did not concede that it is subject to jurisdiction in any specific court in the United States. Instead, it has taken the position "that the Southern District of New York is the appropriate venue to determine whether [WFA] is subject to personal jurisdiction in the United States." Doc. 56, Br. Mot., 13. Thus, WFA contends that this Court should not decide whether WFA is subject to personal jurisdiction in the United States. The Court disagrees. WFA has moved to dismiss this case for lack of personal jurisdiction, which means the Court must determine whether it possesses jurisdiction over WFA. To answer this question, the Court must now decide whether WFA has sufficient minimum contacts with the United States. *See* FED. R. CIV. P. 4(k)(2)(B).

Rumble has not established that WFA has sufficient minimum contacts with the United States as a whole to support personal jurisdiction. Rumble needs to establish that the Court has personal jurisdiction over WFA specifically. *See Calder*, 465 U.S. at 790. ("Each defendant's contacts with the forum State must be assessed individually."). But when discussing the alleged conspiracy throughout its brief and in its Amended Complaint, Rumble generally does not distinguish between the Defendants. *See, e.g.*, Doc. 60, Resp., 12. Such an approach cannot create personal jurisdiction because "plaintiffs may not aggregate defendants' forum contacts and may not establish personal jurisdiction without specifying who did what." *Pearson.*, 133 F.4th at 442 (citation omitted).

The Fifth Circuit's prohibition on "aggregat[ing] defendants' forum contacts" is especially relevant here. When Rumble argues that the "Defendants' global conspiracy ... targeted all U.S.-based generated platforms ... and controlled the advertising decisions of U.S. advertisers," Rumble specifically cites two paragraphs from its Amended Complaint. Doc. 60, Resp., 12 (citing Doc. 13, Am. Compl., ¶¶ 8, 79). But neither of these paragraphs mentions WFA. *See* Doc. 13, Am. Compl., ¶¶ 8, 79. One paragraph just discusses "Defendants and their co-conspirators" without

APP 27

distinguishing between the Defendants and does not specifically discuss WFA. *Id.* ¶ 79.

***11** The other paragraph alleges that WPP and GroupM "agreed not to place client advertisements on platforms like Rumble that do not adopt GARM's one-size-fits-all brand safety standards." *Id.* ¶ 8. And that paragraph alleges that "GARM requires its members to adhere to its policies." *Id.* But this paragraph does not allege that WFA agreed to not advertise on Rumble or that WFA required GARM members to comply with specific policies. *See id.* Therefore, these two paragraphs from the Amended Complaint cannot establish that WFA has sufficient minimum contacts with the United States because they do not discuss WFA at all. *See Pearson*, 133 F.4th at 442. Without specifying what WFA did to further this alleged conspiracy or how WFA directly availed itself of the United States, Rumble cannot establish that WFA has sufficient minimum contacts with the United States to satisfy due process. *See Pearson*, 133 F.4th at 442.

The only action alleged in the Amended Complaint that is specifically attributed to WFA is that WFA co-founded GARM in Brussels and "WFA announced that GARM would discontinue its activities" on August 9, 2024. Doc. 13, Am. Compl., ¶¶ 16, 37. But WFA did not create the purported GARM conspiracy in the United States. Nor does Rumble allege that WFA sent its employees to the United States to further the alleged conspiracy. Additionally, GARM was not created for the express purpose of targeting United States companies or residents. *See id.* ¶ 42 (alleging that "the purpose of GARM" was "to improve the safety of online environments"). Thus, Rumble has failed to identify any acts taken by WFA to target the United States.

And while Rumble alleges that advertisers and advertising agencies—including some defendants in this lawsuit—would boycott platforms that did not comply with GARM's Brand Safety Framework, *see* Doc. 13, Am. Compl., ¶ 49, Rumble did not allege that WFA engaged in such a boycott or directed companies based in the United States to engage in such a boycott, *cf. EuroTec Vertical Flight Sols., LLC. v. Safran Helicopter Engines S.A.A.*, No. 3:15-CV-3454-S, 2019 WL 3503240, at *13 (N.D. Tex. Aug. 1, 2019) (Scholer, J.) (denying a motion to dismiss for lack of personal jurisdiction when the defendant directed Texas-based entities to take specific actions that the plaintiff alleged violated American antitrust law).

