**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

FEDERAL TRADE COMMISSION, et al.,

*Plaintiffs*,

*v.*

WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, INC., a Texas corporation, et al.,

*Defendants*.

Case No. 4:26-cv-00748-O

**DEFENDANT WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE**

Sarah Cummings Stewart
**REED SMITH LLP**
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Tel: (469) 680-4200
Fax: (469) 680-4299
sarah.stewart@reedsmith.com

R. Jeffrey Layne
**REED SMITH LLP**
401 Congress Avenue, Suite 1800
Austin, TX 78701
Tel: (512) 623-1801
Fax: (512) 623-1802
jlayne@reedsmith.com

Caleb Hayes-Deats*
Abbe David Lowell [DC Bar No. 358651]
Schuyler J. Standley*
**LOWELL & ASSOCIATES, PLLC**
1250 H Street, N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
SStandley@lowellandassociates.com

**Admitted Pro hac vice*

*Attorneys for Defendant WPATH*

## INTRODUCTION

Plaintiffs' Opposition (ECF 89) does not identify a single contact between WPATH and the Northern District of Texas. Instead, Plaintiffs rest their venue position on one syllogism: that Section 53(b) of the FTC Act authorizes nationwide service of process. In other words, Plaintiffs claim the FTC Act gives every federal court personal jurisdiction over WPATH, which means WPATH "resides" in every district under 28 U.S.C. § 1391(c)(2), making venue proper everywhere. Opp. 1, 5–6. Plaintiffs' reading would allow the FTC to sue any corporation in any of the country's ninety-four districts. That result cannot be reconciled with § 53(b)'s own "resides or transacts business" limitation. It also cannot be reconciled with § 53(b)'s provision allowing courts to add parties "without regard to whether venue is otherwise proper," with § 1391(d)'s district-by-district test, or with this District's reasoning in *Rumble, Inc. v. World Federation of Advertisers*, 2025 WL 2345076 (N.D. Tex. Aug. 13, 2025).

Plaintiffs likewise do not argue that a substantial part of the events giving rise to their claims occurred in this District. They do not defend the three 2018 third-party statements on which their Amended Complaint relies. They do not argue that WPATH transacts business here. And they do not dispute the chronology showing that this action was filed after, and because of, the District of Columbia court's rulings against the FTC. On transfer, Plaintiffs offer generic time-to-trial statistics and an appeal to deference to their own choice of forum. Neither overcomes the absence of any connection between this dispute and the Northern District of Texas. The Court should dismiss this action or, in the alternative, transfer it under 1406(a) or 1404(b).

## ARGUMENT

### I. Venue Is Improper in the Northern District of Texas.

#### A. Plaintiffs Concede the Dispositive Venue Points.

Plaintiffs bear the burden of establishing venue once it is challenged. Mem. 2 (citing *Utah v. Walsh*, 2023 WL 2663256). Yet Plaintiffs fail to respond to several of WPATH's arguments. First, Plaintiffs make no argument under 28 U.S.C. § 1391(b)(2). WPATH showed that the only conduct Plaintiffs identify in this District consists of statements allegedly made by third parties in 2018. Those statements predate Texas's 2023 enactment of Senate Bill 14 and cannot support a claim for prospective injunctive relief. Mem. 6–7. Plaintiffs do not respond. Second, Plaintiffs do not contend that WPATH "transacts business" in this District under the first clause of 15 U.S.C. § 53(b). Third, Plaintiffs do not attempt to show that WPATH's district-specific contacts would support general or specific jurisdiction here. Nor do they respond to WPATH's showing that a passive, internationally accessible website does not suffice. Mem. 4–5 (citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999); *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002)). Arguments not addressed in an opposition are waived or abandoned. *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002); *Hill v. Schilling*, 2026 WL 252099, at *10–11 (N.D. Tex. Jan. 30, 2026). Plaintiffs' venue position therefore stands or falls on their nationwide-residence theory, and that theory fails.

