**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:26-cv-00748-O |
| | § | |
| WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, INC., a Texas corporation, et al., | § § § | |
| | § | |
| Defendants. | § | |
| | § | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO STAY DISCOVERY PENDING RESOLUTION OF THE DEFENDANTS' MOTION TO DISMISS AND MOTION TO TRANSFER VENUE**

**Table of Contents**


INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 6

I. LEGAL STANDARD ........ 6

II. ANALYSIS ........ 7

A. A Stay Will Prevent Undue Burden to WPATH, Third Parties, Other District Courts, and Other States. ........ 8

B. The First Amendment Requires a Stay. ........ 12

C. A Stay of Discovery Would Not Cause Plaintiffs Hardship. ........ 15

CONCLUSION ........ 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AMG Cap. Mgmt., LLC v. FTC*,
593 U.S. 67 (2021)....9, 11

*Borough of Duryea, Pa. v. Guarnieri*,
564 U.S. 379 (2011)....14

*Brown v. DFS Servs., L.L.C.*,
434 F. App'x 347 (5th Cir. 2011)....7

*Conquest v. Camber Corp.*,
No. 5:13-cv-1108-DAE, 2014 WL 172500 (W.D. Tex. Jan. 13, 2014)....15

*Fujita v. United States*,
416 F. App'x 400 (5th Cir. 2011)....6, 8

*Glazer's Wholesale Drug Co., Inc. v. Klein Foods, Inc.*,
No. 3:08-cv-774-L, 2008 WL 2930482 (N.D. Tex. July 23, 2008)....6, 16

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)....7

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
641 F.3d 470 (10th Cir. 2011)....13

*Pease v. SEC*,
350 F.R.D. 275 (W.D. Tex. 2025)....6, 7, 8

*Perry v. Schwarzenegger*,
591 F.3d 1147 (9th Cir. 2010)....13

*Petrus v. Bowen*,
833 F.2d 581 (5th Cir. 1987)....6

*Primesource Bldg. Prod., Inc. v. Lee Grp. Int'l, Inc.*,
No. 3:19-cv-02878-X, 2020 WL 6140462 (N.D. Tex. Aug. 12, 2020)....7

*Ray-Sampson v. Uplift Educ.*,
No. 3:24-cv-2967-E-BN, 2026 WL 104247 (N.D. Tex. Apr. 16, 2026)....6

*Sapp v. Mem'l Hermann Healthcare Sys.*,
406 F. App'x 866 (5th Cir. 2010) (per curiam)....7, 12

*Schoen v. Underwood*,
No. W-11-CA-00016, 2011 WL 13238322 (W.D. Tex. July 18, 2011) .................................12

*Torrey v. Infectious Diseases Soc'y of Am.*,
86 F.4th 701 (5th Cir. 2023) ..........................................................................3, 11

*Von Drake v. NBC*,
No. 3:04-cv-0652, 2004 WL 1144142 (N.D. Tex. May 20, 2004) .................................7, 8, 15

*Whole Woman's Health v. Smith*,
896 F.3d 362 (5th Cir. 2018) ..........................................................................13

*WPATH v. FTC*,
No. 26-532 (JEB), 2026 WL 1999008 (D.D.C. July 10, 2026) .............................................13

*WPATH v. FTC*,
No. 26-cv-532 (JEB), 2026 WL 1257321 (D.D.C. May 7, 2026) .................................. *passim*

*X Corp. v. Media Matters for Am.*,
No. 4:23-CV-01175-O, 2024 WL 4416887 (N.D. Tex. Sept. 27, 2024) .......................1, 12, 13

*X Corp. v. Media Matters for America*,
120 F.4th 190 (5th Cir. 2024) ..........................................................................14

*X Corp. v. Media Matters for America*,
2024 WL 1895255 (N.D. Tex. Apr. 26, 2024) .........................................................11, 12

**Statutes**

28 U.S.C. § 1404(a) ..........................................................................3

28 U.S.C. § 1406(a) ..........................................................................3

Conn. Gen. Stat. § 52-146w ..........................................................................4

Me. Rev. Stat. Ann. tit. 14, § 403 ..........................................................................4

Me. Rev. Stat. Ann. tit. 14, § 9002 ..........................................................................4

N.Y. Gen. Bus. Law § 394-i ..........................................................................4, 10

Wash. Rev. Code § 5.51.020 ..........................................................................4

Wash. Rev. Code § 7.115.030 ..........................................................................4

**Rules**

Fed. R. Civ. P. 26(c) ..........................................................................6

**Other Authorities**

U.S. Const. amend. I ........................................................................................................5

Defendants (collectively, "WPATH") respectfully move this Court to stay all discovery in this action pending resolution of Defendants' fully briefed Motion to Dismiss, ECF 84-85, 90, 95 ("Motion to Dismiss"), and Motion to Transfer Venue, ECF 82-83, 89, 96 ("Motion to Transfer").

