**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:26-cv-00748-O |
| | § | |
| WORLD PROFESSIONAL ASSOCIATION | § | |
| FOR TRANSGENDER HEALTH, INC., a | § | |
| Texas corporation, et al., | § | |
| | § | |
| Defendants. | § | |

**APPENDIX TABLE OF CONTENTS TO DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF THE DEFENDANTS' MOTION TO DISMISS AND MOTION TO TRANSFER VENUE**


| Appendix Pages | Title |
|---|---|
| 1-4 | Declaration of Hayes-Deats |
| 5-7 | Exhibit A – ECF 43, Notice of Withdrawal of Civil Investigative Demand, dated June 22, 2026 |
| 8-28 | Exhibit B – Plaintiff Federal Trade Commission's Second Request for Production of Documents to All Defendants, dated October 23, 2026 |
| 29-41 | Exhibit C – Plaintiff Federal Trade Commission's Second Set of Interrogatories to All Defendants, dated October 23, 2026 |
| 42-62 | Exhibit D – Plaintiff Federal Trade Commission's First Set of Requests for Admission to All Defendants, dated October 23, 2026 |
| 63-73 | Exhibit E – Plaintiff Federal Trade Commission's First Request for Production of Documents to All Defendants, dated September 24, 2026 |
| 74-86 | Exhibit F – Plaintiff Federal Trade Commission's First Set of Interrogatories to All Defendants, dated October 5, 2026 |
| 87-96 | Exhibit G –Transmittal letter and Subpoena from Federal Trade Commission to Mount Sinai Hospitals Group, Inc., dated September 16, 2026 |
| 97-102 | Exhibit H – Email correspondence with Federal Trade Commission |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, INC., a Texas corporation, et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:26-cv-00748-O |

**DECLARATION OF CALEB HAYES-DEATS IN SUPPORT OF DEFENDANTS' MOTION TO STAY DISCVOERY PENDING RESOLUTION OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO TRANSFER VENUE**

I, Caleb Hayes-Deats, declare under 28 U.S.C. § 1746 that:

1. I am a partner in the law firm of Lowell & Associates, PLLC. I represent Defendants ("WPATH") in this action. I submit this declaration in support of WPATH's motion to stay discovery pending resolution of its motions to dismiss and transfer venue. If called upon to do so, I could and would competently testify to the information set forth in this declaration.

2. The Federal Trade Commission ("FTC") has served 45 requests for production, 8 interrogatories, and 87 requests for admission on WPATH. *See* Ex. B-F.

3. The FTC has purportedly served subpoenas on the following thirteen third-party hospitals or medical clinics: Baylor College of Medicine (TX), Cleveland Clinic Foundation (OH), Connecticut Children's Medical Center (CT), Corewell Health (MI), MaineHealth (ME), Mt. Sinai Hospitals Group, Inc. (NY), NYU Langone Hospitals (NY), Providence Health & Services Washington (dba Providence Alaska Medical Center) (AK), Renown Health (NV), Texas

Children's Hospital (TX), the Transformation Clinic (WA), University of Rochester Medicine Golisano Children's Hospital (NY), and UPMC Children's Hospital (PA). The FTC previously filed a copy of the subpoena it served on Mt. Sinai Hospitals. ECF 98-1 at 13-21. The third-party subpoenas largely include the same requests for documents, and many further seek a deposition.

4. Plaintiffs State of Alaska, State of Iowa, State of Nebraska, and State of Texas have not served any discovery requests on WPATH. The State Plaintiffs have also not given notice of the intent to serve any third-party discovery subpoenas.

5. WPATH has not served any discovery requests on Plaintiffs or third parties in this case.

6. I anticipate that WPATH will invoke a First Amendment privilege in response to many of the discovery requests that the FTC has already served. Based on the parties' discussion in advance of their joint report regarding the contents of the scheduling order and other meet-and-confers, I anticipate that the FTC will move to compel WPATH to produce the information WPATH will assert is protected by the First Amendment privilege. *E.g.*, ECF 86 at 13-14.

7. The requests for production the FTC served on WPATH overlap extensively with the Civil Investigative Demand ("CID") the FTC previously served on WPATH on January 15, 2026. *See* ECF 38-10.

8. I have attached as Exhibit A a true and complete copy of the notice of withdrawal of the CID that the FTC filed with the U.S. District Court for the District of Columbia as ECF 43 in *WPATH v. FTC*, No. 26-cv-532 (JEB) (D.D.C. June 22, 2026).

9. I have attached as Exhibit B a true and complete copy of FTC's Second Set of Requests for Production served upon WPATH.

10. I have attached as Exhibit C a true and complete copy of FTC's Second Set of Interrogatories served upon WPATH.

11. I have attached as Exhibit D a true and complete copy of FTC's First Set of Requests for Admission served upon WPATH.

12. I have attached as Exhibit E a true and complete copy of FTC's First Set of Requests for Production served upon WPATH.

13. I have attached as Exhibit F a true and complete copy of FTC's First Set of Interrogatories served upon WPATH.

14. I have attached as Exhibit G a true and complete copy of the subpoena the FTC purported to serve on Mount Sinai Hospitals Group, Inc. in New York.

15. On information and belief, at least some hospitals that received third-party subpoenas from the FTC have demanded a protective order covering any productions they make, and the FTC is negotiating a protective order that would cover those productions while *excluding* WPATH's productions. On October 23, 2026, I requested that the FTC share any draft protective order it is negotiating with third-party subpoena recipients and include WPATH on all future correspondence regarding it. The FTC did not respond for more than two weeks. On November 9, 2023, I emailed again to repeat WPATH's request for "any draft protective order the FTC has discussed with third-party subpoena recipients." The FTC did not deny that it was negotiating a protective order with third parties, but committed only to meet its "obligations to confer with WPATH under Local Rule 7.1." I asserted that the FTC should make reasonable efforts to conduct discovery by agreement, and the FTC subsequently responded that coordinating with WPATH on negotiations with third parties would be "neither reasonable nor efficient." The FTC has not shared

any draft protective orders with WPATH. I have attached as Exhibit H a true and complete copy of the correspondence with the FTC described above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, D.C. on November 19, 2026.

Caleb Hayes-Deats

Caleb Hayes-Deats
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL TRADE COMMISSION et al.,<br><br>*Defendants*. | Case No. 1:26-cv-0532 (JEB) |

**NOTICE OF WITHDRAWAL OF CIVIL INVESTIGATIVE DEMAND**

Defendants write to inform the Court that on June 17, 2026, FTC staff, acting under 16 C.F.R. § 2.7(*l*), formally withdrew the civil investigative demand (CID) that is the subject of this action in light of a major development in the FTC's investigation into false or unsubstantiated claims regarding certain treatments for pediatric gender dysphoria. As the letter withdrawing the CID (attached as Exhibit 1) indicates, the FTC's investigation has culminated in a complaint against WPATH, which was filed by the FTC and four states on June 17, and which identifies conduct that violates the FTC Act and applicable state laws. *See Fed. Trade Comm'n v. World Pro. Ass'n for Transgender Health*, No. 4:26-cv-0748 (N.D. Tex.), Dkt.1. The attached letter also explains that, due to the filing of this complaint, the Commission no longer regards compliance with the CID issued to WPATH as necessary to its investigation. Several other CIDs issued in the same investigation were withdrawn on June 17 for the same reason.

Defendants intend to confer with WPATH concerning the appropriate next steps in this case in light of the withdrawal of the CID.

Dated: June 22, 2026

Respectfully submitted,

LUCAS CROSLOW
*General Counsel*

ALEX POTAPOV
*Deputy General Counsel*

*/s/ Ethan D. Beck*
ETHAN D. BECK
*Counsel to the General Counsel*

*Federal Trade Commission*
*600 Pennsylvania Ave., N.W.*
*Washington, DC 20580*
*(202) 326-2110*
*ebeck@ftc.gov*

OF COUNSEL:

CHRISTOPHER MUFARRIGE
*Director*, Bureau of Consumer Protection

KATHERINE WHITE
*Deputy Director*, Bureau of Consumer Protection

BRETT A. SHUMATE
*Assistant Attorney General, Civil Division*

JOHN BAILEY
*Counsel to the Assistant Attorney General*

DANIEL F. MUMMOLO
*Counsel to the Assistant Attorney General*

*United States Department of Justice*
*Civil Division*
*950 Pennsylvania Ave. NW*
*Washington, DC 20530*
*Phone: (202) 514-6054*
*Email: daniel.f.mummolo@usdoj.gov*

*Attorneys for Defendants*

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF**
**TEXAS, FORT WORTH DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al.<br><br>Plaintiffs,<br><br>v.<br><br>WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, INC., a Texas corporation, et al.<br><br>Defendants | Case No. 4:26-cv-00748-O<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S SECOND REQUEST FOR THE PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS DIRECTED TO ALL DEFENDANTS** |

Plaintiff Federal Trade Commission ("FTC" or "Commission"), pursuant to Fed. R. Civ. P. 34, requests that Defendants World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and United States Professional Association for Transgender Health produce or make available for inspection and copying the documents and things described herein.

INSTRUCTIONS

1. It is requested that production of the documents take place within thirty (30) days of the date of service of this Request at the offices of Federal Trade Commission, c/o Investigator Jonathan Bugbee, 600 Pennsylvania Avenue, NW, Washington, DC 20580 ((202) 326-2387, jbugbee@ftc.gov) or at a location agreed to in writing by the FTC and the Defendants. For each item or category requested, produce the requested documents or state the objection to the request and include the justification. Any objection to any part of a request must specify the part objected to and You should produce or permit inspection of the remainder. The FTC may make information

produced by You available to other federal, state, local, or foreign law enforcement agencies where appropriate pursuant to the FTC Act and 16 C.F.R. §§ 4.11(c) and (j).

2. Unless otherwise indicated, these Requests cover all Documents generated, prepared, created, sent, received, or used during, and all Documents Relating To, the period from January 1, 2016, to the day on which Your production for this Second Request is completed.

3. Documents requested are those in actual or constructive possession, custody, or control of any Defendant, or your representatives, attorneys, or other agents, including without limitation consultants, accountants, lawyers, or any other persons retained, consulted by, or working on behalf or under the direction of any Defendant, wherever they may be located.

4. If you produce documents as they are kept in the ordinary course of business, designate the sources and location of each responsive document, including the corporate entity and/or the person from which or whom it was obtained.

5. Produce all documents in complete, unredacted form, unless privileged. Submit documents as stored by any Defendant or any entity associated with any Defendant.

6. Mark each page of each document with corporate and custodian identification and with consecutive Bates numbers.

7. Provide a translation of non-English documents into English; submit the foreign language document, with the English translation.

8. You must submit documents as instructed in the Production Requirements attached.

9. If you object to any part of a request, set forth the basis for your objection and respond to all parts of the request to which you do not object. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall

be waived. All objections must be made with particularity and must set forth all the information upon which you intend to rely in response to any motion to compel. All objections must state with particularity whether and in what manner the objection is being relied upon as a basis for limiting the scope of any search for documents or withholding any responsive document. If you are withholding responsive information pursuant to any general objection, you should so expressly indicate. If, in responding to any request, you claim any ambiguity in interpreting either the request or a definition or instruction applicable thereto, set forth as part of your response the language deemed to be ambiguous and the interpretation used in responding to the request, and produce all documents that are responsive to the request as you interpret it.

10. Produce entire documents, including all attachments, cover letters, memoranda, and appendices, as well as the file, folder tabs and labels appended to or containing any documents. Copies which differ in any respect from an original (because, by way of example only, handwritten or printed notations have been added) should be produced separately. Each document requested herein must be produced in its entirety and without deletion, abbreviation, redaction, expurgation, or excisions, regardless of whether you consider the entire document to be relevant or responsive to these Requests. If you have redacted any portion of a document for privilege, stamp the words "redacted - privilege" where the redacted material originally appeared, on each page of the document that you have redacted. Privileged redactions must be included in a privilege log prepared pursuant to the instructions below, except as mutually agreed by the parties or by court order.

11. If any privilege is claimed as a ground for not producing a document or tangible thing, provide a privilege log in Microsoft Excel format describing the basis for the claim of

privilege and all information necessary for Plaintiff and the Court to assess the claim of privilege, in accordance with Federal Rule of Civil Procedure 26(b)(5). Separately, for each document and attachment withheld or redacted, the log shall include the following: (i) specific grounds for the claim of privilege; (ii) the title of the document or attachment; (iii) the date of the document or attachment; (iv) the author of the document or attachment; (v) the addresses and recipients of the document or attachment or any copy thereof (including persons "cc'd," or "bcc'd" or "blind cc'd"); (vi) a description of the subject matter of the document or attachment in sufficient detail to assess the claim of privilege; (vii) in separate Excel columns, the Beginning Bates Number of the document or attachment, and the Ending Bates Number of the document or attachment; and (viii) the request to which the document or attachment is responsive. Additionally, for each document withheld under a claim of attorney work product immunity, state whether the document was produced in anticipation of litigation or for trial, and, if so, identify the anticipated litigation or trial upon which the assertion is based. Any attachment to a document withheld under a claim of privilege or immunity shall be produced unless the attachment is also subject to a claim of privilege or immunity, and the basis for such claim is described in a privilege log.

12. If any documents are redacted on a basis other than privilege, provide the information and reason for redacting that document per Instruction 9.

13. Whenever necessary to bring within the scope of a request a response that might otherwise be construed to be outside its scope, the following constructions should be applied:

a. Construing the singular form of any word to include the plural, and the plural form to include the singular;

b. Construing the past tense of a verb to include the present tense, and the present tense to include the past tense;

c. Construing the masculine form to include the feminine form; and

d. Construing the term "date" to mean the exact day, month, and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters.

14. Unless otherwise stated, construe each request independently and without reference to any other for the purpose of limitation.

## DEFINITIONS

A. "**And**," as well as "**or**," shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any document request all documents that otherwise might be construed to be outside its scope.

B. "**Any**" shall be construed to include "**all**," and "**all**" shall be construed to include "**any**."

C. **"Child"** or **"Children"** means a natural person under the age of majority.

D. "**Communication**" or **"Communications"** means any manner or form of information or message, transaction, or transmittal, however produced or reproduced, whether by "document" as defined below, or orally or otherwise, that is made, distributed, or circulated between or among persons, and any and all documents containing, consisting of, or in any way relating or referring to, either directly or indirectly, a communication.

E. "**Consumer**" or **"Consumers"** means any Person who was offered, underwent, consented to (including consent provided by parents or guardians), or paid for (including through

insurance) Transition Services for Children, or any Person who is the parent or legal guardian of such Person.