The only other contact that WFA has with the United States is its office in New York. Doc. 13, Am. Compl., ¶ 16. However, Rumble does not include any allegations indicating that its claims against WFA arose out of WFA's New York office. Thus, WFA does not have sufficient minimum contacts with the United States as a whole to satisfy due process. *See Revell*, 317 F.3d at 472.

To the extent that Rumble argues that WFA has sufficient minimum contacts with the United States because of GARM's alleged activities, the Court is not convinced. *See* Doc. 60, Resp., 7. The acts of WFA's alleged co-conspirators in furthering the alleged GARM conspiracy cannot be used to establish personal jurisdiction over WFA. "Each defendant's contacts with the forum must be analyzed individually, and a defendant cannot be subject to personal jurisdiction solely because he participated in an alleged conspiracy with a co-conspirator who had contacts with Texas." *Logan Int'l Inc. v. 1556311 Alberta Ltd.*, 929 F.Supp.2d 625, 630–31 (S.D. Tex. 2012). Thus, simply alleging that the GARM conspiracy "require[d] its members to adhere to its policies" cannot be used to establish personal jurisdiction over every co-conspirator. *See* Doc. 13, Am. Compl., ¶ 8. Nor can allegations that WPP and GroupM decided to not advertise on Rumble. *See Logan Int'l Inc.*, 929 F.Supp.2d at 630–31. Instead, Rumble needed to allege how WFA specifically availed itself of the United States in connection with the alleged conspiracy. Rumble failed to do so.

***12** Accordingly, the Court concludes that Rule 4(k)(2) does not provide personal jurisdiction over any of the Defendants.

5. The Court Denies Rumble's Request for Jurisdictional Discovery.

The Court denies Rumble's request to conduct jurisdictional discovery. "[I]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Getagadget, L.L.C. v. Jet Creations Inc.*, No. 19-51019, 2022 WL 964204, at *5 (5th Cir. Mar. 30, 2022).[4] But "[a]s the party opposing dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery." *Davila v. United States*, 713 F.3d 248, 263–64 (5th Cir. 2013).

Here, Rumble has failed to meet its burden for receiving jurisdictional discovery. The facts that Rumble claims it will

APP 28

find in discovery are largely the same allegations in its Amended Complaint. *See* Doc. 60, Resp., 14–15 (arguing that discovery will allow Rumble "to demonstrate that each of the Defendants engaged in activity that was designed to have an effect on digital advertising in Texas"). These allegations are not sufficient to establish personal jurisdiction now, so jurisdictional discovery would be futile. Thus, Rumble has not "present[ed] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between" Defendants and Texas. *See Getagadget*, 2022 WL 964204, at *5. Accordingly, the Court denies Rumble's request for jurisdictional discovery and finds that it does not have personal jurisdiction over any of the Defendants.

*B. The Northern District of Texas is Not a Proper Venue.*

The Court also grants Defendants' Motion to Dismiss because the Northern District of Texas is an improper venue. The Court first concludes that Section 12 of the Clayton Act does not provide venue because no Defendant transacts business in this District. The Court then finds that the general venue statute is also not satisfied here. Lastly, venue is not proper here just because the related X case is pending in the Northern District of Texas.

1. Section 12 of the Clayton Act Does Not Provide Venue Here.

The Clayton Act's special venue provision provides that:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business.

15 U.S.C. § 22. Thus, venue is only proper if Defendants are inhabitants of the Northern District of Texas, if they are found in the Northern District of Texas, or if they transact business in the Northern District of Texas.

***13** Rumble only argues that venue is proper because Defendants transact business in this District. *See* Doc. 60, Resp., 10–11. "[A] corporation transacts business within their forum jurisdictions when a substantial business activity is performed within the jurisdiction with continuity of character, regularity, contemporaneous with the service and not looking toward cessation of business." *Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532–33 (quotation omitted).

Rumble does not allege facts indicating that any Defendant has such substantial business ties with the Northern District of Texas. Instead, the Amended Complaint only includes the conclusory allegation that "each Defendant transacted business ... in this District." Doc. 13, Am. Compl., ¶ 24. Rumble does not include any additional facts to support this conclusory allegation, so the Court will not accept it as true. *See Plotkin*, 407 F.3d at 696.