#### B. Nationwide Service Under § 53(b) Does Not Answer the Venue Question.

Plaintiffs devote most of their jurisdictional argument to the proposition that § 53(b)'s service clause permits jurisdiction based on contacts with the United States as a whole. Opp. 4–5 (citing *Busch v. Buchman, Buchman & O'Brien, L. Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994); *Fuld v. Palestine Liberation Org.*, 606 U.S. 1 (2025)). Even if § 53(b) supplies Fifth Amendment jurisdiction, it does not establish venue. *Driscoll v. New Orleans Steamboat Co.*, 633 F.2d 1158,

1159 n.1 (5th Cir. 1981) ("Venue is distinct from jurisdiction."). *See also Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). *Fuld* addressed the constitutional limits on a federal court's exercise of personal jurisdiction. It did not address statutory venue. Neither do *Busch* or *Luallen*. Plaintiffs' jurisdictional authorities therefore leave the venue question untouched.

### C. Plaintiffs' Reading of § 1391(c)(2) and (d) Is Circular and Would Eliminate Venue Limits for FTC Actions.

Plaintiffs reason that because WPATH is subject to personal jurisdiction in every district, it resides in every district under § 1391(c)(2), and that § 1391(d) is satisfied for the same reason. Opp. 5–6. That reasoning misreads § 1391(d). In a State with multiple districts, a corporation resides "in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d). The provision asks about the corporation's contacts with the district. It calls for a hypothetical, state-style minimum-contacts analysis in which the district is treated as its own sovereign. Contacts with the United States as a whole are, by definition, not contacts with any particular district. If nationwide service could satisfy § 1391(d), the provision serves no purpose when a nationwide-service statute applied. Courts have refused to read the statute that way. *See KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 726–30 (7th Cir. 2013) (nationwide service cannot render "the venue inquiry meaningless," and § 1391(d) remains relevant); *Clark v. McDonald's Corp.*, 2023 U.S. Dist. LEXIS 51973, at *9–12 & n.2 (S.D. Ill. Mar. 27, 2023) (requiring district-by-district analysis).

Plaintiffs never perform that district-specific analysis. They identify no WPATH office, employee, board member, or targeted conduct in this District. WPATH's registered agent and registered office are in Austin, in the Western District. Lewis Decl. ¶ 10 & Ex. 4. And WPATH's Texas incorporation was in Galveston, in the Southern District. *Id.* ¶ 3 & Ex. 2. Incorporation in a multi-district State does not establish residence in every district of that State. *See Commins v. NES*

*Rentals Holdings, Inc.*, 2017 WL 3485005, at *3 (W.D. Ky. Aug. 14, 2017); *Patrick Henry Med., L.L.C. v. Prochant, Inc.*, 2021 WL 5578680, at *2–3 (E.D. Tex. Dec. 15, 2021); *A-7 Austin, LLC v. Bridgestone Hosepower, LLC*, 2024 WL 3851596, at *5 (N.D. Tex. Aug. 15, 2024).

### D. *Rumble* Confirms That Plaintiffs' Theory Would Render § 53(b)'s Venue Clause Superfluous.

Plaintiffs attempt to dismiss the Clayton Act case law because 15 U.S.C. § 22 places its venue and service clauses in a single sentence separated by a semicolon. Opp. 6–7. The decisive reasoning in those cases, however, does not depend on punctuation. *Rumble* explained that if a nationwide-service provision, combined with § 1391(c)(2), made venue proper wherever personal jurisdiction exists, then "no antitrust plaintiff would ever need to use the Clayton Act's special venue provision," because "the general venue statute would always authorize venue over antitrust cases brought against a corporation." *Rumble*, 2025 WL 2345076, at *8 (ECF 89-2, APP 25); *accord KM Enters.*, 725 F.3d at 729. *Rumble* then held that venue was improper because the plaintiff alleged no district-specific business activity, rejected the argument that effects on business in the District establish venue, and denied jurisdictional discovery. *Id.* at *12–15.

That reasoning applies with greater force to § 53(b). Under Plaintiffs' reading, the clause permitting suit "where such person, partnership, or corporation resides or transacts business" would never matter for a corporate defendant, because every corporation would "reside" in every district by virtue of nationwide service.