## INTRODUCTION

WPATH filed a Motion to Dismiss that raises multiple legal defects with the Federal Trade Commission's ("FTC's") claims in this case. Each of those defects independently requires dismissal. Rather than wait for the Court's adjudication of those threshold issues, the FTC has issued more than 150 discovery requests, including 13 subpoenas to third parties under Federal Rule of Civil Procedure 45. Those requests impose extensive burdens based on claims that the FTC likely lacks legal authority to bring, for multiple separate reasons. The FTC's discovery has even sparked collateral litigation in which the FTC has sought a judgment that Rule 45 preempts another State's law. ECF 98-1. State governments should not have to litigate the validity of their laws before this Court even authorizes the claims for which the FTC seeks information.

The FTC's discovery requests are particularly troubling because another federal court has already held that ***virtually identical*** requests likely violate the First Amendment. *WPATH v. FTC*, No. 26-cv-532 (JEB), 2026 WL 1257321, at *4 (D.D.C. May 7, 2026). WPATH has moved to dismiss the FTC's claims in this case for violating the First Amendment. ECF 85 at 28-35. This Court has recognized that the First Amendment "provides a qualified privilege from the disclosure of information concerning" protected activities. *X Corp. v. Media Matters for Am.*, No. 4:23-CV-01175-O, 2024 WL 4416887, at *3 (N.D. Tex. Sept. 27, 2024). The Court should decide whether the First Amendment permits the FTC's claims at all before the FTC takes discovery that could violate WPATH's constitutional rights.

Plaintiffs will not suffer any harm from waiting to take discovery until after the Court rules on the Motions to Dismiss and Transfer. The Plaintiff States have not yet sought any discovery. The FTC does not require any discovery to oppose WPATH's motions, because the threshold questions presented are legal in nature. As such, there is no need for the FTC's discovery, particularly the discovery another court has previously enjoined.

## **BACKGROUND**

The dispute between WPATH and the FTC began in January 2026, when the FTC served a civil investigative demand ("CID") with 15 interrogatories and 13 document requests, broadly calling for WPATH to produce all records relating to certain statements identified as "Covered Statements." ECF 38-10. On May 7, 2026, the United States District Court for the District of Columbia entered a preliminary injunction barring the FTC from "implementing or enforcing its issued CID." *WPATH*, 2026 WL 1257321, at *5. It found that the FTC did not contest that WPATH had engaged in protected speech, that the CID had a "chilling effect" on that protected speech, and that the FTC's "articulated hostility towards proponents of gender-affirming care" established a causal link between WPATH's protected speech and the CID. *Id.* at *3-4.

Rather than appeal the injunction, the FTC filed suit in this Court on June 17, 2026. ECF 1. The FTC alleges that WPATH provides doctors with the means-and-instrumentalities to make ten "core deceptive statements," which are nearly identical to the "Covered Statements" listed in the CID. ECF 38 at 12. On June 22, 2026, the FTC withdrew the CID to WPATH, stating that it "no longer views compliance with the CID as necessary to its investigation." Ex. A at 1 (D.D.C. ECF 43). WPATH moved to dismiss the complaint, ECF 53, and the FTC amended the complaint on August 18, 2026, ECF 70.