F. "**Defendant**" or "**Defendants**" means World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and United States Professional Association for Transgender Health and their successors and assigns, as well as any subsidiaries, affiliates, and any fictitious business entities or business names created or used by these entities, or any of them, and their agents, representatives, servants, employees, attorneys, contractors, experts, or anyone else acting on behalf of, at the direction of, or for the benefit of any Defendant.

G. **"Delphi Process"** means a structured scientific research method to achieve a consensus among a panel of anonymous experts through a series of iterative questionnaires.

H. "**Document**" or **"Documents"** means the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise), regardless of origin or location, of any written, typed, printed, transcribed, filmed, punched, or graphic matter of every type and description, however and by whomever prepared, produced, disseminated or made, including but not limited to any advertisement, book, pamphlet, periodical, contract, correspondence, file, invoice, memorandum, note, telegram, report, record, handwritten note, working paper, routing slip, chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history, calendar, diary, agenda, minute, code book or label. "Document" also includes Electronically Stored Information. A draft or non-identical copy is a separate document within the meaning of the term.

I. "**Each**" shall be construed to include "**every**," and "**every**" shall be construed to include "**each**."

J. "**Electronically Stored Information**" or "**ESI**" means the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any information created, manipulated, communicated, stored, or utilized in digital form, requiring the use of computer hardware or software. This includes, but is not limited to, electronic mail, instant messaging (including WhatsApp), chat services or other services that include chat features (such as Slack and Teams), artificial intelligence or super intelligence inputs and outputs, videoconferencing, and other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media; and AI prompts, inputs, responses, outputs, conversation histories, and logs. "ESI" also includes such technical assistance or instructions as will enable us to convert ESI into a reasonably usable form.

K. **"Government Official"** means any representative of any federal, state, local or foreign government body, except for those that are Plaintiffs in this action.

L. **"GRADE System"** means the "Grading of Recommendations, Assessment, Development, and Evaluation System," the international framework used to evaluate the certainty or quality of scientific evidence and determine the strength of clinical or health recommendations.

M. **"Involved Person"** means Your board members and officers from January 1, 2016 to present, along with any person involved in the SOC-8 development process (as described at SOC-8 at S247), to include SOC-8 chapter leads, chapter members, Guidelines Committee members, Guideline Steering Committee members, Evidence Review Team members, International Advisory Committee members, Delphi committee members, peer reviewers, editors, publishers, and reviewers. It further includes any Person involved in drafting, preparing, editing, reviewing or publishing any public statements You made from January 1, 2016, to present Relating To Transition Services for Children.

N. **"Person"** means natural persons, proprietorships, partnerships, companies, firms, corporations, fictitious or "doing business as" names, joint ventures, societies, associations, other forms of legal entity, municipal corporations, federal, state, and local governments and all departments and agencies thereof, any other governmental agencies, political subdivisions, groups, associations, or organizations, and any other group or combination acting as an entity.

O. **"Press Release"** means any Document that You issued to announce notable or newsworthy information to the public, journalists, or news outlets—including but not limited to social-media posts and widely disseminated or "blast" e-mails.

P. "**Referring To**" or "**Relating To**" means discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

Q. "**SOC-8 and Related Public Statements**" means any statements You made, or that are alleged to have been made by You, Relating To the core deceptive statements alleged in the Amended Complaint at ¶ 375(1)–(7), to include the specific statements identified in ¶¶ 378–405

and referenced in footnotes 152 and 173–174 of the Amended Complaint, and any other statements expressing or implying, in whole or in part, that:

a. In Children, chest dysphoria can lead to anxiety, depression, or distress;

b. In Children, mastectomy may be safe and effective in treating some or all Children with chest dysphoria;

c. Not providing Transition Services to Children can cause or worsen the Child's depression or anxiety;

d. Transition Services are lifesaving interventions for Children in at least some instances;

e. Transition Services are associated with a substantial reduction in the risk of suicide attempts in Children in at least some instances;

f. Transition Services reduce suicidality and suicidal ideation in Children in at least some instances;

g. Transition Services are medically necessary for Children in at least some instances;

h. High quality evidence supports the treatment recommendations in SOC-8 with respect to Children, and;

i. SOC-8's treatment recommendations for Children are the product of reliable scientific methods.

R. **"Taylor & Franics"** means Taylor & Francis, and includes its agents, employees, consultants, attorneys, accountants, independent contractors, corporations, affiliates, divisions, "doing business as" names, merchant names, successors and assigns, and any person or entity acting, or who acted at any relevant time, on behalf of any of them.

S. **"Transition Services"** means drugs (including but not limited to hormones) or surgical procedures prescribed or performed to treat individuals experiencing distress or discomfort over their natal sex traits, to include drugs and surgical procedures that SOC-8 deems to be "gender-affirming care."

T. **"Veritas"** means Veritas Association Management, Inc. (f/k/a or a/k/a Veritas Meetings Solutions, Inc.) and includes its agents, employees, consultants, attorneys, accountants, independent contractors, corporations, affiliates, divisions, "doing business as" names, merchant names, successors and assigns, and any person or entity acting, or who acted at any relevant time, on behalf of any of them.

U. "**WPATH's Provider Directory Search**" means the user-searchable online index of medical, surgical, and other health professionals specializing in transgender healthcare, including Transition Services, provided or offered by Defendant World Professional Association for Transgender Health, Inc.

V. "**You**" or "**Your**" refers to Defendants World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and/or United States Professional Association for Transgender Health, and includes its agents, employees, consultants, attorneys, accountants, independent contractors, corporations, affiliates, divisions, "doing business as" names, merchant names, successors and assigns, and any person or entity acting, or who acted at any relevant time, on behalf of any of them.

REQUESTED DOCUMENTS

**Request for Production No. 3:** All Documents You referenced or relied upon in answering any Interrogatory.

**Request for Production No. 4:** All Documents You referenced or relied upon in responding to any Request for Admission.

**Request for Production No. 5:** All Documents referring or Relating To Consumers' concerns, beliefs, perceptions, understandings, thoughts, or feelings about (a) any of the core deceptive statements that the Amended Complaint at ¶ 375(1)–(10) alleges WPATH to have made; or (b) any of the SOC-8 and Related Public Statements.

**Request for Production No. 6:** All Documents referring to or Relating To the messages, communications, or understandings You intended to be conveyed by: (a) any of the core deceptive statements that the Amended Complaint at ¶ 375(1)–(10) alleges WPATH to have made; or (b) any of the SOC-8 and Related Public Statements.

**Request for Production No. 7:** All Documents Relating To the SOC-8 peer review, editorial review, and publication process, including reviewer identities, reviewer comments, editorial correspondence, author responses.

**Request for Production No. 8:** All Documents reflecting or constituting Communications with the *International Journal of Transgender Health*, Taylor & Francis, or any other publications or publishers with whom You Communicated regarding any subject Relating To SOC-8 in any way, including peer review, editorial review, or the publication process.

**Request for Production No. 9:** All Documents describing, explaining, or otherwise discussing the relationship between WPATH and the *International Journal of Transgender Health*, Taylor &

Francis, or any other publications or publishers with whom You Communicated regarding any subject Relating To SOC-8 in any way, including peer review, editorial review, or the publication process.

**Request for Production No. 10:** All Documents any external review of SOC-8, including the external review team referenced in the Amended Complaint at ¶ 81, all reports or memoranda prepared by any such reviewer, and all Communications with any such reviewer.

**Request for Production No. 11:** All Documents any study You sponsored, conducted, or contributed to that involved Transition Services for Children.

**Request for Production No. 12:** All Documents any review or research You commissioned or requested in relation to SOC-8, including research You commissioned or requested from the Johns Hopkins University Evidence-Based Practice Center.

**Request for Production No. 13:** All drafts or prior versions of SOC-8, in native format with metadata and tracked changes intact, including all chapter drafts, redlines, comment bubbles, and version histories, and all drafts or prior versions of SOC-8 distributed to any other Person.

**Request for Production No. 14:** All Documents constituting or reflecting Communications Relating To SOC-8 being shared, provided, or distributed to any Person.

**Request for Production No. 15:** All Documents constituting or reflecting Communications regarding changes or corrections to draft, preliminary, or published versions of SOC-8.

**Request for Production No. 16:** All Documents Relating To recommended or suggested age minimums for any Transition Services for Children that appeared in any draft of SOC-8, or in SOC-8 itself, including all Documents Relating To, reflecting, or constituting Communications among Involved Persons regarding such age minimums.

**Request for Production No. 17:** All Documents Relating To the selection, appointment, recruitment, or removal of any Involved Person, including solicitations, nominations, applications, selection criteria, scoring materials, and vetting materials.

**Request for Production No. 18:** All Documents Relating To the selection, appointment, or recruitment of anyone who sought to become an Involved Person, or of anyone who sought any role in any way Relating To the development of SOC-8, but who was not selected, including solicitations, nominations, applications, selection criteria, vetting materials, and scoring materials.

**Request for Production No. 19:** All conflict-of-interest policies, disclosure forms, completed disclosures, and recusal records Relating To the candidacy, recusal, selection, disqualification, or removal of any Involved Person, or of anyone who sought any role in any way Relating To the development of SOC-8 but who was not selected.

**Request for Production No. 20:** All management plans Relating To the development of SOC-8.

**Request for Production No. 21:** All Documents reflecting or constituting Communications Relating To actual or potential financial, intellectual, professional, reputational, or nonfinancial conflicts of interest of any Involved Person.

**Request for Production No. 22:** All Documents Relating To Your assertion in SOC-8 at S177 that "[c]onflicts of interest were reviewed as part of the selection process…."

**Request for Production No. 23:** All Documents Relating To Your assertion in SOC-8 at S177 that "[n]o conflicts were deemed significant or consequential[,]" including all Documents supporting or contradicting that assertion.

**Request for Production No. 24:** All Documents Relating To the Delphi Process used or purportedly used in developing SOC-8 (*see* SOC-8 at S247 and S250), including the protocol, all

survey instruments, all rounds of questions, all individual and aggregated responses, all vote tallies, all thresholds for consensus, all platform exports and administrative logs, and all Documents Relating To any recommendation that did not undergo a Delphi Process.

**Request for Production No. 25:** All Documents Relating To the application, modification, violation, abandonment, or omission of the GRADE System (or any adaptation thereof) in SOC-8, including all evidence profiles, summary-of-findings tables, certainty-of-evidence ratings, strength-of-recommendation determinations.

**Request for Production No. 26:** All Documents Relating To the decision not to publish GRADE System results in SOC-8.

**Request for Production No. 27:** The final versions of SOC-7 and all prior versions of the Standards of Care (SOC-1 through SOC-6), regardless of time.

**Request for Production No. 28:** All Press Releases stating that Transition Services for Children are "medically necessary," as well as all Documents Relating To such Press Releases, including any drafts.

**Request for Production No. 29:** All Documents Relating To Eli Coleman's "12-point Strategic Plan to Advance Gender Affirming Care through strengthening the WPATH SOC-8," in native format with metadata and tracked changes intact, including all drafts, redlines, comment bubbles, and version histories.

**Request for Production No. 30:** All Documents Relating To certain topics Relating To Eli Coleman's "12-point Strategic Plan to Advance Gender Affirming Care through strengthening the WPATH SOC-8," including specifically: (a) any formal or informal "audit" of SOC-8's methodology and research gaps; (b) "gaps in the literature and the kinds of research that are needed

to support [Your] recommendations"; (c) efforts to obtain support for SOC-8 and its recommendations; (d) efforts to publish, disseminate, or encourage the publication or dissemination of commentaries or other Documents in support of SOC-8 or any of its recommendations; (e) appraisals of other countries' approaches to Transition Services; and (f) any virtual or in-person meetings convened to discuss any of the foregoing.

**Request for Production No. 31:** All Documents Relating To any education, training, or certification program You offer, including all Documents used in or used to promote such programs.

**Request for Production No. 32:** All testimony, advocacy, or other information and Documents You provided to any legislature or regulator Relating To Transition Services for Children.

**Request for Production No. 33:** With respect to any workshop, conference, townhall, or other formal or informal session that You hosted or organized Relating To Transition Services for Children: (a) all recordings and transcripts; (b) all Documents distributed or presented to attendees or participants; and (c) Documents required to be signed by any attendee, participant, or speaker.

**Request for Production No. 34:** All Documents You distributed referencing either (a) any of the core deceptive statements that the Amended Complaint at ¶ 375(1)–(7) alleges WPATH made or (b) any of the SOC-8 and Related Public Statements.

**Request for Production No. 35:** All Documents Relating To payments, grants, consulting financial relationships, financial relationships, or partnerships between You and any (a) pharmaceutical company; (b) medical device manufacturer; (c) any other Person selling or distributing anything used in Transition Services for Children; or (d) individual clinician, clinic, hospital, or medical system.

**Request for Production No. 36:** All Documents Relating To Consumers' use or potential use of WPATH's Provider Directory Search to seek providers.

**Request for Production No. 37:** All organizational Documents for each Defendant, including articles of incorporation, charters, bylaws (all versions and amendments), operating agreements, organizational charts, and corporate resolutions.

**Request for Production No. 38:** All Documents Relating To the formation, incorporation, dissolution, reinstatement, merger, or change in status of any Defendant, including all filings with the Texas Secretary of State, the Illinois Secretary of State, or any other state or foreign registry.

**Request for Production No. 39:** All minutes, agendas, meeting materials, board books, resolutions, consent actions, and recordings (audio, video, or transcript) of any meeting of the Board of Directors, Executive Committee, or any committee, subcommittee, task force, or working group of each Defendant.

**Request for Production No. 40:** All agreements, engagement letters, invoices, statements of work, and Communications between You and Veritas, including all Documents Relating To services performed, personnel assigned, and amounts paid.

**Request for Production No. 41:** All Documents constituting, reflecting or Relating To Communications You exchanged with any Government Official concerning this action, including any process issued therein.

**Request for Production No. 42:** All Documents referring or Relating To Your efforts to market, advertise, increase the distribution or dissemination of, or otherwise promote SOC-8 to Consumers, individual clinicians, clinics, hospitals, or medical systems.

**Request for Production No. 43:** All Documents and Communications that refer or Relate To individual clinicians, clinics, hospitals, or medical systems using, approving, or adopting the SOC-8's treatment guidelines for Children.

**Request for Production No. 44:** All Documents You submitted to the Internal Revenue Service or any state or local or foreign taxing authority.

**Request for Production No. 45:** All statements of financial position, statements of activities, statements of cash flow, statements of functional expenses, or other financial reporting documents.