*i. Diageo does not transact business in the Northern District of Texas.*

Rumble has not sufficiently alleged that Diageo transacts business in the Northern District of Texas. Rumble only alleges that Diageo's subsidiary, Diageo North America, "has an office in this District" and that the subsidiary "engages in a substantial volume of commerce throughout the United States and in this District." Doc. 13, Am. Compl., ¶¶ 18, 23. "A subsidiary's presence in the district cannot be imputed to the parent for venue purposes so long as the two entities maintain formal corporate separateness." *Galderma Lab'ys, L.P. v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 599, 611 (N.D. Tex. 2017) (Lynn, C.J.). Rumble has not alleged any facts to suggest that Diageo and Diageo North America failed to "maintain formal corporate separateness." *See id.* Thus, the Court cannot impute Diageo North America's business activities to Diageo. Therefore, Section 12 of the Clayton Act does not provide venue over Diageo.

*ii. GroupM and WPP do not transact business in the Northern District of Texas.*

Rumble has failed to sufficiently allege that GroupM and WPP transact business in the Northern District of Texas. GroupM and WPP are advertising agencies. Doc. 13, Am. Compl., ¶¶ 19–20. WPP is the parent corporation and GroupM is WPP's subsidiary. *Id.* Rumble alleges that GroupM "engages in a substantial volume of commerce" in the Northern District of Texas, *id.* ¶ 20, and that WPP similarly engages in substantial volume of commerce through GroupM, *id.* ¶ 19. Specifically, Rumble alleges that "GroupM represent[s] advertisers that conduct business in this District,



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

and GroupM advises clients on advertising campaigns that target consumers in this District." *Id.* ¶ 23. These allegations are insufficient to render the Northern District of Texas a proper venue.

As discussed above, the Court cannot impute a subsidiary's activities to its parent corporation if the subsidiary and the parent "maintain formal corporate separateness." *Galderma Lab'ys, L.P.*, 290 F. Supp. 3d at 611. Here, Rumble has failed to allege that WPP and GroupM did not maintain formal corporate separateness, which means that GroupM's activities cannot be imputed to WPP for venue purposes. *See id.*

Regardless, Rumble has failed to allege that GroupM transacts business in the Northern District of Texas. Rumble only alleges that GroupM's *clients* conduct business in the Northern District of Texas. Doc. 13, Am. Compl., ¶ 23. There is nothing to suggest that WPP or GroupM performed "a substantial business activity" when GroupM represented advertisers who independently conduct business in this District. *See Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532–33. And to the extent that Rumble argues that the Court can impute the activities of GroupM's clients to both WPP and GroupM, Rumble cites no authority in support of such a proposition. Accordingly, Section 12 of the Clayton Act does not provide venue over WPP or GroupM.

*iii. WFA does not transact business in the Northern District of Texas.*

***14** Lastly, WFA does not transact business in the Northern District of Texas, which means that Section 12 of the Clayton Act does not provide venue over WFA. Rumble alleges that "WFA ... represent[s] advertisers that conduct business in this District." *Id.* ¶ 23. However, Rumble does not explain how WFA performed "a substantial business activity" by representing advertisers who independently conduct business in the Northern District of Texas. *See Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532–33. Therefore, WFA did not transact business in the Northern District of Texas for the same reasons that GroupM does not transact business in this District.

*iv. No Defendant transacted business in the Northern District of Texas by controlling their members in this District.*

One court in the Northern District of Texas found that a non-profit membership organization transacted business by controlling the activities of its members in this District. *Open Cheer*, 2024 WL 1218573 at *2. In *Open Cheer*, the plaintiff sued several defendants, including a non-profit membership organization that served as a governing body for cheerleading competitions. *Id.* The defendant had thousands of members that resided in the Northern District of Texas, and the defendant regulated its members' activities in the Northern District of Texas, which was one reason the court concluded that the defendant transacted business in this District. *See id.*

Rumble argues that Defendants transact business in this District because they "exercise[ ] significant control over the activity of their members" in the Northern District of Texas as GARM "mandat[es] all members implement its anticompetitive restrictions." Doc. 60, Resp., 11 (citing *Open Cheer*, 2024 WL 1218573 at *2). However, WFA is the only Defendant that is a non-profit membership organization. Diageo, WPP, and GroupM are, presumably, for-profit companies that did not require its members or shareholders to comply with the GARM requirements. *See* Doc. 13, Am. Compl., ¶¶ 18–20. Thus, *Open Cheer* is inapposite with respect to Diageo, WPP, and GroupM.