### E. The Text and Structure of § 53(b) Presuppose Meaningful Venue Limits.

Plaintiffs argue that § 53(b)'s use of "or" allows the FTC to choose between the Act's own venue clause and § 1391. Opp. 6–7. WPATH agrees that the statute offers alternatives. But the second alternative, "wherever venue is proper under section 1391 of title 28," incorporates § 1391

as written, and that includes § 1391(d)'s district-specific residence rule for multi-district States. Plaintiffs cannot borrow § 1391(c)(2) while disregarding § 1391(d).

Plaintiffs also overlook the sentence that sits between § 53(b)'s venue and service clauses. It authorizes a court, in the interests of justice, to add other parties "without regard to whether venue is otherwise proper in the district in which the suit is brought." 15 U.S.C. § 53(b). That sentence would be meaningless if, as Plaintiffs contend, venue was proper for every corporation in every district. Congress plainly contemplated that venue in § 13(b) actions would sometimes be improper.

Plaintiffs' reliance on *Connecticut National Bank v. Germain*, 503 U.S. 249 (1992), and *Lamie v. U.S. Trustee*, 540 U.S. 526 (2004), does not help them. *Germain* observed that "[r]edundancies across statutes are not unusual events." 503 U.S. at 253. The redundancy Plaintiffs' reading creates is not across statutes; it sits within a single provision of § 53(b), where the canon against surplusage applies with the most force. *See Corley v. United States*, 556 U.S. 303, 314 (2009). And *In re Walter Energy, Inc.*, 911 F.3d 1121, 1146 (11th Cir. 2018), on which Plaintiffs rely, asks whether overlapping provisions remain "operative . . . in at least some situations." Under Plaintiffs' reading, § 53(b)'s residence clause would never be operative for a corporate defendant.

**F. Plaintiffs' District Court Authorities Are Inapposite.**

None of the district court decisions Plaintiffs cite is binding. None addresses § 53(b)'s party-joinder sentence, and none engages with the surplusage reasoning of *KM Enterprises.* And *Rumble*. *FTC v. Bay Area Business Council, Inc.*, 2003 WL 21003711, at *2 (N.D. Ill. May 1, 2003), resolved a motion to strike affirmative defenses in a few sentences, after the initial defendants had stipulated to venue, and without discussing § 1391(d). *FTC v. Cleverlink Trading Ltd.*, 2006 WL 1735276, at *3–4 (N.D. Ill. June 19, 2006), addressed personal jurisdiction over a

third-party relief defendant in contempt proceedings; it is not a venue decision at all. *FTC v. Quincy Bioscience Holding Co.*, 389 F. Supp. 3d 211, 217–18 (S.D.N.Y. 2019), which Plaintiffs did not include in their appendix, neither interpreted § 1391(d) nor addressed the multi district-state residency question presented here. Rather, the court addressed the sufficiency of FTC's fraud allegations and whether it could exercise personal jurisdiction over two individual defendants based on their conduct in the state of New York. *Id.* at 217–18. Moreover, the court was evaluating defendants alleged to have directed conduct into New York, meaning it was not confronted with the question presented here: whether venue may be established in a particular district absent district-specific contacts under § 1391(d). *Id.* The court's analysis concerned nationwide service of process and personal jurisdiction, not venue.

**G. Plaintiffs' Texas-Incorporation Evidence Does Not Establish Residence in This District.**

Plaintiffs emphasize that WPATH is a Texas corporation whose bylaws and 2024 Form 990 identify Texas as its domicile. Opp. 1–2; Bugbee Decl. ¶ 10. WPATH has never disputed its Texas incorporation. Lewis Decl. ¶¶ 3–4. Incorporation, however, speaks to the State, not to the district, and § 1391(d) controls in multi-district Texas. Plaintiffs also mischaracterize WPATH's Montana brief, asserting that WPATH said it "is incorporated in Texas" without claiming any other connection. Opp. 2. The brief Plaintiffs' own investigator attached states that WPATH "is incorporated in Texas and headquartered in Illinois." Bugbee Decl. ¶ 11; ECF 89-1 at 53. That statement confirms WPATH's Illinois headquarters. It does nothing to place WPATH in the Northern District of Texas.