On September 8, 2026, WPATH moved to dismiss the First Amended Complaint ("FAC") and transfer venue. ECF 82-85. WPATH's Motion to Dismiss raises multiple independent legal defenses, each of which could dispose of or fundamentally alter this case: (1) the medical guidelines identified in the FAC do not meet the legal standard for a means-and-instrumentality of deception; (2) medical guidelines are not actionable misstatements under the Fifth Circuit's decision in *Torrey v. Infectious Diseases Soc'y of Am.*, 86 F.4th 701, 704 (5th Cir. 2023); (3) the statute the FTC invokes addresses only prospective relief, not statements WPATH made four years ago; (4) whether the FTC has authority to regulate medical guidance, traditionally a subject of state law, raises a "major question" that Congress must answer; and (5) Plaintiffs' claims violate the First Amendment because WPATH's publication of medical guidance is protected speech. ECF 85 at 9-39. WPATH's Motion to Transfer separately argues that venue is improper under Rule 12(b)(3) and the case should be dismissed or transferred under 28 U.S.C. §§ 1406(a) and 1404(a). ECF 83 at 2-10.

Rather than await this Court's ruling on WPATH's motions, the FTC has launched a campaign of discovery. It has served 45 requests for production, 8 interrogatories, 87 requests for admission, and 13 third-party subpoenas under Rule 45. Hayes-Deats Decl. ¶¶ 2-3; *see also* Exs. B-F. The requests to WPATH are exceedingly broad and burdensome. They seek, for example, every draft of and communication regarding Standards of Care, Version 8 ("SOC-8"), a 258-page set of medical guidelines for physicians that WPATH published in 2022. Ex. B at 11-12.

The FTC's third-party subpoenas also impose significant burdens not just on the recipients, but also other district courts and state governments. The FTC has issued three of its Rule 45 subpoenas to hospitals in New York. Hayes-Deats Decl. ¶ 3. The New York Attorney General informed the FTC of its view that New York hospitals cannot produce records unless they comply

with N.Y. Gen. Bus. Law § 394-i, including its requirement of thirty days of notice to affected parties. ECF 98-1. The FTC responded by initiating a proceeding in which it asks the U.S. District Court for the Southern District of New York ("S.D.N.Y.") to hold that Rule 45 preempts N.Y. Gen. Bus. Law § 394-i. *Id.* at 4-7. Three of the FTC's other subpoenas have been issued to medical organizations in Maine, Connecticut, and Washington, which also have laws similar to New York's regulating subpoenas for information regarding transgender healthcare. Hayes-Deats Decl. ¶ 3; *see* Conn. Gen. Stat. §§ 52-146w; Me. Rev. Stat. Ann. tit. 14, §§ 403, 9002; Wash. Rev. Code §§ 5.51.020, 7.115.030.

Many of the FTC's requests are nearly identical to requests it made in the enjoined CID. *Compare* ECF 38-10, *with* Ex. B. The chart below provides only a few striking examples.

| CID Request (ECF 38-10) | RFP (Ex. B) |
|---|---|
| No. 3: "Regardless of time period, all Documents relating to any study You sponsored, conducted, or contributed to that involved [pediatric gender dysphoria treatment ('PGDT')]." | No. 11: "All Documents [*sic*] any study You sponsored, conducted, or contributed to that involved Transition Services for Children." |
| No. 7: "All materials used in any education, training, or certification program You offer, or used to promote such programs." | No. 31: "All Documents Relating To any education, training, or certification program You offer, including all Documents used in or used to promote such programs." |
| No. 8: "All testimony, advocacy, or other information provided to any legislature or regulator related to PGDTs." | No. 32: "All testimony, advocacy, or other information and Documents You provided to any legislature or regulator Relating To Transition Services for Children." |

| | |
|---|---|
| No. 9: "With respect to any workshop, townhall or other formal or informal session, or conference You hosted or organized related in any way to PGDTs: (a) all recordings and transcripts; (b) all Documents distributed to attendees or participants; and (c) Documents required to be signed by any attendee, participant, or speaker." | No. 33: "With respect to any workshop, conference, townhall, or other formal or informal session that You hosted or organized Relating To Transition Services for Children: (a) all recordings and transcripts; (b) all Documents distributed or presented to attendees or participants; and (c) Documents required to be signed by any attendee, participant, or speaker." |
| No. 10: "All Documents You disseminated referencing the Covered Statements." | No. 34: "All Documents You distributed referencing either (a) any of the core deceptive statements that the Amended Complaint at ¶ 375(1)–(7) alleges WPATH made or (b) any of the SOC-8 and Related Public Statements." |
| No. 11: "All Documents related to payments, grants, consulting or financial relationships, or partnerships between You and any (a) pharmaceutical company, (b) medical device manufacturer, or (c) clinic, hospital system, or individual clinician." | No. 35: "All Documents Relating To payments, grants, consulting financial relationships, financial relationships, or partnerships between You and any (a) pharmaceutical company; (b) medical device manufacturer; (c) any other Person selling or distributing anything used in Transition Services for Children; or (d) individual clinician, clinic, hospital, or medical system." |
| No. 12: "Your Financial Statements for each year." | No. 45: "All statements of financial position, statements of activities, statements of cash flow, statements of functional expenses, or other financial reporting documents." |