Dated: October 23, 2026

Respectfully submitted,

*/s/ Hans Clausen*
Hans Clausen
*Attorney*
Georgia Bar No. 153250*
R. Cooper Vaughan
*Assistant Director*
Virginia State Bar No. 92580
Michael Dingman
*Assistant Director*
District of Columbia Bar No. 90001474*
Lauren Trujillo
*Attorney*
Colorado Bar No. 56846*

Federal Trade Commission
Bureau of Consumer Protection
600 Pennsylvania Avenue, NW
Washington, DC 20580
Fax: (214) 953-3079
E-mail: hclausen@ftc.gov

*Admitted pro hac vice
** Application for admission pro hac vice pending

Of Counsel

Jonathan Cohen
*Acting Deputy Director*
District of Columbia Bar No. 483454*

Annie Chiang
*Deputy Director for Litigation and Enforcement Strategy*
District of Columbia Bar No. 1723538**

CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2026, I caused the foregoing **PLAINTIFF FEDERAL TRADE COMMISSION'S SECOND REQUEST FOR THE PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS DIRECTED TO ALL DEFENDANTS** to be served via electronic mail on the following parties:

For Defendants:
Caleb Hayes-Deats
Abbe David Lowell
Schuyler J. Standley
LOWELL & ASSOCIATES, PLLC
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
SStandley@lowellandassociates.com

Sarah Cummings Stewart
R. Jeffrey Layne
Julia Solomon Ensor
REED SMITH LLP
sarah.stewart@reedsmith.com
jlayne@reedsmith.com
jensor@reedsmith.Com

**For Plaintiff State of Alaska:**
Charles J. Gartland
Civil Division Director, Alaska Dept. of Law
charles.gartland@alaska.gov

**For Plaintiff State of Iowa:**
Eric H. Wessan
Solicitor General, Iowa Attorney General's Office
eric.wessan@ag.iowa.gov

**For Plaintiff State of Nebraska:**
Benjamin J. Swanson
Assistant Attorney General, Consumer Protection Bureau, Office of the Nebraska Attorney General
benjamin.swanson@nebraska.gov

**For Plaintiff State of Texas:**
David Bizar
Assistant Attorney General, Deputy Chief, Consumer Protection Division, Office of the Attorney General of Texas
david.bizar@oag.texas.gov

Dated: October 23, 2026

/s/ Hans Clausen
Hans Clausen
*Attorney*
FEDERAL TRADE COMMISSION
Phone: 404-656-1361
E-mail: hclausen@ftc.gov

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, INC., a Texas corporation, *et al.*<br><br>Defendants | Case No. 4:26-cv-00748-O<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S SECOND SET OF INTERROGATORIES TO ALL DEFENDANTS** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Federal Trade Commission ("Commission" or "FTC") requests that Defendants World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and United States Professional Association for Transgender Health answer fully, in writing, under oath, the interrogatories set forth below and serve its answers on the undersigned counsel for Plaintiff, within thirty (30) days of the service of these interrogatories.

## I. GENERAL INSTRUCTIONS

A. The responding Defendants are required to answer these interrogatories by and through any of its duly authorized officers, agents, employees, representatives, or attorneys who are competent to testify on their behalf and who know or have access to the information to which each interrogatory relates. Each officer, agent, employee, representative, or attorney preparing answers to these interrogatories is required to affix his or her signature, under oath, to the answers to these interrogatories and to designate those particular interrogatories to which he or she prepared answers where there is more than one signatory.

B. These interrogatories apply to and cover the period from January 1, 2016, through the present, unless otherwise indicated. These interrogatories are continuing. The responding Defendants are required to serve supplemental answers whenever the information contained in the answers to these interrogatories may be enlarged, diminished, or otherwise modified by information acquired after serving their initial answers.

C. Where any interrogatory set forth below identifies a document or communication or requests that a document or communication be identified, and the responding Defendants assert that the document or communication is not subject to disclosure, for each such document or communication state: the identity of the document or communication; the circumstances under which the document was written or the communication was made; a detailed summary of the contents; a detailed basis for the claim that the document or communication is privileged or otherwise immune from disclosure; and identify the person to whom the privileged information was conveyed and the person conveying it, the dates and places of communications, and the reason, if any, why this information was conveyed.

D. Where knowledge or information of the responding Defendants is requested, the request also includes facts or information known by the responding Defendants' agents, employees, officers, representatives, contractors, experts, and, unless privileged, their attorneys.

E. If you cannot answer an interrogatory in full and you have exercised thorough diligence in an attempt to secure the information requested, then you must so state. In addition, if you cannot answer all or part of any interrogatory in full, so state and answer to the extent possible, specifying your inability to answer the remainder, stating whatever information or knowledge you have concerning the unanswered portion, and detailing what you did in attempting to secure the unknown information.

F. If your answer to all or part of any interrogatory is "unknown" or any similar response, state the following:

(1) Why You do not know the answer to that interrogatory;

(2) The efforts made to obtain answers to the particular interrogatory; and

(3) The name and address of any person who may know the answer.

G. If you object to any interrogatory or part of any interrogatory, state the interrogatory or part to which you object, state the exact nature of the objection, and describe in detail the facts upon which you base your objection. If you object to any interrogatory on the grounds of relevance and overbreadth, provide all responsive information that is concededly relevant to the parties' claims or defenses or the requested relief.

H. Where any interrogatory requests information provided in response to a previous interrogatory, cross-reference to the previously answered interrogatory will suffice, provided the response to the previous interrogatory completely answers the subsequent interrogatory.

## II. DEFINITIONS

This request for production shall be read and interpreted in accordance with the definitions set forth below:

A. "**And**," as well as "**or**," shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any document request all documents that otherwise might be construed to be outside its scope.

B. "**Any**" shall be construed to include "**all**," and "**all**" shall be construed to include "**any**."

C. **"Child"** or **"Children"** means a natural person under the age of majority.

D. "**Communication**" means any manner or form of information or message, transaction, or transmittal, however produced or reproduced, whether by "document" as defined below, or orally or otherwise, that is made, distributed, or circulated between or among persons, and any and all documents containing, consisting of, or in any way relating or referring to, either directly or indirectly, a communication.

E. **"Consumer"** means any Person who was offered, underwent, consented to (including consent provided by parents or guardians), or paid for (including through insurance) Transition Services, or any Person who is the parent or legal guardian of such Person.

F. "**Defendant**" or "**Defendants**" means World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and United States Professional Association for Transgender Health and their successors and assigns, as well as any subsidiaries, affiliates, and any fictitious business entities or business names created or used by these entities, or any of them, and their agents, representatives, servants, employees, attorneys, contractors, experts, or anyone else acting on behalf of, at the direction of, or for the benefit of any Defendant.

G. **"Document"** or "**Documents**" means the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise), regardless of origin or location, of any written, typed, printed, transcribed, filmed, punched, or graphic matter of every type and description, however and by whomever prepared, produced, disseminated or made, including but not limited to any advertisement, book, pamphlet, periodical, contract, correspondence, file, invoice, memorandum, note, telegram, report, record, handwritten note, working paper, routing slip, chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history, calendar, diary, agenda, minute, code book or label. "Document"

also includes Electronically Stored Information. A draft or non-identical copy is a separate document within the meaning of the term.

H. "**Each**" shall be construed to include "**every**," and "**every**" shall be construed to include "**each**."

I. "**Electronically Stored Information**" or "**ESI**" means the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any information created, manipulated, communicated, stored, or utilized in digital form, requiring the use of computer hardware or software. This includes, but is not limited to, electronic mail, instant messaging (including WhatsApp), chat services or other services that include chat features (such as Slack and Teams), videoconferencing, and other electronic correspondence (whether active, archived, or in a deleted items folder), AI or SI inputs and outputs, word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media; and AI prompts, inputs, responses, outputs, conversation histories, and logs. "ESI" also includes such technical assistance or instructions as will enable us to convert ESI into a reasonably usable form

J. "**Government Official**" means any representative of any federal, state, local or foreign government body, except for those that are Plaintiffs in this action.

K. "**Identify**," "**identity**," or "**identification**" mean:

a. With respect to a natural person, to state the person's full name, present or last known residence and employment addresses, and present or last known business affiliation and title or position, and present or, if unknown, last known telephone number;

b. With respect to a corporation, to state the corporation's full name, date and state (or country, if not domestic) of incorporation, and address of its principal office or offices;

c. With respect to a Person, as defined below, other than a natural person or a corporation, to state its proper name or designation, its principal office address, and its present, or if unknown, its last known telephone number;

d. With respect to a Document, whether or not the Document is now in existence, to state the date the Document bears or bore, or, if undated, the date it was written, the name and address of each person who wrote it or who participated in the writing of it, the name and address of each Person to whom it was addressed and of each Person to whom a copy was identified as being directed, the name and address of each Person who received a copy of the document, a description of the Document (for example, "letter" or "memorandum"), a detailed summary of the contents of the Document, the present location or the custodian of each copy or, if unknown, its last known location or custodian, and, if the Document is no longer in existence or is no longer in a Defendant's possession, custody, or control, the disposition made of the Document, the reason or reasons for the disposition, and the date of the disposition; and

e. With respect to a communication, to state the method of communication (for example, personal conversation, telephone conversation, letter, e-mail, fax), its date and time, the identity of the person(s) making and the person(s) receiving the communication, the verbatim contents of the communication or, if the verbatim contents of the communication cannot be recalled, a detailed summary of the communication, and the identity of any document referring in any way to the communication (including location and custodian of the document).

**L.** **"Involved Person"** means Your board members and officers from January 1, 2016 to present, along with any person identified in the SOC-8 development process (as described at

SOC-8 S247), to include SOC-8 chapter leads, chapter members, Guidelines Committee members, Guideline Steering Committee members, Evidence Review Team members, International Advisory Committee members, Delphi committee members, peer reviewers, editors, publishers, and reviewers. It further includes any Person involved in drafting, preparing, editing, reviewing or publishing any public statements You made from January 1, 2016, to present related to Transition Services for Children.

**M.** **"Material Contribution"** means any written communication with a chapter lead about either (a) any of the SOC-8 and Related Public Statements or (b) any statement in SOC-8 related to any of the ten statements or omissions alleged in the Amended Complaint at ¶ 375(1)–(10).

**N.** "**Person**" includes natural persons, proprietorships, partnerships, companies, firms, corporations, fictitious or "doing business as" names, joint ventures, societies, associations, other forms of legal entity, municipal corporations, federal, state, and local governments and all departments and agencies thereof, any other governmental agencies, political subdivisions, groups, associations, or organizations, and any other group or combination acting as an entity.

O. "**Referring to**" or "**relating to**" shall mean discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recommending, concerning or pertaining to, in whole or in part.

**P.** **"SOC-8"** means the *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8* (2022).

**Q.** **"SOC-8 and Related Public Statements"** means any statements You made or that are alleged to have been made by You that relate to the core deceptive statements alleged in the Amended Complaint at ¶ 375(1)–(7), to include the specific statements identified in ¶¶ 378–405

and referenced in footnotes 152 and 173–174 of the Amended Complaint, and any other statements that:

a. In Children, chest dysphoria can lead to anxiety, depression, or distress;

b. In Children, mastectomy may be safe and effective in treating some or all Children with chest dysphoria;

c. Not providing Transition Services to Children can cause or worsen the Child's depression or anxiety;

d. Transition Services are lifesaving interventions for Children in at least some instances;

e. Transition Services are associated with a substantial reduction in the risk of suicide attempts in Children in at least some instances;

f. Transition Services reduce suicidality and suicidal ideation in Children in at least some instances;

g. Transition Services are medically necessary for Children in at least some instances;

h. High quality evidence supports the treatment recommendations in SOC-8 with respect to Children, and;

i. SOC-8's treatment recommendations for Children are the product of reliable scientific methods.

**R.** **"Transition Services"** means drugs (including but not limited to hormones) or surgical procedures prescribed or performed to treat individuals experiencing distress or discomfort over their natal sex traits, to include drugs and surgical procedures that SOC-8 deems to be "gender-affirming care."

S. "**You**" or "**Your**" refers to Defendants World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and/or United States Professional Association for Transgender Health, and includes its agents, employees, consultants, attorneys, accountants, independent contractors, corporations, affiliates, divisions, "doing business as" names, merchant names, successors and assigns, and any person or entity acting, or who acted at any relevant time, on behalf of any of them.

## III. INTERROGATORIES

**Interrogatory No. 6:** Describe all benefits and services You offer or provide to Your members, including but not limited to any (a) discounts or preferred access to any products and services, such as insurance or financing, (b) legal advocacy, litigation, or legal services of any type, (c) lobbying services, (d) marketing or lead generation of any type, (e) public relations, and (f) education and training.

**Interrogatory No. 7:** Describe all investigations and lawsuits involving You and either (a) any of the core deceptive statements that the Amended Complaint at ¶ 375(1)–(10) alleges WPATH to have made, (b) any of the SOC-8 and Related Public Statements, or (c) Transition Services for Children, including but not limited to any lawsuit in which You are amicus.

**Interrogatory No. 8:** Describe all Communications between You and any Government Official concerning this action, including the date, participants and substance (in detail) of any Communication not reflected in a Document You have produced to Plaintiffs.

Dated: October 23, 2026

Respectfully submitted,

Of Counsel

Jonathan Cohen
*Acting Deputy Director*
District of Columbia Bar No. 483454

Annie Chiang
*Deputy Director for Litigation and Enforcement Strategy*
District of Columbia Bar No. 1723538

*/s/ Hans Clausen*
Hans Clausen
*Attorney*
Georgia Bar No. 153250
R. Cooper Vaughan
*Assistant Director*
Virginia State Bar No. 92580
Michael Dingman
*Assistant Director*
District of Columbia Bar No. 90001474
Lauren Trujillo
*Attorney*
Colorado Bar No. 56846

Federal Trade Commission
Bureau of Consumer Protection
600 Pennsylvania Avenue, NW
Washington, DC 20580
Fax: (214) 953-3079
E-mail: hclausen@ftc.gov

# CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2026, I caused the foregoing **PLAINTIFF FEDERAL TRADE COMMISSION'S SECOND SET OF INTERROGATORIES TO ALL DEFENDANTS** to be served via electronic mail on the following parties:

**For Defendants:**
Caleb Hayes-Deats
Abbe David Lowell
Schuyler J. Standley
LOWELL & ASSOCIATES, PLLC
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
SStandley@lowellandassociates.com

Sarah Cummings Stewart
R. Jeffrey Layne
Julia Solomon Ensor
REED SMITH LLP
sarah.stewart@reedsmith.com
jlayne@reedsmith.com
jensor@reedsmith.Com

**For Plaintiff State of Alaska:**
Charles J. Gartland
Civil Division Director, Alaska Dept. of Law
charles.gartland@alaska.gov

**For Plaintiff State of Iowa:**
Eric H. Wessan
Solicitor General, Iowa Attorney General's Office
eric.wessan@ag.iowa.gov

**For Plaintiff State of Nebraska:**
Benjamin J. Swanson
Assistant Attorney General, Consumer Protection Bureau, Office of the Nebraska Attorney General
benjamin.swanson@nebraska.gov

**For Plaintiff State of Texas:**
David Bizar
Assistant Attorney General, Deputy Chief, Consumer Protection Division, Office of the Attorney General of Texas
david.bizar@oag.texas.gov

Dated: October 23, 2026

*<u>/s/ Hans Clausen</u>*
Hans Clausen
*Attorney*
FEDERAL TRADE COMMISSION
Phone: 404-656-1361
E-mail: hclausen@ftc.gov

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, INC., a Texas corporation, *et al.*<br><br>Defendants | Case No. 4:26-cv-00748-O<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST SET OF REQUESTS FOR ADMISSION TO ALL DEFENDANTS** |

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Plaintiff Federal Trade Commission ("Commission" or "FTC") requests that Defendants World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and United States Professional Association for Transgender Health respond to these Requests for Admission in writing and in accordance with the Federal Rules of Civil Procedure and the instructions and definitions set forth below. Pursuant to Federal Rule of Civil Procedure 36(a), failure to respond to these Requests within 30 days of service shall constitute an admission to each Request, unless the FTC agrees to an alternative timeline for your responses.