And with respect to WFA, this case is factually distinguishable from *Open Cheer.* Rumble does not allege that WFA forced any of its members in the Northern District of Texas to comply with GARM's Brand Safety Framework. Instead, Rumble only argues that GARM forced its members to "implement [GARM's] anticompetitive restrictions." Doc. 60, Resp., 16. There are no allegations that WFA conditioned continued membership in the WFA on complying with GARM. In fact, Rumble does not even allege that WFA required WFA's members to comply with GARM's Brand Safety Framework, let alone that WFA required its members located in the Northern District of Texas to comply with the Framework.

And even if WFA required its members to comply with the GARM Brand Safety Framework, that still would not mean that venue is proper in the Northern District of Texas. Rumble alleges that WFA has "members located in this District," Doc. 13, Am. Compl., ¶ 16, but it does not allege how many members are in this District. *See Open Cheer*, 2024 WL 1218573 at *2 (concluding that a non-profit membership organization transacts business in a district when it had thousands of members in the district). So even if WFA required some members in the Northern District of Texas

APP 30

to comply with GARM's Brand Safety Framework, Rumble would still have failed to allege that WFA transacted business of a substantial character because Rumble has not alleged how many WFA members are in this District. *See id.*

Rumble lastly argues that venue is proper under Section 12 of the Clayton Act because "Defendants' actions had an intended effect on business activities in this District." Doc. 60, Resp., 15. This argument lacks merit. Section 12 of the Clayton Act does not provide venue if the defendant *affects* business activities—it only provides venue if the defendant *transacts business* in the district. *See* 15 U.S.C. § 22. Therefore, the generic assertion that Defendants affected "business activity" in the Northern District of Texas does not, without more, mean that this District is a proper venue under the Clayton Act's special venue provision.

***15** In sum, Rumble does not allege any facts suggesting that any Defendant conducts "substantial business activity ... within the [Northern District of Texas] with continuity of character, regularity, contemporaneous with the service and not looking toward cessation of business." *Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532–33. Thus, venue is not proper under Section 12 of the Clayton Act, which also means that Section 12's personal jurisdiction does not apply in this case.

2. The General Federal Venue Statute Does Not Provide Venue.

Rumble argues that this Court is a proper venue under the general federal venue statute, 18 U.S.C. § 1391(b)(1), and the Alien Venue Statute, 18 U.S.C. § 1391(b)(1). Doc. 60, Resp., 16–17. Rumble only argues that venue is proper under these two provisions because it contends that the Court has personal jurisdiction over all four Defendants. *Id.* Because the Court concluded that it does not have personal jurisdiction over any Defendant, the Court rejects this argument.

3. The Related X Case Does Not Make the Court a Proper Venue for This Case.

Lastly, Rumble attempts to use the related X case to establish that venue is proper in this case. Doc. 60, Resp., 17–18. Rumble argues that this Court is a proper venue because Rumble's case and the X case involve "the same antitrust conspiracy and [are] predicated on the same facts." *Id.* at 17. This argument lacks merit. The fact that a similar lawsuit is currently pending[5] before this Court does not mean that this Court is a proper venue for Rumble's lawsuit. Rumble contends that if it filed this case in a different venue, the court would have transferred Rumble's case to the Northern District of Texas "because of the related X Corp. case." *Id.* (citing *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 594 (N.D. Tex. 2003) (Kaplan, M.J.)). In support of this argument, Rumble again quotes a case out of context.

In *DataTreasury Corp.*, the court granted a motion to transfer under 28 U.S.C. § 1404(a). 243 F. Supp. 2d at 593. Section 1404(a) provides that "a district court may transfer any civil action to any other district or division *where it might have been brought.*" 28 U.S.C. § 1404(a) (emphasis added). Thus, the *DataTreasury Corp.* court only considered related litigation in the Eastern District of Texas *after* first concluding that the Eastern District was a proper venue. *See* 243 F. Supp. 2d at 594. But the Eastern District of Texas was not a proper venue because of the related case. Accordingly, the Court rejects this argument.