**H. Plaintiffs' Request for Venue Discovery Should Be Denied.**

Plaintiffs request, in a single sentence of their relief section, discovery into WPATH's contacts with Texas, Illinois, and the District of Columbia. Opp. 12 (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978)). The party seeking jurisdictional discovery "bear[s] the burden of demonstrating the necessity of discovery" and must present "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Rumble*, 2025 WL 2345076, at *12 (quoting *Davila v. United States*, 713 F.3d 248, 263–64 (5th Cir. 2013), and *Getagadget, L.L.C. v. Jet Creations Inc.*, 2022 WL 964204, at *5 (5th Cir. Mar. 30, 2022)). Plaintiffs identify no fact they expect to uncover that would place WPATH's conduct in this District. Their request should also be viewed in light of the history of this dispute. Plaintiffs seek, through discovery, the very categories of information covered by the civil investigative demand that the District of Columbia court enjoined and the FTC later withdrew. Mem. 7–8.

## II. Alternatively, the Court Should Transfer This Action Under § 1404(a).

### A. Plaintiffs' Choice of Forum Warrants Little Weight.

Plaintiffs invoke the deference owed to a plaintiff's choice of forum, which they contend is heightened under a special venue statute. Opp. 8 (citing *FTC v. Big Dog Solutions LLC*, 2016 WL 5391391, at *2 (N.D. Ill. Sept. 27, 2016)). Under *In re Volkswagen of America, Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) (en banc), the plaintiff's choice is reflected in the movant's good-cause burden rather than treated as an independent factor. *See also In re Clarke*, 94 F.4th 502 (5th Cir. 2024) (acknowledging that plaintiff's choice of forum is given *some* weight but that transfer is proper "when the moving party 'clearly establishes good cause'") (citation omitted); *In re TikTok, Inc.*, 85 F.4th 352, 366 (5th Cir. 2023) (ordering transfer where the chosen forum was "wholly unconnected to the underlying dispute" where plaintiff's choice of forum was not considered as part of the § 1404(a) factor analysis); *In re Chamber of Com.*, 105 F.4th 297, 310 n.41 (5th Cir. 2024) (giving some weight to plaintiffs' chosen forum, but evaluating transfer based

on whether the movant carried its good-cause burden). Any deference afforded to Plaintiffs' choice is limited where the chosen forum bears little connection to the underling dispute. *See In re TikTok, Inc.*, 85 F.4th 352, 366 (5th Cir. 2023); *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013) (ordering transfer where "the vast majority of the events giving rise to this suit occurred" in the transferee district). In *Big Dog*, the FTC investigated the case from its office in the chosen district, more than 1,000 consumers there had been targeted, and where numerous third-party witnesses were located or willing to travel to that district. ECF 89-2, APP 5–8. Here, the FTC's investigators and trial counsel are based in Washington, D.C., Bugbee Decl. ¶ 1; Opp. 13, and Plaintiffs identify only three Texas declarants, none of whom reside in the Northern District.

**B. The Private-Interest Factors Favor Transfer.**

**Access to sources of proof**. Plaintiffs suggest that because Veritas manages other associations from the same East Dundee address, WPATH is not "headquartered in Illinois in any real sense." Opp. 9; Bugbee Decl. ¶¶ 12, 14. The record is unrebutted that WPATH maintains its offices and business records at its principal place of business in East Dundee, Illinois. Lewis Decl. ¶ 5. Plaintiffs' own investigator confirms that Veritas manages WPATH from that address. Bugbee Decl. ¶ 12. WPATH's Texas certificate of termination likewise lists its governing persons at that address. Lewis Decl. Ex. 3. That Veritas serves other organizations does not make WPATH's records and operations any less located in Illinois.

**Availability of compulsory process and cost of attendance for witnesses**. Plaintiffs fault WPATH for not identifying its witnesses and their expected testimony. Opp. 10 (citing *Hathcock v. BNSF Ry. Co.*, 2014 WL 1660633, at *2 (E.D. Ark. Apr. 24, 2014)). *Hathcock*, however, granted transfer once the movant specified its witnesses. ECF 89-2, APP 17–18. WPATH's key witnesses are Executive Director Leo Lewis (D.C.) regarding WPATH's operations and communications; the SOC-8 Chairs and WPATH's President (Europe) regarding the development and publication

of SOC-8; and Veritas personnel (Illinois) regarding WPATH's records and administration. Plaintiffs' own showing, moreover, undercuts their position. They identify only two declarants who reside in Texas. Their fourteen additional potential witnesses are "spread throughout the country," and seven of the eight hospitals the FTC has subpoenaed are outside Texas. Opp. 10 & n.9. International witnesses traveling from Europe have ready and faster access to D.C.