Even the FTC's requests not duplicating the CID implicate WPATH's First Amendment rights. For example, Request for Production No. 41 seeks "All Documents constituting, reflecting or Relating To Communications You exchanged with any Government Official concerning this action, including any process issued therein." Ex. B at 16. That request on its face implicates WPATH's First Amendment right to "petition the Government for a redress of grievances." U.S. Const. amend. I.

The State Plaintiffs, in contrast to the FTC, have not served any discovery requests. Hayes-Deats Decl. ¶ 4. Nor has WPATH. *Id.* ¶ 5. The FTC is the sole party that seeks any discovery in advance of a decision on the Motions to Dismiss and Transfer.

Defendants request a stay of discovery in this case until the Court has ruled on the pending Motions to Dismiss and Transfer. Such an order is appropriate because permitting this matter to proceed to discovery before resolution of the threshold legal issues would unnecessarily burden multiple parties and courts. Discovery would also undermine WPATH's First Amendment rights.

## ARGUMENT

### I. LEGAL STANDARD

The Fifth Circuit has long recognized that district courts have "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) (affirming district court's grant of protective order to stay discovery); *see also Fujita v. United States*, 416 F. App'x 400, 402 (5th Cir. 2011) (same); *Pease v. SEC*, 350 F.R.D. 275, 277 (W.D. Tex. 2025). A district court properly exercises this discretion to stay discovery upon a showing of good cause and a specific need for protection. Fed. R. Civ. P. 26(c) (identifying "annoyance, embarrassment, oppression, or undue burden or expense" as good cause).

While a stay of discovery is the "exception rather than the rule," *Glazer's Wholesale Drug Co., Inc. v. Klein Foods, Inc.*, No. 3:08-cv-774-L, 2008 WL 2930482, at *1 (N.D. Tex. July 23, 2008), good cause exists when "a pending motion seeks to dispose of a lawsuit based on a legal question 'where discovery would not be useful to [its] resolution.'" *Ray-Sampson v. Uplift Educ.*, No. 3:24-cv-2967-E-BN, 2026 WL 104247, at *2 (N.D. Tex. Apr. 16, 2026) (quoting *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 870 (5th Cir. 2010) (per curiam)). "[I]t would

be 'wasteful to allow discovery on all issues raised in a broad complaint when, for example, the case will not reach' a determination on those merits." *Sapp*, 406 F. App'x at 870 (quoting *Corwin v. Marney, Orton Invs.*, 843 F.2d 194, 200 (5th Cir. 1988)).

This power to stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In considering a motion for stay, courts consider both the "interest of justice and judicial economy." *Brown v. DFS Servs., L.L.C.*, 434 F. App'x 347, 354 (5th Cir. 2011). To determine whether a stay is appropriate, "a court must balance the harm produced by the delay in discovery against the possibility that the motion will be granted and eliminate the need for such discovery entirely." *Pease*, 350 F.R.D. at 277; *see also Von Drake v. NBC*, No. 3:04-cv-0652, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004) (stating that staying discovery "may be appropriate where the disposition of a motion to dismiss 'might preclude the need for the discovery altogether thus saving time and expense'" (quoting *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990))); *Primesource Bldg. Prod., Inc. v. Lee Grp. Int'l, Inc.*, No. 3:19-cv-02878-X, 2020 WL 6140462, at *1 (N.D. Tex. Aug. 12, 2020) (same principle).

## II. ANALYSIS

The Court has good cause to stay discovery for two separate reasons. First, discovery in this matter threatens to impose extensive burdens on WPATH and numerous third parties. Second, the FTC's discovery requests threaten to violate WPATH's First Amendment rights. The Court should not permit the FTC to seek such discovery before it decides whether the First Amendment permits the FTC's claims at all. Finally, the good cause WPATH has shown for a stay far

outweighs any prejudice to Plaintiffs from awaiting a ruling. That the State Plaintiffs have not served any discovery requests underscores the lack of any prejudice to the FTC.