## I. GENERAL INSTRUCTIONS

A. All instructions and requirements set forth in the Federal Rules of Civil Procedure, including Rules 26 and 36, are incorporated herein by reference.

B. Defendants are required to answer these Requests for Admission by and through any of its duly authorized officers, agents, employees, representatives, or attorneys who are competent to respond on Defendants' behalf and who know or have access to the information to

which each Request for Admission relates. You must gather and consider facts or information known not only by the Defendants but also their agents, employees, officers, representatives, contractors, experts, and, unless privileged, their attorneys in responding to each requested admission.

C. Each numbered Request constitutes a separate statement of fact and is to be admitted or denied separately. If you object to a particular Request, then you must state your reasons. If you do not admit a particular Request, then you must specifically deny the requested admission or set forth in detail the reasons why you cannot truthfully admit or deny the requested admission.

D. If you object to any request or part of any Request, state the exact nature of the objection, and describe in detail the facts upon which you base your objection. You may not object solely on the ground that the request presents a genuine issue for trial. That a requested admission relates to opinions of fact or the application of law to facts is not grounds for objection. Your belief that a requested admission presents a genuine issue for trial does not, on that ground alone, provide a valid basis for objection.

E. A denial must fairly meet the substance of the requested admission, and when good faith requires that you qualify an answer or deny only part of the requested admission, then you must specify which portion of it is true and qualify or deny the remainder.

F. You may not assert a lack of information or knowledge as a reason for failure to admit or deny a requested admission unless you state that you have made reasonable inquiry and that the information known to or readily obtainable by you is insufficient to enable you to admit or deny the requested admission.

G. These Requests for Admission apply to and cover the period from January 1, 2016, through the present, unless otherwise indicated. If an admission is true for one period of time but not for others, then you should admit the statement with a qualification stating the applicable time period.

H. If you claim any privilege as a ground for not responding to a requested admission, you should describe the basis for the claim of privilege and all information necessary for Plaintiffs and the Court to assess the claim of privilege, in accordance with Federal Rule of Civil Procedure 26(b)(5).

I. These Requests for Admission are continuing in nature through the completion of this action. For those Requests that you deny or for which you have insufficient information to answer, your responses to those Requests must be supplemented as you obtain additional information affecting your responses, pursuant to Federal Rule of Civil Procedure 26(e)(1).

## II. DEFINITIONS

This request for production shall be read and interpreted in accordance with the definitions set forth below:

A. **"Child"** or **"Children"** means a natural person under the age of majority.

B. "**Communication**" or **"Communications"** means any manner or form of information or message, transaction, or transmittal, however produced or reproduced, whether by "document" as defined below, or orally or otherwise, that is made, distributed, or circulated between or among persons, and any and all documents containing, consisting of, or in any way relating or referring to, either directly or indirectly, a communication.

C. **"Connecticut Shield Law"** means those laws of the State of Connecticut that purport to provide safeguards for out-of-state investigations seeking information from Connecticut

medical institutions or professionals and/or the disclosure of medical records, including Conn. Gen. Stat. §§ 52-146o, 52-146x, and 54-155a.

D. **"Consumer" or "Consumers"** means any Person who was offered, underwent, consented to (including consent provided by parents or guardians), or paid for (including through insurance) Transition Services for Children, or any Person who is the parent or legal guardian of such Person.

E. "**Defendant**" or "**Defendants**" means World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and United States Professional Association for Transgender Health and their successors and assigns, as well as any subsidiaries, affiliates, and any fictitious business entities or business names created or used by these entities, or any of them, and their agents, representatives, servants, employees, attorneys, contractors, experts, or anyone else acting on behalf of, at the direction of, or for the benefit of any Defendant.

F. **"Delphi Process"** means a structured scientific research method to achieve a consensus among a panel of anonymous experts through a series of iterative questionnaires.

G. **"Document"** or "**Documents**" means the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise), regardless of origin or location, of any written, typed, printed, transcribed, filmed, punched, or graphic matter of every type and description, however and by whomever prepared, produced, disseminated or made, including but not limited to any AI inputs and outputs, advertisement, book, pamphlet, periodical, contract, correspondence, file, invoice, memorandum, note, telegram, report, record, handwritten note, working paper, routing slip, chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history, calendar, diary, agenda, minute, code book or label.

"Document" also includes Electronically Stored Information. A draft or non-identical copy is a separate document within the meaning of the term.

H. **"Electronically Stored Information"** or **"ESI"** means the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any information created, manipulated, communicated, stored, or utilized in digital form, requiring the use of computer hardware or software. This includes, but is not limited to, electronic mail, instant messaging (including WhatsApp), chat services or other services that include chat features (such as Slack and Teams), artificial intelligence or super intelligence inputs and outputs, videoconferencing, and other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media; and AI prompts, inputs, responses, outputs, conversation histories, and logs. "ESI" also includes such technical assistance or instructions as will enable us to convert ESI into a reasonably usable form.

I. **"New York Shield Law"** means the laws of the State of New York that purport to provide safeguards for out-of-state investigations seeking information from New York medical institutions or professionals and/or the disclosure of medical records, including those enacted in Chapter 694 of the Laws of 2025 (associated with bill numbers S.4914-B /A.5480-C), signed into law by Governor Kathy Hochul on December 19, 2025.

J. **"Maine Shield Law"** means the laws of the State of Maine that purport to provide safeguards for out-of-state investigations seeking information from Maine medical institutions or

professionals and/or the disclosure of medical records, including Public Law 2024, Chapter 648 (originally introduced as Legislative Document 227, titled "An Act Regarding Legally Protected Health Care Activity in the State"), signed into law by Governor Janet Mills on April 22, 2024.

K. "**Person**" means natural persons, proprietorships, partnerships, companies, firms, corporations, fictitious or "doing business as" names, joint ventures, societies, associations, other forms of legal entity, municipal corporations, federal, state, and local governments and all departments and agencies thereof, any other governmental agencies, political subdivisions, groups, associations, or organizations, and any other group or combination acting as an entity.

L. **"Profit"** means a positive number for revenue minus expenses.

M. "**Referring To**" or "**Relating To**" means discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recommending, concerning or pertaining to, in whole or in part.

N. **"SOC-8"** means the *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8* (2022).

O. **"Transition Services"** means drugs (including but not limited to hormones) or surgical procedures prescribed or performed to treat individuals experiencing distress or discomfort over their natal sex traits, to include drugs and surgical procedures that SOC-8 deems to be "gender-affirming care."

P. "**You**" or "**Your**" refers to Defendants World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and/or United States Professional Association for Transgender Health, and includes its agents, employees, consultants, attorneys, accountants, independent contractors, corporations, affiliates, divisions, "doing business as" names, merchant names,

successors and assigns, and any person or entity acting, or who acted at any relevant time, on behalf of any of them.

## III. REQUESTS FOR ADMISSION

**Request for Admission 1:** Admit that You initiated Communications with the Office of the New York State Attorney General regarding the FTC's subpoena dated September 16, 2026, to Mount Sinai Hospitals Group, Inc.

**Request for Admission 2:** Admit that You engaged in Communications with the Office of the New York State Attorney General regarding the FTC's subpoena dated September 16, 2026, to Mount Sinai Hospitals Group, Inc.

**Request for Admission 3:** Admit that, in Communications with the Office of the New York State Attorney General regarding the FTC's subpoena dated September 16, 2026, to Mount Sinai Hospitals Group, Inc., You discussed the New York Shield Law.

**Request for Admission 4:** Admit that You communicated with the Office of the New York State Attorney General regarding the FTC's subpoena dated September 16, 2026, to Mount Sinai Hospitals Group, Inc., through a submission of a Shield Law reporting form.

**Request for Admission 5:** Admit that, in Communications with the Office of the New York State Attorney General regarding the FTC's subpoena dated September 16, 2026, to Mount Sinai Hospitals Group, Inc., You discussed laws that, if invoked, could delay or prevent Mount Sinai Hospitals Group, Inc. from producing documents to the Plaintiffs pursuant to an outstanding subpoena.

**Request for Admission 6:** Admit that You initiated Communications with the Office of the Connecticut Attorney General regarding the FTC's subpoena dated September 16, 2026, to Connecticut Children's Medical Center.

**Request for Admission 7:** Admit that You engaged in Communications with the Office of the Connecticut Attorney General regarding the FTC's subpoena dated September 16, 2026, to Connecticut Children's Medical Center.

**Request for Admission 8:** Admit that, in Communications with the Office of the Connecticut Attorney General regarding the FTC's subpoena dated September 16, 2026, to Connecticut Children's Medical Center, You discussed the Connecticut Shield Law.

**Request for Admission 9:** Admit that, in Communications with the Office of the Connecticut Attorney General regarding the FTC's subpoena dated September 16, 2026, to Connecticut Children's Medical Center, You discussed laws that, if invoked, could delay or prevent Connecticut Children's Medical Center from producing documents to the Plaintiffs pursuant to an outstanding subpoena.

**Request for Admission 10:** Admit that You initiated Communications with the Office of the Maine Attorney General regarding the FTC's subpoena dated September 16, 2026, to MaineHealth.

**Request for Admission 11:** Admit that You engaged in Communications with the Maine Attorney General regarding the FTC's subpoena dated September 16, 2026, to MaineHealth.

**Request for Admission 12:** Admit that, in Communications with the Maine Attorney General regarding the FTC's subpoena dated September 16, 2026, to MaineHealth, You discussed the Maine Shield Law.

**Request for Admission 13:** Admit that, in Communications with the Maine Attorney General regarding the FTC's subpoena dated September 16, 2026, to MaineHealth, You discussed laws that, if invoked, could delay or prevent MaineHealth from producing documents to the Plaintiffs pursuant to an outstanding subpoena.

**Request for Admission 14:** Admit that You have Profited from the publication of SOC-8 in the *International Journal of Transgender Health*, either overall or in any given fiscal or tax year.

**Request for Admission 15:** Admit that You have Profited in any fiscal year from the publication of the *International Journal of Transgender Health.*

**Request for Admission 16:** Admit that You have stated to medical professionals who provide or assist in providing Transition Services that SOC-8 is the "standard of care" with respect to Transition Services for Children.

**Request for Admission 17:** Admit that You have stated to Consumers that SOC-8 is the "standard of care" with respect to Transition Services for Children.

**Request for Admission 18:** Admit that SOC-8, at page S5, states "While this is primarily a document for health care professionals, individuals, their families, and social institutions may also use the SOC-8 to understand how it can assist with promoting optimal health for members of this diverse population."

**Request for Admission 19:** Admit that the "document" mentioned in the quotation in Request for Admission No. 18 is SOC-8.

**Request for Admission 20:** Admit that the "individuals" mentioned in the quotation in Request for Admission No. 18 include Consumers.

**Request for Admission 21:** Admit that You intend at least some of the "individuals" mentioned in the quotation in Request for Admission No. 18 to read SOC-8.

**Request for Admission 22:** Admit that when SOC-8 was first published, You intended at least some of the "individuals" mentioned in the quotation in Request for Admission No. 18 to read SOC-8.

**Request for Admission 23:** Admit that the "families" mentioned in the quotation in Request for

Admission No. 18 include Consumers.

**Request for Admission 24:** Admit that You intend at least some of the "families" mentioned in the quotation in Request for Admission No. 18 to read SOC-8.

**Request for Admission 25:** Admit that when SOC-8 was first published, You intended at least some of the "families" mentioned in the quotation in Request for Admission No. 18 to read SOC-8.

**Request for Admission 26:** Admit that You intend the "social institutions" mentioned in the quotation in Request for Admission No. 18 to advise Consumers about Transition Services for Children using SOC-8.

**Request for Admission 27:** Admit that when SOC-8 was first published, You intended the "social institutions" mentioned in the quotation in Request for Admission No. 18 to advise Consumers about Transition Services for Children using SOC-8.

**Request for Admission 28:** Admit that You have conducted education programs Relating To Transition Services for Children.

**Request for Admission 29:** Admit that You have conducted training programs Relating To Transition Services for Children.

**Request for Admission 30:** Admit that You have conducted certification programs Relating To Transition Services for Children.

**Request for Admission 31:** Admit that You have Profited in any fiscal or tax year from conducting any education programs Relating To Transition Services for Children.

**Request for Admission 32:** Admit that You have Profited in any fiscal or tax year from conducting any training programs Relating To Transition Services for Children.

**Request for Admission 33:** Admit that You have Profited in any fiscal or tax year from

conducting any certification programs Relating To Transition Services for Children.

**Request for Admission 34:** Admit that one purpose for which You developed any version of the Standards of Care was to improve the likelihood that Your members could obtain insurance reimbursement for Transition Services for Children.

**Request for Admission 35:** Admit that one purpose for which You developed SOC-8 was to improve the likelihood that Your members could obtain insurance reimbursement for Transition Services for Children.

**Request for Admission 36:** Admit that one purpose for which You developed any version of the Standards of Care was to improve the likelihood that Consumers could obtain insurance coverage for Transition Services for Children.

**Request for Admission 37:** Admit that one purpose for which You developed SOC-8 was to improve the likelihood that Consumers could obtain insurance coverage for Transition Services for Children.

**Request for Admission 38:** Admit that one purpose for which You issued the Position Statement on Medical Necessity of Treatment, Sex Reassignment, and Insurance Coverage in the U.S.A., dated December 21, 2016, was to improve the likelihood that Consumers would have insurance coverage for Transition Services.

**Request for Admission 39:** Admit that one purpose for which You issued the Position Statement on Medical Necessity of Treatment, Sex Reassignment, and Insurance Coverage in the U.S.A., dated December 21, 2016, was to improve the likelihood that Your members could obtain insurance reimbursement for Transition Services.