*C. The Court Denies as Moot GroupM's Motion to Transfer to the Southern District of New York.*

GroupM moves to transfer this case to the Southern District of New York. Doc. 65, Br. Mot. Transfer, 1. However, GroupM only asks that the Court transfer this case "[i]f this case is not dismissed." *Id.* Because the Court is dismissing this case for lack of personal jurisdiction and improper venue, the Court denies GroupM's Motion to Transfer (Doc. 64) as moot.

* * *

***16** In sum, the Court agrees with Defendants that "[t]his case has nothing to do with Texas, much less the Northern District of Texas." Doc. 56, Br. Mot., 1. Accordingly, the Court does not have personal jurisdiction over Defendants, and this Court is not a proper venue for any of Rumble's claims. Because the Court grants Defendants' Motion to Dismiss on personal jurisdiction and venue grounds, the Court will not address the merits of Rumble's claims.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 55). This case is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction and improper venue. The Court **DENIES AS**


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**MOOT** GroupM's Motion to Transfer (Doc. 64). A final judgment will follow.

**SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2345076

## Footnotes

1 The Court can consider GARM's Brand Safety Framework in the Motion to Dismiss. Documents attached to the motion to dismiss are considered part of the pleadings if they are (1) referenced in the complaint and (2) central to the plaintiff's claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Here, the Brand Safety Framework is incorporated into the pleadings because Rumble quotes the Framework in the Amended Complaint, Doc. 13, Am. Compl., ¶ 47, and the Framework is central to Rumble's antitrust claims.

2 WFA suggests that the Court could address whether the Northern District of Texas is a proper venue before addressing whether the Court has personal jurisdiction over Defendants. Doc. 56, Br. Mot., 13 n.7. Because the personal jurisdiction and venue questions significantly overlap, the Court needs to address them both.

3 Section 4 of the Clayton Act also allows plaintiffs to initiate antitrust cases "in the district in which the defendant resides or is found or has an agent." 15 U.S.C. § 15. But this provision is not at issue here.

4 In *Getagadget*, the Fifth Circuit noted that it was unclear whether a plaintiff requesting jurisdictional discovery in response to a motion to dismiss was procedurally proper. 2022 WL 964204, at *5. This Court will follow *Getagadget*'s lead and assume without deciding that Rumble properly raised the issue of jurisdictional discovery in its Response to Defendants' Motion to Dismiss. *See id.*

5 The Court also notes that several Defendants in the X case have filed motions arguing that the claims against them should be dismissed for lack of personal jurisdiction and improper venue. *See, e.g.*, Defendant Shell Brand International AG's Br. in Support of Mot. to Dismiss for Lack of Personal Jurisdiction and Improper Venue, 18–20, *X Corp v. World Federation of Advertisers et al.*, No. 7:24-cv-00114-B, (N.D. Tex. May 14, 2025), ECF No. 143. Thus, it is an open question whether the Northern District of Texas is a proper venue for some of the claims asserted in the X case.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FEDERAL TRADE COMMISSION, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 26-532 (JEB)** |

**MEMORANDUM OPINION AND ORDER**

When parties seek an extraordinary remedy, they must make an extraordinary showing. After expedited briefing and a hearing yesterday, the Court finds that Plaintiff World Professional Association for Transgender Health has not made that showing in its request for a Temporary Restraining Order to block the Federal Trade Commission's enforcement action in a different forum. It therefore will deny WPATH's Motion for Temporary Restraining Order.

To obtain a TRO under Federal Rule of Civil Procedure 65(b), a movant must show that (1) it "is likely to succeed on the merits"; (2) it "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the movant's] favor"; and (4) such order "is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (standard for preliminary injunction); see also Sterling Comm. Credit — Mich., LLC v. Phoenix Indus. I, LLC, 762 F. Supp. 2d 8, 13 (D.D.C. 2011) ("same substantive standard [for preliminary injunction] . . . applies" to TRO).