**Other practical problems**. Related litigation between WPATH and the FTC is pending before Chief Judge Boasberg, who is already familiar with the civil investigative demand and with the statements at issue. Transfer to the District of Columbia would avoid inconsistent rulings on discovery directed at those same statements and would conserve judicial resources.

**C. The Public-Interest Factors Favor Transfer.**

**Court congestion**. Plaintiffs rely on median time-to-trial statistics for all civil cases. Opp. 11; Bugbee Decl. ¶ 9. Plaintiffs' own authority recognized that such statistics are "relatively meaningless" because they "consist of averages for cases of all types." *Big Dog*, 2016 WL 5391391, at *4 (ECF 89-2, APP 7). Plaintiffs' asserted urgency, that "children are being injured every day," Opp. 1, is also difficult to square with their reliance on statements made in 2018, before Texas prohibited the care at issue and in states where this care is now banned, meaning that any alleged injury is no ongoing.

**Local interest**. Plaintiffs contend that WPATH's Texas incorporation gives this District a local interest. Opp. 9–10. The local-interest factor looks to the significant connections between a particular venue and the events giving rise to the suit, not to a corporate charter. Texas has prohibited the care at issue since 2023. Texas's participation as a co-plaintiff does not create a connection to Fort Worth; the Attorney General's Consumer Protection Division litigates from Austin. Opp. 17. By contrast, Illinois has an interest in claims against a nonprofit headquartered there, and the District of Columbia has an interest in the related dispute already pending there.

**Familiarity with governing law and conflicts of law**. The parties agree these factors are neutral. Opp. 9.

### D. The Record of Forum Shopping Is Relevant and Unrebutted.

Plaintiffs dismiss WPATH's forum-shopping showing as "alarmism" and argue that if the FTC were forum shopping, the District of Columbia court "would have accepted WPATH's plea to enjoin this suit." Opp. 12. That court's July 10, 2026 order decided only whether WPATH had made the extraordinary showing required for an emergency anti-suit injunction. It turned on the absence of a threat to that court's jurisdiction and the absence of irreparable harm. ECF 89-2, APP 33–38. The order did not address venue or § 1404(a), and it made no finding that the FTC had not forum shopped. To the contrary, the court acknowledged that the Texas suit targets statements bearing "a striking resemblance" to those the civil investigative demand targeted, and it advised that WPATH "is free to cite [that] Court's prior Opinion in any attempt to stave off discovery in the Texas action." *Id.* at APP 35, 38. Those observations favor transfer to the court already familiar with the record.

## CONCLUSION

For these reasons, and those set forth in WPATH's Memorandum, WPATH respectfully requests that the Court dismiss this action under Rule 12(b)(2), Rule 12(b)(3), and 28 U.S.C. § 1406(a), and deny Plaintiffs' request for venue discovery. In the alternative, WPATH requests that the Court transfer this action to the United States District Court for the District of Columbia or the Northern District of Illinois under 28 U.S.C. § 1406(a) or § 1404(b).

Dated: October 13, 2026

Respectfully Submitted,

*/s/ Sarah Cummings Stewart*
Sarah Cummings Stewart
REED SMITH LLP
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Tel: (469) 680-4200
Fax: (469) 680-4299
sarah.stewart@reedsmith.com

R. Jeffrey Layne
REED SMITH LLP
401 Congress Avenue, Suite 1800
Austin, TX 78701
Tel: (512) 623-1801
Fax: (512) 623-1802
jlayne@reedsmith.com

Caleb Hayes-Deats*
Abbe David Lowell [DC Bar No. 358651]
Schuyler J. Standley*
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
SStandley@lowellandassociates.com

**Admitted Pro hac vice*

**Attorneys for Defendant WPATH**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on October 13, 2026, a true and correct copy of the foregoing document was filed with the Clerk of Court via the CM/ECF system, causing it to be served electronically on all counsel of record.

/s/ *Sarah Cummings Stewart*
Sarah Cummings Stewart