### A. A Stay Will Prevent Undue Burden to WPATH, Third Parties, Other District Courts, and Other States.

A stay is appropriate here to avoid the heavy and undue burden discovery would impose on WPATH and others. Good cause for a stay exists where, as here, "further discovery will impose undue burden or expense without aiding the resolution of the dispositive motions." *Fujita*, 416 F. App'x at 402. Courts assess "(1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay." *Von Drake*, 2004 WL 1144142, at *1. Each factor favors a stay here. Indeed, because threshold jurisdictional and constitutional defenses are at issue, a limited stay preserves the "protections afforded" and avoids "unnecessary burden and expense should [the] defense prove dispositive." *Pease*, 350 F.R.D. at 277.

***The breadth of discovery sought***. The scope of the FTC's discovery requests is staggering. It has served on WPATH alone 45 Requests for Production of Documents, 8 interrogatories, and 87 Requests for Admission. Hayes-Deats Decl. ¶ 2. Each request is exceedingly broad. A few examples underscore the point. The FTC's Request for Production No. 7 seeks:

> All Documents Relating To the SOC-8 peer review, editorial review, and publication process, including reviewer identities, reviewer comments, editorial correspondence, author responses.

Ex. B at 11. Request for Production No. 13 seeks:

> All drafts or prior versions of SOC-8, in native format with metadata and tracked changes intact, including all chapter drafts, redlines, comment bubbles, and version histories, and all drafts or prior versions of SOC-8 distributed to any other Person.

*Id.* at 12. And Request for Production No. 15 seeks:

> All Documents constituting or reflecting Communications regarding changes or corrections to draft, preliminary, or published versions of SOC-8.

*Id.* In short, the FTC seeks every version of or communication about a 258-page medical publication issued four years ago. Such requests are plainly overbroad, because the statute the FTC invokes concerns only "prospective, not retrospective" violations of the FTC Act, *AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 76-77 (2021), not communications WPATH had four or more years ago or drafts it prepared even earlier. And those are just ***3 of the FTC's 45*** Requests for Production, not to mention its 8 interrogatories, and 87 Requests for Admission.

But that is not all. The FTC has already issued ***13*** third-party subpoenas to hospitals and clinics around the country. Hayes-Deats Decl. ¶ 3. Each subpoena requests "All Documents referring to WPATH or SOC-8, and either (a) provided to Pediatric Patients, or (b) reflecting communications with Pediatric Patients," as well as all "communications with WPATH, about WPATH, or about SOC-8." Ex. G at 5. And most subpoenas further request that the hospitals produce a corporate representative for a deposition. Hayes-Deats Decl. ¶ 3; *see, e.g.,* Ex. G; ECF 98-1 at 13-21. The FTC is thus not content to demand WPATH's every scrap of paper over many years about SOC-8, but also imposes the same demand on 13 third-parties as well.

***The burden of responding to such discovery***. The burden of responding to the FTC's requests is extraordinary. As D.D.C. previously found for similar requests, the FTC demands a "vast swath of academic or research discussion in which WPATH engages." *WPATH*, 2026 WL 1257321, at *3; *see also* Ex. B at 12 (demanding "All Documents [*sic*] any study You sponsored, conducted, or contributed to that involved Transition Services for Children"). WPATH should not have to turn itself inside out for claims that may never proceed.

The burden imposed by the FTC's requests is particularly acute because significant discovery disputes are pending before this Court. *See* ECF 86. The parties requested that this Court

resolve their dispute regarding the entry of a protective order, which would provide critical protection for the sensitive information that the FTC seeks. *Id.* at 21-22. The FTC has requested substantial sensitive information—even requesting production of unredacted documents that are the subject of a protective order in different litigation. But the FTC has opposed entry of even this District's *model* protective order, which would limit the FTC's use of WPATH's confidential documents for purposes unrelated to this litigation. *Id.*[1] Any responses to FTC's requests before the entry of a protective order places sensitive information at risk of disclosure. Furthermore, the scope of discovery that the FTC may obtain is still subject to this Court's resolution. *Id.* at 10-14. The FTC has far exceeded the scope that WPATH argued is appropriate for this case. Requiring WPATH to provide responses before this Court's rulings on the protective order and the scope of discovery would cause WPATH significant hardship.