**Request for Admission 40:** Admit that one purpose for which You developed SOC-8 was to expand the availability of Transition Services for Children.

**Request for Admission 41:** Admit that one purpose for which You developed any version of the Standards of Care was to expand the availability of Transition Services for Children.

**Request for Admission 42:** Admit that SOC-8 describes Transition Services as "medically necessary."

**Request for Admission 43:** Admit that SOC-8 describes Transition Services for Children as "medically necessary."

**Request for Admission 44:** Admit that one purpose for which You described Transition Services for Children as "medically necessary" in SOC-8 was to obtain the availability of insurance reimbursement for Your members.

**Request for Admission 45:** Admit that one purpose for which You described Transition Services for Children as "medically necessary" in SOC-8 was to obtain the availability of insurance coverage for Consumers.

**Request for Admission 46:** Admit that one purpose for which You described Transition Services for Children as "medically necessary" in SOC-8 was to expand the availability of insurance reimbursement for Your members.

**Request for Admission 47:** Admit that one purpose for which You described Transition Services for Children as "medically necessary" in SOC-8 was to expand the availability of insurance coverage for Consumers.

**Request for Admission 48:** Admit that one purpose for which You developed SOC-8 was to provide a "tool for [Your] attorneys to use in defending access to care [in the United States]."[1]

**Request for Admission 49:** Admit that the "care" mentioned in the quotation in Request for Admission No. 48 includes Transition Services for Children.

---

[1] *See* redacted e-mail dated January 6, 2022, in *Boe* et al. *v. Marshall* et al., Case No. 22-cv-184 (M.D. Ala.), ECF No. 700-10 at page 62 of 86 (Bates stamp on page: BOEAL_WPATH_126713).

**Request for Admission 50:** Admit that SOC-8's drafters obtained consensus through a Delphi Process on recommended criteria for providing Transition Services that included suggested minimum ages for at least some procedures.

**Request for Admission 51:** Admit that SOC-8's drafters obtained consensus through a Delphi Process on recommended criteria for providing Transition Services that included a suggested minimum age of 14 years and above for hormone treatment (estrogens or androgens) absent significant or compelling reasons to perform the treatment at a younger age.

**Request for Admission 52:** Admit that SOC-8's drafters obtained consensus through a Delphi Process on recommended criteria for providing Transition Services that included a suggested minimum age of 15 years and above for breast removal surgery, absent significant or compelling reasons to perform the surgery at a younger age.

**Request for Admission 53:** Admit that SOC-8's drafters obtained consensus through a Delphi Process on recommended criteria for providing Transition Services that included a suggested minimum age of 16 years and above for breast augmentation, facial surgery (including rhinoplasty, tracheal shave, and genioplasty), absent significant or compelling reasons to perform the surgery at a younger age.

**Request for Admission 54:** Admit that SOC-8's drafters obtained consensus through a Delphi Process on recommended criteria for providing Transition Services that included a suggested minimum age of 17 and above for metoidioplasty, orchidectomy, vaginoplasty, hysterectomy, and fronto-orbital remodeling, absent significant or compelling reasons to perform the surgery at a younger age.

**Request for Admission 55:** Admit that a draft of SOC-8 was publicly released which included recommended criteria for providing Transition Services that included suggested minimum ages

for at least some procedures.

**Request for Admission 56:** Admit that a "Correction" was issued to remove at least some suggested minimum ages from SOC-8's recommendations for Transition Services.

**Request for Admission 57:** Admit that the "Correction" referenced in Request for Admission No. 56 was issued at Your request.

**Request for Admission 58:** Admit that a "final Draft" of SOC-8 was approved by SOC-8 "Chair and Co-Chairs" on June 10, 2022.[2]

**Request for Admission 59:** Admit that the "final Draft" approved by SOC-8 "Chair and Co-Chairs" on June 10, 2022, included the suggested minimum age criteria described in Request for Admission Nos. 51–54.

**Request for Admission 60:** Admit that You continue to distribute a version of SOC-8 on Your website.

**Request for Admission 61:** Admit that the version of SOC-8 You continue to distribute on Your website does not contain the recommendations for minimum ages described in Request for Admission Nos. 51–54.

**Request for Admission 62:** Admit that the version of SOC-8 You continue to distribute on Your website, on page S8, states that "Consensus on the final recommendations was attained using the Delphi Process that included all members of the guidelines committee and required that recommendation statements were approved by at least 75% of members."

**Request for Admission 63:** Admit that, after voting on SOC-8's recommendation statements using a Delphi process but before SOC-8's publication on September 15, 2022, You removed recommendations for minimum ages from at least one of SOC-8's recommendations regarding

[2] See SOC-8 at S247.

Transition Services.

**Request for Admission 64:** Admit that, in at least one instance, consensus of SOC-8's final recommendations regarding Transition Services were not attained using a Delphi Process.

**Request for Admission 65:** Admit that, in at least one instance, SOC-8 recommendations that were approved through the Delphi Process were omitted from the published version of SOC-8.

**Request for Admission 66:** Admit that, in at least one instance, You removed minimum age recommendations from SOC-8's recommendations at least in part because of Communication You received from former Department of Health and Human Services Assistant Secretary for Health Rachel Levine.

**Request for Admission 67:** Admit that some WPATH members financially benefit from Transition Services for Children.

**Request for Admission 68:** Admit that at the time of SOC-8's publication, some WPATH members financially benefitted from Transition Services for Children.

**Request for Admission 69:** Admit that some SOC-8 authors financially benefit from Transition Services for Children.

**Request for Admission 70:** Admit that at the time of SOC-8's publication, some SOC-8 authors financially benefitted from Transition Services for Children.

**Request for Admission 71:** Admit that some SOC-8 authors financially benefitted from Transition Services for Children at the time they were selected as SOC-8 authors.

**Request for Admission 72:** Admit that a key criterion WPATH used to select SOC-8 chapter leads was that each be a "[w]ell recognized advocate for WPATH and SOC."

**Request for Admission 73:** Admit that SOC-8 does not disclose hot flashes as a potential side effect of using puberty blockers for Transition Services for Children.

**Request for Admission 74:** Admit that SOC-8 does not disclose lethargy as a potential side effect of using puberty blockers for Transition Services for Children.

**Request for Admission 75:** Admit that SOC-8 does not disclose cognitive issues as a potential side effect of using puberty blockers for Transition Services for Children.

**Request for Admission 76:** Admit that SOC-8 does not disclose mood disturbances as a potential side effect of using cross-sex hormones for Transition Services for Children.

**Request for Admission 77:** Admit that SOC-8 does not disclose vocal pain as a potential side effect of using cross-sex hormones for Transition Services for Children.

**Request for Admission 78:** Admit that SOC-8 does not disclose pelvic pain as a potential side effect of using cross-sex hormones for Transition Services for Children.

**Request for Admission 79:** Admit that SOC-8 does not disclose pelvic floor dysfunction as a potential side effect of using cross-sex hormones for Transition Services for Children.

**Request for Admission 80:** Admit that SOC-8 does not disclose clitoral discomfort as a potential side effect of using cross-sex hormones for Transition Services for Children.

**Request for Admission 81:** Admit that SOC-8 does not disclose vaginal pain as a potential side effect of using cross-sex hormones for Transition Services for Children.

**Request for Admission 82:** Admit that SOC-8 does not disclose persistent sexual dysfunction continuing after cessation of use as a potential side effect of using cross-sex hormones for Transition Services for Children.

**Request for Admission 83:** Admit that SOC-8 does not disclose erectile pain as a potential side effect of using cross-sex hormones for Transition Services for Children.

**Request for Admission 84:** Admit that SOC-8 does not disclose diminished erogenous breast sensation as a potential side effect of undergoing a breast amputation as part of Transition Services

for Children.

**Request for Admission 85:** Admit that SOC-8 does not disclose eliminated erogenous breast sensation as a potential side effect of undergoing a breast amputation as part of Transition Services for Children.

**Request for Admission 86:** Admit that SOC-8 does not disclose the inability to breastfeed as a potential side effect of undergoing a breast amputation as part of Transition Services for Children.

**Request for Admission 87:** Admit that SOC-8 does not disclose necrosis of the nipples as a potential side effect of undergoing a breast amputation as part of Transition Services for Children.

Dated: October 23, 2026

Respectfully submitted,

*/s/ Hans Clausen*
Hans Clausen
*Attorney*
Georgia Bar No. 153250*
R. Cooper Vaughan
*Assistant Director*
Virginia State Bar No. 92580
Michael Dingman
*Assistant Director*
District of Columbia Bar No. 90001474*
Lauren Trujillo
*Attorney*
Colorado Bar No. 56846*

Federal Trade Commission
Bureau of Consumer Protection
600 Pennsylvania Avenue, NW
Washington, DC 20580
Fax: (214) 953-3079
E-mail: hclausen@ftc.gov

*Admitted *pro hac vice*
** Application for admission *pro hac vice* pending

Of Counsel

Jonathan Cohen
*Acting Deputy Director*
District of Columbia Bar No. 483454*

Annie Chiang
*Deputy Director for Litigation and Enforcement Strategy*
District of Columbia Bar No. 1723538**

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2026, I caused the foregoing **PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST SET OF REQUESTS FOR ADMISSION TO ALL DEFENDANTS** to be served via electronic mail on the following parties:

**For Defendants:**
Caleb Hayes-Deats
Abbe David Lowell
Schuyler J. Standley
LOWELL & ASSOCIATES, PLLC
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
SStandley@lowellandassociates.com

Sarah Cummings Stewart
R. Jeffrey Layne
Julia Solomon Ensor
REED SMITH LLP
sarah.stewart@reedsmith.com
jlayne@reedsmith.com
jensor@reedsmith.Com

**For Plaintiff State of Alaska:**
Charles J. Gartland
Civil Division Director, Alaska Dept. of Law
charles.gartland@alaska.gov

**For Plaintiff State of Iowa:**
Eric H. Wessan
Solicitor General, Iowa Attorney General's Office
eric.wessan@ag.iowa.gov

**For Plaintiff State of Nebraska:**
Benjamin J. Swanson
Assistant Attorney General, Consumer Protection Bureau, Office of the Nebraska Attorney General
benjamin.swanson@nebraska.gov

**For Plaintiff State of Texas:**
David Bizar
Assistant Attorney General, Deputy Chief, Consumer Protection Division, Office of the Attorney General of Texas
david.bizar@oag.texas.gov

Dated: October 23, 2026

*/s/ Hans Clausen*
Hans Clausen
*Attorney*
FEDERAL TRADE COMMISSION
Phone: 404-656-1361
E-mail: hclausen@ftc.gov

# EXHIBIT E

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
TEXAS, FORT WORTH DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, INC., a Texas corporation, *et al.*<br><br>Defendants | Case No. 4:26-cv-00748-O<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS DIRECTED TO ALL DEFENDANTS** |

Plaintiff Federal Trade Commission ("FTC" or "Commission"), pursuant to Fed. R. Civ. P. 34, requests that Defendants World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and United States Professional Association for Transgender Health produce or make available for inspection and copying the documents and things described herein.

## INSTRUCTIONS

It is requested that production of the documents take place within thirty (30) days of the date of service of this Request at the offices of Federal Trade Commission, c/o Investigator Jonathan Bugbee, 600 Pennsylvania Avenue, NW, Washington, DC 20580 ((202) 326-2387, jbugbee@ftc.gov) or at a location agreed to in writing by the FTC and the Defendants. For each item or category requested, produce the requested documents or state the objection to the request and include the justification. Any objection to any part of a request must specify the part objected to and You should produce or permit inspection of the remainder. The FTC may make information produced by You available to other federal, state, local, or foreign law enforcement agencies where

appropriate pursuant to the FTC Act and 16 C.F.R. §§ 4.11(c) and (j).

## DEFINITIONS

A. "**And**," as well as "**or**," shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any document request all documents that otherwise might be construed to be outside its scope.

B. "**Any**" shall be construed to include "**all**," and "**all**" shall be construed to include "**any**."

C. "**Defendant**" or "**Defendants**" means World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and United States Professional Association for Transgender Health and their successors and assigns, as well as any subsidiaries, affiliates, and any fictitious business entities or business names created or used by these entities, or any of them.

D. "**Document**" shall mean the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise), regardless of origin or location, of any written, typed, printed, transcribed, filmed, punched, or graphic matter of every type and description, however and by whomever prepared, produced, disseminated or made, including but not limited to any advertisement, book, pamphlet, periodical, contract, correspondence, file, invoice, memorandum, note, telegram, report, record, handwritten note, working paper, routing slip, chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history, calendar, diary, agenda, minute, code book or label. "Document" also includes Electronically Stored Information. A draft or non-identical copy is a separate document within the meaning of the term.

E. "**Electronically Stored Information**" or "**ESI**" shall mean the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any information created, manipulated, communicated, stored, or utilized in digital form, requiring the use of computer hardware or software. This includes, but is not limited to, electronic mail, instant messaging (including WhatsApp), chat services or other services that include chat features (such as Slack and Teams), videoconferencing, and other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media; and AI prompts, inputs, responses, outputs, conversation histories, and logs. "ESI" also includes such technical assistance or instructions as will enable us to convert ESI into a reasonably usable form.

F. "**Person**" means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

G. "**Referring to**" or "**relating to**" means discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

H. "**You**" or "**Your**" refers to Defendants World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and/or United States Professional Association for Transgender

Health, and includes its agents, employees, consultants, attorneys, accountants, independent contractors, corporations, affiliates, divisions, "doing business as" names, merchant names, successors and assigns, and any person or entity acting, or who acted at any relevant time, on behalf of any of them.

I. "**Insurer**" means any insurance company, underwriter, reinsurer, risk-retention group, captive insurer, self-insurance trust or pool, or other entity that issues, administers, or participates in any policy or program of insurance or indemnification.

## INSTRUCTIONS

1. Documents requested are those in actual or constructive possession, custody, or control of any Defendant, or your representatives, attorneys, or other agents, including without limitation consultants, accountants, lawyers, or any other persons retained, consulted by, or working on behalf or under the direction of any Defendant, wherever they may be located.

2. If you produce documents as they are kept in the ordinary course of business, designate the sources and location of each responsive document, including the corporate entity and/or the person from which or whom it was obtained.

3. Produce all documents in complete, unredacted form, unless privileged. Submit documents as stored by any Defendant or any entity associated with any Defendant.

4. Mark each page of each document with corporate and custodian identification and with consecutive Bates numbers.

5. Provide a translation of non-English documents into English; submit the foreign language document, with the English translation.

6. You must submit documents as instructed in the Production Requirements

attached.