Earlier this year, WPATH sued the FTC in this Court alleging that the Commission's investigative efforts violated its First Amendment rights. See ECF No. 1 (Compl.). In that challenge, this Court in May partially granted WPATH's Motion for a Preliminary Injunction halting the "implement[ation] or enforc[ement of]" the "issued CID" that the FTC had served on WPATH seeking a broad range of internal records. See ECF No. 41 (Mem. Op.) at 11. The Court held that WPATH had shown that it was likely to succeed on the merits of its claim that the FTC issued the CID in retaliation for WPATH's constitutionally protected speech and that Plaintiff faced irreparable harm without preliminary relief. Id. at 5–6, 9–10. The Court declined, however, to grant WPATH broader relief, confining its holding to the facts that gave rise to the specific CID before it. Id. at 11.

The FTC and several states then brought a separate enforcement action against WPATH in the Northern District of Texas. FTC v. WPATH, No. 26-748, ECF No. 1 (FTC Compl.) (N.D. Tex. June 17, 2026). They allege that WPATH violated the FTC Act's prohibitions on unfair or deceptive trade practices and false advertising. Id. at 111. WPATH returned to this Court and sought a TRO enjoining the FTC from pursuing its Texas litigation. See ECF No. 45 (Mot. TRO). Plaintiff contends that the FTC's suit concerns the exact same subject matter as its previously filed pre-enforcement challenge in this Court and would frustrate the pre-existing preliminary injunction. See ECF No. 45-1 (Mem. TRO) at 13, 21. It asserts that the FTC should proceed in this Court, not the Northern District of Texas, and it seeks an anti-suit injunction to that effect. Id. at 2.

One of WPATH's grounds for emergency relief is its contention that halting the FTC's progress in the Northern District of Texas is necessary to protect this Court's jurisdiction over its prior injunction. Id. at 21. The D.C. Circuit has held that anti-suit injunctions that "protect the

ordering court's own jurisdiction" are more readily justified than ones whose "only purpose is to destroy" another court's jurisdiction. NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain, 112 F.4th 1088, 1105 (D.C. Cir. 2024) (quotation marks omitted). Where a movant can demonstrate that an anti-suit injunction is required to preserve the court's jurisdiction, then, emergency relief might well be warranted. Id. at 1106 (such injunction warranted to prevent "interfere[nce] with the district court's jurisdiction") (quotation marks omitted).

WPATH has not demonstrated such a threat. The Court sees no potential for "frustration of the preliminary injunction [it] has already issued" from the separate Texas litigation. See Mem. TRO at 13 (quotation marks omitted). However the parties characterize the ongoing action in the Northern District of Texas, it is not an attempt to enforce the CID, which the FTC has withdrawn. See also ECF No. 43 (Not. Withdrawal). And, as discussed above, this Court's only decision was confined to the CID. WPATH points out that the FTC's Texas suit attacks certain of its statements that bear a striking resemblance to the "Covered Statements" that the CID targeted, which could open it up to discovery in Texas of the very same information. See Mem. TRO at 11–13. But the Court's injunction did not protect WPATH from complying with all information-seeking processes — only the CID that the Court held was likely retaliatory. This Court retains its ability to consider future matters raised by any party. There is thus no threat to this Court's jurisdiction from different proceedings in a different court.

WPATH's remaining justification for emergency relief halting the Texas proceedings — that the FTC's suit is duplicative of litigation in this Court, id. at 13, 15 — seeks an anti-suit injunction where no jurisdictional issues are implicated. A truly compelling showing would thus be needed to warrant this Court's disrupting proceedings in a coordinate district and doing so on an emergency basis with truncated briefing and consideration.

WPATH has not made such a showing. The Court is skeptical that either Federal Rule of Civil Procedure 13(a) — which requires that parties bring related claims as compulsory counterclaims in an initial suit — or the rationale for avoiding duplicative litigation applies to actions by the Government to enforce the law. Several courts have reasoned that a plaintiff who files a pre-enforcement challenge to stop the FTC from obtaining information cannot then force the Commission to bring later enforcement actions as compulsory counterclaims in plaintiff's chosen forum. See, e.g., FTC v. Carter, 464 F. Supp. 633, 639 (D.D.C. 1979) (FTC not required to seek to enforce subpoena "as a counterclaim to respondents' pre[-]enforcement injunctive action brought in New York"); In re FTC Corp. Patterns Rep. Litig., 432 F. Supp. 274, 283–84 (D.D.C. 1977) (expressing "hesitancy" at "treat[ing] an enforcement action as a compulsory counterclaim"); A. O. Smith v. FTC, 417 F. Supp. 1068, 1088 (D. Del. 1976) (similar); Audubon Life Ins. Co. v. FTC, 543 F. Supp. 1362, 1370 (M.D. La. 1982) (FTC Act establishes "statutory scheme" that plaintiff cannot circumvent by compelling counterclaim).