Next, as explained below, the FTC's discovery requests directly implicate WPATH's First Amendment rights. D.D.C. enjoined the FTC from "implementing or enforcing" its CID seeking even narrower discovery on First Amendment grounds. *WPATH*, 2026 WL 1257321, at *5. Responding to the FTC's requests would violate WPATH's constitutional rights, causing extraordinary hardship that goes far beyond typical discovery burdens.

The burden of the FTC's discovery is not limited to WPATH. Thirteen hospitals and clinics must also respond or object to the FTC's broad requests, which have spawned collateral litigation. The FTC initiated a suit in S.D.N.Y. urging it to hold that Rule 45 preempts N.Y. Gen. Bus. Law

[1] On information and belief, the hospitals that received third-party subpoenas from the FTC have demanded a protective order covering any productions they make, and the FTC is negotiating a protective order that would cover those productions while *excluding* WPATH's. WPATH requested that the FTC share any draft protective order it is negotiating with third-party subpoena recipients, first on October 23, and again on November 9. Hayes-Deats Decl. ¶ 15 & Ex. H. The FTC has not shared any such drafts, although it has not denied sending drafts to subpoena recipients. *Id.*

§ 394-i. ECF 98-1 at 4-7. The New York Attorney General must defend that suit and oppose efforts to end-run the State's legal requirements. Further collateral litigation may emerge in Maine, Connecticut, and Washington, which have enacted laws similar to New York's, and where three of the FTC's subpoena recipients reside. *See* pp. 3-4, *supra*. This Court should not permit the FTC to seek the invalidation of other States' laws when the FTC may not even have a valid legal claim.

***The strength of WPATH's dispositive motion***. WPATH's Motion to Dismiss raises at least *five* legal defenses, any one of which would defeat the FTC's claims in their entirety. *First*, all the FTC's claims allege that SOC-8 is a "means and instrumentality" for deception by doctors. But no court has ever applied "means and instrumentality" liability to a professional medical organization's clinical guidelines. ECF 85 at 9-11. *Second*, under the Fifth Circuit's decision in *Torrey*, clinical guidelines "cannot form the basis for a claim of fraudulent or negligent misrepresentation." 86 F.4th at 704; ECF 85 at 14-15. *Third*, the statute the FTC invokes reaches only "prospective, not retrospective" violations, *AMG*, 593 U.S. at 76-77, and certainly not statements WPATH made four years ago, ECF 85 at 22-24, which the federal government itself published on the National Institute of Health website, *see* https://pmc.ncbi.nlm.nih.gov/articles/PMC9553112/. *Fourth*, the major questions doctrine requires a clear statement from Congress before permitting the FTC to exercise authority that has long been reserved for States. *Id.* at 24-28. *Fifth*, the First Amendment bars the FTC from prohibiting WPATH's speech regarding an ongoing scientific debate. *Id.* at 29-35. A ruling in WPATH's favor on any of those issues would stop the FTC in its tracks.

This Court's decision in *X Corp. v. Media Matters for America* is not contrary. 2024 WL 1895255 (N.D. Tex. Apr. 26, 2024). There, the arguments in the dispositive motions depended on "even slight differences in factual circumstances," and would not terminate the case, which would

"merely proceed in another federal forum." *Id.* at *3-4. Here, five separate legal defenses bar the FTC from proceeding anywhere. In *Media Matters*, defendants did "not explain how they will suffer hardship or inequity if a stay is denied." *Id.* at 4. Here, a federal court has explained the hardships and inequities imposed by the FTC's requests, *WPATH*, 2026 WL 1257321, at *3, critical discovery disputes remain pending before this Court, *see* ECF 86, and WPATH has further identified hardships imposed on third parties, other district courts, and state governments. This is not a "borderline" case. *Media Matters*, 2024 WL 1895255, at *6. It is exceptional in the novelty of the FTC's claims and the breadth and burdens of the FTC's discovery requests. That exceptionality creates good cause for a stay.