7. If you object to any part of a request, set forth the basis for your objection and respond to all parts of the request to which you do not object. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived. All objections must be made with particularity and must set forth all the information upon which you intend to rely in response to any motion to compel. All objections must state with particularity whether and in what manner the objection is being relied upon as a basis for limiting the scope of any search for documents or withholding any responsive document. If you are withholding responsive information pursuant to any general objection, you should so expressly indicate. If, in responding to any request, you claim any ambiguity in interpreting either the request or a definition or instruction applicable thereto, set forth as part of your response the language deemed to be ambiguous and the interpretation used in responding to the request, and produce all documents that are responsive to the request as you interpret it.

8. Produce entire documents, including all attachments, cover letters, memoranda, and appendices, as well as the file, folder tabs and labels appended to or containing any documents. Copies which differ in any respect from an original (because, by way of example only, handwritten or printed notations have been added) should be produced separately. Each document requested herein must be produced in its entirety and without deletion, abbreviation, redaction, expurgation, or excisions, regardless of whether you consider the entire document to be relevant or responsive to these Requests. If you have redacted any portion of a document for privilege, stamp the words "redacted - privilege" where the redacted material originally appeared, on each page of the document that you have redacted. Privileged redactions must be included in

a privilege log prepared pursuant to the instructions below, except as mutually agreed by the parties or by court order.

9. If any privilege is claimed as a ground for not producing a document or tangible thing, provide a privilege log in Microsoft Excel format describing the basis for the claim of privilege and all information necessary for Plaintiff and the Court to assess the claim of privilege, in accordance with Federal Rule of Civil Procedure 26(b)(5). Separately, for each document and attachment withheld or redacted, the log shall include the following: (i) specific grounds for the claim of privilege; (ii) the title of the document or attachment; (iii) the date of the document or attachment; (iv) the author of the document or attachment; (v) the addresses and recipients of the document or attachment or any copy thereof (including persons "cc'd," or "bcc'd" or "blind cc'd"); (vi) a description of the subject matter of the document or attachment in sufficient detail to assess the claim of privilege; (vii) in separate Excel columns, the Beginning Bates Number of the document or attachment, and the Ending Bates Number of the document or attachment; and (viii) the request to which the document or attachment is responsive. Additionally, for each document withheld under a claim of attorney work product immunity, state whether the document was produced in anticipation of litigation or for trial, and, if so, identify the anticipated litigation or trial upon which the assertion is based. Any attachment to a document withheld under a claim of privilege or immunity shall be produced unless the attachment is also subject to a claim of privilege or immunity, and the basis for such claim is described in a privilege log.

10. If any documents are redacted on a basis other than privilege, provide the information and reason for redacting that document per Instruction 9.

11. Whenever necessary to bring within the scope of a request a response that might

otherwise be construed to be outside its scope, the following constructions should be applied:

a. Construing the singular form of any word to include the plural, and the plural form to include the singular;

b. Construing the past tense of a verb to include the present tense, and the present tense to include the past tense;

c. Construing the masculine form to include the feminine form; and

d. Construing the term "date" to mean the exact day, month, and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters.

12. Unless otherwise stated, construe each request independently and without reference to any other for the purpose of limitation.

## III. REQUESTED DOCUMENTS

1. The three insurance policies You referenced during the September 24, 2026, meet-and-confer, along with any other insurance policies that may provide coverage or benefits of any sort to You or any director or officer for any expenses (including defense expenses) arising out of or relating to the conduct alleged, or relief sought, in the Amended Complaint, as well as all Documents relating to such policies, including applications, binders, declarations pages, endorsements, riders, renewals, reservation-of-rights letters, coverage denials or disclaimers, claim files, and communications with any insurer or broker.

2. All discovery responses You served and Document productions You made in *Boe* et al. *v. Marshall* et al., Case No. 2:22-cv-184 (M.D. Ala.).

Dated: September 24, 2026

Respectfully submitted,

Of Counsel

Jonathan Cohen
*Acting Deputy Director*
District of Columbia Bar No. 483454*

/s/ Hans Clausen
Hans Clausen
*Attorney*
Georgia Bar No. 153250*
R. Cooper Vaughan
*Senior Counsel to the Director*
Virginia State Bar No. 92580
Annie Chiang
*Acting Deputy Director for Litigation and Enforcement Strategy*
District of Columbia Bar No. 1723538**
Glenna Goldis
*Assistant Director for Special Projects*
New York Reg. No. 4868600*
Michael Dingman
*Senior Counsel to the Director*
District of Columbia Bar No. 90001474*
Lauren Trujillo
*Attorney*
Colorado Bar No. 56846*

Federal Trade Commission
Bureau of Consumer Protection
600 Pennsylvania Avenue, NW
Washington, DC 20580
Fax: (214) 953-3079
E-mail: hclausen@ftc.gov

*Admitted *pro hac vice*
** Application for admission *pro hac vice* pending

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2026, I caused the foregoing **PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS DIRECTED TO ALL DEFENDANTS** to be served via electronic mail on the following parties:

**For Defendants:**
Caleb Hayes-Deats
Abbe David Lowell
Schuyler J. Standley
LOWELL & ASSOCIATES, PLLC
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
SStandley@lowellandassociates.com

Sarah Cummings Stewart
REED SMITH LLP
sarah.stewart@reedsmith.com

R. Jeffrey Layne
REED SMITH LLP
jlayne@reedsmith.com

**For Plaintiff State of Alaska:**
Charles J. Gartland
Civil Division Director
Alaska Dept. of Law
E-mail: charles.gartland@alaska.gov

**For Plaintiff State of Iowa:**
Eric H. Wessan
Solicitor General
Iowa Attorney General's Office
E-mail: eric.wessan@ag.iowa.gov

**For Plaintiff State of Nebraska:**
Benjamin J. Swanson
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
E-mail: benjamin.swanson@nebraska.gov

**For Plaintiff State of Texas:**
David Bizar
Assistant Attorney General
Deputy Chief
Consumer Protection Division
Office of the Attorney General of Texas
david.bizar@oag.texas.gov

Dated: September 24, 2026

*/s/ Hans Clausen*
Hans Clausen
*Attorney*
FEDERAL TRADE COMMISSION
Phone: 404-656-1361
E-mail: hclausen@ftc.gov

# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, INC., a Texas corporation, *et al.*<br><br>Defendants | Case No. 4:26-cv-00748-O<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Federal Trade Commission ("Commission" or "FTC") requests that Defendants World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and United States Professional Association for Transgender Health answer fully, in writing, under oath, the interrogatories set forth below and serve its answers on the undersigned counsel for Plaintiff, within thirty (30) days of the service of these interrogatories.

## I. GENERAL INSTRUCTIONS

A. The responding Defendants are required to answer these interrogatories by and through any of its duly authorized officers, agents, employees, representatives, or attorneys who are competent to testify on their behalf and who know or have access to the information to which each interrogatory relates. Each officer, agent, employee, representative, or attorney preparing answers to these interrogatories is required to affix his or her signature, under oath, to the answers to these interrogatories and to designate those particular interrogatories to which he or she prepared answers where there is more than one signatory.

B. These interrogatories apply to and cover the period from January 1, 2016, through the present, unless otherwise indicated. These interrogatories are continuing. The responding Defendants are required to serve supplemental answers whenever the information contained in the answers to these interrogatories may be enlarged, diminished, or otherwise modified by information acquired after serving their initial answers.

C. Where any interrogatory set forth below identifies a document or communication or requests that a document or communication be identified, and the responding Defendants assert that the document or communication is not subject to disclosure, for each such document or communication state: the identity of the document or communication; the circumstances under which the document was written or the communication was made; a detailed summary of the contents; a detailed basis for the claim that the document or communication is privileged or otherwise immune from disclosure; and identify the person to whom the privileged information was conveyed and the person conveying it, the dates and places of communications, and the reason, if any, why this information was conveyed.

D. Where knowledge or information of the responding Defendants is requested, the request also includes facts or information known by the responding Defendants' agents, employees, officers, representatives, contractors, experts, and, unless privileged, their attorneys.

E. If you cannot answer an interrogatory in full and you have exercised thorough diligence in an attempt to secure the information requested, then you must so state. In addition, if you cannot answer all or part of any interrogatory in full, so state and answer to the extent possible, specifying your inability to answer the remainder, stating whatever information or knowledge you have concerning the unanswered portion, and detailing what you did in attempting to secure the unknown information.

F. If your answer to all or part of any interrogatory is "unknown," "not applicable" or any similar response, state the following:

a. Why the answer to that interrogatory is "unknown" or "not applicable";

b. The efforts made to obtain answers to the particular interrogatory, and;

c. The name and address of any person who may know the answer.

G. If you object to any interrogatory or part of any interrogatory, state the interrogatory or part to which you object, state the exact nature of the objection, and describe in detail the facts upon which you base your objection. If you object to any interrogatory on the grounds of relevance and overbreadth, provide all responsive information that is concededly relevant to the parties' claims or defenses or the requested relief.

H. Where any interrogatory requests information provided in response to a previous interrogatory, cross-reference to the previously answered interrogatory will suffice, provided the response to the previous interrogatory completely answers the subsequent interrogatory.

I. Where any interrogatory set forth below may be fully and fairly answered by the submission of documents, such documents may be submitted in lieu of, or as part of, the answer to the respective interrogatory so long as such documents are clearly identified as to which interrogatory or interrogatories they are responsive.

## II. DEFINITIONS

This request for production shall be read and interpreted in accordance with the definitions set forth below:

A. "**And**," as well as "**or**," shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any document request all documents that otherwise might be construed to be outside its scope.

B. "**Any**" shall be construed to include "**all**," and "**all**" shall be construed to include "**any**."

C. "**Communication**" means any manner or form of information or message, transaction, or transmittal, however produced or reproduced, whether by "document" as defined below, or orally or otherwise, that is made, distributed, or circulated between or among persons, and any and all documents containing, consisting of, or in any way relating or referring to, either directly or indirectly, a communication.

D. **"Consumer"** means any Person who was offered, underwent, consented to (including consent provided by parents or guardians), or paid for (including through insurance) Medical Transition Procedures for Children, or any Person who is the parent or legal guardian of such Person.

E. **"Child"** or **"Children"** means a natural person under the age of majority.

F. "**Defendant**" or "**Defendants**" means World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and United States Professional Association for Transgender Health and their successors and assigns, as well as any subsidiaries, affiliates, and any fictitious business entities or business names created or used by these entities, or any of them, and their agents, representatives, servants, employees, attorneys, contractors, experts, or anyone else acting on behalf of, at the direction of, or for the benefit of any Defendant.

G. **"Document"** or "**Documents**" means the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise), regardless of origin or location, of any written, typed, printed, transcribed, filmed, punched, or graphic matter of every type and description, however and by whomever prepared, produced,

disseminated or made, including but not limited to any advertisement, book, pamphlet, periodical, contract, correspondence, file, invoice, memorandum, note, telegram, report, record, handwritten note, working paper, routing slip, chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history, calendar, diary, agenda, minute, code book or label. "Document" also includes Electronically Stored Information. A draft or non-identical copy is a separate document within the meaning of the term.

H. "**Each**" shall be construed to include "**every**," and "**every**" shall be construed to include "**each**."

I. "**Electronically Stored Information**" or "**ESI**" means the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any information created, manipulated, communicated, stored, or utilized in digital form, requiring the use of computer hardware or software. This includes, but is not limited to, electronic mail, instant messaging (including WhatsApp), chat services or other services that include chat features (such as Slack and Teams), videoconferencing, and other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media; and AI prompts, inputs, responses, outputs, conversation histories, and logs. "ESI" also includes such technical assistance or instructions as will enable us to convert ESI into a reasonably usable form.

J. “**Identify**,” “**identity**,” or “**identification**” means:

a. With respect to a natural person, to state the person’s full name, present or last known residence and employment addresses, and present or last known business affiliation and title or position, and present or, if unknown, last known telephone number;

b. With respect to a corporation, to state the corporation’s full name, date and state (or country, if not domestic) of incorporation, and address of its principal office or offices;

c. With respect to a Person, as defined below, other than a natural person or a corporation, to state its proper name or designation, its principal office address, and its present, or if unknown, its last known telephone number;

d. With respect to a Document, whether or not the Document is now in existence, to state the date the Document bears or bore, or, if undated, the date it was written, the name and address of each person who wrote it or who participated in the writing of it, the name and address of each Person to whom it was addressed and of each Person to whom a copy was identified as being directed, the name and address of each Person who received a copy of the document, a description of the Document (for example, “letter” or “memorandum”), a detailed summary of the contents of the Document, the present location or the custodian of each copy or, if unknown, its last known location or custodian, and, if the Document is no longer in existence or is no longer in a Defendant’s possession, custody, or control, the disposition made of the Document, the reason or reasons for the disposition, and the date of the disposition; and

e. With respect to a communication, to state the method of communication (for example, personal conversation, telephone conversation, letter, e-mail, fax), its date and time, the identity of the person(s) making and the person(s) receiving the communication, the verbatim contents of the communication or, if the verbatim contents of the communication cannot be

recalled, a detailed summary of the communication, and the identity of any document referring in any way to the communication (including location and custodian of the document).

K. **"Involved Person"** means Your board members and officers from January 1, 2016 to present, along with any person involved in the SOC-8 development process (as described at SOC-8 S247), to include SOC-8 chapter leads, chapter members, Guidelines Committee members, Guideline Steering Committee members, Evidence Review Team members, International Advisory Committee members, Delphi committee members, peer reviewers, editors, publishers, and reviewers. It further includes any Person involved in drafting, preparing, editing, reviewing or publishing any public statements You made from January 1, 2016, to present related to Medical Transition Procedures for Children.

L. **"Medical Transition Procedures"** means drugs or surgical procedures prescribed or performed to treat individuals experiencing distress or discomfort over their natal sex traits, to include drugs and surgical procedures that SOC-8 deems to be "gender-affirming care."

M. **"SOC-8 and Related Public Statements"** means any statements You made, or that are alleged to have been made by You, that support or underpin the Core Deceptive Statements alleged in the Amended Complaint at ¶ 375(1)–(10), to include the specific statements identified in ¶¶ 378–405 and referenced in footnotes 152 and 173–174 of the Amended Complaint, and any other statements that:

a. In Children, chest dysphoria can lead to anxiety, depression, and distress, and that mastectomy may be safe and effective in treating some or all of these Children;
b. not providing Medical Transition Procedures to Children can cause or worsen depression and anxiety;
c. Medical Transition Procedures are a lifesaving intervention for Children;

d. Medical Transition Procedures are associated with a substantial reduction in the risk of suicide attempts in Children, or that medical transition treatments reduce suicidality and suicidal ideation;

e. Medical Transition Procedures are medically necessary for Children;

f. high quality evidence supports the treatment recommendations in SOC-8 with respect to Children, and;

g. reliable scientific methods underlie the treatment recommendations in SOC-8 with respect to Children.