As the Court mentioned during yesterday's hearing, linking a suit by the FTC to pre-enforcement-investigation challenges risks allowing plaintiffs "to choose the forum and pace of the litigation simply by bringing pre[-]enforcement actions." In re FTC, 432 F. Supp. at 284. Courts have been hesitant to force government agencies to comply with a counterclaim requirement that would compress their investigative timelines and force hasty litigation decisions. Cf. Caleshu v. United States, 570 F.2d 711, 713–14 (8th Cir. 1978) (requiring tax-"collection action to be asserted as a compulsory counterclaim in a [taxpayer's] refund suit . . . .would drastically reduce the government's collection time period"). This Court is thus not prepared to conclude that an action that "involve[s] assertion of rights under a Congressionally mandated enforcement scheme" is akin to a private dispute between parties that

should reasonably be consolidated in one forum and time. See In re FTC, 432 F. Supp. at 284. And before one court acts to terminate another's jurisdiction, it must be on sure footing indeed.

The Court's conclusion that immediate action is unwarranted is bolstered by WPATH's inability to show that it currently faces irreparable harm. A temporary restraining order "is an emergency procedure that is appropriate only when an applicant is in need [of] immediate relief." 11A Wright & Miller's Federal Practice & Procedure § 2951 (3d ed. Apr. 2026 update). The harm must be "great" in its impact and "certain" in its arrival to warrant preemptive action before a court can fully ascertain the merits of the parties' positions. Wis. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985). WPATH cites two sources of harm: violation of its First Amendment rights by the Texas litigation and monetary harm incurred by "litigating two separate cases." Mem. TRO at 23. To find the existence of the first harm, however, this Court must hold that being subject to a suit in the Northern District of Texas is itself a violation of WPATH's First Amendment rights — else no harm would flow. While WPATH hinges its argument on the Court's May decision, that holding extended only to the facts before it: the lack of justification for the sweeping CID the FTC issued to WPATH. See Mem. Op. at 7, 11. The Court was not prepared in May to prejudge every permutation of the FTC's future actions as unconstitutionally retaliatory, and its role is not to do so now. Without such a holding, WPATH is subject only to an entity's standard obligation to litigate once a government agency brings a claim against it — that is, no harm at all.

Nor does the cost of maintaining two suits warrant emergency relief. The dual litigation is undoubtedly onerous to WPATH. Preliminary relief, however, requires significant monetary loss. Clevinger v. Advoc. Holdings, Inc., 134 F.4th 1230, 1234 (D.C. Cir. 2025) ("Mere injuries . . . in terms of money, time and energy . . . are not enough.") (quotation marks omitted). "[T]he

expense and disruption of defending oneself in protracted adjudicatory proceedings is not an irreparable harm." John Doe Co. v. CFPB, 849 F.3d 1129, 1135 (D.C. Cir. 2017) (quotation marks and alterations omitted) (company required to defend itself in separate enforcement action not irreparably injured). Nor has litigation in this Court progressed to the point where proceedings in Texas would constitute "a vexatious attempt to relitigate issues already decided." Am. Horse Protection Ass'n v. Lyng, 690 F. Supp. 40, 44 (D.D.C. 1988); cf. Rich v. Butowsky, 2020 WL 7016436, at *2 (D.D.C. Mar. 31, 2020) (irreparable harm where counsel is "forced to devote resources to litigating" second suit and parties had already "invested significant time and resources in advancing fact discovery" in first suit). As the Court noted during yesterday's hearing, WPATH is free to cite this Court's prior Opinion in any attempt to stave off discovery in the Texas action.

Without a showing that Plaintiff is likely to succeed on its Motion or faces irreparable harm, the Court ORDERS that WPATH's Motion for Temporary Restraining Order is DENIED.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: July 10, 2026