The Fifth Circuit has repeatedly recognized that it would be " 'wasteful to allow discovery on all issues raised in a broad complaint when, for example, the case will not reach' a determination on those merits." *Sapp*, 406 F. App'x at 870 (quoting *Corwin*, 843 F.2d at 200); *see Schoen v. Underwood*, No. W-11-CA-00016, 2011 WL 13238322, at *1 (W.D. Tex. July 18, 2011) (stay pending a motion to dismiss is "an eminently logical means to prevent wasting the time and effort of all concerned and to make the most efficient use of judicial resources"). That conclusion applies many times over to discovery that burdens third parties, other district courts, and state governments forced to defend their laws. And a stay would conserve this Court's resources as well, avoiding request-by-request discovery disputes for the Court to resolve. The Court should not permit the FTC to impose such drastic and widespread burdens before it has even shown that it has a valid claim.

### B. The First Amendment Requires a Stay.

The Court should also stay discovery given the significant First Amendment concerns the FTC's claims raise. WPATH has moved to dismiss the FTC's claims for violating the First Amendment by seeking to prohibit WPATH from participating in an ongoing scientific debate.

ECF 85 at 28-35. This Court and numerous Circuits have recognized that the "First Amendment provides a qualified privilege from the disclosure of information concerning certain activities protected by the First Amendment's freedom of speech and association." *X Corp. v. Media Matters for Am.*, 2024 WL 4416887, at *3; *see also Whole Woman's Health v. Smith*, 896 F.3d 362, 374 (5th Cir. 2018); *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 479 (10th Cir. 2011); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1159 (9th Cir. 2010). WPATH anticipates that it will invoke that qualified privilege in response to many of the discovery requests that the FTC has already served, and that the FTC will move to compel WPATH to produce the requested information. Hayes-Deats Decl. ¶ 6. This Court should resolve whether the First Amendment permits the FTC's claims at all before it addresses specific disputes over whether the First Amendment permits the FTC's discovery requests.

WPATH's First Amendment objections to the FTC's discovery requests are well founded. Those requests overlap extensively with the FTC's CID to WPATH, *see* pp. 4-5, *supra*; Hayes-Deats Decl. ¶ 7, which the D.D.C. enjoined the FTC from "implementing or enforcing" on First Amendment grounds, *WPATH*, 2026 WL 1257321, at *5. It found that "WPATH has demonstrated the CID's chilling effect on its protected speech," and that "extensive evidence of animus" by the FTC to transgender healthcare demonstrated a "causal link between [WPATH's] protected speech and the FTC's issuance of the CID." *Id.* at *3-4. The same is equally true for the virtually identical discovery requests that the FTC has served in this case. While D.D.C. declined to enjoin the FTC from pursuing this case on the basis that it was an end-run around the injunction, it expressly authorized WPATH to invoke its prior findings "in any attempt to stave off discovery in the Texas action." *WPATH v. FTC*, No. 26-532 (JEB), 2026 WL 1999008, at *3 (D.D.C. July 10, 2026). And even the FTC requests that do not overlap with the CID plainly implicate First Amendment rights,

such as the FTC's request for all communications "with any Government Official concerning this action." Ex. B at 16; *see Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388-89 (2011) (First Amendment's Petition Clause protects communications that convey "special concerns" and request "action by the government to address those concerns").

The Fifth Circuit's decision in *X Corp. v. Media Matters for America* underscores the appropriateness of a stay. 120 F.4th 190, 196-97 (5th Cir. 2024). There, the Fifth Circuit stayed enforcement of a discovery request for donor information that implicated First Amendment rights. *Id.* It recognized that "'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury,'" that the requesting party has "no legitimate interest in the immediate disclosure" of material protected by the First Amendment, and that the "public interest is better served by avoiding even the 'risk of a chilling effect.'" *Id.* (quoting first *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam), then *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 618-19 (2021)). Although the stay requested here covers multiple requests, rather than one, that fact only magnifies the harm to WPATH and the public interest, without in any way changing the FTC's lack of "legitimate interest in the immediate disclosure" of protected information. *Id.*

The Court should resolve WPATH's First Amendment objection to the FTC's lawsuit before it takes up more granular First Amendment objections to specific discovery requests. If the Court rejects the FTC's claims on First Amendment grounds, finding that this action seeks to suppress protected speech, then any discovery the FTC takes regarding that protected speech will inflict "irreparable injury" on WPATH. *Media Matters*, 120 F.4th at 196. That prospect provides good cause to stay discovery, independent of the extraordinary burdens the FTC's requests impose.