N. **"Person"** includes natural persons, proprietorships, partnerships, companies, firms, corporations, fictitious or "doing business as" names, joint ventures, societies, associations, other forms of legal entity, municipal corporations, federal, state, and local governments and all departments and agencies thereof, any other governmental agencies, political subdivisions, groups, associations, or organizations, and any other group or combination acting as an entity.

O. **"SOC-8"** means the *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8* (2022).

P. "**Referring to**" or "**relating to**" means discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recommending, concerning or pertaining to, in whole or in part.

Q. "**You**" or "**Your**" refers to Defendants World Professional Association for Transgender Health, Inc., a Texas corporation; World Professional Association for Transgender Health, Inc., an Illinois corporation; and/or United States Professional Association for Transgender Health, and includes its agents, employees, consultants, attorneys, accountants, independent contractors, corporations, affiliates, divisions, "doing business as" names, merchant names,

successors and assigns, and any person or entity acting, or who acted at any relevant time, on behalf of any of them.

## III. INTERROGATORIES

**Interrogatory No. 1:** Regardless of whether You believe these claims were made (in advertising or otherwise), and without regard to time period, identify all substantiation that supports: (a) any of the affirmative Core Deceptive Statements that the Amended Complaint alleges WPATH to have made, ¶ 375(1)–(7) or (b) any of the SOC-8 and Related Public Statements.

**Interrogatory No. 2:** Identify all evidence, without regard to time period, that refers to or establishes the existence or possible existence of the side effects listed in ¶ 415 of the Amended Complaint, including but not limited to scientific studies and any Documents or information presented at or related to WPATH-sponsored events, presentations, symposiums, and conferences.

**Interrogatory No. 3:** Identify and describe all Involved Persons including (a) their specific roles in and contributions to the creation and publication of SOC-8 and any other public communication You issued related to Medical Transition Procedures for Children along with the time period for each such role and contribution.

**Interrogatory No. 4:** Identify and describe every Communication platform, forum, listserv, cloud repository, shared drive, messaging application, or collaboration tool (including any phone, email, Zoom, Google Workspace, Dropbox, Box, SharePoint, Slack, WhatsApp, Signal, or survey/Delphi platform) used in any way by each Involved Person in relation to the activities identified in Your response to Interrogatory No. 3, including Identifying the persons or entities that administer, control, and have custody of records on the associated platform and each Involved Person's individual identifier on that platform (*e.g.* email address, phone number, or username).

**Interrogatory No. 5**: Identify and describe every entity that has, since January 1, 2016, operated as or on behalf of WPATH, to include any legal entity, unincorporated association, division, committee, fiscal sponsor or sponsee, affiliate, or chapter that has (a) used the name "WPATH," "World Professional Association for Transgender Health," "USPATH," "PATH," or "Global Education Institute"; (b) held or disbursed funds on Your behalf; (c) employed or contracted with any Person for the performance of WPATH functions; or (d) held any bank account, EIN, merchant account, insurance policy, lease, intellectual property, or domain used by WPATH. For each, state the jurisdiction and date of formation, EIN, current status, principal place of business, registered agent, officers and directors, along with the nature of its relationship to each other entity, the reason for its existence in addition to each other entity, and the function it serves.

Dated: October 5, 2026

Respectfully submitted,

Of Counsel

Jonathan Cohen
*Acting Deputy Director*
District of Columbia Bar No. 483454

Annie Chiang
*Acting Deputy Director for Litigation and Enforcement Strategy*
District of Columbia Bar No. 1723538

*/s/ Hans Clausen*
Hans Clausen
*Attorney*
Georgia Bar No. 153250
R. Cooper Vaughan
*Assistant Director*
Virginia State Bar No. 92580
Glenna Goldis
*Assistant Director for Special Projects*
New York Reg. No. 4868600
Michael Dingman
*Assistant Director*
District of Columbia Bar No. 90001474
Lauren Trujillo
*Attorney*
Colorado Bar No. 56846

Federal Trade Commission
Bureau of Consumer Protection
600 Pennsylvania Avenue, NW
Washington, DC 20580
Fax: (214) 953-3079
E-mail: hclausen@ftc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2026, I caused the foregoing **PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS** to be served via electronic mail on the following parties:

**For Defendants:**
Caleb Hayes-Deats
Abbe David Lowell
Schuyler J. Standley
LOWELL & ASSOCIATES, PLLC
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
SStandley@lowellandassociates.com

Sarah Cummings Stewart
REED SMITH LLP
sarah.stewart@reedsmith.com

R. Jeffrey Layne
REED SMITH LLP
jlayne@reedsmith.com

Julia Solomon Ensor
REED SMITH LLP
Jensor@reedsmith.Com

**For Plaintiff State of Alaska:**
Charles J. Gartland
Civil Division Director
Alaska Dept. of Law
E-mail: charles.gartland@alaska.gov

**For Plaintiff State of Iowa:**
Eric H. Wessan
Solicitor General
Iowa Attorney General's Office
E-mail: eric.wessan@ag.iowa.gov

**For Plaintiff State of Nebraska:**
Benjamin J. Swanson
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
E-mail: benjamin.swanson@nebraska.gov

**For Plaintiff State of Texas:**
David Bizar
Assistant Attorney General
Deputy Chief
Consumer Protection Division
Office of the Attorney General of Texas
david.bizar@oag.texas.gov

Dated: October 5, 2026

*/s/ Hans Clausen*
Hans Clausen
*Attorney*
FEDERAL TRADE COMMISSION
Phone: 404-656-1361
E-mail: hclausen@ftc.gov

# EXHIBIT G

UNITED STATES OF AMERICA
Federal Trade Commission
WASHINGTON, D.C. 20580

Bureau of Consumer Protection

September 16, 2026

***VIA PRIVATE PROCESS SERVER***

Mount Sinai Hospitals Group, Inc.
1 Gustave L. Levy Place
New York, NY 10029
(212) 241-6500

RE: *FTC v. World Professional Association for Transgender Health, Inc.*
No. 26-cv-748 (N.D. Tex.); Subpoena to Mount Sinai Hospitals Group, Inc.

To Whom It May Concern:

Please find enclosed a subpoena to Mount Sinai Hospitals Group, Inc. issued in the above-captioned matter. Mount Sinai Hospitals Group, Inc. is not a target of an FTC investigation, and we have made every effort to keep this subpoena as narrow as the practicalities of the pending matter allow. Among other noteworthy features, the subpoena does not request the name or identifying information of any patient, any otherwise privileged doctor-patient communications, or any Protected Health Information, as defined in the attached schedule.

We would appreciate the opportunity to confer with you regarding this subpoena generally, including a potentially extended return date, and other accommodations we can make to facilitate your response. We are available to speak next week during the following dates and times:

- 9/22 9 AM ET-10:15 AM ET, 1-2 PM ET;
- 9/23 9:30 AM ET-12 PM ET, 2 PM ET-5 PM ET;
- 9/24 9:30 AM ET-11 AM ET, 3-4 PM ET; or
- 9/25 2 PM-5 PM ET.

We look forward to hearing from you.

Very truly yours,

*/s/ Hans Clausen*
Hans Clausen
Attorney
Federal Trade Commission
(404) 656-1361
hclausen@ftc.gov

Encl.

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

FEDERAL TRADE COMMISSION et al.
*Plaintiff*
v.
WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, INC. et al.
*Defendant*

Civil Action No. 4:26-cv-00748-O

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: MOUNT SINAI HOSPITALS GROUP, INC., 1 Gustave L. Levy Place, New York, NY 10029 (212) 241-6500

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: SEE ATTACHED SCHEDULE A.

| Place: Federal Trade Commission, 1 Bowling Green #318, New York, NY 10004 | Date and Time: 10/08/2026 8:30 am |
|---|---|

The deposition will be recorded by this method: Stenographic transcription and audiovisual recording

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

SEE ATTACHED SCHEDULE B.
RETURN DATE: 09/26/2026

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 09/16/2026

*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

OR

/s/ Hans Clausen
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Federal Trade Commission, who issues or requests this subpoena, are:

Hans Clausen, 600 Pennsylvania Avenue, NW, Washington, DC 20580, hclausen@ftc.gov, (404) 656-1361

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 4:26-cv-00748-O

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* MOUNT SINAI HOSPITALS GROUP, INC.
on *(date)* ______ .

❒ I served the subpoena by delivering a copy to the named individual as follows: ______

______ on *(date)* ______ ; or

❒ I returned the subpoena unexecuted because: ______

______ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ______ .

My fees are $ ______ for travel and $ ______ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______

______
*Server's signature*

______
*Printed name and title*

______
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULES TO SUBPOENA ISSUED TO MOUNT SINAI HOSPITALS GROUP, INC.

Pursuant to Federal Rules of Civil Procedure 45, Plaintiffs Federal Trade Commission and the States of Alaska, Iowa, Nebraska, and Texas incorporate these Schedules as part of their subpoena. The following limitations, specifications, definitions, and instructions apply.

## LIMITATIONS

(1) Notwithstanding anything else herein, no part of this subpoena seeks Protected Health Information. Plaintiffs do not seek to learn the identity of any patient your clinic treated. You should redact any information that would disclose the identity of any patient, or that would otherwise disclose any other Protected Health Information.

(2) Notwithstanding anything else herein, no part of this subpoena seeks information covered by the attorney-client privilege, work product doctrine, or doctor-patient privilege. You should not produce such material, nor does this subpoena require you to log it.

## SCHEDULE A—TESTIMONY

Pursuant to Rule 30(b)(6), You must be prepared to testify about all information known or reasonably available to You regarding these topics:

(1) Your use of information published, promoted, or otherwise provided by WPATH.

(2) Your communications with WPATH, including WPATH trainings and seminars.

(3) Insurance reimbursement for Pediatric Medical Transition Services.

(4) Any Document produced to Plaintiffs or used to prepare for Your testimony pursuant to this subpoena.

## SCHEDULE B—DOCUMENT REQUESTS

(1) All Documents referring to WPATH or SOC-8, and either (a) provided to Pediatric Patients, or (b) reflecting communications with Pediatric Patients.

(2) All Documents reflecting or constituting guidelines, policies, standards, and training manuals concerning Pediatric Medical Transition Services, including insurance reimbursement for Pediatric Medical Transition Services.

(3) All Documents reflecting or constituting communications with WPATH, about WPATH, or about SOC-8, including trainings and seminars.

(4) Notwithstanding the date of such Documents, Documents sufficient to show Your contribution, if any, to SOC-8's content.

(5) Documents reflecting or constituting Complaints from any Pediatric Patient regarding Pediatric Medical Transition Services.

(6) All Documents used to prepare for Your testimony pursuant to this subpoena.

## DEFINITIONS

A. “**And**,” as well as “**or**,” shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any specification all information that otherwise might be construed to be outside the scope of the specification.

B. “**Any**” shall be construed to include “**all**,” and “**all**” shall be construed to include the word “**any**.”

C. “**Complaints**” means any expression of dissatisfaction, including both informal communications, regulatory inquiries, demand letters, and lawsuits.

D. **“Document**” shall mean the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise), regardless of origin or location, of any written, typed, printed, transcribed, filmed, punched, or graphic matter of every type and description, however and by whomever prepared, produced, disseminated or made, including but not limited to any advertisement, book, pamphlet, periodical, contract, correspondence, file, invoice, memorandum, note, telegram, report, record, handwritten note, working paper, routing slip, chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history, calendar, diary, agenda, minute, code book or label. “Document” also includes Electronically Stored Information.

E. “**Electronically Stored Information**” or “**ESI**” shall mean the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any information created, manipulated, communicated, stored, or utilized in digital form, requiring the use of computer hardware or software. This includes, but is not limited to, electronic mail, instant messaging (including WhatsApp), chat services or other services that include chat features (such as Slack and Teams), videoconferencing, and other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media. “ESI” also includes such technical assistance or instructions as will enable us to convert ESI into a reasonably usable form.

F. “**Include**” and “**including**” mean “without limitation,” or “including but not limited to,” to avoid excluding any documents or information that might otherwise fall within the scope of any specification.

G. “**Referring To,**” “**Relating To**,” or “**Related To**” shall mean discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, concerning, or pertaining to, in whole or in part.

H. “**Pediatric Patients**” means anyone seeking Pediatric Medical Transition Services from You who was under age 18 at any point during Your relationship with that person, as well as the parents or legal guardians any such person.

I. **“Pediatric Medical Transition Services”** means any medical intervention that purports to treat minors for distress or discomfort related to their sex traits or professed “gender,” or feelings of “gender incongruence” or “gender dysphoria,” including but not limited to pubertal suppression, hormone therapy, and surgery (e.g., subcutaneous mastectomy, vaginoplasty, metoidioplasty, facial feminization, and phalloplasty).

J. "**Protected Health Information**" means the same as defined in the Health Insurance Portability and Accountability Act ("HIPPA"), 45 CFR Parts 160, 162 & 164, at 45 CFR § 160.103. This includes individually identifiable health information such as (1) demographic data collected from an individual; (2) the past, present, or future physical or mental health or condition of an individual; (3) the provision of health care to an individual; (4) the past, present, or future payment for the provision of health care to an individual; or (5) that which provides a reasonable basis to believe the information could be used to identify the individual. Health data that has been de-identified according to HIPPA, 45 CFR § 164.514, is not included in this definition

K. "**SOC-8**" means the 2022 publication entitled "Standards of Care for the Health of Transgender and Gender Diverse People, Version 8."

L. "**WPATH**" means the World Professional Association for Transgender Health, Inc.; the United States Professional Association for Transgender Health; and Veritas Association Management, Inc.

M. "**You**" and "**Your**" means Mount Sinai Hospitals Group, Inc., its affiliates and subsidiaries, and the agents and representatives of any of the forgoing, including any clinicians employed by, or compensated for work performed through, any of the foregoing.

## INSTRUCTIONS

A. **Scope of Search**. This subpoena covers documents and information in your possession or under your actual or constructive custody or control including, but not limited to, documents and information in the possession, custody, or control of your attorneys, accountants, directors, officers, partners, employees, and other agents and consultants, whether or not such documents and information were received from or disseminated to any person or entity.