### C. A Stay of Discovery Would Not Cause Plaintiffs Hardship.

The FTC cannot show any hardship from a stay of discovery while the Motion to Dismiss and Motion to Transfer are pending. A "temporary stay at the outset of this case" imposes only "meager harm" that does not outweigh the "possibility that Defendant's Motion to Dismiss will be granted and entirely eliminate the need for such discovery." *Conquest v. Camber Corp.*, No. 5:13-cv-1108-DAE, 2014 WL 172500, at *1 (W.D. Tex. Jan. 13, 2014); *Von Drake*, 2004 WL 1144142, at *2. The parties' proposed deadline for concluding fact discovery is July 16, 2027, eight months from now. ECF 86 at 5-6. The Court has not yet endorsed that proposal and can amend it as necessary if it denies the Motion to Dismiss to prevent the FTC from suffering any reduction in its time for discovery.

The timeline of the FTC's investigation demonstrates the lack of any conceivable harm. The FTC held a workshop on transgender healthcare for minors in July 2025, inviting many of the same individuals who submitted declarations in support of its complaint. *See* https://www.ftc.gov/news-events/news/press-releases/2025/06/ftc-announces-workshop-exploring-unfair-or-deceptive-trade-practices-gender-affirming-care-minors. It issued its CID to WPATH in January 2026. ECF 38-10. Then, the FTC withdrew the CID to WPATH, stating that it "no longer views compliance with the CID as necessary to its investigation." Ex. A at 1 (D.D.C. ECF 43). But it did not initiate this suit until June 17, 2026. ECF 1. Having waited almost a year after first raising concerns about the statements at issue before initiating this lawsuit, the FTC cannot contend that waiting a few more months will cause it cognizable prejudice.

The lack of any hardship is underscored by the fact that the four State Plaintiffs have not yet served a single discovery request. Hayes-Deats Decl. ¶ 4. The States' claims concern the same WPATH statements, *compare* ECF 70 at 112-14, *with id.* at 114-18, but also raise distinct issues because they arise under each State's laws and concern only each State's residents. But Iowa and

Nebraska have not issued third-party subpoenas to hospitals or clinics within their borders. None of the State Plaintiffs have issued any discovery requests. They have apparently made the reasonable decision to await this Court's ruling on the Motions to Dismiss and Transfer before devoting resources to discovery that may prove unnecessary. The FTC cannot credibly contend that it suffers hardship from a course of action that all other Plaintiffs in this matter have independently decided to take.

## **CONCLUSION**

Defendants recognize that a stay of discovery is the "exception rather than the rule." *Glazer's Wholesale Drug*, 2008 WL 2930482, at *1. But this case is nothing if not exceptional. The FTC has never before asserted the power to regulate clinical guidelines. Its attempt to exercise that novel power is subject to multiple independent defenses, any one of which would require dismissal. The discovery the FTC has requested burdens not just WPATH, but also third parties and at least one other district court and state government. And another district court has already enjoined almost identical discovery requests for likely violating WPATH's First Amendment rights. This Court should not permit the FTC to chill First Amendment rights, attempt to preempt State laws, and burden hospitals across the country before it has determined whether the FTC even has a valid legal claim.

Dated: November 19, 2026

Respectfully Submitted,

*/s/ Sarah Cummings Stewart*
Sarah Cummings Stewart
REED SMITH LLP
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Tel: (469) 680-4200
Fax: (469) 680-4299
sarah.stewart@reedsmith.com

R. Jeffrey Layne
REED SMITH LLP
401 Congress Avenue, Suite 1800
Austin, TX 78701
Tel: (512) 623-1801
Fax: (512) 623-1802
jlayne@reedsmith.com

*/s/ Caleb Hayes-Deats*
Abbe David Lowell [DC Bar No. 358651]
Caleb Hayes-Deats*
Schuyler J. Standley*
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
SStandley@lowellandassociates.com

**Admitted Pro hac vice*

*Attorneys for Defendants*

**Certificate of Service**

The undersigned hereby certifies that, on November 19, 2026, a true and correct copy of the foregoing document was filed with the Clerk of the Court via the CM/ECF system, which will cause it to be served electronically on all counsel of record.

*/s/ Sarah Cummings Stewart*
Sarah Cummings Stewart