B. **Time Period**. Unless otherwise specified, this subpoena covers Documents created on or after January 1, 2022.

C. **Document Production**. You shall produce the documentary material at the place of production identified. Alternatively, you may send all responsive documents to Federal Trade Commission, 600 Pennsylvania Ave., NW, Washington, DC 20580. Because postal delivery to the Commission is subject to delay due to heightened security precautions, please use a courier service such as Federal Express or UPS. Notice of your intended method of production shall be given by email or telephone to Investigator Jonathan Bugbee (JBugbee@ftc.gov)/(202) 326-2387) at least five days prior to the return date. Please mark the exterior of all packages containing electronic media sent through the U.S. Postal Service or other delivery services as follows:

**MAGNETIC MEDIA – DO NOT X-RAY**
**MAY BE OPENED FOR POSTAL INSPECTION.**

D. **Documents Responsive to Multiple Specifications**. Documents responsive to more than one specification need not be submitted more than once; however, your response should indicate, for each document submitted, each specification to which the document is responsive. If any documents responsive to this subpoena have been previously supplied to the Commission, you may comply with this subpoena by identifying the document(s) previously provided and the submission date. Documents should be produced in the order in which they appear in your files or as electronically stored and without being manipulated or otherwise rearranged; if documents are removed from their original folders, binders, covers, containers, or electronic source in order to be produced, then the documents shall be identified in a manner so as to clearly specify the folder, binder, cover, container, or electronic media or file paths from which such documents came. In addition, number by page (or file, for those documents produced in native electronic format) all

documents you produce with a unique Bates identifier, and indicate the total number of documents in your production.

E. **Production of Copies**. Unless otherwise stated, legible photocopies (or electronically rendered images or digital copies of native electronic files) may be submitted in lieu of originals, provided that the originals are retained in their state at the time of receipt of this subpoena. Further, copies may be submitted in lieu of originals only if they are true, correct, and complete copies of the original documents; provided, however, that producing a copy waives any claim as to the authenticity of the copy should it be necessary to introduce such copy into evidence in any Commission proceeding or court; and provided further that you must retain the originals and produce them upon request.

F. **Documents With Responsive Portions**. A complete copy of each document should be submitted even if only a portion of the document is within the terms of the request. The document shall not be edited, cut, or expunged in any way and shall include all covering letters and memoranda, transmittal slips, appendices, tables or other attachments.

G. **Copies and Drafts**. Each request includes all copies of the responsive document and, to the extent applicable, preliminary drafts or documents that differ in any respect from the original or final draft or from each other (*e.g.*, by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not the original or other copies thereof).

H. **Lost or Destroyed Documents**. If any document this subpoena covers was in your possession or actual or constructive custody or control and has been lost or destroyed, the document is to be identified in writing as follows: addressee, person who prepared or authored the document, date of preparation or transmittal, substance of the document and its subject matter, number of pages, attachments, or appendices, all persons to whom distributed, shown or explained, date of loss or destruction, and, if destroyed, the manner of destruction, the reason for destruction, the persons authorizing destruction, and the persons who destroyed the document.

I. **Objections.** If you object to any request, all documents covered by the request not subject to the objection still must be produced. Similarly, if an objection is made to production of a document, the portion of that document not subject to objection should be produced with the portion objected to redacted and clearly indicated as redacted. All objections to these requests or to any individual request must be raised in the initial response or are waived.

J. **Certification of Records of Regularly Conducted Activity**. Attached is a Certification of Records of Regularly Conducted Activity, which may reduce the need to subpoena you to testify to establish the admissibility of documents produced in response to this subpoena. Please execute this Certification and provide it with your response.

**CERTIFICATION OF RECORDS OF REGULARLY CONDUCTED ACTIVITY**
**Pursuant to 28 U.S.C. § 1746**

1. I, ___________________________, have personal knowledge of the facts set forth below and am competent to testify as follows:

2. I have authority to certify the authenticity of the records produced by ______________________________________ (the "Organization") and attached hereto.

3. The documents produced and attached hereto by the Organization are originals or true copies of records of regularly conducted activity that:

   a) Were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

   b) Were kept in the course of the regularly conducted activity of the Organization; and

   c) Were made by the regularly conducted activity as a regular practice of the Organization.

I certify under penalty of perjury that the foregoing is true and correct.

Date: ___________________________ ________________________________
Signature

# EXHIBIT H

**From:** Vaughan, Ross (Cooper)
**To:** Caleb Hayes-Deats; Stewart, Sarah Cummings; alowellpublicoutreach; Ensor, Julia S.; Layne, Jeff; Schuyler Standley
**Cc:** CharlesGartland-contact; BanjaminSwanson-contact; DavidBizar-contact; EricWessan-contact; Cohen, Jonathan; Chiang Rubin, Annie; Dingman, Michael; Trujillo, Lauren; Clausen, Hans
**Subject:** RE: RULE 45(a)(4) NOTICE TO PARTIES, FTC et al. v. WPATH et al., Case No. 4:26-cv-00748-O
**Date:** Friday, November 13, 2026 9:37:23 AM
**Attachments:** image001.png
image002.png
image003.png
image004.png
image005.png
image006.png

---

Caleb,

Coordinating with you on negotiations with third parties regarding the production of records pursuant to subpoenas that Plaintiffs (not WPATH) have issued is neither reasonable nor efficient. We will confer with you in advance of filing any motion, as required by the rules. We have not attempted to proceed with any deposition on a date that you were unavailable. If you are not available on any of the deposition dates please let us know and we will discuss accordingly, or feel free to regularly provide us with updates on your availability.

Best,
Cooper

**R. Cooper Vaughan**
Assistant Director
Bureau of Consumer Protection
Federal Trade Commission
rvaughan@ftc.gov

---

**From:** Caleb Hayes-Deats <CHayes-Deats@lowellandassociates.com>
**Sent:** Monday, November 9, 2026 1:08 PM
**To:** Clausen, Hans <hclausen@ftc.gov>; sarah.stewart@reedsmith.com; Abbe Lowell Public <alowellpublicoutreach@lowellandassociates.com>; jensor@reedsmith.com; jlayne@reedsmith.com; Schuyler Standley <sstandley@lowellandassociates.com>
**Cc:** CharlesGartland-contact <Charles.gartland@alaska.gov>; BanjaminSwanson-contact <Benjamin.Swanson@nebraska.gov>; DavidBizar-contact <David.Bizar@oag.texas.gov>; EricWessan-contact <eric.wessan@ag.iowa.gov>; Vaughan, Ross (Cooper) <rvaughan@ftc.gov>; Cohen, Jonathan <jcohen2@ftc.gov>; Chiang, Annie <achiang@ftc.gov>; Dingman, Michael <mdingman@ftc.gov>; Trujillo, Lauren <ltrujillo@ftc.gov>
**Subject:** RE: RULE 45(a)(4) NOTICE TO PARTIES, FTC et al. v. WPATH et al., Case No. 4:26-cv-00748-O

Hans,

"Lawyers should make reasonable efforts to conduct all discovery by agreement." *Dondi Props. Corp. v. Com. Sav. & Loan Ass'n*, 121 F.R.D. 284, 293 (N.D. Tex. 1988). If that means anything, it means that you should share draft orders you're negotiating that would require our consent. Similarly, "[w]hen scheduling hearings and depositions, lawyers should communicate with the opposing counsel in an attempt to schedule them at a mutually agreeable time." *Id.* The FTC has noticed nine depositions without consulting us on the time, and then rescheduled almost all of them, again without consulting us.

These are basic courtesies. The FTC should start extending them. That means that if there is a protective order that has been proposed to third-party subpoena recipients—which you have not denied—you should share it with us today. It also means that, if you need to select a deposition date, you should request our availability.

Sincerely,
Caleb

**Caleb Hayes-Deats** | Partner
*Lowell & Associates, PLLC*
202-964-6110
202-508-4455
chayes-deats@lowellandassociates.com
lowellandassociates.com
1250 H St NW Washington DC 20005
*This message and any attachments may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.*

---

**From:** Clausen, Hans <hclausen@ftc.gov>
**Sent:** Monday, November 9, 2026 11:43 AM
**To:** Caleb Hayes-Deats <CHayes-Deats@lowellandassociates.com>; sarah.stewart@reedsmith.com; Abbe Lowell Public <alowellpublicoutreach@lowellandassociates.com>; jensor@reedsmith.com; jlayne@reedsmith.com; Schuyler Standley <sstandley@lowellandassociates.com>
**Cc:** CharlesGartland-contact <Charles.gartland@alaska.gov>; BanjaminSwanson-contact <Benjamin.Swanson@nebraska.gov>; DavidBizar-contact <David.Bizar@oag.texas.gov>; EricWessan-contact <eric.wessan@ag.iowa.gov>; Vaughan, Ross (Cooper) <rvaughan@ftc.gov>; Cohen, Jonathan <jcohen2@ftc.gov>; Chiang, Annie <achiang@ftc.gov>; Dingman, Michael <mdingman@ftc.gov>; Trujillo, Lauren <ltrujillo@ftc.gov>
**Subject:** RE: RULE 45(a)(4) NOTICE TO PARTIES, FTC et al. v. WPATH et al., Case No. 4:26-cv-00748-O

Caleb:

Thanks for your e-mail. The FTC will of course meet our obligations to confer with WPATH under Local Rule 7.1, as we have been during this litigation.

**Hans Clausen**
**Attorney | Federal Trade Commission | Bureau of Consumer Protection**
404-656-1361 (Direct)
202-250-0763 (Work cell)

---

**From:** Caleb Hayes-Deats <CHayes-Deats@lowellandassociates.com>
**Sent:** Monday, November 9, 2026 11:19 AM
**To:** Clausen, Hans <hclausen@ftc.gov>; sarah.stewart@reedsmith.com; Abbe Lowell Public <alowellpublicoutreach@lowellandassociates.com>; jensor@reedsmith.com; jlayne@reedsmith.com; Schuyler Standley <sstandley@lowellandassociates.com>
**Cc:** CharlesGartland-contact <Charles.gartland@alaska.gov>; BanjaminSwanson-contact <Benjamin.Swanson@nebraska.gov>; DavidBizar-contact <David.Bizar@oag.texas.gov>; EricWessan-contact <eric.wessan@ag.iowa.gov>; Vaughan, Ross (Cooper) <rvaughan@ftc.gov>; Cohen, Jonathan <jcohen2@ftc.gov>; Chiang, Annie <achiang@ftc.gov>; Dingman, Michael <mdingman@ftc.gov>; Trujillo, Lauren <ltrujillo@ftc.gov>
**Subject:** RE: RULE 45(a)(4) NOTICE TO PARTIES, FTC et al. v. WPATH et al., Case No. 4:26-cv-00748-O

Counsel,

We have not received any response to the email below. The FTC has neither denied that it engaged in this conduct nor provided any explanation for why it would do so notwithstanding its obligation to confer with WPATH on any proposed order.

We repeat our request for any draft protective order the FTC has discussed with third-party subpoena recipients.

Sincerely,
Caleb

**Caleb Hayes-Deats** | Partner
*Lowell & Associates, PLLC*
202-964-6110
202-508-4455

chayes-deats@lowellandassociates.com
lowellandassociates.com
1250 H St NW Washington DC 20005

*This message and any attachments may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.*

---

**From:** Caleb Hayes-Deats
**Sent:** Friday, October 23, 2026 3:19 PM
**To:** Clausen, Hans <hclausen@ftc.gov>; sarah.stewart@reedsmith.com; Abbe Lowell Public <alowellpublicoutreach@lowellandassociates.com>; jensor@reedsmith.com; jlayne@reedsmith.com; Schuyler Standley <sstandley@lowellandassociates.com>
**Cc:** CharlesGartland-contact <Charles.gartland@alaska.gov>; BanjaminSwanson-contact <Benjamin.Swanson@nebraska.gov>; DavidBizar-contact <David.Bizar@oag.texas.gov>; EricWessan-contact <eric.wessan@ag.iowa.gov>; Vaughan, Ross (Cooper) <rvaughan@ftc.gov>; Cohen, Jonathan <jcohen2@ftc.gov>; Chiang, Annie <achiang@ftc.gov>; Dingman, Michael <mdingman@ftc.gov>; Trujillo, Lauren <ltrujillo@ftc.gov>
**Subject:** RE: RULE 45(a)(4) NOTICE TO PARTIES, FTC et al. v. WPATH et al., Case No. 4:26-cv-00748-O

Hans,

We understand that the FTC is attempting negotiate a protective order with the various hospitals on which it has served subpoenas. Under Local Rule 7.1, the FTC must confer with WPATH before moving for entry of any such order. To facilitate the conferral process, please immediately share the draft and include WPATH on all future correspondence regarding it.

The FTC's exclusion of WPATH from conversations about a protective order is surprising because, in the parties' joint report to the Court, WPATH specifically requested (and Plaintiffs opposed) a protective order based on the likelihood of "third-party discovery from medical institutions whose confidentiality obligations would prevent them from producing information without a guarantee of judicial protection against unauthorized disclosure." ECF 86 at 21. Plaintiffs thus had notice of WPATH's interest in a protective order covering this exact subject. Any decision to try to exclude WPATH from negotiations over such an order would appear to be inconsistent with the Court's instructions regarding courtesy and cooperation.

Sincerely,
Caleb

**Caleb Hayes-Deats** | Partner

*Lowell & Associates, PLLC*

202-964-6110

202-508-4455

chayes-deats@lowellandassociates.com

lowellandassociates.com

1250 H St NW Washington DC 20005

*This message and any attachments may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.*

---

**From:** Clausen, Hans <hclausen@ftc.gov>
**Sent:** Thursday, October 22, 2026 10:36 AM
**To:** sarah.stewart@reedsmith.com; Abbe Lowell Public <alowellpublicoutreach@lowellandassociates.com>; Caleb Hayes-Deats <CHayes-Deats@lowellandassociates.com>; jensor@reedsmith.com; jlayne@reedsmith.com; Schuyler Standley <sstandley@lowellandassociates.com>
**Cc:** CharlesGartland-contact <Charles.gartland@alaska.gov>; BanjaminSwanson-contact <Benjamin.Swanson@nebraska.gov>; DavidBizar-contact <David.Bizar@oag.texas.gov>; EricWessan-contact <eric.wessan@ag.iowa.gov>; Vaughan, Ross (Cooper) <rvaughan@ftc.gov>; Cohen, Jonathan <jcohen2@ftc.gov>; Chiang, Annie <achiang@ftc.gov>; Dingman, Michael <mdingman@ftc.gov>; Trujillo, Lauren <ltrujillo@ftc.gov>; Clausen, Hans <hclausen@ftc.gov>
**Subject:** RULE 45(a)(4) NOTICE TO PARTIES, FTC et al. v. WPATH et al., Case No. 4:26-cv-00748-O

Plaintiff the Federal Trade Commission intends to serve a subpoena for testimony and the production of documents and electronically stored information on BAYLOR COLLEGE OF MEDICINE and hereby serves counsel for the parties with this advance notice and a copy of the subpoena, pursuant to the requirements of FRCP 45(a)(4).

**Hans Clausen**
**Attorney | Federal Trade Commission | Bureau of Consumer Protection**
404-656-1361 (Direct)
202-250-0763 (Work cell)